# SEALED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO:  22-CV-81294-AMC

DONALD J. TRUMP,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

_____/

<u>UNDER SEAL AND *EX PARTE*</u>

(PRIVILEGE REVIEW TEAM)

FILED BY _P C S_ D.C.

AUG 30 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## NOTICE OF STATUS OF PRIVILEGE REVIEW TEAM'S FILTER PROCESS AND PRODUCTION OF ITEMIZED LIST OF DOCUMENTS WITHIN PRIVILEGE REVIEW TEAM'S CUSTODY

On August 27, 2022, the Court ordered the United States to file under seal a "more detailed Receipt of Property specifying all property seized pursuant to the search warrant executed on August 8, 2022." (Docket Entry (DE):29 at 2).  The Court further ordered the United States to provide a "particularized notice indicating the status of the [United States'] review of the seized property, including any filter review conducted by the privilege review team and any dissemination of materials beyond the privilege review team." (*Id.*)  The United States' Privilege Review Team, through the undersigned attorneys, files this Notice pursuant to the Court's Preliminary Order (DE:29).[1]

---

[1] Pursuant to the Court's Preliminary Order (DE:29 at 2), this Notice, Exhibit A, and Exhibit B are filed under seal.  In an abundance of caution, the Privilege Review Team has also filed this Notice *ex parte* because the Notice contains some details that are not normally shared with the owner of a searched premises.  And finally, because this Notice and Exhibits discuss potentially attorney-client privileged materials, the Notice and Exhibits have been marked "Privilege Review Team" to maintain a clear delineation between the Privilege Review Team and Case Team and prevent inadvertent exposure.

As described below, the Privilege Review Team followed specified search procedures and filter protocols while executing the warrant to search certain locations within 1100 S. Ocean Boulevard (the "premises") and subsequently during the review of evidence seized during that search.[2]  As a result of that process, the Privilege Review Team identified 64 sets of materials (consisting of approximately 520 pages) warranting further consideration.  The Privilege Review Team separated those materials into two groups (identified in the attached Exhibit A and Exhibit B).  As of the filing of this Notice, the Privilege Review Team has completed its review of the materials currently within its custody and control and awaits further direction from the Court.  As part of this Notice, the Privilege Review Team outlines a potential course of action for resolving issues related to the potentially privileged documents identified in Exhibits A and B.

*The Filter Process During the Execution of the Search Warrant*

In seeking the warrant to search certain locations within the premises, the United States represented that it would follow certain procedures to segregate from the Case Team materials *potentially* containing attorney-client privileged information and documents *potentially* protected under the attorney work product doctrine (hereinafter collectively "potentially privileged" documents or materials).  *See* Affidavit ¶ 81-84.  Prior to commencing the search, the Case Team provided the Privilege Review Team with a list of 35 attorneys, including Evan Corcoran and his firm, Silverman, Thompson, Slukin & White.  The Case Team instructed the Privilege Review Team agents how to conduct their review during the search.  They directed the Privilege Review Team agents to mark documents reflecting, containing, or otherwise describing communications with, or between any of the named attorneys, any individuals identified during the search who

---

[2] *See In re Sealed Search Warrant*, 9:22-MJ-8332-BER, DE:102-1 ¶¶ 81-84 (S.D. Fla.) (the "Affidavit").  Capitalized terms used herein have the same meaning as identical terms in the Affidavit.

Case 9:22-cv-81294-AMC   Document 40   Entered on FLSD Docket 08/30/2022   Page 3 of 10

appeared to be attorneys, and their respective staff (*e.g.*, paralegals). They further directed the Privilege Review Team agents to clearly mark, seal, and segregate those potentially privileged materials from the Case Team. If potentially privileged materials were comingled in a container (*e.g.*, a box) with non-privileged materials responsive to Attachment B of the warrant, the Privilege Review Team agents were instructed to clearly mark the entire container as potentially privileged for further review. Additionally, undersigned counsel, as the attorneys assigned to the Privilege Review Team, instructed the Privilege Review Team agents that any photographs taken by the FBI's Evidence Response Team could potentially capture privileged materials, and therefore, the Privilege Review Team should review the SD cards containing the photographs before releasing them to the Case Team.[3] If questions arose about a particular item during the search, the Privilege Review Team agents were instructed to contact the Privilege Review Team attorneys.

