## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 22-81294-CIV-CANNON

**DONALD J. TRUMP,**

        Plaintiff,

v.

**UNITED STATES OF AMERICA,**

        Defendant.

_____/

### [PROPOSED] BRIEF OF FORMER FEDERAL AND STATE GOVERNMENT OFFICIALS AS *AMICI CURIAE* IN OPPOSITION TO FORMER PRESIDENT TRUMP'S MOTION FOR JUDICIAL OVERSIGHT AND ADDITIONAL RELIEF

Jay B. Shapiro
STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
150 West Flagler Street,
Suite 2200
Miami, FL 33130
Tel:  (305) 789-3229
jshapiro@stearnsweaver.com

Norman L. Eisen*
NORMAN EISEN PLLC
2000 Massachusetts Avenue NW
Washington, DC 20036
Tel:  (202) 709-4945
nleisen@normaneisenllc.com

Fred Wertheimer*
DEMOCRACY 21
2000 Massachusetts Avenue NW
Washington, DC 20036
Tel:  (202) 355-9600
fwertheimer@democracy21.org

Brad S. Karp*
Roberto Finzi*
Harris Fischman*
David K. Kessler*
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
bkarp@paulweiss.com
rfinzi@paulweiss.com
hfischman@paulweiss.com
dkessler@paulweiss.com

*Counsel for Amici Curiae*

* *Pro hac vice application forthcoming*

**TABLE OF CONTENTS**

INTEREST AND IDENTITY OF *AMICI CURIAE* ...........................................................1

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT.......................................................................................................................6

    I.     THERE IS NO LEGAL BASIS FOR THE APPOINTMENT OF A
              SPECIAL MASTER TO REVIEW THE CLAIM OF EXECUTIVE
              PRIVILEGE HERE. ....................................................................................6

          A.     Cases In Which Courts Have Appointed Special Masters
                    Involve Claims of Attorney-Client (Not Executive) Privilege. .......6

          B.     The Presidential Records Act Forecloses the Relief that the
                    Former President Seeks. ................................................................10

    II.    EVEN IF THERE WAS A LEGAL BASIS FOR APPOINTING A
              SPECIAL MASTER, EXECUTIVE PRIVILEGE CLEARLY DOES
              NOT APPLY TO THE SEIZED RECORDS. ...........................................14

CONCLUSION..................................................................................................................19

## INTEREST AND IDENTITY OF *AMICI CURIAE*

*Amici* are former federal prosecutors Donald B. Ayer, Gregory A. Brower, John J. Farmer Jr., Stuart M. Gerson, Peter D. Keisler, William F. Weld, and former New Jersey Governor Christine Todd Whitman.

*Amici* all served in Republican administrations and collectively have decades of experience prosecuting cases involving sensitive materials or advising on matters regarding the proper scope of executive power and executive privilege.  They also have substantial personal experience with the structure and process of law enforcement investigations, including investigations involving public officials.

Given their decades of public service, their personal familiarity with the law enforcement and constitutional issues at issue here, and their commitment to the integrity of our democratic system, *Amici* maintain an active interest in the proper resolution of the important questions raised by former President Donald J. Trump's pending motion.

## INTRODUCTION

*Amici* respectfully submit this brief in connection with former President Trump's motion for the appointment of a special master to adjudicate his claims of executive privilege over documents seized by federal prosecutors pursuant to a duly-issued warrant. For the reasons that follow, and regardless of one's political views, it is clear that there is no legal support for the relief requested by the former President.  The motion should be denied, for three independent reasons.[1]

---

[1]  To the extent that the former President is requesting the appointment of a special master to address claims of attorney-client privilege, *Amici* take no position on that request.

*First*, the relief sought is unprecedented.  The former President has not cited—and *Amici* are not aware of—any precedent involving the appointment of a special master to adjudicate a claim of executive privilege (as opposed to attorney-client privilege) by a former president against the same Executive Branch to which the privilege belongs.  That is not surprising.  The purpose of the executive privilege is to prevent those *outside* the Executive Branch from intruding in the decision-making of the Executive Branch.  That intrusion does not occur when the Executive Branch itself is the entity reviewing the records, and for its internal use.

