Attachment A



Archivist *of the*
United States

February 18, 2022

The Honorable Carolyn B. Maloney
Chairwoman
Committee on Oversight and Reform
U.S. House of Representatives
2157 Rayburn House Office Building
Washington, DC 20514

Dear Madam Chairwoman:

I write in response to your letter of February 9, 2022, in which you asked a number of
questions relating to "the 15 boxes of presidential records that the National Archives
and Records Administration (NARA) recently recovered from former President Trump's
Mar-a-Lago residence."   Please see our responses to each of your questions:

1. Did NARA ask the representatives of former President Trump about missing records
prior to the 15 boxes being identified? If so, what information was provided in
response?

> Answer:  NARA had ongoing communications with the representatives of former
> President Trump throughout 2021, which resulted in the transfer of 15 boxes to
> NARA in January 2022.

2.  Has NARA conducted an inventory of the contents of the boxes recovered from
Mar-a-Lago?

> Answer:  NARA is in the process of inventorying the contents of the boxes.

3.  Please provide a detailed description of the contents of the recovered boxes,
including any inventory prepared by NARA of the contents of the boxes. If an inventory
has not yet been completed, please provide an estimate of when such an inventory will
be completed.

> Answer: NARA staff are in the process of inventorying the contents of the boxes,
> which we expect to complete by February 25.  Because the records in the boxes
> are subject to the Presidential Records Act (PRA), any request for information
> regarding the content of the records will need to be made in accordance with
> section 2205(2)(C) of the PRA.

DAVID S. FERRIERO   ·   T: 202.357.5900   ·   F: 202.357.5901   ·   *david.ferriero@nara.gov*

National Archives *and* Records Administration   ·   700 Pennsylvania Avenue, NW   ·   Washington, DC 20408   ·   *www.archives.gov*

4. Are the contents of the boxes of records recovered by NARA undergoing a review to determine if they contain classified information? If so, who is conducting that review and has any classified information been found?

> Answer:  NARA has identified items marked as classified national security information within the boxes.

5. Is NARA aware of any additional presidential records from the Trump Administration that may be missing or not yet in NARA's possession?

> Answer: NARA has identified certain social media records that were not captured and preserved by the Trump Administration. NARA has also learned that some White House staff conducted official business using non-official electronic messaging accounts that were not copied or forwarded into their official electronic messaging accounts, as required by section 2209 of the PRA.  NARA has already obtained or is in the process of obtaining some of those records.

6. What efforts has NARA taken, and is NARA taking, to ensure that any additional records that have not been turned over to NARA are not lost or destroyed?

> Answer:  NARA has asked the representatives of former President Trump to continue to search for any additional Presidential records that have not been transferred to NARA, as required by the Presidential Records Act.

7. Has the Archivist notified the Attorney General that former President Trump removed presidential records from the White House? If not, why not?

> Answer:  Because NARA identified classified information in the boxes, NARA staff has been in communication with the Department of Justice.

8. Is NARA aware of presidential records that President Trump destroyed or attempted to destroy without the approval of NARA? If so, please provide a detailed description of such records, the actions taken by President Trump to destroy or attempt to destroy them, and any actions NARA has taken to recover or preserve these documents.

> Answer:  In June 2018, NARA learned from a press report in Politico that textual Presidential records were being torn up by former President Trump and that White House staff were attempting to tape them back together.  NARA sent a letter to the Deputy Counsel to the President asking for information about the extent of the problem and how it is being addressed. The White House Counsel's Office indicated that they would address the matter.  After the end of the Trump Administration, NARA learned that additional paper records that had been torn up by former President Trump were included in the records transferred to us. Although White House staff during the Trump Administration recovered and

taped together some of the torn-up records, a number of other torn-up records that were transferred had not been reconstructed by the White House.

Sincerely,

DAVID S. FERRIERO
Archivist of the United States

cc:  The Honorable James Comer, Ranking Member

Attachment B



Archivist *of the*
United States

May 10, 2022

Evan Corcoran
Silverman Thompson
400 East Pratt Street
Suite 900
Baltimore, MD 21202
*By Email*

Dear Mr. Corcoran:

I write in response to your letters of April 29, 2022, and May 1, 2022, requesting that the
National Archives and Records Administration (NARA) further delay the disclosure to the
Federal Bureau of Investigation (FBI) of the records that were the subject of our April 12, 2022
notification to an authorized representative of former President Trump.

