UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-81294-CIV-CANNON

**DONALD J. TRUMP,**

    Plaintiff**,**

v.

**UNITED STATES OF AMERICA,**

    Defendant.

_____/

**THE NEWS MEDIA'S JOINT MOTION TO INTERVENE FOR THE
LIMITED PURPOSE OF OBTAINING ACCESS TO COURT RECORDS AND
TO UNSEAL SAME, WITH SUPPORTING MEMORANDUM OF LAW**

American Broadcasting Companies, Inc.; the Associated Press; Bloomberg LP; Cable News Network, Inc. ("CNN"); CBS Broadcasting Inc.; Dow Jones & Company, Inc., publisher of *The Wall Street Journal*; the E.W. Scripps Company; *The Palm Beach Post*, a newspaper owned and operated by Gannett Co., Inc.; Gray Media Group, Inc., d/b/a WCJB-TV, WJHG-TV, and WWSB-TV; NBCUniversal Media, LLC; The New York Times Company; Times Publishing Company, publisher of the *Tampa Bay Times;* and WP Company LLC d/b/a *The Washington Post* (collectively, the "News Media"), hereby move to intervene in this matter for the limited purpose of seeking to unseal and obtain access to all judicial documents filed under seal with this Court pursuant to its August 27, 2022, Preliminary Order on Motion for Judicial Oversight and Additional Relief (ECF No. 29).[1]

---

[1] The News Media also seek intervention for the purpose of opposing any future sealings in this matter.

As a result of the search warrant executed on Monday, August 8, 2022, at the Mar-a-Lago club and residence in Palm Beach, Florida, former President Donald J. Trump has asked this Court to: (1) appoint a "special master" to oversee review of the items seized at Mar-a-Lago on August 8, 2022; (2) enjoin the Government from conducting any further review of those same materials; (3) order the Government to provide a "more detailed account of the materials seized" on August 8, 2022; and (4) return any seized property that lies beyond the scope of the executed search warrant. *See* ECF No. 28, Movant's Supplemental Filing in Support of Motion for Judicial Oversight and Additional Relief, Aug. 26, 2022, at p. 4. In ordering preliminary relief, this Court has directed the Government to, in conjunction with filing a public response to former President Trump's Motion (ECF No. 1), file certain documents under seal. *See* ECF No. 29, Preliminary Order on Motion for Judicial Oversight and Additional Relief, Aug. 27, 2022, at ¶ 3(b). Specifically, this Court has ordered the Government to file under seal:

1) "A more detailed Receipt for Property specifying all property seized pursuant to the search warrant executed on August 8, 2022"; and

2) "A particularized notice including the status of Defendant's review of the seized property, including any filter review conducted by the privilege review team and any dissemination of materials beyond the privilege review team."

*Id.*

On August 30, 2022, the Government appears to have filed such records under seal. *See* ECF Nos. 39, 40. As to the "more detailed Receipt for Property," the Government has informed the Court that document should be unsealed. The Government's August 30, 2022, Response To Motion For Judicial Oversight And Additional Relief states that it "is prepared, given the extraordinary circumstances, to unseal the more detailed receipt and provide it immediately to

Plaintiff." *See* ECF No. 48, at p. 2 n.1. The Court therefore should unseal that document right away. As to the notice of the Government's "review of the seized property," the Government's Response also reports that its privilege review team has "completed its work" and otherwise detailed the status of that review. *See id.* at p. 14. Thus, any continued seal over records related to that process is also unnecessary and they should also be unsealed now. Finally, the Government's response also argues that should this Court appoint a special master "any documents that reflect the special master's rulings, including orders, privilege logs, or other records, should be preserved and filed under seal with the Court but made available to both parties." *See id.* at p. 34. Any such sealing of those judicial records would also have to comport with the public access legal standards discussed in this memorandum.

