UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-81294-AMC

DONALD J. TRUMP,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant

_____/

**MOVANT'S REPLY TO UNITED STATES' RESPONSE TO
MOTION FOR JUDICIAL OVERSIGHT AND ADDITIONAL RELIEF**

    President Donald J. Trump ("President Trump" or "Movant"), through his undersigned counsel, respectfully files this reply to the Government's filing (Dkt. 48) providing this Court with its Response to the Movant's Motion for Judicial Oversight and Additional Relief.

    Three weeks after an unprecedented, unnecessary, and legally unsupported raid on the home of a President—and possibly a candidate against the current chief executive in 2024—the Government, represented by the Department of Justice ("DOJ") and the United States Attorney's Office, has filed an extraordinary document with this Court, suggesting that the DOJ, and the DOJ alone, should be entrusted with the responsibility of evaluating its unjustified pursuit of criminalizing a former President's possession of personal and Presidential records in a secure setting.

    Now, the Government twists the framework of responding to a motion for a Special Master into an all-encompassing challenge to any judicial consideration, presently or in the future, of any

aspect of its unprecedented behavior in this investigation.[1] Its argument against oversight begins with a contention that somehow the Movant lacks standing to object to a search of his home. The convoluted theory, which appears to be that the Biden administration will not allow President Trump to assert executive privilege and consequently he has "no right" to possess Presidential documents, and that, therefore, he has no standing to object to their seizure, is contrary to the well-established doctrine of standing. It is the reasonable expectation of privacy in one's home that triggers the obvious standing of the homeowner to contest a search on those premises. To suggest that the seizure of allegedly "illegally possessed" items negates standing literally distorts the entire concept of the *Wong Sun* "fruit of the poisonous tree" doctrine into the bizarre notion that, if the recovered property is potentially illegal to possess, then the homeowner can never challenge the basis of the intrusion. This argument by the Government is premature and deeply flawed, as more described in more detail below.

The Government similarly uses the opportunity to respond to a limited inquiry to inject its inconsistent position on the applicability and impact of the Presidential Records Act ("PRA") on the Government's ability to lawfully use a criminal search warrant to rummage through Mar-a-Lago. In its Summary of Argument, the Government acknowledges the applicability of the Presidential Records Act. *See* Dkt. 48 at 2. Thus, there is no question and, indeed there is broad agreement, that the matters before this Court center around the possession, by a President, of his own Presidential records. Even so, the DOJ then pivots, dropping a footnote nine pages later that

---

1. Movant does not at this time address every misleading or incomplete statement of purported "fact" made by the Government in its Response at pages 3 to 14. However, Movant will simply highlight that one specific event – the June 3, 2022, meeting – has been significantly mischaracterized in the Government's Response. If the Government provided the same untrue account in the affidavit in support of the search warrant, then they misled the Magistrate Judge.

claims the statutes cited in the search warrant (18 U.S.C. §§ 793, 2071, and 1519) reflect the fact that "this investigation is not simply about efforts to recover improperly retained Presidential records." *Id.* at 11 n.5. Indeed, the warrant intentionally blurs important distinctions in referring to the ability of FBI agents to seize "Presidential Records" (the PRA never concerns itself with traditional classification labels) while wrongfully suggesting the applicability of the Espionage Act and referring to expectations of recovering classified or highly classified documents. For the moment, counsel for Movant can only speculate on how the affidavit in support of the search warrant characterized the Government's intended escape from the PRA paradigm. What is also noteworthy here is that, as admitted in the Response, just weeks after President Trump voluntarily complied with a National Archives and Records Administration ("NARA") request for Presidential records and turned over 15 boxes, NARA simply ignored the PRA and initiated a criminal investigation. The purported justification for the initiation of this criminal probe was the alleged discovery of sensitive information contained within the 15 boxes of Presidential records. But this "discovery" was to be fully anticipated given the very nature of Presidential records. Simply put, the notion that Presidential records would contain sensitive information should have never been cause for alarm. Rather, as contemplated under the PRA, NARA should have simply followed up with Movant in a good faith effort to secure the recovery of the Presidential records.

