**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 22-CV-81294-CANNON**

**DONALD J. TRUMP**,

      Plaintiff,

v.

**UNITED STATES OF AMERICA**,

      Defendant.

_____/

## THE UNITED STATES' MOTION FOR A PARTIAL STAY PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 8(a)(1), the United States respectfully moves for a partial stay pending appeal of the Court's September 5, 2022 Order, Docket Entry ("D.E.") 64. Specifically, the government seeks a stay to the extent the Order (1) enjoins the further review and use for criminal investigative purposes of records bearing classification markings that were recovered pursuant to a court-authorized search warrant and (2) requires the government to disclose those classified records to a special master for review. The government respectfully requests that the Court rule on this motion promptly. If the Court does not grant a stay by Thursday, September 15, the government intends to seek relief from the Eleventh Circuit.

Although the government respectfully disagrees with the Court's injunction as to a much broader set of seized materials already in the possession of the investigative team, it is not at this time seeking a stay as to the vast majority of those materials. Instead, this motion

is limited to the Order's directives with respect to the seized classified records[1] because those aspects of the Order will cause the most immediate and serious harms to the government and the public. The classified records—a discrete set of just over 100 documents—have already been segregated from the other seized records and are being maintained separately. *See* D.E. 64 at 4 n.4; D.E. 48 at 13. A stay as to that limited set of records is warranted for three reasons.

First, the government is likely to succeed in its appeal of the Order as it applies to classified records. Indeed, the government is likely to succeed even under the Court's own reasoning, which focused principally on Plaintiff's "personal documents." D.E. 64 at 9; *see id.* at 12-13, 14-16, 20-21. Plaintiff does not and could not assert that he owns or has any possessory interest in classified records; that he has any right to have those government records returned to him; or that he can advance any plausible claims of attorney-client privilege as to such records that would bar the government from reviewing or using them. And although this Court suggested that Plaintiff might be able to assert executive privilege as to some of the seized records, Supreme Court precedent makes clear that any possible assertion of privilege that Plaintiff might attempt to make over the *classified* records would be overcome by the government's "demonstrated, specific need" for that evidence. *United States v. Nixon*, 418 U.S. 683, 713 (1974) ("*United States v. Nixon*"). Among other things, the classified records are the very subject of the government's ongoing investigation.

Second, the government and the public would suffer irreparable harm absent a stay.

---

[1] As discussed herein, a classification review of these materials was in progress at the time of the Court's order but has not been completed. For ease of reference and because materials marked as classified (and papers physically attached to them) must be treated as classified until determined otherwise, this motion refers to records bearing classification markings as "classified records."

This Court correctly recognized the government's vital interest in conducting a national security risk assessment of the possible unauthorized disclosure of the classified records and any harm that may have resulted. The Court thus stated that its Order was not intended to "impede the classification review and/or intelligence assessment by the Office of the Director of National Intelligence ('ODNI')." D.E. 64 at 1-2. But the review and assessment on their own are not sufficient to address and fully mitigate any national security risks presented. The Intelligence Community's review and assessment cannot be readily segregated from the Department of Justice's ("DOJ") and Federal Bureau of Investigation's ("FBI") activities in connection with the ongoing criminal investigation, and uncertainty regarding the bounds of the Court's order and its implications for the activities of the FBI has caused the Intelligence Community, in consultation with DOJ, to pause temporarily this critically important work. Moreover, the government and the public are irreparably injured when a criminal investigation of matters involving risks to national security is enjoined.

Third, the partial stay sought here would impose no cognizable harm on Plaintiff. It would not disturb the special master's review of any other records, including any personal materials or records potentially subject to attorney-client privilege. The government has already reviewed the classified records, and the Court's order contemplates that it may continue to do so for certain national security purposes. A stay would simply allow the government to continue to review and use the same records—which, again, indisputably belong to the government, not Plaintiff—in its ongoing criminal investigation as well.

