## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 22-81294-CIV-CANNON

**DONALD J. TRUMP,**

    Plaintiff,

v.

**UNITED STATES OF AMERICA,**

    Defendant.

_____/

### DONALD J. TRUMP'S RESPONSE IN
### OPPOSITION TO THE UNITED STATES'
### <u>MOTION FOR A PARTIAL STAY PENDING APPEAL</u>

## I.    INTRODUCTION

This investigation of the 45th President of the United States is both unprecedented and misguided. In what at its core is a document storage dispute that has spiraled out of control, the Government wrongfully seeks to criminalize the possession by the 45th President of his own Presidential and personal records. By way of its Motion [ECF No. 69], the Government now seeks to limit the scope of any review of its investigative conduct and presuppose the outcome, at least as regards to what it deems are "classified records." However, the Court's Order [ECF No. 64] is a sensible preliminary step towards restoring order from chaos. The Government should therefore not be permitted to skip the process and proceed straight to a preordained conclusion.

The Government's request with regard to this Court's Order is two-fold:

Specifically, the [G]overnment seeks a stay to the extent the Order (1) enjoins the further review and use for criminal investigative purposes of records bearing classification markings that were recovered pursuant to a court-authorized search warrant and (2) requires the [G]overnment to disclose those classified records to a special master for review.

[ECF No. 69 at 1].[1]  This request demonstrates the Government has misinterpreted the Order as a prohibition on conducting a national security assessment.  That reading is, however, misplaced as the Court made clear such assessment may proceed.

The Government generally points to the alleged urgent need to conduct a risk assessment of possible unauthorized disclosure of purported "classified records."  But there is no indication any purported "classified records" were disclosed to anyone.  Indeed, it appears such "classified records," along with the other seized materials, were principally located in storage boxes in a locked room at Mar-a-Lago, a secure, controlled access compound utilized regularly to conduct the official business of the

---

[1] The Government is apparently not concerned with unauthorized leaks regarding the contents of the purported "classified records," *see, e.g.,* Devlin Barrett and Carol D. Leonnig, *Material on foreign nation's nuclear capabilities seized at Trump's Mar-a-Lago*, WASH. POST (Sept. 6, 2022), https://www.washingtonpost.com/national-security/2022/09/06/trump-nuclear-documents/, and would presumably be prepared to share all such records publicly in any future jury trial.  However, the Government advances the untenable position in its Motion that the secure review by a Court appointed and supervised special master under controlled access conditions is somehow problematic and poses a risk to national security.

United States during the Trump Presidency, which to this day is monitored by the United States Secret Service. [2]

Moreover, the ultimate disposition of all the "classified records," and likely most of the seized materials, is indisputably governed exclusively by the provisions of the Presidential Records Act ("PRA"). *See* 44 U.S.C. §§ 2201, *et seq*. The PRA accords any President extraordinary discretion to categorize all his or her records as either Presidential or personal records, and established case law provides for very limited judicial oversight over such categorization. The PRA further contains no provision authorizing or allowing for any criminal enforcement. Rather, disputes regarding the disposition of any Presidential record are to be resolved between such President and the National Archives and Records Administration ("NARA"). Thus, at best, the Government might ultimately be able to establish certain Presidential records should be returned to NARA. What is clear regarding all of the seized materials is that they belong with either President Trump (as his personal property to be returned pursuant to Rule 41(g)) or with NARA, but not with the Department of Justice.

However, it is not even possible for this Court, or anyone else for that matter, to make **any** determination as to which documents and other items belong where and

_____

[2] There was seemingly no similar sense of urgency or imminent threat to national security associated with the purported "classified records" contained in the fifteen boxes of materials President Trump voluntarily turned over in January 2022, even though such records formed the alleged basis for the institution of the current criminal investigation. Likewise, there was no similar sense of urgency or imminent threat associated with the "classified records" President Trump's counsel voluntarily turned over on June 3, 2022.

3

with whom without first conducting a thoughtful, organized review. Recognizing this, the Court exercised its equitable jurisdiction and inherent supervisory authority to "ensure at least the appearance of fairness and integrity under the extraordinary circumstances presented." Order [ECF No. 64 at 1]. The Government now advances the same arguments previously rejected in an attempt to persuade the Court to reconsider. For several reasons, the Government has not demonstrated in its Motion any entitlement to relief.

