UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-CV-81294-CANNON

**DONALD J. TRUMP**,

    Plaintiff,

v.

**UNITED STATES OF AMERICA**,

    Defendant.

_____/

## THE UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO STAY PENDING APPEAL

The United States' motion for a stay pending appeal of this Court's September 5, 2022 Order, Docket Entries ("D.E.") 69, 64, seeks limited but critical relief. The government seeks a stay only as to a discrete set of just over 100 records marked as classified—that is, records that were specifically sought by a prior grand jury subpoena, whose unauthorized retention may constitute a crime, 18 U.S.C. § 793, and with markings signifying that their unauthorized disclosure "reasonably could be expected to result in damage to the national security," including "exceptionally grave damage," Exec. Order 13526 §§ 1.1(4), 1.2(1) (Dec. 29, 2009).[1]

The government's stay motion demonstrates that the government is likely to succeed on the merits because Plaintiff cannot plausibly establish any property interest in or privilege

---

[1] Plaintiff has characterized the government's criminal investigation as a "document storage dispute" or an "overdue library book scenario." D.E. 84 at 1; 9/1/22 Hrg. Tr. at 31:20-21. In doing so, Plaintiff has not addressed the potential harms that could result from mishandling classified information or the strict requirements imposed by law for handling such materials. *See* 32 C.F.R. § 2001.43 (describing detailed requirements for the storage of TOP SECRET information, including approved vaults, alarm systems, and construction specifications).

claim as to the seized records marked as classified, that the government and the public are irreparably harmed while the Court's Order as to those records remains in effect, and that a partial stay would impose no cognizable harm on Plaintiff. Plaintiff's Response, D.E. 84, largely ignores those showings. Instead, Plaintiff principally seeks to raise questions about the classification status of the records and their categorization under the Presidential Records Act ("PRA"). But Plaintiff does not actually assert—much less provide any evidence—that any of the seized records bearing classification markings have been declassified. More importantly, the issues Plaintiff attempts to raise are ultimately irrelevant. Even if Plaintiff had declassified these records, and even if he somehow had categorized them as his "personal" records for purposes of the PRA—neither of which has been shown—nothing in the PRA or any other source of law establishes a plausible claim of privilege or any other justification for an injunction restricting the government's review and use of records at the center of an ongoing criminal and national security investigation. And nothing in Plaintiff's Response rebuts the compelling public interest in granting the limited stay the government seeks.

## DISCUSSION

### I. The Government Is Likely to Succeed on the Merits

First, Plaintiff has failed to rebut the government's showing that the Court lacks equitable jurisdiction as to seized records bearing classification markings because Plaintiff categorically has no "property" interest in those records and no "need for" their return. D.E. 69 at 6-7 (citing *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975)). Plaintiff instead references *other* seized records that contain personal information or could be subject to

attorney-client privilege, none of which are at issue in this stay motion. D.E. 84 at 7-8. As to the records marked as classified, Plaintiff asserts that the government has not "proven" their classification status. *Id.* at 8. But even if Plaintiff had declassified any of these records while he was President—a proposition that Plaintiff does not specifically assert in any of his filings in these proceedings, in a sworn declaration, or through any evidence—any record bearing classification markings was necessarily created by the government and, therefore, is not Plaintiff's personal property. Furthermore, although Plaintiff observes that the PRA generally entitles him to access Presidential records created during his tenure, *see id.*; 44 U.S.C. § 2205(1), (3) (records "in the custody of the Archivist" "shall be available" to a former President or his designee), the PRA does not establish that a former President has any property right in Presidential records. To the contrary, it makes clear that "[t]he United States" has "complete ownership, possession, and control" of them. 44 U.S.C. § 2202. Plaintiff thus has no plausible property interest that would justify compelling this discrete set of records to be returned to him. The government is thus likely to succeed on jurisdictional grounds alone.

Second, Plaintiff has no viable claim of privilege as to the records bearing classification markings. He does not contest that he lacks a viable personal attorney-client privilege claim with regard to records marked as classified, because such records would not contain communications between Plaintiff and his personal attorneys. *See* D.E. 69 at 8. And Plaintiff offers no response to the government's multiple arguments demonstrating that he cannot plausibly assert executive privilege to prevent the Executive Branch itself from reviewing records that Executive Branch officials previously marked as classified. The government

explained that *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ("*Nixon v. GSA*"), precludes a successful assertion of executive privilege against the Executive Branch; that any assertion here would in any event be overcome under *United States v. Nixon*, 418 U.S. 683 (1974), given the government's compelling need for these records, the unauthorized retention of which is the very subject matter of the government's criminal investigation; that any claim of privilege over these records is further foreclosed because the Constitution vests the *incumbent* President with the authority to control access to classified information; and that Plaintiff failed to raise any purported executive privilege claims when responding to a grand jury subpoena for all documents in his possession bearing classification markings. D.E. 69 at 8-12. Plaintiff does not address any of those arguments.

