UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-81294-CIV-CANNON

**DONALD J. TRUMP**,

    Plaintiff,

v.

**UNITED STATES OF AMERICA**,

    Defendant.
_____/

## ORDER DENYING MOTION FOR PARTIAL STAY PENDING APPEAL

**THIS CAUSE** comes before the Court upon the Government's Motion for Partial Stay Pending Appeal (the "Motion") [ECF No. 69], filed on September 8, 2022. The Court has reviewed the Motion, the Response in Opposition [ECF No. 84], the Reply [ECF No. 88], and the full record. For the reasons discussed below, the Government's Motion [ECF No. 69] is **DENIED**. Further, by separate order, and by agreement of the parties as a matter of selection [ECF Nos. 83, 86], the Honorable Raymond J. Dearie, Senior United States District Judge for the Eastern District of New York, is hereby appointed to serve as Special Master in this case. As further described in that order, the Special Master is directed to prioritize review of the documents at issue in the Motion and to issue interim reports and recommendations as appropriate.

## RELEVANT BACKGROUND

Plaintiff Donald J. Trump initiated this action on August 22, 2022, seeking various forms of relief in connection with the search warrant executed on his residence on August 8, 2022 [ECF No. 1]. The Court held a hearing on Plaintiff's requests on September 1, 2022 [ECF No. 62]. Thereafter, pursuant to its equitable jurisdiction and inherent supervisory authority, and in light of the extraordinary circumstances presented, the Court granted Plaintiff's request for the

appointment of a special master and temporarily enjoined the Government from further review and use of the seized materials for criminal investigative purposes only (the "September 5 Order") [ECF No. 64].  The September 5 Order allows the Government to "continue to review and use the materials seized for purposes of intelligence classification and national security assessments" (the "Security Assessments") [ECF No. 64 p. 24].

On September 8, 2022, the Government filed a notice of appeal [ECF No. 68] followed by the instant Motion [ECF No. 69].[1]  The Motion requests a stay of the September 5 Order to the extent it "(1) enjoins the further review and use for criminal investigative purposes of records bearing classification markings that were recovered pursuant to a court-authorized search warrant and (2) requires the government to disclose those classified records to a special master for review" [ECF No. 69 p. 1].  The Motion is accompanied by the Declaration of Alan E. Kohler, Jr., Assistant Director of the Counterintelligence Division of the Federal Bureau of Investigation (the "Kohler Declaration") [ECF No. 69-1].  The Kohler Declaration states that the Government's Security Assessments are "inextricably linked" to the Government's criminal investigation, and that it would be "exceedingly difficult" to bifurcate the personnel involved [ECF No. 69-1 pp. 3–4].  On September 12, 2022, Plaintiff filed a response in opposition to the Motion [ECF No. 84], and on September 13, 2022, the Government filed a reply [ECF No. 88].

The Government advises in the Motion that it will seek relief from the United States Court of Appeals for the Eleventh Circuit "[i]f the Court does not grant a stay by Thursday, September 15" [ECF No. 69 p. 1].  Appreciative of the urgency of this matter, the Court hereby issues this Order on an expedited basis.

---

[1] The Government's appeal has been docketed as 11th Cir. No. 22-13005.

CASE NO. 22-81294-CIV-CANNON

**LEGAL STANDARD**

In considering a motion to stay pending appeal, district courts must consider "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The first two factors of [this] standard are the most critical," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial discretion to stay an injunction]." *Nken*, 556 U.S. at 433–34.

**DISCUSSION**

The Motion primarily seeks a stay of the September 5 Order insofar as it temporarily enjoins, in conjunction with the Special Master's review of the seized materials, approximately 100 documents "marked as classified (and papers physically attached to them)" [ECF No. 69 p. 2 n.1]. In isolating the described documents from the larger set of seized materials, the Motion effectively asks the Court to accept the following compound premises, neither of which the Court is prepared to adopt hastily without further review by a Special Master. The first premise underlying the Motion is that all of the approximately 100 documents isolated by the Government (and "papers physically attached to them") are classified government records, and that Plaintiff therefore could not possibly have a possessory interest in any of them. The second is that Plaintiff has no plausible claim of privilege as to any of these documents [ECF No. 69 p. 7 (categorically asserting that the "classified records at issue in this Motion . . . do not include personal records or potentially privileged communications")]. The Court does not find it appropriate to accept the

3

Government's conclusions on these important and disputed issues without further review by a neutral third party in an expedited and orderly fashion.