Pursuant to the filter protocol and search procedures set forth in the Affidavit, the Privilege Review Team agents were responsible for searching the "45 Office" and "conduct[ing] a review of the seized materials from the '45 Office' to identify and segregate documents or data containing potentially attorney-client privileged information." Affidavit ¶¶ 81-82. Additionally, the Privilege Review Team agents were to be "available to assist in the event that a procedure involving potentially attorney-client privileged information [was] required." *Id.* ¶ 81. At the time of the search on August 8, 2022, the Case Team elected to have the Privilege Review Team agents conduct an initial search and review of the Storage Room (as well as the 45 Office, as described in the Affidavit) to identify and segregate potentially privileged documents from the Case Team.

---

[3] Both Privilege Review Team agents and undersigned counsel reviewed the images and verified no potentially privileged documents were captured in the photographs before those photographs were released to the Case Team.

3

During the search, the Privilege Review Team agents took a broad view of potentially privileged information, to include any documents to, from, or even referencing an attorney (regardless of whether the document appeared to capture communications to or from an attorney for the purpose of seeking legal advice and regardless of who the attorney represented).[4]  The Privilege Review Team agents also treated any legal document as potentially privileged.  These materials were sealed, segregated, and identified as potentially privileged without regard to the substance or confidentiality of the communication.[5]

By the conclusion of the search, the Privilege Review Team agents had marked and sealed six boxes of evidence as potentially privileged—one box containing the entire contents of a single drawer in the 45 Office in which non-privileged, responsive materials had been located and five boxes from the Storage Room containing potentially privileged documents comingled with non-privileged, responsive materials.  The Privilege Review Team agents in Florida maintained sole

---

[4] That is, of course, significantly broader than the scope of the attorney-client privilege and work product doctrine.  As the Court is no doubt aware, a claim of attorney-client privilege requires proof of the following elements:  (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is the member of a bar of a court, or his subordinate and (b) in connection with this communication acting as a lawyer; (3) the communication relates to a fact which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.  *In re Grand Jury Proceedings* 88-9 (MIA), 899 F.2d 1039, 1042 (11th Cir. 1990), citing *United States v. Jones*, 517 F.2d 666 (5th Cir. 1975).  The Privilege Review Team agents focused on identifying and segregating documents that captured or even implied communications to or from attorneys, intending to leave legal analysis of the documents to the Privilege Review Team attorneys, pursuant to paragraph 84 of the Affidavit.

[5] For example, the Privilege Review Team agents identified and segregated a printed email exchange between the U.S. Air Force Academy's head baseball coach and the White House, because "Pat C" (perhaps a reference to White House Counsel Pat Cipollone) was written on the document in black marker (Item Number 4 in Exhibit A at FILTER-A-005).

custody and continuous control of the six boxes of evidence containing potentially privileged materials until those boxes were transferred to Privilege Review Team agents assigned to FBI's Washington Field Office (WFO) on August 9, 2022.

*Continuation of the Filter Process at the Washington Field Office*

At the Washington Field Office, the six sealed boxes containing potentially privileged materials remained segregated from the Case Team in a secure room to which the Case Team did not (and does not) have access. An additional seventh box was transferred to the custody and control of the Privilege Review Team agents on August 10, 2022, after a Case Team agent observed a document on Morgan Lewis letterhead comingled with newspapers.[6] Consistent with the filter protocols set forth in the Affidavit,[7] the Case Team stopped its review of that entire box and provided it to the Privilege Review Team agents to conduct a review to identify and segregate potentially privileged materials.