*Second*, Congress has established a specific procedure, set out in the Presidential Records Act ("PRA"), through which a former president may challenge a sitting president's invocations of (or refusals to assert) executive privilege.  The former President's motion ignores that statute's requirements, including the requirement that any challenge by a former president to the Executive Branch's rejection of his claim of privilege be brought in the jurisdiction available under the PRA, the United States District Court for the District of Columbia.  The former President thus seeks relief to which he is not entitled—adjudication of his claims of executive privilege by a special master—in a court that is statutorily precluded from hearing the matter.

*Third*, the appointment of a special master to adjudicate the claims of executive privilege would be a waste of time because the claim of executive privilege against the Executive Branch in this case is manifestly frivolous.  Controlling legal precedent on this issue establishes that determinations of executive privilege made by the current President outweigh claims of privilege made by a former president.  Here, it is abundantly clear that the Executive Branch, including the President and the Acting Archivist of the United

States, have determined that the records at issue should be reviewed by the U.S. Department of Justice ("DOJ") and the Federal Bureau of Investigation. Further, and in any event, executive privilege is not absolute; its protections are subject to a balancing of interests. Here, the former President has identified no concrete interests supporting his position, but the Executive Branch seeks the seized records for core constitutional functions: to conduct a criminal investigation and to assess the damage caused by potential mistreatment of classified information. The unprecedented appointment of a special master in this case would frustrate those core and time-sensitive government functions.

## BACKGROUND

This dispute relates to the federal government's efforts to recover official records that former President Trump took from the White House to his Mar-a-Lago estate in Palm Beach, Florida.

In January 2021, in the process of finishing his term, the former President moved his belongings to Mar-a-Lago. The National Archives and Records Administration ("NARA") subsequently learned of approximately two dozen boxes of presidential records that had not been returned to it as required under the PRA. *See* Luke Broadwater, et al., *Inside the 20-Month Fight to Get Trump to Return Presidential Material*, N.Y. TIMES (Aug. 26, 2022), https://www.nytimes.com/2022/08/26/us/politics/trump-documents-search-timeline.html.

In January 2022, NARA was finally able to retrieve fifteen boxes of records, including documents bearing various classification markings, from former President Trump's estate. *See* Kevin Breuninger, *National Archives Retrieved 15 Boxes of Trump*

*White House Documents from Mar-a-Lago*, CNBC (Feb. 7, 2022),

https://www.cnbc.com/2022/02/07/national-archives-retrieved-15-boxes-of-trump-white-

house-documents-from-mar-a-lago.html.  Twenty-five of those documents were marked

"Top Secret."  Affidavit in Support of an Application Under Rule 41 for a Warrant to

Search and Seize, *United States* v. *Sealed Search Warrant*, No. 22-mj-08332 (S.D. Fla.

Aug. 26, 2022), ECF No. 102-1 ("Search Warrant Affidavit") at ¶ 47.

     In February 2022, NARA alerted the DOJ to the contents of the fifteen boxes of

materials retrieved from Mar-a-Lago.  *See id.* ¶ 1.  Former President Trump attempted to

delay the DOJ's review of the materials by asserting executive privilege over the records.

Letter from Debra S. Wall, Acting Archivist of the United States, NARA, to Evan

Corcoran (May 10, 2022) at 2, https://www.archives.gov/files/foia/wall-letter-to-evan-

corcoran-re-trump-boxes-05.10.2022.pdf (the "NARA May 10 Letter").  NARA,

however, in consultation with the Assistant Attorney General for the Office of Legal

Counsel, rejected former President Trump's claim of executive privilege over the

materials, on the basis that there was no precedent nor legal basis for the former

President's assertion of executive privilege in these circumstances.  *Id.* at 2–3.  The FBI

then launched a criminal investigation to determine how these classified documents were

removed from the White House; whether Mar-a-Lago was an authorized storage location

for those documents; whether additional classified documents had been removed from the

White House; and which individuals were involved in the removal and storage of the

documents at Mar-a-Lago.  *Id.*

In May 2022, former President Trump was served with a grand jury subpoena seeking documents bearing classification markings.  Broadwater, *Inside the 20-Month Fight to Get Trump to Return Presidential Material*.

On August 5, 2022, the FBI obtained a warrant to search Mar-a-Lago on the grounds that it had found National Defense Information[2] in the boxes NARA retrieved from Mar-a-Lago—including 92 documents marked "Top Secret"—and that there was probable cause to believe additional documents containing such information remained at the estate.  Broadwater, *Inside the 20-Month Fight to Get Trump to Return Presidential Material*.  On August 8, 2022, FBI agents searched Mar-a-Lago and seized approximately twelve boxes of documents.  *See* Breuninger, *National Archives Retrieved 15 Boxes of Trump White House Documents from Mar-a-Lago*.