As you are no doubt aware, NARA had ongoing communications with the former President's
representatives throughout 2021 about what appeared to be missing Presidential records, which
resulted in the transfer of 15 boxes of records to NARA in January 2022. In its initial review of
materials within those boxes, NARA identified items marked as classified national security
information, up to the level of Top Secret and including Sensitive Compartmented Information
and Special Access Program materials. NARA informed the Department of Justice about that
discovery, which prompted the Department to ask the President to request that NARA provide
the FBI with access to the boxes at issue so that the FBI and others in the Intelligence
Community could examine them. On April 11, 2022, the White House Counsel's
Office—affirming a request from the Department of Justice supported by an FBI letterhead
memorandum—formally transmitted a request that NARA provide the FBI access to the 15
boxes for its review within seven days, with the possibility that the FBI might request copies of
specific documents following its review of the boxes.

Although the Presidential Records Act (PRA) generally restricts access to Presidential records in
NARA's custody for several years after the conclusion of a President's tenure in office, the
statute further provides that, "subject to any rights, defenses, or privileges which the United
States or any agency or person may invoke," such records "shall be made available . . . to an
incumbent President if such records contain information that is needed for the conduct of current
business of the incumbent President's office and that is not otherwise available." 44 U.S.C. §

2205(2)(B). Those conditions are satisfied here. As the Department of Justice's National Security Division explained to you on April 29, 2022:

> There are important national security interests in the FBI and others in the Intelligence Community getting access to these materials. According to NARA, among the materials in the boxes are over 100 documents with classification markings, comprising more than 700 pages. Some include the highest levels of classification, including Special Access Program (SAP) materials. Access to the materials is not only necessary for purposes of our ongoing criminal investigation, but the Executive Branch must also conduct an assessment of the potential damage resulting from the apparent manner in which these materials were stored and transported and take any necessary remedial steps. Accordingly, we are seeking immediate access to these materials so as to facilitate the necessary assessments that need to be conducted within the Executive Branch.

We advised you in writing on April 12 that, "in light of the urgency of this request," we planned to "provid[e] access to the FBI next week," i.e., the week of April 18. *See* Exec. Order No. 13,489, § 2(b), 74 Fed. Reg. 4,669 (Jan. 21, 2009) (providing a 30-day default before disclosure but authorizing the Archivist to specify "a shorter period of time" if "required under the circumstances"); *accord* 36 C.F.R. § 1270.44(g) ("The Archivist may adjust any time period or deadline under this subpart, as appropriate, to accommodate records requested under this section."). In response to a request from another representative of the former President, the White House Counsel's Office acquiesced in an extension of the production date to April 29, and so advised NARA. In accord with that agreement, we had not yet provided the FBI with access to the records when we received your letter on April 29, and we have continued to refrain from providing such access to date.

It has now been four weeks since we first informed you of our intent to provide the FBI access to the boxes so that it and others in the Intelligence Community can conduct their reviews. Notwithstanding the urgency conveyed by the Department of Justice and the reasonable extension afforded to the former President, your April 29 letter asks for additional time for you to review the materials in the boxes "in order to ascertain whether any specific document is subject to privilege," and then to consult with the former President "so that he may personally make any decision to assert a claim of constitutionally based privilege." Your April 29 letter further states that in the event we do not afford you further time to review the records before NARA discloses them in response to the request, we should consider your letter to be "a protective assertion of executive privilege made by counsel for the former President."

The Counsel to the President has informed me that, in light of the particular circumstances presented here, President Biden defers to my determination, in consultation with the Assistant Attorney General for the Office of Legal Counsel, regarding whether or not I should uphold the former President's purported "protective assertion of executive privilege." *See* 36 C.F.R. § 1270.44(f)(3). Accordingly, I have consulted with the Assistant Attorney General for the Office of Legal Counsel to inform my "determination as to whether to honor the former President's claim of privilege or instead to disclose the Presidential records notwithstanding the claim of privilege." Exec. Order No. 13,489, § 4(a).