The judicial records identified herein are central to the public's further understanding of what occurred at Mar-a-Lago on August 8, 2022, and this unusual civil proceeding, and will also shine greater light on actions of government in executing the search. The Court should only maintain the seal as to any portion of the judicial records that the Government establishes, through record evidence, would harm a compelling Government interest if revealed. The Court should unseal any portions for which the Government has not met its burden.

Thus, for the specific reasons set forth in the below memorandum of law, the proposed News Media intervenors request that this Court enter an Order: granting them leave to intervene; requiring the Government to file a public, redacted version of these documents; and requiring the Government to file a sealed version that only conceals from the public those portions for which the Government has met its burden.

3

**MEMORANDUM OF LAW**

I.   **Relevant Background.**

As has been widely reported worldwide, on Monday, August 8, 2022, Federal Bureau of Investigation agents, acting pursuant to a search warrant issued and approved by United States Magistrate Judge Bruce E. Reinhart, searched former President Trump's Mar-a-Lago property, seizing numerous boxes of records. The search and its aftermath have been the subject of intense public interest and ongoing news media coverage. The News Media have reported and continue to report on the matter.

In the immediate wake of the search, news media organizations intervened in the underlying search warrant matter, seeking access to all sealed records related to the search warrant including the warrant itself, the application, any motions/orders regarding sealing search warrant records, the inventory/property returns and any supporting affidavits. *See* ECF Nos. 8, 20, 22, 23, 31-33, 49, *In Re Sealed Search Warrant*, No. 22-mj-8332-BER (S.D. Fla.). Within two days of the motion to intervene, Magistrate Judge Reinhart ordered the unsealing of the search warrant itself and a redacted version of the property inventory of seized items.[2] *See id.* at ECF No. 41. Days later, the motion to seal the search warrant, along with the Court's order granting the seal, were also made public. *See id.* at ECF Nos. 2, 3, 57.

As to the affidavit in support of the search warrant, the Government resisted any disclosure, even in redacted form. *See id.* at ECF No. 59. The Court, recognizing the legal principles requiring

---

[2] Recognizing the "public's clear and powerful interest in understanding what occurred" at Mar-a-Lago "weigh[ed] heavily in favor of unsealing," the Government itself moved to unseal them in lightly redacted form. *See* ECF No. 18, at p. 4, United States' Motion To Unseal Limited Warrant Materials, *In Re Sealed Search Warrant*, No. 22-mj-8332-BER. A copy of the unsealed inventory of seized items, the "Receipt for Property," is attached to former President Trump's Motion in this matter. *See* ECF No. 1, at Exhibit 1.

transparency for judicial records, ultimately rejected the Government's position that wholesale withholding was proper and ordered a redacted version of the affidavit (which included proposed Government redactions) be made public. *See id.* at ECF No. 94. The redacted affidavit was made public on August 26, 2022.

As the Court in the underlying search warrant matter noted, the "unprecedented" Mar-a-Lago search is of "intense public and historical interest." *Id.* at ECF No. 94, p. 13. This matter was filed as a civil action on August 22, 2022. Also recognizing the need for public disclosure, this Court ordered the Government to file its response publicly. *See* ECF No. 29, at ¶ 3(a). But the Court preliminarily ordered that certain Government documents be filed completely under seal. The public interest in the instant case—where the legal issues related to the search will now continue—is no less compelling than in the warrant matter itself. Maximum transparency is again critical to public understanding of events of extraordinary significance.

## II. The News Media Have Standing to Intervene.

The Eleventh Circuit has recognized the news media's right to intervene in matters to challenge the denial of access to court records. *See, e.g.*, *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019); *United States v. Ellis*, 90 F.3d 447, 449 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983); *see also Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) ("the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'" (citation omitted)). Only through intervention can the public's right to open courts and records be vindicated. *See Newman*, 696 F.2d at 800.