Despite the clear desperation of the Government in avoiding the broad parameters of the PRA in allowing President Trump to possess documents, Movant declines the invitation to take on all potential future litigation in the narrow context of the Court's ordered response regarding the appointment of a Special Master.

## I. Movant Has Standing To Seek The Appointment Of A Special Master.

The question of standing is a threshold matter, asking "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). While Movant will address the merits of the request for a Special Master below, the Government's standing argument challenges Movant's underlying right to seek a Special Master in the first place. But the law substantially supports Movant's entitlement to seek judicial review of the motion presently pending before the Court.

At the outset, the Government does not cite any precedent for its assertion that Movant lacks standing to request the appointment of a Special Master. Courts assessing past requests for the appointment of a Special Master have seemed to assume—rightly—that the target of a search and seizure has standing to seek neutral review of seized materials. For example, in the recent case of *In the Matter of Search Warrants Executed on April 9, 2018*, No. 1:18-mj-03161 (S.D.N.Y. Apr. 26, 2018), the subject of a search warrant requested the appointment of a Special Master in light of potential privilege concerns, and the U.S. District Court for the Southern District of New York granted the request. Similarly, in *United States v. Abell*, 914 F. Supp. 519 (S.D. Fla. 1995), this Court granted the request from a warrant subject to appoint a Special Master. *See also United States v. Gallego*, No. 4:18-cr-01537 (D. Ariz. Aug. 10, 2018), Dkt. 36 (taking "under advisement" a warrant subject's request for appointment of a Special Master). The Government did not raise standing questions in any of those cases, because the subject of a search warrant *always* has the ability to seek neutral review of seized materials.

Here, the Government grounds its standing argument in matters related to the potential return of seized property. Quoting *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005), the Government argues that "[i]n order for an owner of property to invoke Rule 41(g), he must

4

show that he had a possessory interest in the property seized by the government." Dkt. 48 at 14. But that argument is not relevant to Movant's standing to seek the appointment of a special master for the neutral review of seized material. Indeed, the *Howell* decision implies the opposite of the Government's present argument: even when the subject of a search warrant lacks the right to the return of property under Rule 41(g), that individual is entitled to have the court decide the merits of the motion.

To the extent possessory interests factor into the Court's standing analysis at all, they are relevant not to Movant's right to seek a Special Master—as to which, again, the Government cites no applicable precedent—but rather to Movant's right to challenge the underlying search and seizure. Considering that matter would be premature, as Movant has not yet sought to challenge the warrant or ensuing search. But even reaching that issue, established precedent contradicts the Government's position, as a litigant need not show a possessory interest in seized material in order to object to a search and seizure as unreasonable under the Fourth Amendment. On the issue of *standing*, an individual objecting to a seizure as unreasonable generally must "claim either to have owned or possessed the seized property *or* to have had a substantial possessory interest in the premises searched." *Jones v. United States*, 362 U.S. 257, 261 (1960) (emphasis added); *see also Brown v. United States*, 411 U.S. 223, 229 (1973) (noting the relevance of a "proprietary or possessory interest in the premises" as relevant to standing analysis); *United States v. Rackley*, 742 F.2d 1266, 1270 (11th Cir. 1984) ("A person challenging the constitutionality of a search must show that he possesses a legitimate expectation of privacy in the premises searched or the items seized."). In contradiction of this precedent, the Government's view of standing significantly undermines the effect of the Fourth Amendment: any discovery of illicit materials would

retroactively justify improper searches to such an extent that search subjects would not even be entitled to judicial review, much less relief.

In general, the Government's argument is premature. Movant has not yet filed a Rule 41(g) motion, and the standard for relief under that rule is not relevant to the issue of whether the Court should appoint a Special Master. At this stage, Movant has standing to seek the appointment of a Special Master, and in due time will establish standing to contest the unconstitutional search.