## PROCEDURAL BACKGROUND

The government has described in detail the factual background related to its ongoing

investigation. D.E. 48 at 3-14. On August 8, 2022, the government executed a search warrant at the premises of Plaintiff former President Donald J. Trump based on a judicial finding of probable cause that the search would uncover evidence of violations of 18 U.S.C. §§ 793 (willful retention of national defense information), 2071 (concealment or removal of government records), and 1519 (obstruction of a federal investigation). D.E. 48 at 5. During the search, the government seized thirty-three boxes, containers, or other items of evidence, which contained roughly one hundred classified records, including records marked TOP SECRET and records containing additional sensitive compartment information. *Id.* at 12-13.

Two weeks later, Plaintiff initiated proceedings in this Court seeking an order appointing a special master to review all seized materials and manage potential claims of attorney-client and executive privilege, as well as an injunction barring the government's review and use of the seized materials. D.E. 1. On September 5, 2022, following further briefing by the parties and a hearing, the Court issued an Order authorizing the appointment of a special master "to review the seized property, manage assertions of privilege and make recommendations thereon, and evaluate claims for return of property," and "enjoin[ing]" the government "from further review and use of any of the materials . . . for criminal investigative purposes pending resolution of the special master's review process as determined by this Court." D.E. 64 at 23-24.

The Court also ordered the parties to submit a list of special master candidates and proposals on the procedures for the special master's review, including "the special master's duties." D.E. 64 at 24. The government will provide its views on those issues by Friday,

September 9, as ordered. Among other things, the government's upcoming filing will confirm that it plans to make available to Plaintiff copies of all unclassified documents recovered during the search—both personal records and government records—and that the government will return Plaintiff's personal items that were not commingled with classified records and thus are of likely diminished evidentiary value.

## DISCUSSION

A stay pending appeal is appropriate when the moving party shows that (1) it is likely to succeed on the merits; (2) it will suffer irreparable harm without a stay; (3) a stay will not substantially injure other interested parties; and (4) the public interest supports the stay. *Nken v. Holder*, 556 U.S. 418, 425-26 (2009). All of those requirements are amply satisfied here.

### I.      The Government Is Likely to Succeed on the Merits

#### a.  The Court Erred by Exercising Its Equitable Jurisdiction to Enjoin the Government's Use of the Classified Records

As an initial matter, Plaintiff has not shown that he had standing to seek relief, or that this Court properly exercised its equitable jurisdiction, with regard to the classified records. The classified records are government property over which the Executive Branch has control and in which Plaintiff has no cognizable property interest. *See* Exec. Order 13526, § 1.1(2) (Dec. 29, 2009) (classified information must be "owned by, produced by or for, or [be] under the control of the United States Government"); *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). Accordingly, even if (as the Court stated) Plaintiff has made "a colorable showing of a right to possess at least some of the seized property" sufficient to establish his standing to request that a special master review records that might potentially belong to him, D.E. 64 at 13, he *categorically* cannot make that showing with respect to documents marked as classified.

Likewise, this Court's exercise of equitable jurisdiction—which is "reserved for 'exceptional' circumstances" and "must be 'exercised with caution and restraint,'" D.E. 64 at 8 (citation omitted)—cannot extend to classified records. Under *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975), the exercise of that jurisdiction is governed by four factors: (1) whether the government has "displayed a callous disregard for the constitutional rights" of the subject of the search; (2) "whether the plaintiff has an individual interest in and need for the material whose return he seeks"; (3) "whether the plaintiff would be irreparably injured by denial of the return of his property"; and (4) "whether the plaintiff has an adequate remedy at law for the redress of his grievance." *Id.* at 1243-44 (internal quotations and citations omitted). None of those factors favors exercising jurisdiction as to the classified records.

As to the first factor, the Court has already agreed with the government that Plaintiff has failed to show a "callous disregard for [his] constitutional rights." D.E. 64 at 9. That factor alone is entitled to significant weight. *See Richey*, 515 F.2d at 1243 (describing this factor as "[f]irst, and perhaps foremost"); 6 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.2(h), at 142-43 (6th ed. 2020) (similar).