First, the Government's position incorrectly presumes the outcome—that its separation of these documents is inviolable and not subject to question by this Court or anyone else. Second, the Government's stance assumes that if a document has a classification marking, it remains classified irrespective of any actions taken during President Trump's term in office. Third, as noted above, the Government continues to ignore the significance of the PRA. Indeed, if any seized documents (including any purported "classified records") are Presidential records, President Trump (or his designee, including a neutral designee such as a special master) has an absolute right of access to same under the PRA. 44 U.S.C. § 2205(3). Accordingly, President Trump (and, by extension, a requested special master) cannot be denied access to those documents.

In addition, the Government's claims of "irreparable harm" to the Government "and the public" [ECF No. 69 at 2] appear exaggerated. In seeking the extraordinary relief of this Court staying its own order, the Government once again brushes off any measure of judicial involvement. The Government argues that the Intelligence

Community review of documents now solely in the FBI's possession cannot withstand a brief pause. Moreover, the Government contends that the FBI and ODNI, and their personnel, are so inseparable they are incapable of having agents outside the criminal case participate in the ODNI-led investigation. This convenient, and belated, claim by the Government relative to enjoining the criminal team's access to these documents only arises because the FBI concedes [ECF No. 69-1] the Intelligence Community review is actually just another facet of its criminal investigation. [*See* ECF No. 69-1]. Indeed, the declaration that "the IC assessments necessarily will inform the FBI's criminal investigation," *id.* at 4, effectively concedes the intelligence review is in fact part of that criminal investigation.[3]

In short, the merits of this matter do not support staying the Court's Order pending the Government's appeal. Accordingly, and in light of the remaining stay factors, the Court should deny the Government's motion.

## II. APPLICABLE LAW

A stay pending appeal is an "extraordinary" remedy for a court to invoke, *Williams v. Zbaraz*, 442. U.S. 1309, 1311 (1979), and the applicant bears an "especially heavy" burden of proving that such relief is warranted, *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1320 (1994). To establish entitlement to a stay pending appeal, the Government must: (1) make a strong showing that it is

---

[3] Of course, as the Order contemplates, to the extent there is any legitimate national security interest at issue, the Government is free to proceed. Likewise, President Trump has no interest in impeding any action which advances the national security interests of the United States.

likely to succeed on the merits; (2) demonstrate irreparable injury absent a stay; (3) demonstrate an absence of substantial injury to the other parties interested in the proceeding; and (4) show that public interest supports the stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009). "A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant[.]'" *Id.* (citations omitted) (quoting *Va. Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C. Cir. 1958) (*per curiam*), and *Virginian R. Co. v. United States,* 272 U.S. 658, 672 (1926)). The first two prongs are the "most critical"—the likelihood of success must be "better than negligible" and "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Id.* at 434–35 (citations and quotations omitted); *see also Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. 1981) ("[I]f the balance of equities . . . is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal.").

## III.   PRESIDENT TRUMP IS LIKELY TO SUCCEED ON THE MERITS

The Government's Motion and appeal appear to presume the outcome of its review of the materials seized from President Trump.  Critically, though, the Court's Order is not a resolution of the ultimate merits of any argument raised by either President Trump or the Government.  Rather, it merely directs the appointment of a neutral party to review the seized materials and, in conjunction, temporarily, and reasonably, precludes further use of the seized materials in the Government's

criminal investigation while that neutral review is ongoing.  The Government is not likely to succeed on the merits of its appeal—even with respect to any subset of documents—because the Court reasonably exercised its equitable jurisdiction in adopting these appropriate measures.

### A.   The Court has the power to appoint a special master and enjoin the Government's review.

This Court was correct in exercising its equitable jurisdiction. *See Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975). In *Richey*, the case upon which this Court relied in its Order, the former Fifth Circuit set forth a series of factors to consider in relation to the exercise of equitable jurisdiction. *See id.* at 1245. The non-exhaustive list of factors include: (1) whether the government displayed a callous disregard for the movant's constitutional rights; (2) whether the movant has an individual interest in and need for the seized property; (3) whether the movant would be irreparably injured by denial of the return of the seized property; and (4) whether the movant otherwise has an adequate remedy at law.  *Id.*  In reviewing President Trump's Motion for Judicial Oversight, this Court rightly found that while there has not yet been a demonstration of a callous disregard for President Trump's constitutional rights to date, the remaining three factors weighed in favor of exercising jurisdiction.  [ECF No. 64 at 8-12].