Instead, Plaintiff notes only that this Court "expressed skepticism" about the government's executive privilege arguments in its prior Order. D.E. 84 at 10. But the Court's observations focused on whether a former President is entirely foreclosed from asserting executive privilege against the Executive Branch. D.E. 64 at 17. The Court did not address the government's arguments specifically establishing that no plausible assertion of privilege could bar the review by the Executive Branch of the discrete set of seized records bearing classification markings in the context of an ongoing criminal and national security investigation. In any event, it is Plaintiff—not the Court and not a special master—who would need to make an assertion of executive privilege and supply reasons supporting that assertion. He has provided none.

Plaintiff's attempts to change the subject by holding out the possibility that he *could* have declassified some of the seized records and/or that he *could* have designated them as

4

"personal" records, D.E. 84 at 11-15, fare no better. As already noted, Plaintiff has now filed multiple lengthy submissions with the Court that stop short of asserting that he *in fact* took any of these actions with respect to any of the seized records, including those at issue in the stay motion. In light of the classification markings, official cover sheets, and other indicia of classification attendant to these materials, *see, e.g.*, D.E. 48-1, Attachment F, such possibilities should not be given weight absent Plaintiff's putting forward competent evidence.

In any event, even if Plaintiff had declassified any of the approximately 100 seized records bearing classification markings while he was still in office, the government's "demonstrated, specific need" for those records, *United States v. Nixon*, 418 U.S. at 713, would easily overcome any asserted claim of privilege. For obvious reasons, the Intelligence Community ("IC") would have a compelling need to understand which formerly-classified records have now been declassified, why and how they were declassified, and the impact of any such declassification, including on the IC's protection of its sources and methods and on the classification status of related records or information. The Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") would also have a compelling need to review any purportedly declassified records as part of the government's investigation into the adequacy of the response to the May 2022 grand jury subpoena, which sought "[a]ny and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump *bearing classification markings*." D.E. 48-1 Attachment C (emphasis added). Furthermore, the government would need to consider the records' prior declassification as relates to the application of 18 U.S.C. § 793. *See* D.E. 69 at 14 (explaining the relevance of classification status in such matters).

Plaintiff's suggestion that he "may have categorized certain of the seized materials as personal [records] during his presidency" pursuant to the PRA, D.E. 84 at 15, if true, would only supply another reason that he cannot assert executive privilege with regard to those records. If Plaintiff truly means to suggest that, while President, he chose to categorize records with markings such as "SECRET" and "TOP SECRET" as his *personal* records for purposes of the PRA, then he cannot assert that the very same records are protected by executive privilege—i.e., that they are "Presidential communications" made in furtherance of the "performance of his official duties." *Nixon v. GSA*, 433 U.S. at 447, 456; *see* 44 U.S.C. § 2201(3) (defining "personal records" as records "of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President"). In any event, whether Plaintiff declared documents with classification markings to be his "personal" records for purposes of the PRA has no bearing on the government's compelling need to review them, both for national security purposes and as part of its investigation into the potentially unlawful retention of national defense information.[2]

---

[2] Plaintiff's characterization of the discretion the PRA provides the President to categorize records as "Presidential" or "personal," D.E. 84 at 14-15 (citing *Judicial Watch v. National Archives and Records Administration*, 845 F. Supp. 2d 288 (D.D.C. 2012)), is thus irrelevant here. In any event, the district court decision on which Plaintiff relies did not concern classified records and does not support his assertion that a court must accept a former President's claim that records that indisputably qualify as Presidential records under the PRA are instead personal records. Instead, the court in *Judicial Watch* concluded that it could not compel the National Archives and Records Administration to revisit a President's decision about such a categorization. 845 F. Supp. 2d at 300-301. More fundamentally, the district court's analysis in *Judicial Watch* has no bearing on the application of criminal law regarding unauthorized retention of national defense information, unauthorized removal of government documents, or obstruction of justice. 18 U.S.C. §§ 793, 2071, 1519.

More generally, Plaintiff's Response disregards this Court's acknowledgement of its "limited power in this domain" involving the exercise of equitable jurisdiction in connection with an ongoing criminal investigation. D.E. 64 at 8. The Court ordered the appointment of a special master solely to "manage assertions of privilege and make recommendations thereon, and evaluate claims for return of property." *Id.* at 23. The Court did not—and could not—appoint a special master to exercise roving "supervisory authority" over the government's ongoing criminal investigation, *contra* D.E. 84 at 4, or to adjudicate matters ultimately irrelevant to Plaintiff's potential privilege claims, such as whether Plaintiff might have declassified seized documents that bear classification markings or whether Plaintiff might have designated those documents as his "personal" records for purposes of the PRA. Because Plaintiff cannot plausibly assert executive privilege (or attorney-client privilege, *see supra* p. 3) as to any seized records bearing classification markings, the Court should not enjoin the government's use of those records or order those records reviewed by a special master pending the government's appeal.