To further expand the point, and as more fully explained in the September 5 Order, the Government seized a high volume of materials from Plaintiff's residence on August 8, 2022 [ECF No. 64 p. 4]; some of those materials undisputedly constitute personal property and/or privileged materials [ECF No. 64 p. 13]; the record suggests ongoing factual and legal disputes as to precisely which materials constitute personal property and/or privileged materials [ECF No. 64 p. 14]; and there are documented instances giving rise to concerns about the Government's ability to properly categorize and screen materials [ECF No. 64 p. 15]. Furthermore, although the Government emphasizes what it perceives to be Plaintiff's insufficiently particularized showing on various document-specific assertions [ECF No. 69 p. 11; ECF No. 88 pp. 3–7], it remains the case that Plaintiff has not had a meaningful ability to concretize his position with respect to the seized materials given (1) the ex parte nature of the approved filter protocol, (2) the relatively generalized nature of the Government's "Detailed Property Inventory" [ECF No. 39-1], and (3) Plaintiff's unsuccessful efforts, pre-suit, to gather more information from the Government about the content of the seized materials [ECF No. 1 pp. 3, 8–9 (describing Plaintiff's rejected requests to obtain a list of exactly what was taken and from where, to inspect the seized property, and to obtain information regarding potentially privileged documents)].[2]

In many respects, the Government's position thus presupposes the content, designation, and associated interests in materials under its control—yet, as the parties' competing filings reveal, there are disputes as to the proper designation of the seized materials, the legal implications

---

[2] *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 178–79 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (referencing sensible benefits, in certain circumstances, of adversarial, pre-review proceedings on filter protocols).

flowing from those designations, and the intersecting bodies of law permeating those designations [*see* ECF No. 69 pp. 5, 8–12; ECF No. 84 pp. 11–15; ECF No. 88 pp. 3–7]. Under these circumstances, the Court declines to conduct a subset-by-subset, piecemeal analysis of the seized property, based entirely on the Government's representations about what is contained in a select portion of the property. *See United States v. Melquiades*, 394 F. App'x 578, 584 (11th Cir. 2010) (explaining that, to have standing to bring a Rule 41(g) action, a movant must allege "a colorable ownership, possessory or security interest in at least a portion of the [seized] property" (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001)). Indeed, if the Court were willing to accept the Government's representations that select portions of the seized materials are—without exception—government property not subject to any privileges, and did not think a special master would serve a meaningful purpose, the Court would have denied Plaintiff's special master request [*see* ECF No. 48 p. 3 (arguing that the "appointment of a special master is unnecessary" because the Government had already reviewed the materials and identified personal items and potentially privileged materials)].

Therefore, upon consideration of the full range of seized materials as described in the Government's submissions, and for the reasons explained in the September 5 Order and supplemented in part below, the Court does not find the requested partial stay to be warranted under the circumstances. The Court offers the following limited analysis on three additional areas, mindful of the Government's request for an expedited ruling.

**I.     The September 5 Order**

First, accounting for the concerns raised in the Government's submissions [ECF No. 69 p. 17; ECF No. 88 p. 8], the Court finds that further elaboration on the September 5 Order is warranted. The September 5 Order temporarily enjoins the Government—as a component of the