By August 11, 2022, the Privilege Review Team agents had completed their review of the contents of the seven containers of evidence containing potentially privileged materials (*i.e.*, the five boxes from the Storage Room, the one box containing the contents of the 45 Office desk drawer, and the seventh box the Case Team provided to the Privilege Review Team for review shortly after the search) at the Washington Field Office. During this further review, and consistent

---

[6] That document is Item Number 3 in Exhibit B (FILTER-B-065 to FILTER-B-068). Also contained within the seventh box were Item Numbers 1 to 4 in Exhibit A (FILTER-A-001 to FILTER-A-005), which the Privilege Review Team agents identified as potentially privileged after receiving custody and control of the box.

[7] Pursuant to the search procedures set forth in the Affidavit, "[i]f at any point the law-enforcement personnel assigned to the investigation subsequently identify any data or documents that they consider may be potentially attorney-client privileged, they will cease the review of such identified data or documents and refer the materials to the Privilege Review Team for further review by the Privilege Review Team." Affidavit ¶ 83.

with paragraph 83 of the Affidavit, the Privilege Review Team agents reviewed each box's contents and separated any potentially privileged materials from the balance of the documents that were not privileged and conveyed the non-privileged documents to the Case Team.  The Privilege Review Team agents continued to maintain custody and control of the potentially privileged materials in the secure room described above.

Undersigned counsel completed our review of the potentially privileged materials identified by the Privilege Review Team agents on August 23, 2022.  As part of that review, the Privilege Review Team created a complete inventory of the potentially privileged documents and divided those materials into two groups (described in more detail below and in Exhibits A and B to this filing).  Although most of the materials do not appear to be even potentially privileged, consistent with the procedures set forth in paragraph 84 of the Affidavit, the Privilege Review Team has not released any of these materials to the Case Team.

On August 25, 2022, an attorney on the Case Team provided the Privilege Review Team attorneys with a 39-page set of materials that appears to reflect the former President's calls.  (The majority of pages are titled "The President's Calls" and include the Presidential Seal.)  Specifically, the document contains handwritten names, numbers, and notes that primarily appear to be messages, as well as several pages of miscellaneous notes. (This document is identified as Item Number 21 in Exhibit A.)  After the Case Team attorney observed notes next to names, the attorney stopped reviewing the set of materials and asked the Privilege Review Team attorneys to review it.  The Privilege Review Team attorneys reviewed this set of materials and added it to the group of potentially privileged materials identified in Exhibit A.[8]  The Privilege Review Team

---

[8] This set of materials was not previously identified as potentially privileged by the Privilege Review Team agents.

attorneys further directed the Privilege Review Team agents to segregate the set of materials from the Case Team and to maintain custody and control of it in the secure room described above.

As of the date of this pleading, no materials identified by the Privilege Review Team agents as containing potentially privileged information have been provided to the Case Team. It is the Privilege Review Team's understanding that the Case Team has finished a preliminary review of the documents seized during the search that are within the Case Team's possession (i.e., materials not identified as potentially privileged). The Case Team has not referred any additional materials to the Privilege Review Team for review since August 25, 2022. To the extent the Case Team refers any additional materials to the Privilege Review Team pursuant to the filter protocols, undersigned counsel will update the Court.

*Proposed Next Steps*

As described above, the Privilege Review Team has completed its review of the materials currently within its custody and control and awaits further direction from the Court. Below, the Privilege Review Team outlines a potential course of action for resolving issues related to the potentially privileged documents identified in Exhibits A and B.