On August 22, 2022, former President Trump initiated this matter by filing a Motion for Judicial Oversight and Additional Relief that asks this Court to appoint a special master to, among other functions, review the seized documents.  That motion argues that "fairness" requires a "neutral reviewer" to ensure the "sanctity" of the seized records, which were created during the former President's term of office and are therefore "presumptively privileged."  ECF No. 1 at 15.  The motion refers to various "executive communications and other privileged materials."  *Id.* at 14.  According to former President Trump, the filter team established by the DOJ is unable to serve as a neutral

---

[2] A footnote in the search warrant affidavit explores the definition of "national defense information" for purposes of 18 U.S.C. § 793(e), as the statute does not provide a definition.  Search Warrant Affidavit at 22 n.2.  The affidavit states that courts have construed the term broadly to refer to "military and naval establishments and the related activities of national preparedness," that the information "must be 'closely held' by the U.S. government," and that some courts have also held that the disclosure of such information "must be potentially damaging to the United States."  *Id.*

reviewer because the team's protocols were approved by a magistrate judge *ex parte* "without input from" former President Trump.  ECF No. 1 at 17.  At this Court's direction, the former President subsequently submitted a Supplemental Filing in Support of the Motion for Judicial Oversight and Additional Relief that made substantially the same arguments for a special master.  ECF No. 28.

On August 27, 2022, this Court entered a preliminary order providing notice of the Court's "preliminary intent" to appoint a special master and setting a hearing on the Motion and briefing schedule.

## ARGUMENT

I.   **THERE IS NO LEGAL BASIS FOR THE APPOINTMENT OF A SPECIAL MASTER TO REVIEW THE CLAIM OF EXECUTIVE PRIVILEGE HERE.**

   A.   **Cases In Which Courts Have Appointed Special Masters Involve Claims of Attorney-Client (Not Executive) Privilege.**

In arguing for the appointment of a special master to address claims of executive privilege, former President Trump's motion relies entirely on cases in which a special master was appointed to address claims of attorney-client privilege, not executive privilege.  Moreover, each of those cases involved the review of documents seized during the search of a law office or lawyer's home,[3] locations likely to hold substantial records

---

[3] *In the Matter of Search Warrants Executed on April 9, 2018*, No. 18-MJ-3161 (S.D.N.Y.), ECF No. 104 at 39 (search of lawyer's office); *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 2020 WL 6689045, at *3 (S.D. Fla. Nov. 2, 2020) (search of in-house counsel's office); *United States* v. *Stewart*, 2002 WL 1300059, at *1 (S.D.N.Y. June 11, 2002) (search of lawyer's office); *United States* v. *Hunter*, 13 F. Supp. 2d 574, 580 (D. Vt. 1998) (search of lawyer's home office); *United States* v. *Abbell*, *914 F. Supp. 519*, 519 (S.D. Fla. 1995) (search of lawyer's office); *In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 57 (S.D.N.Y. 1994) (search of lawyer's office).

implicating attorney-client privileges held by a number of different individuals, including individuals not related to the investigation giving rise to the search.

Because of the high likelihood that privileged attorney-client materials and work product would be collected in the search of these locations, and because the collection and review of those materials often implicates the rights and privileges of unrelated parties, courts have recognized that those searches "raise special concerns, which impose a need for heightened care." *United States* v. *Stewart*, 2002 WL 1300059, at *3 (S.D.N.Y. June 11, 2002). These concerns can be especially acute where the search in question (unlike the search at issue here) is of a criminal defense attorney's offices, because such a search "raise[s] Sixth Amendment concerns that would not otherwise be present in the search of the offices of a civil litigation attorney," and because the seized materials are "likely to contain privileged materials relating not only to unrelated criminal defendants but also to the clients of attorneys other than the defendant, for whom there has been no showing of probable cause of criminal conduct." *Id.* at *5, 7.[4]

Nothing in any of the precedents cited by the former President says anything about executive privilege, a doctrine that implicates entirely different interests and