The Assistant Attorney General has advised me that there is no precedent for an assertion of executive privilege by a former President *against an incumbent President* to prevent the latter from obtaining from NARA Presidential records belonging to the Federal Government where "such records contain information that is needed for the conduct of current business of the incumbent President's office and that is not otherwise available." 44 U.S.C. § 2205(2)(B).

To the contrary, the Supreme Court's decision in *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977), strongly suggests that a former President may not successfully assert executive privilege "against the very Executive Branch in whose name the privilege is invoked." *Id.* at 447-48. In *Nixon v. GSA*, the Court rejected former President Nixon's argument that a statute requiring that Presidential records from his term in office be maintained in the custody of, and screened by, NARA's predecessor agency—a "very limited intrusion by personnel in the Executive Branch sensitive to executive concerns"—would "impermissibly interfere with candid communication of views by Presidential advisers." *Id.* at 451; *see also id.* at 455 (rejecting the claim). The Court specifically noted that an "incumbent President should not be dependent on happenstance or the whim of a prior President when he seeks access to records of past decisions that define or channel current governmental obligations." *Id.* at 452; *see also id.* at 441-46 (emphasizing, in the course of rejecting a separation-of-powers challenge to a provision of a federal statute governing the disposition of former President Nixon's tape recordings, papers, and other historical materials "within the Executive Branch," where the "employees of that branch [would] have access to the materials only 'for lawful Government use,'" that "[t]he Executive Branch remains in full control of the Presidential materials, and the Act facially is designed to ensure that the materials can be released only when release is not barred by some applicable privilege inherent in that branch"; and concluding that "nothing contained in the Act renders it unduly disruptive of the Executive Branch").

It is not necessary that I decide whether there might be *any* circumstances in which a former President could successfully assert a claim of executive privilege to prevent an Executive Branch agency from having access to Presidential records for the performance of valid executive functions. The question in this case is not a close one. The Executive Branch here is seeking access to records belonging to, and in the custody of, the Federal Government itself, not only in order to investigate whether those records were handled in an unlawful manner but also, as the National Security Division explained, to "conduct an assessment of the potential damage resulting from the apparent manner in which these materials were stored and transported and take any necessary remedial steps." These reviews will be conducted by current government personnel who, like the archival officials in *Nixon v. GSA*, are "sensitive to executive concerns." *Id.* at 451. And on the other side of the balance, there is no reason to believe such reviews could "adversely affect the ability of future Presidents to obtain the candid advice necessary for effective decisionmaking." *Id.* at 450. To the contrary: Ensuring that classified information is appropriately protected, and taking any necessary remedial action if it was not, are steps essential to preserving the ability of future Presidents to "receive the full and frank submissions of facts and opinions upon which effective discharge of [their] duties depends." *Id.* at 449.

Because an assertion of executive privilege against the incumbent President under these circumstances would not be viable, it follows that there is no basis for the former President to make a "protective assertion of executive privilege," which the Assistant Attorney General

informs me has never been made outside the context of a congressional demand for information from the Executive Branch. Even assuming for the sake of argument that a former President may under some circumstances make such a "protective assertion of executive privilege" to preclude the Archivist from complying with a disclosure otherwise prescribed by 44 U.S.C. § 2205(2), there is no predicate for such a "protective" assertion here, where there is no realistic basis that the requested delay would result in a viable assertion of executive privilege against the incumbent President that would prevent disclosure of records for the purposes of the reviews described above. Accordingly, the only end that would be served by upholding the "protective" assertion here would be to delay those very important reviews.

I have therefore decided not to honor the former President's "protective" claim of privilege. *See* Exec. Order No. 13,489, § 4(a); *see also* 36 C.F.R. 1270.44(f)(3) (providing that unless the incumbent President "uphold[s]" the claim asserted by the former President, "the Archivist discloses the Presidential record"). For the same reasons, I have concluded that there is no reason to grant your request for a further delay before the FBI and others in the Intelligence Community begin their reviews. Accordingly, NARA will provide the FBI access to the records in question, as requested by the incumbent President, beginning as early as Thursday, May 12, 2022.

Please note that, in accordance with the PRA, 44 U.S.C. § 2205(3), the former President's designated representatives can review the records, subject to obtaining the appropriate level of security clearance. Please contact my General Counsel, Gary M. Stern, if you would like to discuss the details of such a review, such as you proposed in your letter of May 5, 2022, particularly with respect to any unclassified materials.