There is no question that the proposed News Media intervenors have standing to intervene. They have reported and continue to report on these matters, including the instant matter.³ Just as

---

³ *See, e.g.*, Jill Colvin & Nomaan Merchant, *Takeaways from the Unsealed Mar-a-Lago Search Affidavit*, Assoc. Press, Aug. 27, 2022, https://apnews.com/article/donald-trump-mar-a-lago-classified-information-government-and-politics-e3556fa781c30ba2fbaf4bb082e2385c; Eric Tucker, *US: Review of Possibly Privileged Trump Papers Already Over*, Assoc. Press, Aug. 29, 2022, https://apnews.com/article/florida-donald-trump-mar-a-lago-government-and-politics-92eadcf7c102d1f64b8603caa816e796; Erik Larson, *Trump Search Affidavit Details Timeline of FBI Records Probe*, Aug. 27, 2022, https://www.bloomberg.com/news/articles/2022-08-27/trump-search-affidavit-details-timeline-of-fbi-s-records-probe; *Unsealed affidavit sheds light on why FBI searched Mar-A-Lago*, CBS News, Aug. 26, 2022, https://www.cbsnews.com/newyork/video/unsealed-affidavit-sheds-light-on-why-fbi-searched-mar-a-lago; Emily Mae Czachor, *Former acting CIA director Morell says affidavit indicates "sloppiness" in the way classified documents were handled at Trump White House*, CBS News (Aug. 28, 2022), https://www.cbsnews.com/news/michael-morell-donald-trump-affidavit-mar-a-lago-sloppiness-classified-documents; Tierney Sneed & Marshall Cohen, *Takeaways from the Mar-a-Lago Search Warrant Affidavit*, CNN, Aug. 26, 2022, https://www.cnn.com/2022/08/26/politics/takeaways-fbi-affidavit/index.html; Katelyn Polantz et al., *Trump's Legal Team Asks for 'Special Master' to Go Through Mar-a-Lago Evidence and Determine if Some Should be Returned*, CNN, Aug. 22, 2022, https://www.cnn.com/2022/08/22/politics/donald-trump-special-master-request/index.html; Rebecca Shabad et al., *FBI Found 184 Classified Documents in Boxes Returned by Trump, Redacted Affidavit Says, Prompting Search*, NBC News, Aug. 26, 2022, https://www.nbcnews.com/politics/donald-trump/redacted-fbi-affidavit-used-justify-search-mar-lago-released-rcna44959; Mark Caputo, *Judge Signals Support for Special Master to Review Some Trump Records FBI Seized*, NBC News, Aug. 27, 2022, https://www.nbcnews.com/politics/donald-trump/judge-signals-support-special-master-review-trump-records-fbi-seized-rcna45131; Charlie Savage, *The Affidavit for the Search of Trump's Home, Annotated*, N.Y. Times, Aug. 26, 2022, https://www.nytimes.com/interactive/2022/08/26/us/trump-search-affidavit-release.html; Alan Feuer & Maggie Haberman, *Judge Signals Intent to Appoint Special Master in Mar-a-Lago Search*, N.Y. Times, Aug. 27, 2022, https://www.nytimes.com/2022/08/27/us/politics/trump-special-master-judge-cannon.html; Amber Phillips, *Takeaways from the Redacted Affidavit Used for the Mar-a-Lago Search*, Wash. Post, Aug. 26, 2022, https://www.washingtonpost.com/politics/2022/08/26/takeaways-redacted-affidavit-trump-search/; David Nakamura & Amy B. Wang, *Naming of Special Master Could Complicate Mar-a-Lago Documents Case*, Wash. Post, Aug. 28, 2022, https://www.washingtonpost.com/politics/2022/08/28/trump-special-master-fbi/; Aruna Viswanatha, *Mar-a-Lago Search Turned Up Potentially Privileged Documents, DOJ Says*, Wall

intervention was permitted in the underlying search warrant matter, intervention is proper here too. *See also* ECF No. 78, *In Re Sealed Search Warrant*, No. 22-mj-8332-BER (S.D. Fla.) (Rosenberg, J.) ("the parties who have been permitted intervention in this matter—various outlets of the national news media—have thoughtfully and professionally litigated their position").