## II. The Court Should Exercise Its Equitable Jurisdiction By Appointing A Special Master.

The Government contends that the appointment of a Special Master would be "inconsistent with principles of equity" and "fundamentally inequitable." Dkt. 48 at 29. In this respect, the Government's position assumes a conclusion of these proceedings and its investigation—that Movant will be found that have improperly withheld materials in violation of the law. But the Government reads into the Presidential Records Act an enforcement provision that does not exist; the law exhorts a former President to interface with the Archivist to ensure the preservation of Presidential records, but it does not oblige the former President to take any particular steps with respect to those records. Even accepting as true the Government's account of its discussions with Movant and Movant's representatives, the trajectory of this case does not demonstrate "inequitable conduct" on the part of Movant—and certainly not to such an extent that the Court need decline to exercise its equitable jurisdiction here.

Next, the Government asserts that the Court should not exercise its equitable jurisdiction because of the Government's "urgent interest in continuing its review" of the materials it seized from Movant. *Id.* at 29–30. Elsewhere, however, the Government states that the filter team "has already completed its work of segregating any seized materials . . . and the government's investigative team has already reviewed all of the remaining materials." *Id.* at 3; *see also id.* at 30

6

("In any event, . . . the investigative team has already reviewed all of the seized materials that were not segregated by the filter team."). The Government appears to argue simultaneously that a Special Master is unnecessary because the review is complete and that a Special Master is inappropriate because such an appointment would interfere with the review process. Given that the Government has completed its review, the "urgent interest" it asserts here should not preclude the Court from exercising its equitable jurisdiction.

Finally, the Government argues that the Court should not exercise its equitable jurisdiction to appoint a Special Master because a Special Master is "not necessary to protect any personal rights belonging to the former President." *Id.* at 30. As an initial matter, the Government has indicated that it seized privileged and potentially privileged material. *Id.* at 14. In light of such a disclosure, it would seem reasonable for the Court to follow the same procedure that has occurred in numerous prior cases involving the seizure of privileged material—particularly in a matter attracting as much attention and with as much significance as the present matter. Furthermore, acknowledging that executive privilege primarily benefits the United States, Movant continues to have rights related to the assertion of executive privilege. The Archivist's course of action in relation to the present matter reflects this dynamic: Executive Order 13489 explicitly provides for assertions of executive privilege by a former President, and it requires the Archivist to solicit such assertions from the former President prior to releasing potentially privileged materials. *See also* 44 U.S.C. § 2206(3) (acknowledging former Presidents' "rights and privileges" with respect to Presidential records); *id.* § 2208(b)(1) (authorizing a former President to assert executive privilege). In light of administrative provisions plainly permitting a former President to weigh in on, and benefit from, assertions of privilege, the fact that it is the Republic that ultimately benefits

from the scheme of executive privilege should not undermine the Court's equitable jurisdiction in this case.

**III.    The Court Should Appoint A Special Master.**

As to the actual issue currently at hand, the appointment and responsibilities of a Special Master, the Government effectively demands that the Court stand down from even considering this modest step. First, the Government has publicly announced through its Response (Dkt. 48) and recent "Notice" (Dkt. 31) that, in a moment of astonishing efficiency, it has completed the filter team review and shared what the filter team deemed "non-privileged" with the investigative team, and that it was "currently facilitating" a classification review of the materials seized during the search. In other words, even after this Court issued its Preliminary Order providing notice of the Court's preliminary intent to appoint a special master in this matter, the Government has expeditiously "facilitated"[2] an Office of the Director of National Intelligence ("ODNI") review of documents that Movant intends to challenge as seized in violation of the Fourth Amendment and the Presidential Records Act and thus subject to return (to the Movant or to his designee) under Federal Rule of Criminal Procedure 41(g). Second, the Government now has the temerity to argue that any involvement by a Special Master will "interfere" with the now ongoing Intelligence Community review of the materials. Never has an argument against "interference" better underscored the need for judicial involvement. All of this in the context of a unilateral filter team operation that to-date **has never made any contact with counsel for the Movant**, another historic first for DOJ. Left unchecked, the DOJ will impugn, leak, and publicize selective aspects of their

---

[2] Movant reserves the right to contest the ODNI review and to seek discovery as to exactly how and why the facilitation took place.

investigation with no recourse for Movant but to somehow trust the self-restraint of currently unchecked investigators.