The second and third factors likewise counsel against exercising equitable jurisdiction with respect to the classified records. Those factors apply only to "the material whose return [the plaintiff] seeks" and to injury resulting from "denial of the return of his property." *Richey*, 515 F.2d at 1243. Plaintiff, however, has no right to the "return" of classified records, which are not "his" property. *Id.* Classified records also are not "personal" to Plaintiff and would not reveal any sensitive personal information. D.E. 64 at 9, 21. Accordingly, Plaintiff has no cognizable "individual" interest in any classified records (or in having a special master review

6

those records), and he cannot be "irreparably injured" if such records are not returned to him. *Richey*, 515 F.2d at 1243. The Court's determination that the second and third *Richey* factors favored the exercise of equitable jurisdiction relied on its finding that Plaintiff had an interest in "at least a portion" of the seized records, including "medical documents, correspondence related to taxes," "accounting information," and "material potentially subject to attorney-client privilege," and that identification of such materials "cannot reasonably be determined at this time." D.E. 64 at 9.[2] But that rationale is categorically inapplicable to the classified records at issue in this motion, which are easily identifiable by their markings, are already segregated from the other seized records, and do not include personal records or potentially privileged communications with his personal attorneys.

Similarly, the Court's reasoning with respect to the fourth factor—that "[w]ithout Rule 41(g), Plaintiff would have no legal means of seeking the return of his property for the time being," D.E. 64 at 10—is categorically inapplicable to classified records because Plaintiff has no legal right to have those records returned to him. Such records clearly belong in government custody and, as a matter of national security, must be fully accessible to the Executive Branch. Accordingly, the government is likely to succeed in demonstrating that

---

[2] As counsel for the government's filter team noted in the hearing before this Court, counsel was "prepared to . . . reach out to counsel" for Plaintiff and "provide them with a copy" of all potentially privileged materials that were segregated by the filter team, which "appl[ied] an extremely expansive view of the attorney-client privilege to be over inclusive and err on the side of caution." 9/1/2022 Hrg. Tr. 47:22-24, 49:15-17. In light of the Court's prior order providing notice of its intent to appoint a special master, D.E. 29, the government "put a pause on that process" but sought the Court's permission during the hearing to provide copies of these materials to Plaintiff's counsel. 9/1/2022 Hrg. Tr. 49:23, 52:23-53:11. The Court "reserve[d] ruling on that request" in order to "consider it holistically in the assessment of whether a special master is indeed appropriate." *Id.* at 53:18-21.

Plaintiff failed to establish the propriety of this Court's exercise of equitable jurisdiction under *Richey* with respect to the seized classified records.

### b. The Court Erred by Enjoining Further Review and Use of Classified Records and by Ordering Review of Such Records by a Special Master

The Court enjoined further review and use of the seized materials "for criminal investigative purposes" pending review by a special master to determine whether any of those materials are personal materials subject to return under Rule 41(g) and to address potential claims of attorney-client or executive privilege. D.E. 64 at 23. As the government has explained, those steps were not warranted as to any of the seized materials in the possession of the investigative team. D.E. 48 at 22-32. But even under the Court's contrary reasoning, there is no justification for extending the injunction and special-master review to the classified records. The classification markings establish on the face of the documents that they are government records, not Plaintiff's personal records. The government's review of those records does not raise any plausible attorney-client privilege claims because such classified records do not contain communications between Plaintiff and his private attorneys. And for several reasons, no potential assertion of executive privilege could justify restricting the Executive Branch's review and use of the classified records at issue here.

First, *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ("*Nixon v. GSA*"), indicates that a former President may not successfully assert executive privilege against review by "the very Executive Branch in whose name the privilege is invoked." *Id.* at 447-48; *see* D.E. 48 at 23-26. This Court observed that the Supreme Court has not decided whether a former President may prevent "disclosure of privileged records from his tenure in office" despite "a determination by the incumbent President to waive the privilege." D.E. 48 at 17 (quoting

*Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (per curiam)). But as this Court acknowledged, *Thompson* involved a claim of executive privilege by Plaintiff as to records sought by a *congressional* committee—that is, he sought to prevent dissemination of purportedly privileged materials *outside* the Executive Branch. *Id.* Neither the Supreme Court's opinion denying Plaintiff's request for a stay in *Thompson* nor Justice Kavanaugh's concurring statement suggested that a former President can successfully assert executive privilege to prevent the Executive Branch itself from reviewing and using its own records.