President Trump clearly has an individual interest in and need for the seized property. The record reflects the material seized from President Trump's home includes not just "personal effects without evidentiary value" but also approximately five hundred pages of material that is likely subject to attorney-client privilege, as

well as medical documents, and tax and accounting information.  [ECF Nos. 40-2, 48].

The Government contends that President Trump can have no such interest in the purported "classified records." But, again, the Government has not proven these records remain classified.  That issue is to be determined later.

Moreover, under the PRA, President Trump has specified rights to restrict access to his Presidential records, 44 U.S.C. § 2204, and an absolute right to access (or have his designee access) those Presidential records, 44 U.S.C. § 2205(3).  These rights accord President Trump a sufficient interest in all of the seized materials. Indeed, as developed below, President Trump's categorization of records during his term was within his sole discretion.

There is also a risk of irreparable injury to President Trump if the documents are not first reviewed by a neutral third party.  As correctly stated by this Court, President Trump "faces an unquantifiable potential harm by way of improper disclosure of sensitive information to the public."  [ECF No. 64 at 9-10].  This is evidenced by various media reports in recent days regarding the contents of purportedly "classified" documents seized by the Government.[4]  Irreparable injury could most certainly occur if the Government were permitted to improperly use the documents seized.  As this Court aptly stated:

> As a function of [President Trump's] former position as President of the United States, the stigma associated with the subject seizure is in a league of its own.  A future indictment, based to any degree on property that ought to be returned, would result in reputational harm of a decidedly different order of magnitude.

---

[4] *See* Barret and Leonnig, *supra* note 1.

8

[ECF No. 64 at 10].

Finally, President Trump has no alternative adequate remedy at law. This Court correctly determined that "without Rule 41(g), [President Trump] would have no legal means of seeking the return of his property for the time being and no knowledge of when other relief might become available." [ECF No. 64 at 10-11].

The Government claims this Court cannot enjoin use of the documents *the Government has determined* are classified. [ECF No. 69 at 5-8]. Therefore, the argument goes, as President Trump has no right to have the documents returned to him—because the Government has unilaterally determined they are classified—the Government should be permitted to continue to use them, in conjunction with the intelligence communities, to build a criminal case against him.

However, there still remains a disagreement as to the classification status of the documents. The Government's position therefore assumes a fact not yet established. This Court's Order exercising jurisdiction did not make findings as to the classification status of any documents. Further, whether it was lawful for the Government to seize those documents has yet to be determined by a court of competent jurisdiction. But that ultimate determination is an issue separate from this Court's Order and whether a stay pending appeal is necessary.[5]

_____

[5] Despite the Government's attempts to paint the ruling as a finding on the substantive merits of President Trump's claim, this Court noted the limits of its Order:

> The Court pauses briefly to emphasize the limits of this determination. [President Trump] ultimately may not be entitled to return of much of the seized property or to prevail on his

In summary, this Court's decision to *temporarily* enjoin the Government from reviewing the seized documents for criminal investigative purposes pending the special master's review was warranted so that all the seized materials may be appropriately reviewed and categorized.

**B.      Appointment of a Special Master is a necessary and prudent step to preserve the integrity of the process.**

This Court has provided more than adequate reasoning as to why a special master is needed to further review the documents in question. [ECF No. 64 at 14-19]. A special master is not an agent for either President Trump or the Government. The very purpose of a special master is to serve as a *neutral third party*, with appropriate authorization, reviewing documents to facilitate resolution of the parties' disagreements. In opposing any neutral review of the seized materials, the Government seeks to block a reasonable first step towards restoring order from chaos and increasing public confidence in the integrity of the process.

The Government also continues to assert that President Trump is not permitted to claim executive privilege of documents in the custody of the Executive Branch. [ECF No. 69 at 8-12]. But the Court already expressed skepticism with the Government's conclusory assertions regarding executive privilege. [*See* ECF No. 64

---

anticipated claims of privilege.  That inquiry remains for another day.  For now, the circumstances surrounding the seizure in this case and the associated need for adequate procedural safeguards are sufficiently compelling to at least get [President Trump] past the courthouse doors.

[ECF No. 64 at 12].

at 16–18]. The Government further noted to this Court that the Privilege Review Team has already conducted the necessary review to separate privileged documents from its investigation. [*See* ECF No. 64 at 14]. Notably, however, this Court correctly pointed out that the flaws in the Privilege Review Team's processes—even if inadvertent—call into question the adequacy of its review. [*See* ECF No. 64 at 15-18].[6] Considering this, the Court determined that "these unprecedented circumstances call for a brief pause to allow for neutral, third-party review to ensure a just process with adequate safeguards." [ECF No. 64 at 23].