## II.     The Government and the Public Will Suffer Irreparable Harm Absent a Stay

The Court's injunction against the government's review of seized records bearing classification markings for purposes of its criminal investigation has caused and will continue to cause irreparable harm. As the government has explained, the IC's intelligence classification review and national security assessment—which the Court sought to allow to continue in recognition of the vital interests at stake—are closely linked to its criminal investigation, and therefore cannot proceed effectively while the injunction remains in place. D.E. 69 at 12-16; *see generally* D.E. 69-1 (Declaration of Alan E. Kohler, Jr.). Plaintiff suggests

various potential methods for drawing a distinction, such as by allowing the government to use the records for "forward looking" assessments regarding the protection of "vital national interests" but not "backwards looking" inquiries into violations of law, D.E. 84 at 15-16, or by distinguishing between the government's subjective "purpose" for reviewing or using the records, *id.* at 17. Plaintiff thus implicitly acknowledges that the government and the public would be irreparably harmed by an injunction that bars the effective conduct of a classification review and national security assessment. But as the government has demonstrated, its "forward looking" mission of protecting national security necessarily requires it to understand the extent to which classified information may have recently been compromised. D.E. 69 at 14-15. And to the extent the Court's injunction were to turn on the subjective "purpose" motivating individual government personnel, such an injunction could be subject to serious challenge for failure to "state its terms specifically" and to "describe in reasonable detail . . . the act or acts restrained." Fed. R. Civ. P. 65(d)(1). In attempting to draw what are ultimately unworkable distinctions, Plaintiff only underscores that the government's national security and criminal investigative missions are overlapping and mutually reinforcing.

Furthermore, even if the IC, which includes the FBI, were permitted to resume its classification review and national security assessment in some limited manner, Plaintiff fails to address DOJ's and the FBI's inability, under the Court's injunction, to use the seized records to investigate whether or to what extent the seized records were accessed by unauthorized individuals or whether other classified records remain missing. D.E. 69 at 14-17. Those are criminal investigative functions, and the government is irreparably harmed

while it is enjoined from using the seized records bearing classification markings for those purposes.

For that and other reasons, the delay of the government's criminal investigation constitutes its own irreparable harm. The government and the public unquestionably have an interest in the timely enforcement of criminal laws, particularly those involving the protection of highly sensitive information, and especially where, as here, there may have been efforts to obstruct its investigation. The government's ability to perform *other* investigative tasks that do not require its review or use of the records marked as classified does not "refute[]" this irreparable harm. D.E. 84 at 18. These records are at the core of the government's investigation, and the government's inability to review and use them significantly constrains its investigation. The compelled disclosure of records marked as classified to a special master further harms the Executive Branch's interest in limiting access to such materials absent any valid purpose served by their review. *See United States v. Reynolds*, 345 U.S. 1, 10-11 (1952) (courts should be cautious before requiring judicial review, even *ex parte* and *in camera*, of documents whose disclosure would jeopardize national security).

Finally, Plaintiff's submissions to the Court indicate that Plaintiff contemplates a prolonged 90-day review period by the special master. Thus, even assuming that a special master begins that review immediately, the review would not be complete until December under Plaintiff's proposed timeline. All the while, the Intelligence Community would (at best) be limited in its ability to address and fully mitigate any national security risks presented by the storage and handling of the classified records at issue here, and DOJ and the FBI would be unable to perform critical parts of their criminal investigatory functions.

### III.     Plaintiff Has Failed to Establish Any Cognizable Harm

Plaintiff has not described any cognizable harm that he would incur from a partial stay. He states only that "enhanced vigilance" in this investigation will serve a public interest in fairness and transparency, going so far as to suggest that this investigation "must be conducted in public view." D.E. 84 at 19-20. But the public is best served by evenhanded adherence to established principles of civil and criminal procedure, regardless of the identity of the parties or the degree of public attention. Here, the seized records bearing classification markings are the government's own documents and are evidence obtained pursuant to a duly authorized search warrant in the course of a criminal investigation. The government and the public have a compelling interest in that investigation continuing. And Plaintiff is not entitled to restrict the government's investigation pending a review of these records for privilege claims that cannot prevail.

### Conclusion

The Court should stay its September 5, 2022 Order pending appeal to the extent the Order (1) enjoins the further review and use for criminal investigative purposes of records bearing classification markings and (2) requires the government to disclose those classified records to a special master.

Respectfully submitted,

*/s Juan Antonio Gonzalez*
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, FL 33132
Tel: 305-961-9001

Email: juan.antonio.gonzalez@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division

/s *Jay I. Bratt*
JAY I. BRATT
CHIEF
Counterintelligence and Export Control Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Illinois Bar No. 6187361
Tel: 202-233-0986
Email: jay.bratt2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                s/ *Juan Antonio Gonzalez*
                Juan Antonio Gonzalez
                United States Attorney