special master process—only from further use of the content of the seized materials for criminal investigative purposes pending resolution of the Special Master's recommendations. This includes, for example, presenting the seized materials to a grand jury and using the content of the documents to conduct witness interviews as part of a criminal investigation. The September 5 Order does not restrict the Government from conducting investigations or bringing charges based on anything other than the actual content of the seized materials; from questioning witnesses and obtaining other information about the movement and storage of seized materials, including documents marked as classified, without discussion of their contents [ECF No. 69 p. 17]; from briefing "Congressional leaders with intelligence oversight responsibilities" on the seized materials [ECF No. 69 p. 17 n.5]; from reviewing the seized materials to conduct the Security Assessments; or from involving the FBI in the foregoing actions.[3] Moreover, as indicated in the September 5 Order, the temporary restraint does not prevent the Government from continuing "to review and use the materials seized for purposes of intelligence classification and national security assessments" [ECF No. 64 p. 24]. Hence, as Plaintiff acknowledges, to the extent that such intelligence review becomes truly and necessarily inseparable from criminal investigative efforts concerning the content of the seized materials, the September 5 Order does not enjoin the Government from proceeding with its Security Assessments [ECF No. 84 p. 16; ECF No. 39 pp. 2–3].

Again, the September 5 Order imposes a temporary restraint on certain review and use of the seized materials, in natural conjunction with the special master process, only for the period of

---

[3] Separately, the Court also clarifies a scrivener's error: the "January 2021" reference on page 2 of the September 5 Order should read "January 2022" [*see* ECF No. 64 p. 2 ("In January [2022], as a product of those conversations, Plaintiff transferred fifteen boxes (the "Fifteen Boxes") from his personal residence to NARA [ECF No. 1 pp. 4–5; ECF No. 48 p. 5; ECF No. 48-1 p. 6].")]. That typographical error did not affect the Court's analysis.

time required to resolve any categorization disputes and rule on Plaintiff's Rule 41(g) requests. This restriction is not out of step with the logical approach approved and used for special master review in other cases, often with the consent of the government, and it is warranted here to reinforce the value of the Special Master, to protect against unwarranted disclosure and use of potentially privileged and personal material pending completion of the review process, and to ensure public trust.[4]

## II. Irreparable Injury

The Court is not persuaded that the Government will suffer an irreparable injury without the requested stay. With respect to the temporary enjoinment on criminal investigative use, the Government's main argument is that such use is "inextricably intertwined" with its Security Assessments and therefore the enjoinment at issue necessarily poses a risk to national security interests [ECF No. 69 pp. 3, 12–17]. Mindful of the traditional "reluctan[ce] to intrude upon the

---

[4] In general, when courts appoint a special master to review seized materials for potential claims of privilege, the government naturally (and often voluntarily) is temporarily prevented from further review and use of the subject materials. *See, e.g.*, *United States v. Abbell*, 914 F. Supp. 519, 521 (S.D. Fla. 1995) (appointing special master to review seized materials after government's taint team had completed a privilege review of some of the seized materials, and enjoining government from further examining seized materials until the court approved the "recommendations made by the Special Master as to the responsiveness and privilege issues"); *United States v. Stewart*, No. 02-CR-395, 2002 WL 1300059, at *10 (S.D.N.Y. June 11, 2002) (requiring government to place seized materials under seal and not review them until special master completed his review); *United States v. Gallego*, No. CR-18-01537-001, 2018 WL 4257967, at *3–4 (D. Ariz. Sept. 6, 2018) (same). *Cf. United States v. Ritchey*, No. 21-CR-6, 2022 WL 3023551, at *9 (S.D. Miss. June 3, 2022) (enjoining government's prosecution team from further review and use of seized materials until court approved a new filter review process to verify the filter review team's initial screening process); *In re Search Warrant dated November 5, 2021*, No. 21-MC-00813-AT, ECF No. 5 (S.D.N.Y. Nov. 12, 2021) (indicating that government voluntarily paused its "extraction and review" of seized contents pending consideration and appointment of special master); *In the Matter of Search Warrants Executed on April 9, 2018*, No. 18-MJ-03161-KMW, ECF No. 16 (S.D.N.Y. Apr. 9, 2018) (same); *In the Matter of Search Warrants Executed on April 28, 2021*, No. 21-00425-MC-JPO, ECF No. 1 p. 2 (S.D.N.Y. May 4, 2021) (noting that government voluntarily did not begin review of seized materials pending consideration and appointment of special master).