Attorneys assigned to the Privilege Review Team, including undersigned counsel, have determined that the 21 sets of materials identified in Exhibit A (FILTER-A-001 to FILTER-A-138) are primarily government records, public documents, and communications to or from third parties. As such, virtually none of those materials appears to be privileged attorney-client communications or protected under the attorney work product doctrine. There are two closer calls, which involve communications to a White House government e-mail account (implicating waiver) (Item 18 at FILTER-A-061 to FILTER-A-064) and a brief message from a possible attorney ("Rudy") that does not appear, on its face, to be related to legal advice (Item 21 at FILTER-A-

133). Before disclosing the materials identified in Exhibit A to the Case Team, however, and consistent with the search procedures described in the Affidavit[9] the Privilege Review Team is prepared to disclose a Bates-stamped copy of the Exhibit A materials to Plaintiff's counsel, so that Plaintiff and his attorneys may review the materials and, if appropriate, assert the attorney-client privilege through a particularized privilege log that identifies the control numbers of the materials and the basis for asserting they are privileged. If any such documents are identified, consistent with the local rules and paragraph 84(c) of the Affidavit, the Privilege Review Team would attempt to resolve the issue through consultation with Plaintiff's counsel. If unable to reach an agreement, the Privilege Review Team would submit the documents at issue under seal to the Court.[10]

---

[9] Under the procedures set forth in the Affidavit:

> If the Privilege Review Team determines that documents are potentially attorney-client privileged or merit further consideration in that regard, a Privilege Review Team attorney may do any of the following: (a) apply *ex parte* to the court for a determination whether or not the documents contain attorney-client privileged material; (b) defer seeking court intervention and continue to keep the documents inaccessible to law-enforcement personnel assigned to the investigation; or (c) disclose the documents to the potential privilege holder, request the privilege holder to state whether the potential privilege holder asserts attorney-client privilege as to any documents, including requesting a particularized privilege log, and seek a ruling from the court regarding any attorney-client privilege claims as to which the Privilege Review Team and the privilege-holder cannot reach agreement.

(*Id.* ¶ 84.)

[10] Before Plaintiff's Motion and the Court's Preliminary Order, the United States would have submitted any privilege dispute to the Magistrate Court that authorized the warrant and received the return. However, the Privilege Review Team now seeks direction from this Court on where to file materials related to any privilege dispute the parties are unable to resolve between themselves.

As to the documents described in Exhibit B (FILTER-B-001 to FILTER-B-383), the Privilege Review Team proposes to return the originals and provide a Bates-stamped control copy to the Plaintiff.  Many of these materials do not appear to be privileged (although one appears to be[11]), but they are all either legal in nature (*e.g.*, settlement, non-disclosure, and retainer agreements) or otherwise potentially sensitive, and they do not appear to be themselves government or Presidential Records or classified documents.  In light of this pending litigation related to the search of the premises and the filter protocol and search procedures, the Privilege Review Team proposes to maintain and continue to segregate from the Case Team a stamped control copy of the Exhibit B materials until conclusion of any litigation over the conduct of the search or otherwise ordered by the Court. *See* Fed. R. Crim. P. 41(g) (permitting a court to impose reasonable conditions to protect access to returned property and its use in later proceedings).

*Conclusion*

In sum, the Privilege Review Team has completed review of materials identified as potentially privileged during the search and during the Case Team's review of the evidence in its

---

[11] Specifically, Item Number 33 at FILTER-B-351 appears to be privileged.

possession,[12] has segregated those materials from the Case Team, and awaits further direction from

this Court on how to proceed with the documents identified in Exhibits A and B.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: *Anthony W. Lacosta*

Anthony W. Lacosta
Managing Assistant United States Attorney - WPB
Court. No.  A5500698
500 S. Australian Avenue (4th Floor)
West Palm Beach, Florida 33132
Ph:  (561) 209-1015
email: anthony.lacosta@usdoj.gov


/s/*Benjamin J. Hawk*
Benjamin J. Hawk
Deputy Chief for Export Control and Sanctions
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
New Jersey Bar No. 030232007
Ph:  (202) 307-5176
Email:  Benjamin.Hawk@usdoj.gov

---

[12] While review of all potentially privileged materials is complete, the Privilege Review
Team remains available to segregate and review any additional materials identified consistent with
the filter protocols set forth in paragraph 84 of the Affidavit.