---

[4] Even while recognizing that extraordinary circumstances can allow for the appointment of a special master to protect attorney-client privilege, courts have nevertheless generally maintained the position that "the filter team process adequately safeguards the attorney-client privilege and the constitutional rights of the search subjects and their clients." Order, *In re Search Warrants Executed on April 28, 2021*, No. 1:21-mc-00425 (May 28, 2021 S.D.N.Y.), ECF No. 20 at 4; Apr. 26, 2018 Hr'g Tr., *In re Search Warrants Executed on April 9, 2018*, No. 18-MJ-3161 (May 2, 2018 S.D.N.Y.), ECF. No. 38 at 8:3–9 ("As I've said before, I view a taint team to be as fair as one done by a good special master. I am agreeing with the government and counsel that a special master makes sense at this point, notwithstanding that I think we all know that the Southern District prosecutors have integrity and decency and could do the job with utmost integrity.").

concerns.  Specifically, the executive privilege at issue operates to protect a sitting

president's decision-making and deliberations to ensure the receipt of full and frank

advice.  *See Trump* v. *Thompson*, 20 F.4th 10, 25–26 (D.C. Cir. 2021), *cert. denied*, 142

S. Ct. 1350 (2022) (internal citations omitted) ("[The presidential communications]

privilege allows a President to protect from disclosure 'documents or other materials that

reflect presidential decisionmaking and deliberations and that the President believes

should remain confidential.' . . . [b]ecause '[a] President and those who assist him must

be free to explore alternatives in the process of shaping polices and making decisions and

to do so in a way many would be unwilling to express except privately.'""); *In re Lindsey*,

148 F.3d 1100, 1120 (D.C. Cir. 1998) (Tatel, J. concurring) (internal citations omitted)

("Unlike the executive privilege—a broad, constitutionally derived privilege that protects

frank debate between President and advisers," the attorney-client privilege is "narrower"

and protects "only communications with lawyers 'for the purpose of obtaining legal

assistance.'").

Not surprisingly given this context, former President Trump has failed to explain

why cases involving the appointment of a special master to review for attorney-client

privilege have any relevance here.[5]  A special master in this matter would not, for

---

[5] In a number of the cases cited in the motion, no party objected to the appointment of a
special master.  *See In re Search Warrants Executed on April 28, 2021*, 2021 WL
2188150, at *4 (S.D.N.Y. May 28, 2021) (noting, in regard to government's request to
appoint a special master to review potentially privileged documents, that the subjects of
the searches, "Giuliani and Toensing[,] do not appear to dispute that the appointment of
a special master is appropriate"); *In re Search Warrants Executed on April 9, 2018*, No.
18-MJ-3161 (S.D.N.Y. April 26, 2018), ECF. No. 28 at 1 (informing the court, in
advance of the conference regarding appointment of a special master to conduct the
review of the potentially privileged materials, that the government was prepared to
withdraw its objection to such an appointment); *see also* Fed. R. Civ. P. 53(a)(1)

example, protect the interests or rights of third parties, which is a primary attorney-client privilege concern during the search of law firms and lawyers' offices. *Cf. In re Sealed Search Warrant and Application for a Warrant by Tel. or Other Reliable Elec. Means*, 2020 WL 6689045, at *2 (S.D. Fla. Nov. 2, 2020), *aff'd*, 11 F.4th 1235 (11th Cir. 2021) (affirming order authorizing federal prosecutor to conduct filter review and rejecting movant's reliance on cases regarding searches of law offices because "those cases involved different concerns," including the "risk that the members of the filter team would at some point be involved in the criminal investigation and/or prosecution of other clients who were not the subject of the underlying investigation," which concerns did not apply "where the documents seized pertain only to Movants and its in-house counsel"). The executive privilege belongs to the Executive Branch, and the materials here are being reviewed by the Executive Branch. *See Thompson*, 20 F.4th at 26 (quoting *Nixon* v. *Adm' of Gen. Services*, 433 U.S. 425, 449 (1977)) ("The executive privilege is just that— a privilege held by the Executive Branch, 'not for the benefit of the President as an individual, but for the benefit of the Republic.'").

Moreover, unlike the evaluation of the attorney-client privilege, the decision about whether executive privilege applies to a certain set of communications is itself best left to the special expertise of the executive branch. *Cf. Trump* v. *Thompson*, 573 F. Supp. 3d 1, 17 (D.D.C. 2021), *aff'd*, 20 F.4th 10 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 1350 (2022) (holding that former President Trump's "assertion of privilege is outweighed by President Biden's decision not to uphold the privilege, and the court will

_____

(permitting appointment of special masters to "perform duties consented to by the parties").

not second guess that decision by undertaking a document-by-document review that would require it to engage in a function reserved squarely for the Executive.").