Sincerely,

DEBRA STEIDEL WALL
Acting Archivist of the United States

Attachment C

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
for the

### District of Columbia

#### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:    Custodian of Records
       The Office of Donald J. Trump
       1100 South Ocean Blvd.
       Palm Beach, FL 33480

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA<br>U.S. Courthouse, 3rd Floor       Grand Jury #21-09<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Date and Time:<br>May 24, 2022<br>9:00 a.m. |
|---|---|

You must also bring with you the following documents, electronically stored information, or objects:

Any and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump bearing classification markings, including but not limited to the following: Top Secret, Secret, Confidential, Top Secret/SI-G/NOFORN/ORCON, Top Secret/SI-G/NOFORN, Top Secret/HCS-O/NOFORN/ORCON, Top Secret/HCS-O/NOFORN, Top Secret/HCS-P/NOFORN/ORCON, Top Secret/HCS-P/NOFORN, Top Secret/TK/NOFORN/ORCON, Top Secret/TK/NOFORN, Secret/NOFORN, Confidential/NOFORN, TS, TS/SAP, TS/SI-G/NF/OC, TS/SI-G/NF, TS/HCS-O/NF/OC, TS/HCS-O/NF, TS/HCS-P/NF/OC, TS/HCS-P/NF, TS/HCS-P/SI-G, TS/HCS-P/SI/TK, TS/TK/NF/OC, TS/TK/NF, S/NF, S/FRD, S/NATO, S/SI, C, and C/NF.

Date: May 11, 2022

The name, address, telephone number and email of the prosecutor who requests this subpoena are:

Jay I. Bratt
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
jay.bratt2@usdoj.gov

Subpoena #GJ2022042790054

CO 293 (Rev. 8/91) Subpoena to Testify Before Grand Jury

| RETURN OF SERVICE (1) | | | |
|---|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE | |
| **SERVED** | DATE | PLACE | |

| SERVED ON (PRINT NAME) | | |
|---|---|---|
| | | |

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|
| | | |

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| | | |

### DECLARATION OF SERVER (2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
                              Date

_____
Signature of Server

_____
Address of Server

ADDITIONAL INFORMATION

(1)As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2)"Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of

certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

**Subpoena #GJ2022042790054**

Attachment D



**U.S. Department of Justice**

National Security Division

_Counterintelligence and Export Control Section_                    _Washington, D.C.  20530_

May 11, 2022

M. Evan Corcoran, Esq.
Silverman Thompson
400 East Pratt Street – Suite 900
Baltimore, Maryland 21202

   Re: Grand Jury Subpoena

Dear Mr. Corcoran:

   Thank you for agreeing to accept service of the grand jury subpoena on behalf of the custodian of records for the Office of Donald J. Trump.

   As we discussed, in lieu of personally appearing on May 24, the custodian may comply with the subpoena by providing any responsive documents to the FBI at the place of their location.  The FBI will ensure that the agents retrieving the documents have the proper clearances and will handle the materials in the appropriate manner.  The custodian would also provide a sworn certification that the documents represent all responsive records.  If there are no responsive documents, the custodian would provide a sworn certification to that effect.

   Thank you again for your cooperation.

         Very truly yours,

         Jay I. Bratt
         Chief
         Counterintelligence and Export Control Section

         jay.bratt2@usdoj.gov

Attachment E

## CERTIFICATION

I hereby certify as follows:

1. I have been designated to serve as Custodian of Records for The Office of Donald J. Trump, for purposes of the testimony and documents subject to subpoena #GJ20222042790054.

2. I understand that this certification is made to comply with the subpoena, in lieu of a personal appearance and testimony.

3. Based upon the information that has been provided to me, I am authorized to certify, on behalf of the Office of Donald J. Trump, the following:

    a. A diligent search was conducted of the boxes that were moved from the White House to Florida;

    b. This search was conducted after receipt of the subpoena, in order to locate any and all documents that are responsive to the subpoena;

    c. Any and all responsive documents accompany this certification; and

    d. No copy, written notation, or reproduction of any kind was retained as to any responsive document.

I swear or affirm that the above statements are true and correct to the best of my knowledge.

Dated: June 3, 2022



Attachment F