**III.　This Court Should Unseal All Sealed Records In This Matter.**

**A. A Presumptive Right Of Access Attaches To Court Records, Including Records Regarding Search Warrants.**

The public's and the news media's long-established First Amendment and common law rights to attend criminal trials, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, 580 (1980), have been extended both to criminal trial proceedings and court records. *See, e.g.*, *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 10, 13 (1986) ("*Press-Enterprise II*") (right of access to preliminary hearings); *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) (right of access to voir dire); *Associated Press v. United States District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (right of access to court records and transcripts).

In civil actions as well,[4] the Eleventh Circuit applies the heightened "compelling governmental interest" standard to request to seal judicial records. *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1569 (11th Cir. 1985) (sealing of court records in a civil action must be "necessitated by a compelling governmental interest" and "narrowly tailored to that interest."); *Advantage Eng'g*, 960 F.2d at 1016 (same). Under the heightened standard, as applied by district

---

Street Journal, Aug. 29, 2022, https://www.wsj.com/articles/some-attorney-client-protected-documents-found-in-mar-a-lago-search-justice-department-says-11661788066.

[4] The underlying proceeding regarding the Mar-a-Lago warrant are, of course, governed by the Federal Criminal Rules. The Court in this action has invoked the Federal Civil Rules. *See* ECF No. 29, at ¶ 1] (relying on "Rule 53(b)(1) of the Federal Rules of Civil Procedure and the Court's inherent authority").

courts in the Eleventh Circuit, the Court may "disregard the presumption of openness" to a "judicial record" only when "there is a compelling governmental interest, and may only do so in a manner that is narrowly tailored to protect that interest." *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 U.S. Dist. LEXIS 33929, at *11-12 (M.D. Fla. Mar. 14, 2012).

The constitutional right attaches to records that have been historically available to the public and whose disclosure advances the functioning of the judicial system. *Press-Enterprise II*, 487 U.S. at 8-9. Under that analysis, the First Amendment right has been found to attach to search warrant materials. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) (finding a First Amendment right of access applies to search warrant records); *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991) (same). The First Amendment-based access right has also been found to apply in the civil setting, attaching to both proceedings and records. *See, e.g.*, *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253-54 (4th Cir. 1988); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984); *In the Matter of Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983).

A common law right to access judicial records has also been recognized by the Supreme Court. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978).[5] That right has also been recognized as applying to search warrant materials. *See In re Search of Office Suites for World*

---

[5] As the Court in the underlying search warrant matter recognized, as a "practical matter" whether one proceeds under the First Amendment right or the common law right, the analysis is "materially the same." *See* ECF No. 80, at 5, Order On Motions To Unseal, *In Re Sealed Search Warrant*, No. 22-mj-8332-BER (S.D. Fla.). Under either approach: (1) the party seeking to uphold sealing must articulate an interest in secrecy that outweighs the public's interest in access; and (2) and no less restrictive alternatives to sealing are available. *See id.*

8

*and Islam Studies Enter.*, 925 F. Supp. 738, 742 (M.D. Fla. 1996) (finding common law right of access applies to search warrant records); *see also United States v. Peterson*, 627 F. Supp. 2d 1359, 1374 (M.D. Ga. 2008); *United States v. Vives*, 2006 U.S. Dist. LEXIS 92973, at *2-3 (S.D. Fla. Dec. 21, 2006); *In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996). The presumptive right can be overcome only if the government demonstrates an overriding interest to justify sealing and such sealing is no more restrictive than required to protect that interest. *See id.* More broadly, the Eleventh Circuit recognizes common law access rights apply to judicial records—like here—that are filed in civil proceedings. *See Newman*, 696 F.2d at 803; *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992). *Brown* reiterated its adherence to a tradition of open records: "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Id.* at 1016.

Indeed, in considering if and how to unseal the Mar-a-Lago search warrant records already made public, the Court recognized the rights of access under both the First Amendment and the common law, noting that "[i]t is a foundational principle American law that judicial proceedings should be open to the public." *See* ECF No. 80, at p. 4, Order On Motions To Unseal, No. 22-mj-8332-BER.