While DOJ may have succeeded in taking a partial filter to their rummaged proceeds, the need for a Special Master remains in place. Assuring access by Movant's counsel to the seized materials, sharing an actual (detailed) inventory, making independent attorney-client privilege assessments, and making executive privilege determinations are all responsibilities that are best served by appointment of a Special Master.

### A. Deficiencies Of The Privilege Review Team.

Contemporaneously with the issuance of the Search Warrant, Magistrate Judge Reinhart authorized a Privilege Review Team and related procedures for handling potential attorney-client privileged material that the Government proposed *ex parte* in connection with the application for the Search Warrant. *See United States v. Sealed Search Warrant*, No. 9:22-mj-08332 (S.D. Fla.) ("*In re Sealed Search Warrant*"), Dkt. 102-1 at ¶¶ 81–84. As set forth in the Affidavit, the Privilege Review Team, composed of law enforcement personnel not participating in the investigation of the matter, was to review only materials seized from the "45 Office" for potentially privileged information. *Id.*, Dkt. 102-1 at ¶¶ 81–82. The Case Team, made up of the law enforcement personal conducting the investigation, was to search the rest of the Premises, without conducting any privilege review. *Id.* No effort was made by the Magistrate Judge or the Government to communicate with the Movant, after execution of the Search Warrant, on his position on the adequacy of the Privilege Review Team's composition and procedure. For this reason and others identified below, the Privilege Review Team and procedures for potential privilege issues were wholly deficient.

As evidenced by the Receipt for Property, the Teams seized documents, boxes, and other materials in executing the Search Warrant (the "Seized Materials"). *See id.*, Dkt. 17 at 5–7. The Government's Response describes the Seized Materials as follows:

> . . . [T]he government seized thirty-three items of evidence, mostly boxes (hereinafter the "Seized Evidence"), falling within the scope of Attachment B to the search warrant because they contained documents with classification markings or what otherwise appeared to be government records. Three classified documents that were not located in boxes, but rather were located in the desks in the "45 Office," were also seized. Per the search warrant protocols discussed above, the seized documents included documents that were collectively stored or found together with documents with classification markings.
>
> . . . Of the Seized Evidence, thirteen boxes or containers contained documents with classification markings, and in all, over one hundred unique documents with classification markings . . . were seized. Certain of the documents had colored cover sheets indicating their classification status. *See, e.g.*, Attachment F (redacted FBI photograph of certain documents and classified cover sheets recovered from a container in the "45 office"). The classification levels ranged from CONFIDENTIAL to TOP SECRET information, and certain documents included additional sensitive compartments that signify very limited distribution.

Dkt. 48 at 12–13 (footnote omitted). With regard to the seizure of Movant's passports, the Government explained that it "seized the contents of a desk drawer that contained classified documents and governmental records commingled with other documents. The other documents included two official passports, one of which was expired, and one personal passport, which was expired." *Id.* at 12 n.6.

In its haste to avoid judicial oversight, the Government has not only completed the filter team review and classification of attorney-client privileged materials, but the investigative team has accepted those delineations and fully reviewed the remaining documents. *See* Dkt. 48 at 3 ("[T]he government's filter team has already completed its work of segregating any seized materials that are potentially subject to attorney-client privilege, and the government's investigative team has already reviewed all of the remaining materials, including any that are

10

potentially subject to claims of executive privilege."). Then, on the eve of a hearing regarding judicial oversight, the Government blithely announces that it is "facilitating" an "Intelligence Community" review of the same documents. *See* Dkt. 31 at 2; Dkt. 48 at 19–20. The Government even suggests that the appointment of a Special Master would "interfere" with its accelerated attempt to criminalize the lawful possession of presidential documents. *See* Dkt. 48 at 22.