Second, and in any event, even if a former President might in some circumstances be able to assert executive privilege against the Executive Branch's review and use of its own documents, any such assertion would fail as to the classified records at issue here. Executive privilege is qualified, not absolute. In *United States v. Nixon*, the Supreme Court emphasized that privilege claims "must be considered in light of our historic commitment to the rule of law" and "[t]he need to develop all relevant facts in the adversary system," 418 U.S. at 708-09, and the Court thus held that executive privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial," *id.* at 713. This case does not involve a pending trial, but the need for the classified records is even more clearly demonstrated and specific here: The government is investigating potential violations of 18 U.S.C. § 793(e), which prohibits unauthorized retention of national defense information. The classified records are not merely relevant evidence; they are the very objects of the relevant criminal statute. Similarly, the government is investigating the adequacy of the response to a grand jury subpoena for all documents in Plaintiff's possession "bearing classification markings." D.E. 48 Attachment C. Again, the seized classified records at issue here—each of which the

subpoena plainly encompassed—are central to that investigation.

The Court appeared to recognize that a sufficient showing of need can overcome potential assertions of executive privilege by specifying that the government may continue to review and use the classified records in its classification review and national security risk assessment. D.E. 64 at 22-24. That aspect of the order reflects an implicit determination that no potential assertion of executive privilege by Plaintiff could justify preventing the Executive Branch from conducting that review and assessment of the classified records. But under *United States v. Nixon*, the same is true of the review and use of the information by the government in an ongoing criminal investigation. And it would be especially unwarranted to prohibit that review and use while authorizing other personnel in the Executive Branch to review and use the same information: There is no meaningful way in which "the protection of the confidentiality of Presidential communications," *United States v. Nixon*, 418 U.S. at 705, is served by barring the Executive Branch's review and use of the classified records for criminal investigative purposes while allowing a range of personnel across the Intelligence Community to review the very same records for other closely related purposes.

Third, and for reasons independent of the Supreme Court's holding in *United States v. Nixon*, any claim of executive privilege by Plaintiff against the Executive Branch would be especially implausible as to classified records. The Supreme Court has long recognized the President's authority, as "head of the Executive Branch and as Commander in Chief," "to classify *and control access to* information bearing on national security." *Egan*, 484 U.S. at 527 (emphasis added); *see also, e.g.*, *Murphy v. Sec'y, U.S. Dep't of Army*, 769 Fed. Appx. 779, 792 (11th Cir. 2019) ("The authority to protect national security information falls on the

10

President.". That authority falls upon the incumbent President, not on any former President, because it is the incumbent President who bears the responsibility to protect and defend the national security of the United States. Even if a former President's invocation of executive privilege could prevent certain records from being disseminated outside the Executive Branch, *cf. Thompson*, 142 S. Ct. at 680, such an invocation cannot plausibly prevent the Executive Branch itself from accessing *classified* information, which is by definition controlled by the Executive Branch and critical to national security.

Finally, Plaintiff himself declined to assert any claim of executive privilege over the classified records at the point when it would have been appropriate to do so. On May 11, 2022, Plaintiff's custodian of records was served with a grand jury subpoena seeking "[a]ny and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump bearing classification markings." D.E. 48 Attachment C. To the extent that Plaintiff believed that any such records could be subject to a valid assertion of executive privilege, he should have advised the government of such a claim at that time and could have attempted to pursue such a claim through a motion to quash. But despite having several weeks to respond to the subpoena, Plaintiff did not do so. Instead, on June 3, 2022, Plaintiff's counsel produced a set of classified records to the government, and Plaintiff's custodian certified that "[a]ny and all responsive documents" had been produced after a "diligent search." D.E. 48 Attachment E. Plaintiff cannot now maintain—following the government's seizure of additional classified records that Plaintiff failed to produce—that classified records obtained in the search, which were responsive to the grand jury subpoena, are shielded from the government's review by executive privilege. And his failure to raise any such claim in

11

response to the subpoena both undercuts his entitlement to equitable relief and further underscores that no plausible claim can be made now.