## C.  The President had the power to declassify documents.

The Government does not contest—indeed, it concedes—that the President has broad authority governing classification of, and access to, classified documents. [ECF No. 69 at 10, 18 (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988))]. In fact, the Government advocates that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." [ECF No. 69 at 18 (quoting *Egan*, 484 U.S. at 529)]. Congress provided certain parameters for controlling classified information but primarily delegated to the President how to regulate

---

[6] Specifically, the Court observed:

As reflected in the Privilege Review Team's Report, the Investigative Team already has been exposed to potentially privileged material. . . . [T]he Privilege Review Team's Report references at least two instances in which members of the Investigative Team were exposed to material that was then delivered to the Privilege Review Team and, following another review, designated as potentially privileged material.

[ECF No. 64 at 15 (citing ECF No. 40 at 6)].

classified information. 50 U.S.C. § 3161. At the same time, Congress exempted the President from complying with such requirements. *See id.* § 3163 ("Except as otherwise specifically provided, the provisions of this subchapter shall not apply to the President . . .").

President Obama enacted the current Executive Order prescribing the parameters for controlling classified information in 2009. *See* Exec. Order 13526 (Dec. 29, 2009). That Executive Order, which controlled during President Trump's term in office, designates the President as an original classification authority. *See id.* § 1.3(a)(1). In turn, the Executive Order grants authority to declassify information to either the official who originally classified the information or that individual's supervisors—necessarily including the President. § 3.1(b)(1), (3). Thus, assuming the Executive Order could even apply to constrain a President, *cf.* 50 U.S.C. § 3163, the President enjoys absolute authority under the Executive Order to declassify any information. There is no legitimate contention that the Chief Executive's declassification of documents requires approval of bureaucratic components of the executive branch. Yet, the Government apparently contends that President Trump, who had full authority to declassify documents, "willfully" retained classified information in violation of the law. *See* 18 U.S.C. § 793(e); [ECF No. 69 at 9].[7] Moreover, the Government seeks to preclude any opportunity for consideration of this issue.

---

[7] Of course, classified or declassified, the documents remain either Presidential records or personal records under the PRA.

**D.     A former President has an unfettered right to access Presidential records.**

Pursuant to the PRA, a former President has an unfettered right of access to his Presidential records even though he may not "own" them. *See* 44 U.S.C. § 2205(3). Thus, contrary to the premise behind the Government's "criminal" investigation, the determination of whether a former President timely provided documents to the National Archives and Records Administration is a civil matter governed by the PRA.

All government records (classified or otherwise) fall into two basic categories, either under the PRA or the Federal Records Act ("FRA").  "The FRA defines a class of materials that are federal records subject to its provisions, and the PRA describes another, mutually exclusive set of materials that are subject to a different, less rigorous regime.  In other words, no individual record can be subject to both statutes because their provisions are inconsistent." *Armstrong v. Exec. Office of the President*, 1 F. 3d 1274, 1293 (D.C. Cir. 1993).

The PRA further distinguishes records as either Presidential or personal. 44 U.S.C. § 2201. Presidential records are defined as:

> documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(2). The PRA expressly excludes personal records from the definition of Presidential records. *See id.* § 2201(2)(B). Personal records are defined as "documentary materials, or any reasonably segregable portion therof, [sic] of a purely

private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." *Id.* § 2201(3).

The PRA thus "distinguishes Presidential records from 'personal records'" and "requires that all materials produced or received by the President, 'to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately.'" *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 845 F. Supp. 2d 288, 291 (D.D.C. 2012) (quoting 44 U.S.C. § § 2203(b)). "***The categorization of the records during the Presidency controls what happens next*** . . . . The statute assigns the Archivist ***no role*** with respect to personal records once the Presidency concludes." *Id.* (emphasis added). "The PRA contains no provision obligating or even permitting the Archivist to assume control over records that the President 'categorized' and 'filed separately' as personal records. At the conclusion of the President's term, the Archivist only 'assumes responsibility for the Presidential records." *Id.* (quoting 44 U.S.C. § 2203(f)(1)). "[T]he PRA does not confer any mandatory or even discretionary authority on the Archivist to classify records. Under the statute, this responsibility is left solely to the President." *Id.* at 301 (describing categorization decision by former President Clinton as not within the discretion of the Archivist as the subject materials "were not provided to the Archives at" the end of the Clinton presidency).