authority of the Executive in military and national security affairs," *Department of Navy v. Egan*, 484 U.S. 518, 530 (1988), the Court nonetheless cannot abdicate its control over questions of privilege and does not find the Government's argument sufficiently convincing as presented. First, there has been no actual suggestion by the Government of any identifiable emergency or imminent disclosure of classified information arising from Plaintiff's allegedly unlawful retention of the seized property. Instead, and unfortunately, the unwarranted disclosures that float in the background have been leaks to the media *after* the underlying seizure [*see* ECF No. 64 pp. 9–11 n.11]. Second, although it might be easier, in the immediate future, for the Government's criminal investigative work to proceed in tandem with the Security Assessments, the Government's submissions on the subject do not establish that pausing the criminal investigative review pending completion of the Special Master's work actually will impede the intelligence community's ability to assess "the potential risk to national security that would result from disclosure of the seized materials" [ECF No. 39 pp. 2–3]. The Kohler Declaration, for example, states that it would be "exceedingly difficult" to bifurcate the personnel involved in the described processes, and then it proceeds to posit hypothetical conflicts that could arise if the Security Assessments require criminal investigative efforts [ECF No. 69-1 ¶ 9; *see also* ECF No. 88 p. 9 (explaining that continued enjoinment of use and review of the seized materials for criminal investigative purposes would cause the intelligence community to "(at best) be limited in its ability to address and fully mitigate any national security risks presented")]. The Government's submissions, read collectively, do not firmly maintain that the described processes are inextricably intertwined, and instead rely heavily on hypothetical scenarios and generalized explanations that do not establish irreparable injury. Third, as noted above, to the extent that the Security Assessments truly are, in fact, inextricable from criminal investigative use of the seized materials, the Court makes clear

that the September 5 Order does not enjoin the Government from taking actions necessary for the Security Assessments.[5] And finally, in light of the Government's stated concerns, the Court will direct the Special Master to prioritize review of the approximately 100 documents marked as classified (and papers physically attached thereto), and thereafter consider prompt adjustments to the Court's Orders as necessary.

The Government also presents the argument, in passing, that making the full scope of the seized materials available to the Special Master would itself create irreparable harm [ECF No. 69 p. 18]. Insofar as the Government argues that disclosure to a Special Master of documents marked as classified necessarily creates an irreparable injury because the special master process in this case is unnecessary, the Court disagrees for the reasons previously stated. Separately, to the extent the Government appears to suggest that it would suffer independent irreparable harm from review of the documents by the Court's designee with appropriate clearances and controlled access, that argument is meritless.

## III.  Relevant Principles

Lastly, the Court agrees with the Government that "the public is best served by evenhanded adherence to established principles of civil and criminal procedure," regardless of the personal identity of the parties involved [ECF No. 88 p. 10]. It is also true, of course, that evenhanded procedure does not demand unquestioning trust in the determinations of the Department of Justice. Based on the nature of this action, the principles of equity require the Court to consider the specific

---

[5] Needless to say, the Court is confident that the Government will faithfully adhere to a proper understanding of the term "inextricable" and, where possible, minimize the use and disclosure of the seized materials in accordance with the Court's orders. Because the Court is not privy to the specific details of the Government's investigative efforts and national security review, the Court expects that the Government, in general, is best suited to assess whether contemplated actions are consistent with the standard described herein.

context at issue, and that consideration is inherently impacted by the position formerly held by Plaintiff. The Court thus continues to endeavor to serve the public interest, the principles of civil and criminal procedure, and the principles of equity. And the Court remains firmly of the view that appointment of a special master to conduct a review of the seized materials, accompanied by a temporary injunction to avoid unwarranted use and disclosure of potentially privileged and/or personal materials, is fully consonant with the foregoing principles and with the need to ensure at least the appearance of fairness and integrity under unprecedented circumstances.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion for Partial Stay Pending Appeal [ECF No. 69] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 15th day of September 2022.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record