Nor does the fact that this case has national significance, or great public interest, warrant the appointment of a special master in the absence of legal authority justifying that appointment, and these interests should give way to the national security exigency that the DOJ and FBI recover the records unhampered.

### B. The Presidential Records Act Forecloses the Relief that the Former President Seeks.

Through the PRA, Congress has provided procedures by which a former president may raise or challenge a claim of executive privilege for consideration by a subsequent administration. *See, e.g.*, 44 U.S.C. §§ 2204(e), 2208(a)–(b). The relief that former President Trump seeks in this Court is foreclosed by the PRA.

Congress enacted the PRA in 1978 "to insure the preservation of and public access to the official records of the President." Presidential Records Act of 1978, Pub. L. No. 95–591, 92 Stat. 2523, 2523 (1978); *see also* H.R. Rep. No. 95–1487 at 5732, 95th Cong., 2d Sess. 2 (1978); *Armstrong* v. *Bush*, 924 F.2d 282, 287 (D.C. Cir. 1991). To carry out this objective, Congress decided that "[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records." 44 U.S.C. § 2202. Congress defined "Presidential records" to include any documents created or received by a president "in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President," 44 U.S.C. § 2201(2), and required that such records be made available pursuant to a court-issued warrant subject to any applicable rights, defenses, or privileges, 44 U.S.C. § 2205(2)(A).

Congress also established the method for a former president "to assert any claim of constitutionally based privilege against disclosure of a Presidential record" to the public by the current Executive Branch.  44 U.S.C. § 2208(b)(1).  To do so, a former president invoking the PRA must "notify the Archivist [of the United States], the Committee on Oversight and Government Reform of the House of Representatives, and the Committee on Homeland Security and Governmental Affairs of the Senate of a privilege claim."  44 U.S.C. § 2208(b)(2).  The PRA provides that the Archivist must then consult with the sitting President to determine whether the sitting President will uphold the claim.  44 U.S.C. § 2208(c)(1).  If the sitting President decides not to assert the claim of privilege, the former President can institute court proceedings.  44 U.S.C. § 2208(c)(1)(C).  And the PRA establishes that "any action" to challenge a privilege determination by the Archivist should be brought in the United States District Court for the District of Columbia.  44 U.S.C. § 2204(e) ("The United States District Court for the District of Columbia shall have jurisdiction over any action initiated by the former President asserting that a determination made by the Archivist violates the former President's rights or privileges.").

The records seized here—documentary material created or received by the former President during his term of office—seem clearly subject to the PRA (of course, *Amici* are not privy to anything other than public information about the documents).  And the former President's assertion of executive privilege confirms that he views the seized records as "Presidential records" subject to the PRA, because executive privilege could apply only to such records.  *See* 44 U.S.C. § 2201(2) (defining "Presidential records").

11

It is not clear that the procedure in Section 2208 of the PRA, which on its face governs a challenge to a decision to make Presidential records "public" over a claim of executive privilege by a former president, applies to this matter.  After all, the seized records are not being provided to the "public" but rather to the Executive Branch, at least in the first instance.  On the other hand, the former President appears to view the disclosures at issue here as akin to disclosures to the public, and there is reason to believe that Congress did not intend to establish a dispute-resolution framework involving a former president that applied only when public disclosure, as opposed to "disclosure" to a subsequent administration, was at issue.[6]  To the extent the procedures in Section 2208 apply to a decision to provide records created in one administration to the Executive Branch of a subsequent administration, it appears that former President Trump has not followed the procedures set forth in Section 2208 of the PRA with respect to the seized materials.[7]

---

[6]  The text of the PRA may not directly address the scenario at issue here—a former president invoking executive privilege to try to prevent disclosure of Presidential records for the internal use of a subsequent Executive Branch—because, as discussed elsewhere in this brief, it is obvious that executive privilege would not apply in such a scenario.

[7]  Former President Trump argues that he has asserted a claim of executive privilege over the documents at issue, but it appears he has not followed the prescribed mechanism for doing so. He simply proclaimed via social media on August 14, 2022, that executive privilege applied to the seized records, despite no indication that he has formally asserted an executive privilege claim over those records.  *See* Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 14, 2022, 8:22 AM), https://truthsocial.com/@realDonaldTrump/posts/108821201066287577.  Even if former President Trump were deemed to have notified the Archivist that he was asserting a claim of executive privilege in April 2022, there is no evidence that he also notified the Committee on Oversight and Government Reform of the House of Representatives, or the Committee on Homeland Security and Governmental Affairs of the Senate as required by statute.  *See* NARA May 10 Letter at 2; 44 U.S.C. § 2208(a)–(b).