Both the First Amendment and the common law rights of access are grounded in the value afforded to public monitoring of judicial proceedings and in the right of the public to know what its government is up to. *See, e.g.*, *Globe Newspaper Co.*, 457 U.S. at 604 (recognizing that underlying the right of access "is the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs'" (citation omitted). "[The] right to inspect and copy judicial records…like the right to attend judicial proceedings, is important if the public is to appreciate fully the often significant events at issue in public litigation and the

9

workings of the legal system." *Newman*, 696 F.2d at 803. Just as with open court proceedings, broad public access to filed court records helps ensure "that the proceedings [are being] conducted fairly," while discouraging "perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers*, 448 U.S. at 569; *see also Associated Press*, 705 F.2d at 1145 ("there is no reason to distinguish between pretrial proceedings and the documents filed in regard to them"). Public access further promotes the "public acceptance of both the [judicial] process and its results," an "awareness that society's responses to criminal conduct are underway," and the "prophylactic aspects of . . . community catharsis." *Richmond Newspapers*, 448 U.S. at 571; *Press-Enterprise*, 478 U.S. at 9. For these reasons, "[a] presumption of access must be indulged to the fullest extent not incompatible with the reasons for closure." *Newman*, 696 F.2d at 802. *See also United States v. Rosenthal*, 763 F.2d 1291, 1293 (11th Cir. 2007) (recognizing "presumptive common law right to inspect and copy judicial records.")

Those policy considerations certainly apply to the judicial records presently under seal. The Rules require the judicial officer to deliver warrants and "all other related papers" to the Clerk of the Court. Fed. R. Crim. P. 41(i). Courts recognize that judicial records relating to search warrants are of inherent public interest. "[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial and judicial misconduct." *In re Search Warrant for Secretarial Area*, 855 F.2d at 573. That same rationale applies here, where issues related to the Mar-a-Lago search warrant have also become a civil concern.

> Moreover, even though a search warrant is not part of the criminal trial itself, like voir dire, a search warrant is certainly an integral part of a criminal prosecution. Search warrants are at the center of pre-trial suppression hearings, and suppression issues often determine the outcome of criminal prosecutions.

*Id.*

## B. The Government Bears The Burden Of Overcoming Public Access Rights.

It is the Government's burden to overcome the presumption of access to these judicial records. For warrant records to remain under seal a court must determine, in clearly articulated findings, that the Government established a specific, compelling interest justifying an ongoing seal that is no broader than necessary to serve that interest. *See In re Search of Office Suites*, 925 F. Supp. at 742; *Brown*, 960 F.2d at 1015-16; *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985). Naked assertions of some interest justifying secrecy, devoid of particulars, will not justify closure. Rather, for each record the Government claims sealing remains necessary, it must "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved." *In re Search Warrant for Secretarial Area*, 855 F.2d at 574; *United States v. Peterson*, 627 F. Supp. 2d 1359, 1373-74 (M.D. Ga. 2008) (applying common law access right to find that government failed to meet its burden to show disclosure of search warrant records would cause harm and recognizing value of news media interest in informing public of "historically significant" events). At bottom, "conclusory assertions are insufficient to allow review; specificity is required." *In re The Baltimore Sun Co.*, 886 F.2d 60, 66 (4th Cir. 1989).

The Court conducts this analysis on a record-by-record basis, considering whether the disclosure of each individual record would compromise the government's asserted interest. *See, e.g.*, *Wellcare Health Plans, Inc.*, No. 8:07-MJ-1466-TGW, 2007 WL 4240740, at *1 (M.D. Fla. Nov. 28, 2007) (assessing each warrant-related document individually and finding warrant, exhibits, return, motion to seal and sealing order all public). Just like the *Wellcare* court determined, the presumption of access is particularly difficult to overcome for records like the

11

warrant itself, any motion to seal, and any resulting sealing order. Additionally, records whose contents have already been acknowledged—such as in this case where the Property Search is already public—can no longer present a disclosure risk. *See Peterson*, 627 F.2d at 1373. (recognizing that "whether the press has already been permitted substantial access to the contents of the records" must be considered in determining whether to allow access to judicial records).