Pursuant to the protocol authorized in connection with the issuance of the Search Warrant, however, the Privilege Review Team searched *only* the "45 Office," and reviewed *only* the "seized materials from the '45 Office' to identify and segregate" potentially privileged documents.[3] *See In re Sealed Search Warrant*, Dkt. 102-1 at ¶ 82. The Affidavit does not include any assertion or articulation that potentially privileged information would be confined to the "45 Office," rather than distributed throughout the Premises. Accordingly, there was no justification for limiting the Privilege Review Team's search to the "45 Office." In the absence of any such articulation, the Privilege Review Team should have reviewed all of the Seized Materials, from the entire Premises, and segregated out potentially privileged documents *before* the Case Team reviewed any of the Seized Materials.

Further invalidating the Privilege Review Team's procedures, the Government has provided very little information in regard to *where* in Movant's residence the Seized Materials originated, making it unclear how many of the Seized Materials the Privilege Review Team actually reviewed. As set forth above, the Government indicated that there were "[t]hree classified documents . . . located in the desks in the '45 Office.'" Dkt. 48 at 12. The Government also noted

---

[3] The procedures are also deficient because they address only potential attorney-client privileged material. As set forth in the Motion, the Seized Materials include materials that are subject to a presumption of executive privilege, so a review for only attorney-client privileged materials was insufficient.

11

that Movant's passports were seized along with the contents of a desk drawer, without stating where the desk was located. *See id.* at 12 n.6. The only other indication the Government offers as to where the Seized Materials came from is the statement that, "[i]n the storage room alone, FBI agents found 76 documents bearing classification markings." *Id.* at 13. Accordingly, there is no guarantee that the "limited set" of potentially privileged materials identified by the Privilege Review Team constitutes all privileged materials among the Seized Materials.

The Government has also represented that the Privilege Review Team is "in the process of following the procedures set forth in paragraph 84 of the search warrant affidavit to address potential privilege disputes, if any." Dkt. 31 at 2. Paragraph 84 provides the Privilege Review Team with virtually unchecked discretion in addressing potential privilege disputes:

> If the Privilege Review Team determines that documents are potentially attorney-client privileged or merit further consideration in that regard, ***a Privilege Review Team attorney may do any of the following***: (a) apply *ex parte* to the court for a determination whether or not the documents contain attorney-client privileged material; (b) defer seeking court intervention and continue to keep the documents inaccessible to law-enforcement personnel assigned to the investigation; or (c) disclose the documents to the potential privilege holder, request the privilege holder to state whether the potential privilege holder asserts attorney-client privilege as to any documents, including requesting a particularized privilege log, and seek a ruling from the court regarding any attorney-client privilege claims as to which the Privilege Review Team and the privilege-holder cannot reach agreement.

*In re Sealed Search Warrant*, Dkt. 102-1 at ¶ 84 (emphasis added). While the Government now suggests in its Response that the Privilege Review Team will seek "direction from the Court," Dkt. 48 at 14, Paragraph 84 provides no such requirement. Instead, a Privilege Review Team attorney can elect to apply *ex parte* to the court for a determination of privilege, to simply keep the documents "inaccessible" to the investigative team, or to seek input from the privilege holder. And, Paragraph 84 does not contain any criteria or conditions to guide the attorney's election, simply granting a *carte blanche* to "do any of the following[.]" In any event, none of the options

12

are sufficient to protect Movant's significant interests, and not surprisingly, as of this filing the Privilege Review Team has made no effort to contact Movant's counsel regarding its decision-making or the results of the privilege review.

In light of these clear deficiencies in respecting the Movant's rights, Movant respectfully submits that the appointment of a special master is appropriate and warranted in this matter.