## II.  Without a Stay, the Government and the Public Will Suffer Irreparable Harm

In recognition of the vital importance of assessing potential damage to our national security and intelligence interests, the Court specifically authorized the Office of the Director of National Intelligence ("ODNI") to continue with "the classification review and/or intelligence assessment" it is leading to "assess[] . . . the potential risk to national security that would result from disclosure of the seized materials." D.E. 64 at 1-2, 6 (citing D.E. 39 at 2-3). The Court simultaneously enjoined the government "from further review and use of any of the materials seized from Plaintiff's residence on August 8, 2022, for criminal investigative purposes pending resolution of the special master's review process." *Id.* at 23-24. But the ongoing Intelligence Community ("IC") classification review and assessment are closely interconnected with—and cannot be readily separated from—areas of inquiry of DOJ's and the FBI's ongoing criminal investigation, as further explained in the attached Declaration of Alan E. Kohler, Jr., Assistant Director of the FBI's Counterintelligence Division ("Kohler Decl.").

To begin with, the FBI itself is part of the Intelligence Community, *see* Exec. Order 12,333 § 1.14, and since the 9/11 attacks, the FBI has integrated its intelligence and law enforcement functions when it exercises its national security mission. Kohler Decl. ¶ 8. The FBI conducts investigations that "may constitute an exercise both of the FBI's criminal investigation authority and of the FBI's authority to investigate threats to the national security." *Attorney General's Guidelines for Domestic FBI Operations* 6 (2008),

https://www.justice.gov/archive/opa/docs/guidelines.pdf. Before the Court's Order, the same personnel from the FBI involved in the criminal investigation were coordinating appropriately with the IC in its review and assessment. The application of the injunction to classified records would thus frustrate the government's ability to conduct an effective national security risk assessment and classification review and could preclude the government from taking necessary remedial steps in light of that review—risking irreparable harm to our national security and intelligence interests. The government will also suffer irreparable harm if it cannot review and use the classified materials as part of its criminal investigation, and if it is forced to disclose classified materials outside the Executive Branch in circumstances where there would be no valid purpose served by such disclosure.

> **a. The Intelligence Community's Classification Review and National Security Risk Assessment Are Inextricably Linked With DOJ's and the FBI's Criminal Investigation**

The Court's order expressly permits the government "to review and use the [seized] materials for purposes of intelligence classification and national security assessments," D.E. 64 at 24, while enjoining the government from using the seized records "for criminal investigative purposes," *id.* at 23. But those processes are inextricably intertwined. Absent a stay with respect to the classified records, therefore, the injunction will as a practical matter prevent the IC's classification review and national security risk assessment from proceeding effectively.

As part of a classification review, an "original classification authority"[3] is asked to determine whether documents bearing classification markings are, in fact, properly

---

[3] "'Original classification authority' means an individual authorized in writing, either by

classified—*i.e.*, whether "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4). As explained by Assistant Director Kohler, a classification review informs the IC's "national security risk assessment," and the FBI uses that review to inform its "criminal investigation into the potential mishandling of . . . national defense information," as to which classification status is highly relevant. Kohler Decl. ¶ 6, 7; *see, e.g.*, *United States v. Truong Dinh Hung*, 629 F.2d 908, 918 (4th Cir. 1980) ("Certainly the classification of the documents was relevant to the question of whether they related to the 'national defense.'"); *United States v. Rosen*, 445 F. Supp. 2d 602, 623 (E.D. Va. 2006) (classification status is "highly probative of whether the information at issue is 'information relating to the national defense'").

Furthermore, the IC's review and related assessment are simply one facet of the overall effort by the government to respond to and mitigate any risks to national security. For example, in order to assess the full scope of potential harms to national security resulting from the improper retention of the classified records, the government must assess the likelihood that improperly stored classified information may have been accessed by others and compromised.[4] But that inquiry is a core aspect of the FBI's criminal investigation. Critically,

---

the President, the Vice President, or by agency heads or other officials designated by the President, to classify information in the first instance." E.O. 13526 § 6.1(gg).