Critically, the former President has sole discretion to classify a record as personal or Presidential. *See Jud. Watch, Inc.*, 845 F. Supp. 2d at 301 ("Under the

statute, this responsibility is left solely to the President.").  The power of the Archivist is not greater than that of the President. Specifically, the PRA states "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President."  44 U.S.C. § 2203(f)(1).  This section should not be interpreted as weakening a President's authority under the Act.  *See Jud. Watch, Inc.*, 845 F. Supp. 2d at 300 ("[T]he plain language of section 2203(f) of the PRA does not say . . . that the Archivist *must* assume custody and control of all materials that fall within the definition of Presidential records.").

Accordingly, all of the records at issue in the Government's motion fall into two categories: (1) Presidential records, governed *exclusively* by the Presidential Records Act; and (2) personal records, the determination of which was in President Trump's discretion. *See id.* To the extent President Trump may have categorized certain of the seized materials as personal during his presidency, any disagreement as to that categorization is to be resolved under the PRA and cannot possibly form the basis for any criminal prosecution.

## IV.   THE GOVERNMENT WILL NOT SUFFER IRREPARABLE HARM

### A.   The Government ignores the distinction between an assessment of national security, which is *prospective*, and a criminal investigation, which is *retrospective*.

The Government conflates two related, yet distinct issues: (1) potential damage to national security from allegedly mishandling classified information; and (2) criminal repercussions for allegedly mishandling classified information. The former

is forward looking—asking how the Government protects vital national interests on an ongoing basis through an assessment of whether national security information or sources have been compromised.[8] The latter is backwards looking—assessing whether national security information was handled in a manner contrary to law. Certainly, it may be *easier* to perform these two functions in tandem. But the Government has wholly failed to show that these functions *must* be performed concurrently. Moreover, the Government incorrectly portrays the Court's Order as categorically prohibiting any action that may yield information related to any criminal investigation. But the Court's Order is not so broad. This Court recognized and acknowledged the importance of national security, and where the two actions are truly inseparable, the Court's Order permits such action. [ECF No. 64 at 22, 24].

The Government's brief belies its own claim that a complete intelligence assessment cannot be disentangled from the criminal investigation. For example, the Government asserts that "a classification review informs the IC's 'national security risk assessment,' and the FBI uses that review to inform its 'criminal investigation into the potential mishandling of . . . national defense information,' as to which classification status is highly relevant." [ECF No. 69 at 13 (quoting Kohler Decl. ¶¶ 6,

---

[8] While the discovery of classified material in files containing Presidential records should not have been at all surprising, NARA allegedly became concerned about national security interests within weeks of the turnover by President Trump of fifteen boxes of records.  Yet no notification was provided to Congress at that time.  Moreover, rather than adhering to the PRA, NARA made an immediate criminal referral.  Given the circumstances involve the possession by a former President of his own Presidential records at a location which had long been utilized to conduct the business of the United States, the pursuit of all other available civil mechanisms would, respectfully, have been a better exercise of prudential judgment.

7, ECF No. 69-1)]. In other words, the FBI needs the *results* of the intelligence community's classification review to determine whether classified material has been mishandled. Again, the Government's own analysis places this as a phased approach that can be effectuated within the temporary confines of the Court's Order.

Indeed, there may be limited circumstances in which a national security assessment may also relate to a criminal investigation. Although the Court's Order references ODNI's assessment of the national security risk, [ECF No. 64 at 19], the Order does not prohibit the FBI from participating in the national security assessment, *id.* at 24 ("The Government may continue to review and use the materials seized for purposes of intelligence classification and national security assessments."). Thus, the Government's concern that the FBI is prohibited from evaluating whether classified information has been compromised, [ECF No. 69 at 15], is unfounded.

The operative language in the injunction is "purpose." If an action's "purpose" is to conduct a national security assessment, it may be undertaken even if it may reveal information related to a criminal investigation or require the use of "criminal investigative tools." [ECF No. 69-1 at 5]. However, the Government cannot undertake an action in which the *purpose* is to further the criminal investigation until after the Special Master has completed the required review. Although this yields discretion to intelligence personnel engaged in the security assessment, such individuals must utilize such discretion judiciously to maintain the integrity of the Government in such unprecedented circumstances.