Regardless of the extent that Section 2208 applies, however, the former President's motion should be denied based upon Section 2204 of the PRA because this motion has been brought in the wrong court.  As set forth above, the PRA grants jurisdiction for a former president's challenges to a current president's rejection of a claim of executive privilege in the United States District Court for the District of Columbia, not the Southern District of Florida.  *See* 44 U.S.C. § 2204(e).  As a result, former President Trump seeks to circumvent the statutorily prescribed process Congress has laid out for adjudicating his claim of executive privilege against the current Executive Branch.  Congress has expressly decided that such claims should be resolved in the United States District Court for the District of Columbia.

*Amici* respectfully submit that this Court should require compliance with the statutory scheme in the PRA, and should thus deny the instant motion in order to allow the applicable statutory dispute resolution mechanism to operate as Congress expressly intended.  *Cf. Thompson*, 573 F. Supp. 3d at 17 (holding that former President Trump's "assertion of privilege is outweighed by President Biden's decision not to uphold the privilege, and the court will not second guess that decision by undertaking a document-by-document review that would require it to engage in a function reserved squarely for the Executive.").[8]

---

[8]  Additionally, former President Trump argues that the documents at issue belong in his possession because "the PRA accords the President virtually complete control over his records during his term of office."  *Armstrong* v. *Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991).  While the quote from *Armstrong* may be accurate, the former President omits that his term of office is expired, so his basis for claiming control over the seized records no longer exists.  Nor would his "control" of the records serve as a basis for special master review, particularly where the records were seized pursuant to a duly-issued warrant.

## II.   EVEN IF THERE WAS A LEGAL BASIS FOR APPOINTING A SPECIAL MASTER, EXECUTIVE PRIVILEGE CLEARLY DOES NOT APPLY TO THE SEIZED RECORDS.

Even if there was a legal basis for appointing a special master in this case, which there is not, that appointment would be unnecessary because executive privilege will not apply to any of the seized records as against the Executive Branch.  That is because the incumbent President has chosen not to assert a claim of executive privilege over the records, and the records are sought by the Executive Branch for the purpose of carrying out its constitutional functions.

Even assuming that a former president may, in certain circumstances, assert claims of executive privilege against the Executive Branch after leaving office, that claim of privilege cannot survive an objection to the claim by an incumbent president.  As one court, considering another claim of executive privilege raised by former President Trump, recently explained:

> "[T]his is a dispute between a former and incumbent President.  And the Supreme Court has already made clear that in such circumstances, *the incumbent's view is accorded greater weight*.  This principle is grounded in 'the fact that the privilege is seen as inhering in the institution of the Presidency, and not in the President personally.' . . . Only 'the incumbent is charged with performance of the executive duty under the Constitution.' . . . And *it is the incumbent who is 'in the best position to assess the present and future needs of the Executive Branch, and to support invocation of the privilege accordingly.*'"

*Thompson*, 573 F. Supp. 3d at 15–16 (emphasis added).

Indeed, U.S. courts have long recognized the greater weight accorded to the sitting president's view about a claim of executive privilege raised by a former president. *See, e.g.*, *Nixon* v. *Adm' of Gen. Services*, 408 F. Supp. 321, 344–45 (D.D.C. 1976), *aff'd*, 433 U.S. 425 (1977) ("For even assuming *arguendo* that Mr. Nixon may, as a former

14

President, assert executive privilege, such a claim is not as forceful as one raised by an incumbent.  All of the reasons militating against permitting a former President to assert privilege without the support of the incumbent suggest, at the least, that if he is to be allowed to do so, such a claim carries much less weight than a claim asserted by the incumbent himself.").  This is because the incumbent President is "vitally concerned with and in the best position to assess the present and future needs of the Executive Branch, and to support invocation of the privilege accordingly."  *Nixon*, 433 U.S. at 449.  Therefore, where the incumbent has chosen not to assert that a document is "of the kind whose nondisclosure is necessary to the protection of the presidential office and its ongoing operation," the significance of the former President's assertion as to the same document is necessarily "diminished."  *Dellums* v. *Powell*, 561 F.2d 242, 248 (D.C. Cir. 1977) ("The former president's . . . claim has less significance as an assertion of the current needs of the office."); *see also Nixon*, 433 U.S. at 449 ("At the same time, however, the fact that neither President Ford nor President Carter supports appellant's claim detracts from the weight of his contention that the Act impermissibly intrudes into the executive function and the needs of the Executive Branch..").