Even if the government were to establish a compelling reason to justify a continued seal, the Court considers the proper scope of that seal and whether alternatives to total closure exist. *See In re Search of Office Suites*, 925 F. Supp. at 429. For example, this Court should consider whether the redaction of limited information would serve to protect any established compelling interest. *See, e.g.*, *Shenberg*, 791 F. Supp. at 294 (requiring redaction of certain sensitive information contained within search warrant affidavit before making it public).

Access to search warrant materials has typically occurred at the conclusion of an investigation or proceeding. *See, e.g.*, *In re Four Search Warrants*, 945 F. Supp. 1563, 1568 (N.D. Ga. 1996) (recognizing that investigation into Olympic bombing suspect had concluded as significant factor in common law access balance regarding access to search warrant records). But this not the typical case, and the course of proceedings thus far establish that the typical sealing processes that Court's apply to search warrant materials do not apply.

Former President Trump himself has called for greater transparency. *See, e.g.*, ECF No. 1, at pp. 2-3 (noting personal desire for more openness). The Government has stated likewise. *See, e.g.*, ECF No. 1, at pp. 9-10 (detailing Attorney General Merrick Garland's statements on why the Government sought to unseal certain search warrant records); *see also* ECF No. 48, at p. 2 n.1

(noting that the Government is "prepared . . . to unseal the more detailed receipt").[6] For all these reasons, the right of access clearly applies to the civil records in this case.

### C. The Public Interest In Current And Former Government Officials' Actions Is Particularly High And Favors Access.

Investigations regarding the conduct of public officials are of the utmost public interest. Naturally, courts have recognized that interest while assessing public access rights, and that consideration weighs heavily in any balance between competing access rights and secrecy concerns. *See, e.g.*, *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("[i]n balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider…whether the information concerns public officials or public concerns…."); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) ("[W]hen the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records."); *United States v. Edwards*, 672 F.2d 1289, 1294 n.11 (7th Cir. 1982) ("there is a strong presumption in support of the common law right to inspect and copy judicial records," particularly where "the trial bore upon the conduct of a public official").

There can be no doubt that an assertion that a former President may have mishandled government records that were classified, top-secret, or otherwise sensitive, that U.S. Department of Justice officials decided the information they gathered constituted probable cause for a search, and that a Magistrate Judge agreed and signed the warrant, is of core public concern. Of equal importance is how the Court now addresses arguments from the subject of the search warrant, the

---

[6] Citing U.S. Department of Justice press release, "Attorney General Merrick Garland Delivers Remarks, Aug. 11, 2022), *available at*: https://www.justice.gov/opa/speech/attorney-general-merrick-garland-delivers-remarks.

13

former President Trump, about the appropriateness of the continued processing of those records and what, if any, order this Court makes addressing those arguments.

## IV. Conclusion.

For the foregoing reasons, the proposed News Media intervenors respectfully request this Court to enter an Order granting them leave to intervene; requiring the Government to file a public, redacted version of these documents; and requiring the Government to file a sealed version that only conceals from the public those portions for which the Government has met its burden.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the proposed News Media Intervenors request a hearing be set on this motion, and in particular request to be heard in conjunction with the hearing presently set in the matter on September 1, 2022, at 1:00 p.m. Oral argument will aid this Court in assessing any further basis to continue to keep these extremely newsworthy records secret and allow this Court to directly inquire into any government justification for doing so. The News Media estimate the time required for argument to be sixty (60) minutes.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD-FAITH CONFERENCE

Undersigned counsel certifies that on August 30, 2022, a good-faith conference was had between Juan Antonio Gonzalez and Mark Caramanica (counsel for The New York Times Company, CBS Broadcasting Inc., and Times Publishing Company). Mr. Gonzalez stated that the United States does not oppose the News Media's intervention in this matter and that it intends to follow the procedures set forth in this Court's August 27, 2022, Order (ECF No. 29) as to the filing of any documents addressed therein.