### B. Proposal For Duties And Responsibilities Of Prospective Special Master.

In the Preliminary Order on Motion for Judicial Oversight and Additional Relief, this Court advised the parties, in accordance with Federal Rule of Civil Procedure 53, "to include in their filings their respective and particularized positions on the duties and responsibilities of a prospective special master, along with any other considerations pertinent to the appointment of a special master in this case." Dkt. 29 at ¶ 3(d).

Rule 53(c) establishes that, "[u]nless the appointing order directs otherwise, a master may: (A) regulate all proceedings; (B) take all appropriate measures to perform the assigned duties fairly and efficiently; and (C) if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence." Fed. R. Civ. P. 53(c)(1). Rule 53(b)(2) sets forth the requirements for the contents of a court order appointing a master:

> (2) *Contents*. The appointing order must direct the master to proceed with all reasonable diligence and must state:
>
> (A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);
>
> (B) the circumstances, if any, in which the master may communicate ex parte with the court or a party;
>
> (C) the nature of the materials to be preserved and filed as the record of the master's activities;

> (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and
>
> (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

Fed. R. Civ. P. 53(b)(2).

As an initial matter, Movant is amenable to certain conditions proposed by the Government. *See* Dkt. 48 at 33. Movant agrees that "the Court should direct the parties to confer and submit a joint list of proposed candidates by September 7, 2022" and that "the special master should be required to submit an affidavit concerning any potential bases for disqualification before this Court issues an appointment order," in accordance with Rule 53(b)(3)(A). *See id.* Movant also agrees that it would be appropriate for the special master to possess a Top Secret/SCI security clearance. *See id.*

Further, Movant generally agrees that it would be appropriate to set deadlines for the special master's review and shorten the time to appeal the special master's decisions, and for the special master's rulings, orders, and other records to be "preserved and filed under seal with the Court but made available to both parties." *See id.* at 34. Finally, Movant concurs in the Government's suggestion that the special master "be allowed to communicate *ex parte* with the Court or either party to facilitate the review, although all final decisions must be provided to both parties to allow for either party to seek the Court's review." *See id.* at 33.

Several of the Government's remaining proposed conditions, however, do not adequately protect Movant's rights. Accordingly, Movant respectfully submits the following proposal regarding the duties and responsibilities of a prospective special master in this matter.

**1. The Special Master's Duties.**

In general, the Court should task the special master with conducting a review of all of the Seized Materials, not only those seized from the "45 Office" and identified by the Privilege Review Team as potentially privileged, to identify documents subject to the PRA and attorney-client and/or executive privileges. Thereafter, the special master should have the duty of adjudicating any privilege or categorization disputes that arise between the parties.

More specifically, the Special Master should designate batches of documents from the Seized Materials for review. For each batch, counsel for Movant will conduct a review and submit designations to the special master *ex parte*. The designations should identify all Presidential records, and all potentially privileged documents, for which counsel for Movant shall set forth the basis for assertion of the attorney-client and/or executive privileges; and documents containing highly personal information, such as diaries, journals, and medical records.[4] Any documents not designated as privileged will be re-released to the Government. For documents designated as

---

[4] Movant submits that any records containing highly personal information should be segregated from the Seized Materials and returned. Movant's personal records are not Presidential records within the meaning of the Presidential Records Act ("PRA"). *See* 44 U.S.C. § 2201(2)(B)(ii) ("The term 'Presidential records' . . . does not include . . . personal records[.]"); *id.* § 2201(3) (defining "personal records" as "all documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President," including "(A) diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal which are not prepared or utilized for, or circulated or communicated in the course of, transacting Government business; (B) materials relating to private political associations, and having no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President; and (C) materials relating exclusively to the President's own election to the office of the Presidency; and materials directly relating to the election of a particular individual or individuals to Federal, State, or local office, which have no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President").

privileged, the Special Master will consider the designations, make a determination on privilege, and submit a report to the Court.

The Government should provide to the special master and to Movant a copy of the Seized Materials, a copy of the Search Warrant, and an unredacted copy of the underlying application materials. In light of the deficiency of the initial property inventory (inventory) unsealed by the Government, the Movant respectfully asks for access, even if under seal, to the recent submission by the Government that purports to better particularize the seized items and the location of their seizure. The special master should also have access to any other relevant materials, information, or individuals that are necessary to perform the assigned duties.

The special master should have the full authority set forth in Federal Rule of Civil Procedure 53(c) and any additional powers necessary to carry out these duties, including the authority to establish a scheduling plan and timeline for the review.

**2. Special Master Communications.**

As noted above, Movant concurs in the Government's suggestion that the special master "be allowed to communicate *ex parte* with the Court or either party to facilitate the review, although all final decisions must be provided to both parties to allow for either party to seek the Court's review." *See* Dkt. 48 at 33.

In particular, Movant proposes that the special master receive privilege designations from Movant's counsel *ex parte*. Additional conferences regarding the designation submissions should also be *ex parte*. The special master may also confer with and receive submissions from the Government on an *ex parte* basis if additional facts or information are necessary for a privilege determination. As appropriate, the special master may make *ex parte* reports to the Court regarding the progress in reviewing the Seized Materials and resolving privilege disputes.

### 3. Other Procedures.

As noted above, Movant agrees with the Government's proposal that "[a]ny documents that reflect the special master's rulings, including orders, privilege logs, or other records, [] be preserved and filed under seal with the Court but made available to both parties." *See* Dkt. 48 at 34. Movant further proposes that the special master should preserve any and all documents or materials received from the parties during the pendency of the matter.

Movant joins in the Government's suggestion that the court alter the typical 21-day review period to afford the parties 10 days after receiving notice of a final order or decision to seek Court review. *See id.*

## IV.   Conclusion

Yesterday, the Attorney General found an unrelated opportunity to announce that "we [the DOJ] hold ourselves to the highest ethical standards to avoid even the appearance of political influence as we carry out the Department's mission." The basic factual components of the issue before this Court implicate that notion head-on. A search warrant has been executed at the home of a President. It was conducted in the midst of the standard give-and-take between former Presidents and NARA regarding Presidential library contents, and with the Movant literally allowing DOJ lawyers and FBI investigators to come to his home and provide security advice. Soon after, and for the first time in history, an Attorney General took to the podium to announce a willingness to unseal a warrant and property receipt, while eventually, and reluctantly, turning over a heavily redacted document that is more black than white. Even yesterday, the Government's Response gratuitously included a photograph of allegedly classified materials, pulled from a container and spread across the floor for dramatic effect. The Government pretends these are not historically important moments, telling this Court that not only does it object to a Special Master,

but that the Movant should have no opportunity to challenge any aspect of this behavior and decision-making. Rule 41 exists for a reason, and the Movant respectfully asks that this Court ensure enough fairness and transparency, even if accompanied by sealing orders, to allow Movant to legitimately and fulsomely investigate and pursue relief under that Rule. A fair-minded DOJ that truly embraced the highest ethical standards would, and should, agree.

Dated: August 31, 2022                           Respectfully submitted,

  /s/ Lindsey Halligan
Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
Email: lindseyhalligan0@gmail.com

  /s/ James M. Trusty
James M. Trusty
Ifrah Law PLLC
1717 Pennsylvania Ave. N.W. Suite 650
Washington, DC  20006
Telephone: (202)524-4176
Email: jtrusty@ifrahlaw.com
(*pro hac vice*)

  /s/ M. Evan Corcoran
M. Evan Corcoran
SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Email: ecorcoran@silvermanthompson.com
(*pro hac vice*)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of August 2022, a copy of the foregoing Reply to United States' Response to Motion for Judicial Oversight and Additional Relief was served via electronic filing on all counsel of record.

                                              /s/ Lindsey Halligan
                                              Lindsey Halligan