[4] Departments and agencies in the IC would then consider this information to determine whether they need to treat certain sources and methods as compromised. *See, e.g.*, Exhibit A to Sentencing Memorandum, *United States v. Pho*, No. 1:17-cr-631 (D. Md. Sept. 18, 2018), D.E. 20-1 (letter from Adm. Michael S. Rogers, Director, National Security Agency) ("Once the government loses positive control over classified material, the government must often treat the material as compromised and take remedial actions as dictated by the particular circumstances.").

IC elements such as the Central Intelligence Agency have extremely limited authority to conduct domestic investigations. *See* 50 U.S.C. § 3036(d)(1) ("[T]he Central Intelligence Agency shall have no police, subpoena, or law enforcement powers or internal security functions."). Within the United States, the FBI would pursue any allegation or lead indicating that the classified records may have been accessed, retained, or disseminated in violation of the law, including by using the tools and authorities of a criminal investigation. If, for example, another department or agency in the IC were to obtain intelligence indicating that a classified document in the seized materials might have been compromised, the FBI would be responsible for taking some of the necessary steps to evaluate that risk. Kohler Decl. ¶ 9. The same is true of the empty folders with "'classified' banners" that were among the seized materials here, *see* D.E. 39-1: The FBI would be chiefly responsible for investigating what materials may have once been stored in these folders and whether they may have been lost or compromised—steps that, again, may require the use of grand jury subpoenas, search warrants, and other criminal investigative tools and could lead to evidence that would also be highly relevant to advancing the criminal investigation.

The integration of the FBI's criminal investigative and national security-related missions would also make it exceedingly difficult to bifurcate the FBI personnel working on the criminal investigation from those working in conjunction with other departments or agencies in the IC. Any FBI agent or analyst who investigated whether the classified records were improperly accessed, for instance, would by definition be gathering information highly relevant to—and thus in furtherance of—"criminal investigative purposes," D.E. 64, at 23. And such bifurcation would make little sense even if it were feasible, given that the same

senior DOJ and FBI officials are ultimately responsible for supervising the criminal investigation and for ensuring that DOJ and FBI are coordinating appropriately with the IC on its classification review and assessment. *See* Kohler Decl. ¶ 10.

In short, the injunction, as applied to the classified records, would undermine the government's overall effort to assess and respond to any risks to national security posed by these circumstances. In allowing the IC's review and assessment to proceed, the Court appears to have recognized that the government and the public would be irreparably harmed if the government could not determine the nature and extent of the potentially compromised materials and the resulting risks to national security. But absent a partial stay, the Court's injunction will compromise those critical interests.

### b. Absent a Partial Stay, the Government's Criminal Investigation Will Be Irreparably Harmed

Without a stay, the government and public also will suffer irreparable harm from the undue delay to the criminal investigation. The public has an "interest in the fair and *expeditious* administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973) (emphasis added); *see Cobbledick v. United States*, 309 U.S. 323, 325 (1940) ("[E]ncouragement of delay is fatal to the vindication of the criminal law."). The Court did "not find that a temporary special master review under the present circumstances would cause undue delay," D.E. 64 at 22, but the Court's reasoning is of limited force with respect to special-master review of the classified records in particular. As explained above, the classified records do not contain personal information or communications protected by a personal attorney-client privilege, and any delay poses significant concerns in the context of an investigation into the mishandling of classified records. The government's need to proceed apace is particularly heightened where,

16

as here, obstructive acts may impede its investigation. *See* Order on Motions to Unseal at 7-8, *In re Sealed Search Warrant*, No. 22-8332-BER (S.D. Fla. Aug. 22, 2022) (noting that magistrate judge found probable cause for violations of 18 U.S.C. § 1519, "which prohibits obstructing an investigation," and discussing risks of "obstruction of justice").

In addition, the injunction against using classified records in the criminal investigation could impede efforts to identify the existence of any additional classified records that are not being properly stored—which itself presents the potential for ongoing risk to national security. To be sure, the Court did not enjoin the criminal investigation altogether. For example, the government does not understand the Court's injunction against the government's review and use of seized materials for criminal investigative purposes to prevent it from questioning witnesses and obtaining evidence about issues such as how classified records in general were moved from the White House, how they were subsequently stored, and what steps Plaintiff and his representatives took in response to the May 11, 2022 grand jury subpoena. The government also does not understand the Order to bar it from *asking* witnesses about any recollections they may have of classified records, so long as the government does not use the content of seized classified records to question witnesses (which the Order appears to prohibit).[5] Even so, the prohibition on the review and use of the classified records is uniquely harmful here, where the criminal investigation concerns the retention and handling of *those very records*, with the concomitant national-security concerns raised by that conduct.

---

[5] The government also does not understand the Court's Order to bar DOJ, FBI, and ODNI from briefing Congressional leaders with intelligence oversight responsibilities regarding the classified records that were recovered. The government similarly does not understand the Order to restrict senior DOJ and FBI officials, who have supervisory responsibilities regarding the criminal investigation, from reviewing those records in preparation for such a briefing.

### c. The Government and the Public Would Be Irreparably Harmed by the Unnecessary Dissemination of Classified Records

Finally, the Court's order would irreparably harm the government and the public by unnecessarily requiring the government to share highly classified materials with a special master. The Supreme Court has emphasized that, "[f]or 'reasons . . . too obvious to call for enlarged discussion,' . . . the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Egan*, 484 U.S. at 529. The Court has thus recognized that the Executive Branch has a "compelling interest in withholding national security information from unauthorized persons." *Id.* at 527. That interest applies even when an individual has the requisite clearance: Classified information is carefully controlled and shared only with those who have a "need to know it." *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014); *see* Exec. Order 13526, § 4.1a. Where, as here, there is no valid purpose to be served by a special master's review of classified materials, compelled disclosure of those materials to a special master is itself an irreparable harm.

### III.    A Partial Stay Would Impose No Cognizable Harm on Plaintiff

On the other side of the balance, allowing the government to use and review the seized classified records for criminal investigative purposes would not cause any legally cognizable injury to Plaintiff. As explained above—and as Plaintiff has never disputed—Plaintiff has no property, possessory, or other legal interest in classified records. None of the potential harms to Plaintiff identified by the Court, *cf.* D.E. 64, at 22-23, applies with respect to classified records. And given that the classified records number "roughly 100" of "the approximately 11,000 documents seized," *id.* at 4 n.4, any incremental harm to Plaintiff from the

18

government's continued use of those documents in its ongoing criminal investigation into the handling of those very documents is minimal at best—especially because criminal investigators have already reviewed them, *id.* at 6.

Plaintiff's only possible "injury" relates to the government's investigation itself, but that injury is not legally cognizable. As the Supreme Court has made clear, "the cost, anxiety, and inconvenience of having to defend against" potential criminal prosecution cannot "by themselves be considered 'irreparable' in the special legal sense of that term." *Younger v. Harris*, 401 U.S. 37, 46 (1971); *cf. Cobbledick*, 309 U.S. at 325 ("Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship."). That is why courts have exercised great caution before interfering through civil actions with criminal investigations or pending cases. *See also Deaver v. Seymour*, 822 F.2d 66, 69-71 (D.C. Cir. 1987) (applying *Younger*'s principles with regard to potential federal charges); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993) ("The mere threat of prosecution is not sufficient to constitute irreparable harm."). And those fundamental principles strongly support the limited stay the government seeks here.

## Conclusion

The Court should issue an immediate order staying its September 5, 2022 Order pending appeal to the extent the Order (1) enjoins the further review and use for criminal investigative purposes of records bearing classification markings and (2) requires the government to disclose those classified records to a special master.

Counsel for the United States has conferred with counsel for Plaintiff, and Plaintiff opposes the government's motion.

Respectfully submitted,


/s Juan Antonio Gonzalez
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, FL 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov


MATTHEW G. OLSEN
Assistant Attorney General
National Security Division

 /s Jay I. Bratt
JAY I. BRATT
CHIEF
Counterintelligence and Export Control
Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Illinois Bar No. 6187361
Tel: 202-233-0986
Email: jay.bratt2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 8, 2022, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record via transmission of Notices of

Electronic Filing generated by CM/ECF.


_s/Juan Antonio Gonzalez_
Juan Antonio Gonzalez
United States Attorney