17

### B.     A brief delay will not cause irreparable harm to the Government's criminal investigation.

As the Government has not demonstrated that it is likely to succeed on the merits of its appeal, it must demonstrate that the remaining stay factors tilt decidedly in favor of granting a stay. *See Ruiz*, 650 F.2d at 565; *see also Virginian R. Co.,* 272 U.S. at 672 (noting that a stay pending appeal "is not a matter of right, even if irreparable harm might otherwise result to the appellant").  With respect to the second stay factor, the Government has not demonstrated that the brief delay accompanying the Special Master's review will cause irreparable harm to its criminal investigation.

The Government contends that the injunction will cause irreparable harm to the criminal investigation because of an expected modest delay to accommodate the Special Master's review.[9] But, as the Court already opined, the Special Master's review will improve the perception of "fairness and public trust". [ECF No. 64 at 22].

Moreover, the Government refutes its own contention of irreparable harm by listing numerous investigative actions it can conduct without contravening the injunction. [ECF No. 69 at 17]. Indeed, the Government already completed a preliminary review of the seized property. *Id.* at 22 n.20. That the Government has already reviewed the documents and can continue to conduct other investigative actions undercuts any notion of harm—let alone irreparable harm.

---

[9] Notably, the affidavit in support of the Government's motion does not assert that a brief delay in the investigation will cause any harm. [*See generally* ECF No. 69-1].

Without support, the Government contends that sharing "highly classified materials" with a Special Master would irreparably harm the Government and public. For example, the Government observes that "[t]he public has an 'interest in the fair and *expeditious* administration of the criminal laws." [ECF No. 69 at 16 (quoting *United States v. Dionisio*, 410 U.S. 1, 17 (1973)) (emphasis in motion)]. But in *Dionisio* and other decisions, the Supreme Court has treated expeditiousness as competing with interests of fairness to defendants. The Government has not identified any precedent for the proposition that delay accompanying the neutral review of documents could cause harm to the Government so significant as to be "irreparable." Moreover, any clearance and "need to know" concerns may be readily addressed.[10]

## V.    PRESIDENT TRUMP AND THE PUBLIC WOULD BE HARMED BY THE STAY

As this Court correctly observed, a criminal investigation of this import—an investigation of a former President of the United States by the administration of his political rival—requires enhanced vigilance to ensure fairness, transparency, and maintenance of the public trust. [*See* ECF No. 64 at 22 ("[T]he investigation and treatment of a former president is of unique interest to the general public, and the **country** is served best by an orderly process that promotes the interest and perception of fairness." (emphasis added))].

---

[10] As noted above in footnote 1, neither leaks nor the prospect of a public jury trial appear to raise any concerns regarding irreparable harm. Apparently, only the secure review by a Court appointed and supervised special master under controlled access conditions poses a risk to national security.

Given the significance of this investigation, the Court recognizes, as does President Trump, that it must be conducted in the public view. The Court has correctly directed commencement of a process which certainly benefits the Government, President Trump and the people of the United States.  The Plaintiff respectfully submits any stay of the injunction or limitation on the scope of review only erodes public trust and the perception of fairness.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Government's motion for a partial stay pending appeal.

Dated: September 12, 2022                    Respectfully submitted,

**Lindsey Halligan**                          **By: /s/ _Christopher M. Kise_**
Florida Bar No. 109481                        **Christopher M. Kise**
511 S.E. 5th Avenue                           Florida Bar No. 855545
Suite 1008                                    Chris Kise & Associates, P.A.
Fort Lauderdale, FL 33301                     201 East Park Avenue
Lindseyhalligan@gmail.com                     5th Floor
                                              Tallahassee, FL 32301
                                              Telephone: (850) 270-0566
**M. Evan Corcoran**                          Email: chris@ckise.net
SILVERMAN|THOMPSON|
SLUTKIN|WHITE, LLC
400 East Pratt Street – Suite 900             **James M. Trusty**
Baltimore, MD 21202                           Ifrah Law PLLC
Telephone: (410) 385-2225                     1717 Pennsylvania Avenue N.W.
Email: ecorcoran@silvermanthompson.com        Suite 650
(*pro hac vice*)                              Washington, DC 20006
                                              Telephone: (202) 524-4176
                                              Email: jtrusty@ifrahlaw.com
                                              (*pro hac vice*)

                                              *Counsel for Plaintiff*
                                              *Donald J. Trump*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 12, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

 /s/ Christopher M. Kise
Christopher M. Kise