Notably, even those who argue that a former president could successfully assert executive privilege over the objection of an incumbent president have explicitly stopped short of arguing that the former president's claim would prevail where "the incumbent President believes that the discharge of his constitutional duties (e.g., investigation and prosecution of alleged crimes) demands the disclosure of documents claimed by the former President to be privileged."  Review of Nixon President Materials Access Regulations: Hearing Before the Subcomm. on Gov't Operations of the H. Comm on

Oversight and Gov't Reform, 99th Cong. 288 (1986) (correspondence with, and materials provided by, the National Archives and Records Administration).[9]  In other words, there is no basis for the claim that a former president's assertion of executive privilege should block a current president from pursuing his constitutional duties.

Indeed, to allow a former president to use a claim of executive privilege to undermine the work of a current president would undermine the very purpose of executive privilege: to ensure that the Executive Branch can effectively discharge its constitutional powers.  *U.S.* v. *Nixon*, 418 U.S. 683, 711 (1974) ("[T]o the extent this interest relates to the effective discharge of a President's powers, it is constitutionally based.").

In this case, it is clear that the dispositive view of the sitting President is that the seized materials should be provided to the DOJ and the FBI, regardless of any claim of executive privilege by the former President.  Specifically, in May 2022, President Biden deferred to the determination of the Acting Archivist of the United States regarding the application of executive privilege to the fifteen boxes of records returned to NARA earlier this year.  NARA May 10 Letter at 2.  Those records are not materially different from the seized records at issue here or in June 2022—all of the records were taken from

---

[9]  During congressional testimony on this topic, Assistant Attorney General Charles Cooper elaborated that, "an incumbent President need not respect a former President's claim of privilege if the incumbent feels that it would interfere with his ability to execute his legal and constitutional responsibilities as he, alone, understands and perceives them.'"  Michael Stern, *Assessing Trump's Claim of 'Executive Privilege' on FBI Access to MAL Docs*, JUST SEC. (Aug. 28, 2022), https://www.justsecurity.org/82873/ assessing-trumps-claim-of-executive-privilege-on-fbi-access-to-mal-docs/.

the White House by the former President, and he has asserted the same general claim of executive privilege over all of them.

The Acting Archivist, in consultation with the Assistant Attorney General for the Office of Legal Counsel, has determined that there is no basis for former President Trump's claim of executive privilege in these circumstances, where "such records contain information that is needed for the conduct of current business of the incumbent President's office and that is not otherwise available." *Id.* at 3 (noting that the question presented "is not a close one"). The Acting Archivist's analysis stated that access to the records was not only necessary for purposes of an ongoing criminal investigation, but also to conduct an intelligence community damage assessment. NARA May 10 Letter at 2–3. This analysis concerned the fifteen boxes previously obtained, but the analysis applies equally to the seized records, over which the former President makes identical, preemptive assertions of executive privilege. In other words, there is no reason to doubt—and every reason to believe—that the Acting Archivist would reach exactly the same conclusion with respect to the seized records as with the fifteen boxes previously considered. Because the view of the current administration outweighs the view of the former President, and because the documents are being sought by the Executive Branch in furtherance of a legitimate law-enforcement and intelligence community interest, review by a special master would be needless.

Finally, executive privilege is a qualified form of privilege, and courts have analyzed its application by a balancing of interests. *See Nixon*, 408 F. Supp. at 342 (internal citations omitted) ("The need for protection of such confidentiality, as deriving from the separation of powers, was recognized by the Supreme Court in *United States* v.

*Nixon* . . . in the form of a qualified privilege for certain executive communications. Both the Supreme Court and the court of appeals in this circuit, however, refused to recognize an absolute privilege, . . . instead analyzing with precision in each case how to accommodate the confidentiality protected by a qualified privilege to competing needs of other branches.").

As a result, and even if there were precedent for allowing a former president's assertion of executive privilege to be evaluated by a court notwithstanding the incumbent's objection, former President Trump has failed in his two filings before this Court to establish that any interest protected by executive privilege outweighs the Executive Branch's competing interests in access to these materials. Most notably, the former President has failed to identify a "specific countervailing need for confidentiality tied to the documents at issue, beyond their being presidential communications" and to make "particularized showings in justification of his claims of privilege[.]" *Thompson*, 20 F. 4th at 38 (quoting *Sen. Select Comm. on Pres. Campaign Activities* v. *Nixon*, 498 F.2d 725, 730 (D.C. Cir. 1974)).

By contrast, the Executive Branch's countervailing interest in these materials is compelling. The Executive Branch seeks the seized records to pursue a criminal investigation of the improper treatment of government records, including records containing information classified as "Top Secret," and to conduct a damage assessment and take remedial steps based upon the potential disclosure of those materials.[10] ECF No.

---

[10] The Government represented to the Court on August 29, 2022, that the Office of the Director of National Intelligence ("ODNI") is already conducting its classification review of materials recovered pursuant to the search and leading an intelligence community assessment of the potential risk to national security resulting from disclosure of these records. ECF No. 31 ¶ 5. Given the relatively limited volume of

31 ¶ 4; Search Warrant Affidavit ¶¶ 1–2, 47.  These are essential, constitutional functions that the Executive Branch cannot adequately perform without access to the seized records.  And, in particular, there is great urgency in conducting a thorough damage assessment of any potential mistreatment of classified materials, which militates against the additional delay that would inevitably result from the appointment of a special master in this matter.  To indulge former President Trump's assertions of executive privilege through the appointment of a special master would simply put off the inevitable, and harm significant national interests in the process by delaying a criminal investigation and intelligence community assessment of damage.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully submit that the Court should deny former President Trump's request to appoint a special master in this matter.

---

records at issue, the exigency of the review, and the unique qualifications necessary for a potential special master, it is impracticable and imprudent to interrupt the ODNI's work to appoint a special master.

Dated:  August 30, 2022

*/s/ Jay B. Shapiro*
Jay B. Shapiro
STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
150 West Flagler Street,
Suite 2200
Miami, FL 33130
Tel:  (305) 789-3229
jshapiro@stearnsweaver.com

Norman L. Eisen*
NORMAN EISEN PLLC
2000 Massachusetts Avenue NW
Washington, DC 20036
Tel:  (202) 709-4945
nleisen@normaneisenllc.com

Fred Wertheimer*
DEMOCRACY 21
2000 Massachusetts Avenue NW
Washington, DC 20036
Tel:  (202) 355-9600
fwertheimer@democracy21.org

Respectfully submitted,

*/s/ Brad S. Karp*
Brad S. Karp*
Roberto Finzi*
Harris Fischman*
David K. Kessler*
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
bkarp@paulweiss.com
rfinzi@paulweiss.com
hfischman@paulweiss.com
dkessler@paulweiss.com

*Counsel for Amici Curiae*

*\* Pro hac vice application forthcoming*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2022, a true and correct copy of the

foregoing document was filed with the Clerk of the Court using the CM/ECF system.  I

also certify that copies of the foregoing document are being served on all counsel of

record identified on the attached Service List via transmission of the Notice of Electronic

Filing generated by CM/ECF.

*/s/ Jay B. Shapiro*
Jay B. Shapiro

## SERVICE LIST

| | |
|---|---|
| **James M. Trusty**<br>IFRAH, PLLC<br>1717 Pennsylvania Avenue, NW, Suite 650<br>Washington, DC 20006<br>202-852-5669<br>Email: jtrusty@ifrahlaw.com<br><br>**Lindsey Halligan**<br>511 SE 5th Avenue<br>Suite 1008<br>Fort Lauderdale, FL 33301<br>720-435-2870<br>Email: lindseyhalligan@outlook.com<br><br>**M. Evan Corcoran**<br>Silverman, Thompson, Slutkin, & White, LLC<br>400 East Pratt Street, Suite 900<br>Baltimore, MD 21230<br>410-385-2225<br>Email:<br>ecorcoran@silvermanthompson.com<br><br>*Counsel for Plaintiff Donald J. Trump* | **Juan Antonio Gonzalez , Jr.**<br>United States Attorney's Office - H.I.D.T.A.<br>11200 NW 20th Street<br>Suite 101<br>Miami, FL 33172<br>305-715-7640<br>Fax: 305-715-7639<br>Email: juan.antonio.gonzalez@usdoj.gov<br><br>*Counsel for Defendant United States of America* |

21