On August 30, 2022, Dana McElroy (counsel for The New York Times Company, CBS Broadcasting Inc., and Times Publishing Company) conferred by telephone with counsel for

former President Trump, James Trusty, about the relief sought in this motion. Mr. Trusty later advised by email that former President Trump takes no position on the motion.

Dated: August 31, 2022                              Respectfully submitted,

| THOMAS AND LOCICERO PL | BALLARD SPAHR LLP |
|---|---|
| By: */s/ Carol Jean LoCicero* <br> Carol Jean LoCicero (FBN 603030) <br> Mark R. Caramanica (FBN 110581) <br> 601 South Boulevard <br> Tampa, FL 33606 <br> Telephone: 813.984.3060 <br> clocicero@tlolawfirm.com <br> mcaramanica@tlolawfirm.com <br><br> Dana J. McElroy (FBN 845906) <br> 915 Middle River Drive, Suite 309 <br> Fort Lauderdale, FL 33304 <br> Telephone: 954.703.3418 <br> dmcelroy@tlolawfirm.com <br><br> *Attorneys for Proposed Intervenors CBS Broadcasting Inc., The New York Times Company, and Times Publishing Company* | By: */s/ Charles D. Tobin* <br> Charles D. Tobin (FBN 816345) <br> 1909 K Street NW, 12th Floor <br> Washington, DC 20006 <br> Telephone: 202.661.2218 <br> tobinc@ballardspahr.com <br><br> Elizabeth Seidlin-Bernstein (*pro hac vice forthcoming*) <br> 1735 Market Street, 51st Floor <br> Philadelphia, PA 19103-7599 <br> Telephone: 215.665.8500 <br> seidline@ballardspahr.com <br><br> *Attorneys for Proposed Intervenors the Associated Press, Bloomberg LP, Cable News Network, Inc., the E.W. Scripps Company, Gray Media Group, Inc., NBCUniversal Media, LLC, and WP Company LLC* |
| SHULLMAN FUGATE PLLC | ATHERTON GALARDI MULLEN & REEDER PLLC |
| By: */s/ Rachel E. Fugate* <br> Rachel E. Fugate (FBN 144029) <br> Deanna K. Shullman (FBN 514462) <br> Minch Minchin (FBN 1015950) <br> 2101 Vista Parkway, Suite 4006 <br> West Palm Beach, FL 33411 <br> Telephone: 813.935.5098 <br> rfugate@shullmanfugate.com <br> dshullman@shullmanfugate.com <br> mminchin@shulmanfugate.com <br><br> *Attorneys for Proposed Intervenors Dow Jones & Company, Inc. and American Broadcasting Companies, Inc.* | By: */s/ Martin Reeder.* <br> L. Martin Reeder, Jr. (FBN 308684) <br> 1641 Worthington Road, Suite 33409 <br> West Palm Beach, FL 33458 <br> Telephone: 561.293.2530 ext. 1007 <br> martin@athertonlg.com <br> tracey@athertonlg.com <br> e-service@athertonlg.com <br><br> *Attorneys for Proposed Intervenor The Palm Beach Post* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31st, 2022, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF to the following:

Juan Antonio Gonzalez
U.S. Attorney's Office
Southern District of Florida
99 NE 4th Street, Floor 8
Miami, FL 33132
juan.antonio.gonzalez@usdoj.gov

Jay I. Bratt
Chief, Counterintelligence and Export Control Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
jay.bratt2@usdoj.gov

Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
lindseyhalligan@outlook.com

James M. Trusty
Ifrah Law PLLC
1717 Pennsylvania Avenue, NW Suite 650
Washington, DC 20006
jtrusty@ifrahlaw.com

M. Evan Corcoran
Silverman Thompson Slutkin White, LLC
400 East Pratt Street, Suite 900
Baltimore, MD 21202
ecorcoran@silvermanthompson.com

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero