

**U.S. Department of Justice**

National Security Division

---

*Counterintelligence and Export Control Section*                                         *Washington, D.C. 20530*

September 19, 2022

***By ECF and Courtesy Copy***

Judge Raymond J. Dearie
United States District Court
 Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11202

*Re:*   *Donald J. Trump v. United States of America*, Case No. 22-81294-CIV-CANNON –
        Proposed Agenda Items for Preliminary Conference

Dear Judge Dearie:

Pursuant to your Order (ECF 94), which invited the parties to submit a proposed agenda for the preliminary conference to be held on Tuesday, September 20, 2022, the government submits the following proposed agenda:

1. Precise mechanics of document flow.

2. Aspects of the Order Appointing you as Special Master, ECF 91 (the "Appointment Order") (*e.g.*, facilitation of consultation with the National Archives and Records Administration (ECF 91 ¶ 3)) and discussion of the Draft Case Management Plan provided by the Special Master to the parties on September 19, 2022.

3. Next progress review and status conference.

The government elaborates on each proposed topic below.

### 1.   Precise mechanics of document flow

The Appointment Order contemplates the review of approximately 11,000 documents obtained through the execution of a court-authorized search warrant on August 8, 2022 (the "Seized Materials") by shortly after Thanksgiving.[1]  The review process generally requires Plaintiff to

---

[1]  The government applied to the Eleventh Circuit for a stay last week and Plaintiff's response is due tomorrow at noon, before the Master's preliminary conference. If the Eleventh Circuit stays Judge Cannon's order with respect to documents with classification markings, then the Special

categorize the Seized Materials as Presidential records or personal records, assert privileges that Plaintiff believes apply, and record those positions on a document-by-document basis in logs. For its part, the government is to review Plaintiff's position and agree or disagree. Any disagreements are to be submitted to the Special Master for a report and recommendation to Judge Cannon.

To implement the Appointment Order and complete the Special Master review process in an efficient and timely fashion, the government proposes that a third-party vendor be engaged to scan, host, and provide access to the Seized Materials to both parties on a Relativity platform, with each party to have access to its own private workspace to review and code documents.[2] The Relativity document-review platform is familiar to both parties and will provide a secure, customizable, and auditable space in which each party can separately prepare and review logs. If he wishes, the Special Master can also review and mark his decisions in the Relativity platform, or he could make his notations on hard-copy printouts of the materials.

To provide documents for Plaintiff's review as soon as possible, the government is prepared to provide the Seized Materials (not including the Filter Materials) to the vendor, once selected and engaged, on approximately one day's notice in the Washington, D.C. metropolitan area and similar notice plus travel time if the vendor is located outside the Washington, D.C. metropolitan area. FBI agents will attend and observe the scanning process to maintain the chain of custody of the evidence. The document-review vendor will be bound by a judicial protective order (which will be submitted to Judge Cannon tomorrow, September 20, 2022).

The government proposes that the document-review vendor "batch out" documents on a rolling basis as they are scanned so that the Parties can begin reviewing them promptly. The government proposes that the Parties target the processing and logging of about 500 documents each business day. The vast majority of documents should be easy to categorize as Presidential or personal records.

With respect to the Filter Materials, and consistent with the Appointment Order, on September 16, 2022, the Privilege Review Team provided Bates-stamped copies of the Filter Materials, as well as a list of the materials with short descriptions and Bates ranges, to Plaintiff's Counsel.

Non-documentary items (*e.g.*, items of clothing) will be made available to Plaintiff's counsel and the Special Master for review at the FBI's Washington Field Office on reasonable notice during

---

Master will not review the documents with classification markings. If the Eleventh Circuit does not stay the review of the documents with classification markings, the government will propose a way forward.

[2] As reflected in the public record, the government's Privilege Review Team already reviewed the Seized Materials to identify potentially privileged attorney-client communications. (*See* ECF 71.) Applying an extremely low threshold to screen for such potentially privileged communications, the Privilege Review Team identified a small number of documents (the "Filter Materials"). Those Filter Materials remain in the custody of the Privilege Review Team and are segregated from the investigative team.

business hours beginning tomorrow. As previously stated in other filings, once the parties agree that certain items are personal records, or the Court has made such a determination, the government will return such items that were not commingled with classified documents by stipulation. The government will maintain a control copy of returned materials.

**2. Other aspects of the Appointment Order (*e.g.*, facilitation of consultation with the National Archives and Records Administration (ECF 91 ¶ 3)) and discussion of the Draft Case Management Plan provided by the Special Master to the parties on September 19, 2022**

The Appointment Order permits the Special Master to consult with the National Archives and Records Administration (ECF 91 ¶ 3). The government strongly urges the Special Master to consult with NARA in its determinations and is available to facilitate that consultation. The government is also prepared to address any questions the Special Master has for the parties on any aspect of the Appointment Order.

The parties should also address the Draft Case Management Plan provided by the Special Master to the parties on September 19, 2022.

**3. Next progress review and status conference**

For at least the first few weeks, the government proposes that the Master conduct weekly reviews with the parties by video or audio conference to resolve questions and ensure smooth operation of the review process.[3]

Attached to this letter, and pursuant to the Appointment Order, the government provides the search warrant executed in this matter and the redacted public versions of the underlying application materials for the search warrant. ECF 91 ¶ 13.

Also attached to this letter please find a copy of the government's proposed Judicial Protective Order, which is due to be filed with Judge Cannon tomorrow (Tuesday, the day of the preliminary conference). ECF 91 ¶ 19. Because the judicial protective order affects this Master's review process, we provide a copy in case the Master wishes to inform Judge Cannon of any comments or concerns before it is entered.

---

[3] The government is also available to meet in person if the Special Master prefers.

4

Thank you for your consideration.

Respectfully submitted,


JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

MATTHEW G. OLSEN
Assistant Attorney General

By:     /s/
        JAY I. BRATT
         Chief
        JULIE EDELSTEIN
         Deputy Chief
        STEPHEN MARZEN
         Trial Attorney
        Counterintelligence and Export Control Section
        National Security Division
        Department of Justice

# Attachment 1

# Search Warrant (MJ Dkt 17)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-MJ-8332-BER**

FILED BY _____ D.C.

AUG 1 1 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

IN RE SEALED SEARCH WARRANT

**FILED UNDER SEAL**

_____/

## NOTICE OF FILING OF REDACTED DOCUMENTS

The United States hereby gives notice that it is filing the following document, which

is a redacted version of material previously filed in this case number under seal:

- The search warrant (not including the affidavit) signed and approved by the Court on

  August 5, 2022, including Attachments A and B;

- The Property Receipt listing items seized pursuant to the search, filed with the Court

  on August 11, 2022.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, Fl 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov

17

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 22-mj-8332-BER |
| the Premises Located at 1100 S. Ocean Blvd., Palm Beach, FL 33480, as further described in Attachment A | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Southern_____ District of _____Florida_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____August 19, 2022_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: ___8/5/22___ ___12:12 pm___          _[signature]_
                                                              *Judge's signature*

City and state: ____West Palm Beach, FL____          Hon. Bruce Reinhart, U.S. Magistrate Judge
                                                     *Printed name and title*

**ATTACHMENT A**

*Property to be searched*

The premises to be searched, 1100 S Ocean Blvd, Palm Beach, FL 33480, is further described as a resort, club, and residence located near the intersection of Southern Blvd and S Ocean Blvd. It is described as a mansion with approximately 58 bedrooms, 33 bathrooms, on a 17-acre estate. The locations to be searched include the "45 Office," all storage rooms, and all other rooms or areas within the premises used or available to be used by FPOTUS and his staff and in which boxes or documents could be stored, including all structures or buildings on the estate. It does not include areas currently (i.e., at the time of the search) being occupied, rented, or used by third parties (such as Mar-a-Largo Members) and not otherwise used or available to be used by FPOTUS and his staff, such as private guest suites.

**ATTACHMENT B**

*Property to be seized*

All physical documents and records constituting evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793, 2071, or 1519, including the following:

a. Any physical documents with classification markings, along with any containers/boxes (including any other contents) in which such documents are located, as well as any other containers/boxes that are collectively stored or found together with the aforementioned documents and containers/boxes;

b. Information, including communications in any form, regarding the retrieval, storage, or transmission of national defense information or classified material;

c. Any government and/or Presidential Records created between January 20, 2017, and January 20, 2021; or

d. Any evidence of the knowing alteration, destruction, or concealment of any government and/or Presidential Records, or of any documents with classification markings.

FD-597 (Rev. 4-13-2015)                                                    Page 1 of 1

## UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION

# RECEIPT FOR PROPERTY

Case ID:  WF-▉▉▉▉▉

On (date)  8/8/2022

item(s) listed below were:

☒ **Collected/Seized**
☐ **Received From**
☐ **Returned To**
☐ **Released To**

(Name)  Mar-A-Lago

(Street Address)  1100 S OCEAN BLVD

(City)  PALM BEACH, FL 33480

### Description of Item(s):

4 - Documents

29 - Box labeled A-14

30 - Box Labeled A-26

31 - Box Labeled A-43

32 - Box Labeled A-13

33 - Box Labeled A-33

**Received By:** *Christine Bobb* (signature)

**Received From:** ▉▉▉▉▉▉ (signature)

**Printed Name/Title:** *Christine Bobb*
*attorney*

**Printed Name/Title:** ▉▉▉▉▉▉ / SSA

6:19 pm on 8/8/22

FD-597 (Rev. 4-13-2015)                                                          Page 1 of 2

## UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION

# RECEIPT FOR PROPERTY

Case ID:    WF-

On (date)    8/8/2022                      item(s) listed below were:

☒ **Collected/Seized**
☐ **Received From**
☐ **Returned To**
☐ **Released To**

(Name)    Mar-A-Lago

(Street Address)    1100 S OCEAN BLVD

(City)    PALM BEACH, FL 33480

**Description of Item(s):**

1 - Executive Grant of Clemency re: Roger Jason Stone, Jr.

1A - Info re: President of France

2 - Leatherbound box of documents

2A - Various classified/TS/SCI documents

3 - Potential Presidential Record

5 - Binder of photos

6 - Binder of photos

7 - Handwritten note

8 - Box labeled A-1

9 - Box labeled A-12

10 - Box Labeled A-15

10A - Miscellaneous Secret Documents

11 - Box Labeled A-16

11A - Miscellanous Top Secret Documents

12 - Box labeled A-17

13 - Box labeled A-18

13A - Miscellaneous Top Secret Documents

14 - Box labeled A-27

14-A - Miscellaneous Confidential Documents

FD-597 (Rev. 4-13-2015)

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION

# RECEIPT FOR PROPERTY

15 - Box Labeled A-28

15A - Miscellaneous Secret Documents

16 - Box labeled A-30

17 - Box labeled A-32

18 - Box labeled A-35

19 - Box labeled A-23

19A - Confidential Document

20 - Box Labeled A-22

21 - Box labeled A-24

22 - Box Labeled A-34

23 - Box Labeled A-39

23A - Miscellaneous Secret Documents

24 - Box labeled A-40

25 - Box Labeled A-41

25A - Miscellaneous Confidential Documents

26 - Box Labeled A-42

26A - Miscellaneous Top Secret Documents

27 - Box Labeled A-71

28 - Box Labeled A-73

28A - Miscellaneous Top Secret Documents

Received By: _(signature)_

Printed Name/Title: Christina Bobb
attorney

6:19pm on 8/8/22

Received From: _(signature)_

Printed Name/Title: Special Agent

**Attachment 2**

**Redacted Public Underlying Application Materials
(MJ Dkt 102)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-MJ-8332-BER**

**IN RE SEALED SEARCH WARRANT**

_____/

**NOTICE OF FILING OF REDACTED SEARCH WARRANT AFFIDAVIT**
**AND REDACTED _EX PARTE_ MEMORANDUM OF LAW**
**CONCERNING PROPOSED REDACTIONS**

The United States gives notice that, in compliance with the Court's August 25, 2022 Order To Unseal, Docket Entry ("D.E.") 94, it hereby files the redacted version of the search warrant affidavit, submitted in support of the search warrant signed and approved by the Court on August 5, 2022. The redactions were previously submitted for the Court's review and approved by the Court's August 25, 2022 Order (DE89-1; DE94).

In addition, this notice includes a redacted copy of the government's Sealed, _Ex Parte_ Memorandum of Law Concerning Proposed Redactions, filed on August 25, 2022, along with Exhibit B to that Memorandum, a redacted chart explaining the government's proposed redactions—both of which the Court ordered unsealed on August 26, 2022. Exhibit A to that filing consists of the proposed redactions to the affidavit, which accompanies this Notice in its final, redacted form.

Respectfully submitted,

_/s Juan Antonio Gonzalez_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, Fl 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN THE MATTER OF THE SEARCH OF:       )
                                      )       Case No.
LOCATIONS WITHIN THE PREMISES         )
TO BE SEARCHED IN ATTACHMENT A        )       **Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, ▮▮▮▮▮▮▮▮, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      The government is conducting a criminal investigation concerning the improper

removal and storage of classified information in unauthorized spaces, as well as the unlawful

concealment or removal of government records. The investigation began as a result of a referral

the United States National Archives and Records Administration (NARA) sent to the United

States Department of Justice (DOJ) on February 9, 2022, hereinafter, "NARA Referral." The

NARA Referral stated that on January 18, 2022, in accordance with the Presidential Records Act

(PRA), NARA received from the office of former President DONALD J. TRUMP, hereinafter

"FPOTUS," via representatives, fifteen (15) boxes of records, hereinafter, the "FIFTEEN

BOXES." The FIFTEEN BOXES, which had been transported from the FPOTUS property at

1100 S Ocean Blvd, Palm Beach, FL 33480, hereinafter, the "PREMISES," a residence and club

known as "Mar-a-Lago," further described in Attachment A, were reported by NARA to contain,

among other things, highly classified documents intermingled with other records.

2.      After an initial review of the NARA Referral, the Federal Bureau of Investigation

(FBI) opened a criminal investigation to, among other things, determine how the documents with

1

classification markings and records were removed from the White House (or any other authorized location(s) for the storage of classified materials) and came to be stored at the PREMISES; determine whether the storage location(s) at the PREMISES were authorized locations for the storage of classified information; determine whether any additional classified documents or records may have been stored in an unauthorized location at the PREMISES or another unknown location, and whether they remain at any such location; and identify any person(s) who may have removed or retained classified information without authorization and/or in an unauthorized space.

3.      The FBI's investigation has established that documents bearing classification markings, which appear to contain National Defense Information (NDI), were among the materials contained in the FIFTEEN BOXES and were stored at the PREMISES in an unauthorized location. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ Further, there is probable cause to believe that additional documents that contain classified NDI or that are Presidential records subject to record retention requirements currently remain at the PREMISES. There is also probable cause to believe that evidence of obstruction will be found at the PREMISES.

4.      I am a Special Agent with the FBI assigned to the Washington Field Office ████████████████████████████████████████. During this time, I have received training at the FBI Academy located at Quantico, Virginia, specific to counterintelligence and espionage investigations. ████████████████████████████████████████████.

2

Based on my experience and training, I am familiar with efforts used to unlawfully collect, retain, and disseminate sensitive government information, including classified NDI.

5.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 1100 S Ocean Blvd, Palm Beach, FL 33480, the "PREMISES," as further described in Attachment A, for the things described in Attachment B.

6.     Based upon the following facts, there is probable cause to believe that the locations to be searched at the PREMISES contain evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793(e), 1519, or 2071.

## SOURCE OF EVIDENCE

7.     The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, and information obtained from other FBI and U.S. Government personnel.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## STATUTORY AUTHORITY AND DEFINITIONS

8.     Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee

3

of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

9.      Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

10.      Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded.  Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "Secret" and must be properly safeguarded.  Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

11.      Sensitive Compartmented Information (SCI) means classified information concerning or derived from intelligence sources, methods, or analytical processes, which is required to be handled within formal access control systems.

12.      Special Intelligence, or "SI," is an SCI control system designed to protect technical and intelligence information derived from the monitoring of foreign communications signals by other than the intended recipients.  The SI control system protects SI-derived information and information relating to SI activities, capabilities, techniques, processes, and procedures.

13.      HUMINT Control System, or "HCS," is an SCI control system designed to protect intelligence information derived from clandestine human sources, commonly referred to as

4

"human intelligence." The HCS control system protects human intelligence-derived information and information relating to human intelligence activities, capabilities, techniques, processes, and procedures.

14. Foreign Intelligence Surveillance Act, or "FISA," is a dissemination control designed to protect intelligence information derived from the collection of information authorized under the Foreign Intelligence Surveillance Act by the Foreign Intelligence Surveillance Court, or "FISC."

15. Classified information may be marked as "Not Releasable to Foreign Nationals/Governments/US Citizens," abbreviated "NOFORN," to indicate information that may not be released in any form to foreign governments, foreign nationals, foreign organizations, or non-U.S. citizens without permission of the originator.

16. Classified information may be marked as "Originator Controlled," abbreviated "ORCON." This marking indicates that dissemination beyond pre-approved U.S. entities requires originator approval.

17. Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person. In order for a foreign government to receive

access to classified information, the originating United States agency must determine that such release is appropriate.

18.    Pursuant to Executive Order 13526, classified information contained on automated information systems, including networks and telecommunications systems, that collect, create, communicate, compute, disseminate, process, or store classified information must be maintained in a manner that: (1) prevents access by unauthorized persons; and (2) ensures the integrity of the information.

19.    32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information. Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information. This section prescribes that Secret and Top Secret information "shall be stored in a [General Services Administration]-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53." It also requires periodic inspection of the container and the use of an Intrusion Detection System, among other things.

20.    Under 18 U.S.C. § 1519:

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

21.    Under 18 U.S.C. § 2071:

(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.

(b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States.

22.     Under the PRA, 44 U.S.C. § 2201:

(2) The term "Presidential records" means documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President. Such term—

     (A) includes any documentary materials relating to the political activities of the President or members of the President's staff, but only if such activities relate to or have a direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President; but

     (B) does not include any documentary materials that are (i) official records of an agency (as defined in section 552(e) of title 5, United States Code; (ii) personal records; (iii) stocks of publications and stationery; or (iv) extra copies of documents produced only for convenience of reference, when such copies are clearly so identified.

23.     Under 44 U.S.C. § 3301(a), government "records" are defined as:

all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.

## PROBABLE CAUSE

### *NARA Referral*

24.     On February 9, 2022, the Special Agent in Charge of NARA's Office of the

Inspector General sent the NARA Referral via email to DOJ. The NARA Referral stated that according to NARA's White House Liaison Division Director, a preliminary review of the FIFTEEN BOXES indicated that they contained "newspapers, magazines, printed news articles, photos, miscellaneous print-outs, notes, presidential correspondence, personal and post-presidential records, and 'a lot of classified records.' Of most significant concern was that highly classified records were unfoldered, intermixed with other records, and otherwise unproperly [*sic*] identified."

25.     On February 18, 2022, the Archivist of the United States, chief administrator for NARA, stated in a letter to Congress's Committee on Oversight and Reform Chairwoman The Honorable Carolyn B. Maloney, "NARA had ongoing communications with the representatives of former President Trump throughout 2021, which resulted in the transfer of 15 boxes to NARA in January 2022 . . . . NARA has identified items marked as classified national security information within the boxes." The letter also stated that, "[b]ecause NARA identified classified information in the boxes, NARA staff has been in communication with the Department of Justice." The letter was made publicly available at the following uniform resource locator (URL): https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf. On February 18, 2022, the same day, the Save America Political Action Committee (PAC) posted the following statement on behalf of FPOTUS: "The National Archives did not 'find' anything, they were given, upon request, Presidential Records in an ordinary and routine process to ensure the preservation of my legacy and in accordance with the Presidential Records Act . . . ." An image of this statement is below.



Statement by Donald J. Trump, 45th President of the
United States of America

The National Archives did not "find" anything, they were given, upon request,
Presidential Records in an ordinary and routine process to ensure the
preservation of my legacy and in accordance with the Presidential Records
Act. If this was anyone but "Trump," there would be no story here. Instead, the
Democrats are in search of their next Scam. The Russia, Russia, Russia Hoax
turned out to be a Democrat inspired fake story to help Crooked Hillary
Clinton. Impeachment Hoax #1. Impeachment Hoax #2, and so much more.
has all been a Hoax. The Fake News is making it seem like me, as the President
of the United States, was working in a filing room. No. I was busy destroying
ISIS, building the greatest economy America had ever seen, brokering Peace
deals, making sure Russia didn't attack Ukraine, making sure China didn't take
over Taiwan, making sure there was no inflation, creating an energy
independent country, rebuilding our military and law enforcement, saving our
Second Amendment, protecting our Border and cutting taxes. Now, Russia is
invading Ukraine, our economy is being destroyed, our Border is once again
overrun, and the mandate continues. Instead of focusing on America, the
media just wants to talk about their plan to "get" Trump. The people won't
stand for it any longer!

26.

27.

28.

29.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

***Boxes Containing Documents Were Transported from the White House to Mar-a-Lago***

30.     According to a CBS Miami article titled "Moving Trucks Spotted At Mar-a-Lago,"

published Monday, January 18, 2021, at least two moving trucks were observed at the PREMISES

on January 18, 2021. ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

31.     ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████

32.     ███████████████████████████████



33.

34.

35. ██████████████████████████████████████

36. ██████████████████████████████████████

37. ██████████████████████████████████████

***Provision of the Fifteen Boxes to NARA***

38. ██████████████████████████████████████

39.     On or about May 6, 2021, NARA made a request for the missing PRA records and

continued to make requests until approximately late December 2021 when NARA was informed

twelve boxes were found and ready for retrieval at the PREMISES.

40. ███████████████████████████████████████████

41. ███████████████████████████████████████████

42. ███████████████████████████████████████████

43. ███████████████████████████████████████████

44. ███████████████████████████████████████████



45.

46.

### *The FIFTEEN BOXES Provided to NARA Contain Classified Information*

47.     From May 16-18, 2022, FBI agents conducted a preliminary review of the

FIFTEEN BOXES provided to NARA and identified documents with classification markings in

fourteen of the FIFTEEN BOXES. A preliminary triage of the documents with classification

markings revealed the following approximate numbers: 184 unique documents bearing

classification markings, including 67 documents marked as CONFIDENTIAL, 92 documents

marked as SECRET, and 25 documents marked as TOP SECRET. Further, the FBI agents

observed markings reflecting the following compartments/dissemination controls: HCS, FISA,

ORCON, NOFORN, and SI. Based on my training and experience, I know that documents

classified at these levels typically contain NDI. Several of the documents also contained what

appears to be FPOTUS's handwritten notes.

48.

49.

17

████████████████████████████████████████████████████████████

███████████████████████

50. ████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████

██████████████████████████████████████████████████

51. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████



52. ██████████████████████████████████████████

████████████████████████████████████████ In the second such letter, which is attached as

Exhibit 1, FPOTUS COUNSEL 1 asked DOJ to consider a few "principles," which include

FPOTUS COUNSEL 1's claim that a President has absolute authority to declassify documents. In

this letter, FPOTUS COUNSEL 1 requested, among other things, that "DOJ provide this letter to

any judicial officer who is asked to rule on any motion pertaining to this investigation, or on any

application made in connection with any investigative request concerning this investigation."

53. I am aware of an article published in *Breitbart* on May 5, 2022, available at

https://www.breitbart.com/politics/2022/05/05/documents-mar-a-lago-marked-classified-were-

already-declassified-kash-patel-says/, which states that Kash Patel, who is described as a former

top FPOTUS administration official, characterized as "misleading" reports in other news

organizations that NARA had found classified materials among records that FPOTUS provided to

NARA from Mar-a-Lago. Patel alleged that such reports were misleading because FPOTUS had

declassified the materials at issue. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████

54. ██████████████████████████████████████



55. ████████████████████████████

56. ████████████████████████████



57.

58.



59.

60.

61.     On June 8, 2022, DOJ COUNSEL sent FPOTUS COUNSEL 1 a letter, which

reiterated that the PREMISES are not authorized to store classified information and requested the

preservation of the STORAGE ROOM and boxes that had been moved from the White House to

the PREMISES.  Specifically, the letter stated in relevant part:

> As I previously indicated to you, Mar-a-Lago does not include a secure location
> authorized for the storage of classified information.  As such, it appears that since the time
> classified documents                                                    were removed
> from the secure facilities at the White House and moved to Mar-a-Lago on or around
> January 20, 2021, they have not been handled in an appropriate manner or stored in an
> appropriate location.  Accordingly, we ask that the room at Mar-a-Lago where the
> documents had been stored be secured and that all of the boxes that were moved from the
> White House to Mar-a-Lago (along with any other items in that room) be preserved in that
> room in their current condition until further notice.

---

[2] 18 U.S.C. § 793(e) does not use the term "classified information," but rather criminalizes the unlawful retention of
"information relating to the national defense."  The statute does not define "information related to the national
defense," but courts have construed it broadly.  *See Gorin v. United States*, 312 U.S. 19, 28 (1941) (holding that the
phrase "information relating to the national defense" as used in the Espionage Act is a "generic concept of broad
connotations, referring to the military and naval establishments and the related activities of national preparedness").
In addition, the information must be "closely held" by the U.S. government.  *See United States v. Squillacote*, 221
F.3d 542, 579 (4th Cir. 2000) ("[I]nformation made public by the government as well as information never protected
by the government is not national defense information."); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir.
1988).  Certain courts have also held that the disclosure of the documents must be potentially damaging to the United
States.  *See Morison*, 844 F.2d at 1071-72.

On June 9, 2022, FPOTUS COUNSEL 1 sent an email to DOJ COUNSEL, stating, "I write to acknowledge receipt of this letter."





65.

66.



67.

68.

69.

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████

***There is Probable Cause to Believe That Documents Containing Classified NDI and
Presidential Records Remain at the Premises***

70.  ████████████████████████████████████████

████████████████████████████████ ████████████████████████.

████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

71.  ████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

72. ██████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

73. ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

74. ████████████████████████████████████████

75. ████████████████████████████████████████

76. ████████████████████████████████████████

[REDACTED]

77.     Based upon this investigation, I believe that the STORAGE ROOM, FPOTUS's

residential suite, Pine Hall, the "45 Office," and other spaces within the PREMISES are not

currently authorized locations for the storage of classified information or NDI. Similarly, based

upon this investigation, I do not believe that any spaces within the PREMISES have been

authorized for the storage of classified information at least since the end of FPOTUS's

Presidential Administration on January 20, 2021.

78.     As described above, evidence of the SUBJECT OFFENSES has been stored in

multiple locations at the PREMISES. [REDACTED]

[REDACTED]

Accordingly, this affidavit seeks authorization to search the "45 Office" and all storage rooms and

any other rooms or locations where boxes or records may be stored within the PREMISES, as further described in Attachment A. The PREMISES is currently closed to club members for the summer; however, as specified in Attachment A, if at the time of the search, there are areas of the PREMISES being occupied, rented, or used by third parties, and not otherwise used or available to be used by FPOTUS and his staff, the search would not include such areas.

## CONCLUSION

79.     Based on the foregoing facts and circumstances, I submit that probable cause exists to believe that evidence, contraband, fruits of crime, or other items illegally possessed in violation 18 U.S.C. §§ 793(e), 2071, or 1519 will be found at the PREMISES. Further, I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.

### REQUEST FOR SEALING

80.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and the FBI has not yet identified all potential criminal confederates nor located all evidence related to its investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness by allowing criminal parties an opportunity to flee, destroy evidence (stored electronically and otherwise), change patterns of behavior, and notify criminal confederates.

## SEARCH PROCEDURES FOR HANDLING POTENTIAL ATTORNEY-CLIENT PRIVILEGED INFORMATION

The following procedures will be followed at the time of the search in order to protect against disclosures of attorney-client privileged material:

81.     These procedures will be executed by: (a) law enforcement personnel conducting this investigation (the "Case Team"); and (b) law enforcement personnel not participating in the investigation of the matter, who will search the "45 Office" and be available to assist in the event that a procedure involving potentially attorney-client privileged information is required (the "Privilege Review Team").

82.     The Case Team will be responsible for searching the **TARGET PREMISES**. However, the Privilege Review Team will search the "45 Office" and conduct a review of the seized materials from the "45 Office" to identify and segregate documents or data containing potentially attorney-client privileged information.

83.     If the Privilege Review Team determines the documents or data are not potentially attorney-client privileged, they will be provided to the law-enforcement personnel assigned to the investigation.   If at any point the law-enforcement personnel assigned to the investigation subsequently identify any data or documents that they consider may be potentially attorney-client privileged, they will cease the review of such identified data or documents and refer the materials to the Privilege Review Team for further review by the Privilege Review Team.

84.     If the Privilege Review Team determines that documents are potentially attorney-client privileged or merit further consideration in that regard, a Privilege Review Team attorney may do any of the following: (a) apply *ex parte* to the court for a determination whether or not the documents contain attorney-client privileged material; (b) defer seeking court intervention and

continue to keep the documents inaccessible to law-enforcement personnel assigned to the
investigation; or (c) disclose the documents to the potential privilege holder, request the privilege
holder to state whether the potential privilege holder asserts attorney-client privilege as to any
documents, including requesting a particularized privilege log, and seek a ruling from the court
regarding any attorney-client privilege claims as to which the Privilege Review Team and the
privilege-holder cannot reach agreement.

Respectfully submitted,



Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me by
telephone (WhatsApp) or other reliable electronic
means this  5  day of August, 2022:

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1



**SILVERMAN THOMPSON**
Silverman Thompson Slutkin White

**ATTORNEYS AT LAW**

*A Limited Liability Company*
400 East Pratt Street – Suite 900
Baltimore, Maryland 21202
Telephone 410.385.2225
Facsimile 410.547.2432
silvermanthompson.com

*Baltimore | Towson | New York | Washington, DC*

Writer's Direct Contact:
Evan Corcoran
410-385-2225
ecorcoran@silvermanthompson.com

May 25, 2022

***Via Electronic Mail***

Jay I. Bratt, Esquire
Chief
Counterintelligence & Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania, Avenue, N.W.
Washington, D.C. 20530

Re:    Presidential Records Investigation

Dear Jay:

I write on behalf of President Donald J. Trump regarding the above-referenced matter.

Public trust in the government is low. At such times, adherence to the rules and long-standing policies is essential. President Donald J. Trump is a leader of the Republican Party. The Department of Justice (DOJ), as part of the Executive Branch, is under the control of a President from the opposite party. It is critical, given that dynamic, that every effort is made to ensure that actions by DOJ that may touch upon the former President, or his close associates, do not involve politics.

There have been public reports about an investigation by DOJ into Presidential Records purportedly marked as classified among materials that were once in the White House and unknowingly included among the boxes brought to Mar-a-Lago by the movers. It is important to emphasize that when a request was made for the documents by the National Archives and Records Administration (NARA), President Trump readily and voluntarily agreed to their transfer to NARA. The communications regarding the transfer of boxes to NARA were friendly, open, and straightforward. President Trump voluntarily ordered that the boxes be provided to NARA. No legal objection was asserted about the transfer. No concerns were raised about the contents of the boxes. It was a voluntary and open process.

Unfortunately, the good faith demonstrated by President Trump was not matched once the boxes arrived at NARA. Leaks followed. And, once DOJ got involved, the leaks continued. Leaks about any investigation are concerning. Leaks about an investigation that involve the residence of a former President who is still active on the national political scene are particularly troubling.

Jay I. Bratt
May 25, 2022
Page **2** of **3**

It is important to note a few bedrock principles:

### (1) A President Has Absolute Authority To Declassify Documents.

Under the U.S. Constitution, the President is vested with the highest level of authority when it comes to the classification and declassification of documents. *See* U.S. Const., Art. II, § 2 ("The President [is] Commander in Chief of the Army and Navy of the United States[.]"). His constitutionally-based authority regarding the classification and declassification of documents is unfettered. *See Navy v. Egan*, 484 U.S. 518, 527 (1988) ("[The President's] authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.").

### (2) Presidential Actions Involving Classified Documents Are Not Subject To Criminal Sanction.

Any attempt to impose criminal liability on a President or former President that involves his actions with respect to documents marked classified would implicate grave constitutional separation-of-powers issues. Beyond that, the primary criminal statute that governs the unauthorized removal and retention of classified documents or material *does not apply* to the President. That statute provides, in pertinent part, as follows:

> Whoever, being an officer, employee, contractor, or consultant of the United States, and, by virtue of his office, employment, position, or contract, becomes possessed of documents or materials containing classified information of the United States, knowingly removes such documents or materials without authority and with the intent to retain such documents or materials at an unauthorized location shall be fined under this title or imprisoned for not more than five years, or both.

18 U.S.C. § 1924(a). An element of this offense, which the government must prove beyond a reasonable doubt, is that the accused is "an officer, employee, contractor, or consultant of the United States." The President is none of these. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,* 561 U.S. 477, 497–98 (2010) (citing U.S. Const., Art. II, § 2, cl. 2) ("The people do not vote for the 'Officers of the United States.'"); *see also Melcher v. Fed. Open Mkt. Comm.*, 644 F. Supp. 510, 518–19 (D.D.C. 1986), *aff'd*, 836 F.2d 561 (D.C. Cir. 1987) ("[a]n officer of the United States can only be appointed by the President, by and with the advice and consent of the Senate, or by a court of law, or the head of a department. A person who does not derive his position from one of these sources is not an officer of the United States in the sense of the Constitution."). Thus, the statute does not apply to acts by a President.

Jay I. Bratt
May 25, 2022
Page **3** of **3**

### (3) DOJ Must Be Insulated From Political Influence.

According to the Inspector General of DOJ, one of the top challenges facing the Department is the public perception that DOJ is influenced by politics. The report found that "[o]ne important strategy that can build public trust in the Department is to ensure adherence to policies and procedures designed to protect DOJ from accusations of political influence or partial application of the law." *See* https://oig.justice.gov/reports/top-management-and-performance-challenges-facing-department-justice-2021 (last visited May 25, 2022). We request that DOJ adhere to long-standing policies and procedures regarding communications between DOJ and the White House regarding pending investigative matters which are designed to prevent political influence in DOJ decision-making.

### (4) DOJ Must Be Candid With Judges And Present Exculpatory Evidence.

Long-standing DOJ policy requires that DOJ attorneys be candid in representations made to judges. Pursuant to those policies, we request that DOJ provide this letter to any judicial officer who is asked to rule on any motion pertaining to this investigation, or on any application made in connection with any investigative request concerning this investigation.

The official policy of DOJ further requires that prosecutors present exculpatory evidence to a grand jury. Pursuant to that policy, we request that DOJ provide this letter to any grand jury considering evidence in connection with this matter, or any grand jury asked to issue a subpoena for testimony or documents in connection with this matter.

Thank you for your attention to this request.

With best regards,

M. Evan Corcoran

cc:     Matthew G. Olsen
        Assistant Attorney General
        National Security Division
        *Via Electronic Mail*

**ATTACHMENT A**

*Property to be searched*

The premises to be searched, 1100 S Ocean Blvd, Palm Beach, FL 33480, is further described as a resort, club, and residence located near the intersection of Southern Blvd and S Ocean Blvd. It is described as a mansion with approximately 58 bedrooms, 33 bathrooms, on a 17-acre estate. The locations to be searched include the "45 Office," all storage rooms, and all other rooms or areas within the premises used or available to be used by FPOTUS and his staff and in which boxes or documents could be stored, including all structures or buildings on the estate. It does not include areas currently (i.e., at the time of the search) being occupied, rented, or used by third parties (such as Mar-a-Largo Members) and not otherwise used or available to be used by FPOTUS and his staff, such as private guest suites.

**ATTACHMENT B**

*Property to be seized*

All physical documents and records constituting evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793, 2071, or 1519, including the following:

a. Any physical documents with classification markings, along with any containers/boxes (including any other contents) in which such documents are located, as well as any other containers/boxes that are collectively stored or found together with the aforementioned documents and containers/boxes;

b. Information, including communications in any form, regarding the retrieval, storage, or transmission of national defense information or classified material;

c. Any government and/or Presidential Records created between January 20, 2017, and January 20, 2021; or

d. Any evidence of the knowing alteration, destruction, or concealment of any government and/or Presidential Records, or of any documents with classification markings.

Case 9:22-mj-08332-BER Document 102-2 Entered on FLSD Docket 09/30/2022 Page 53 of 113
Case 9:22-mj-08332-BER Document 89 *SEALED* Entered on FLSD Docket 08/25/2022 Page
1 of 13

FILED BY _____ D.C.

AUG 25 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-MJ-8332-BER

IN RE SEALED SEARCH WARRANT

UNDER SEAL

_____/

## UNITED STATES' SEALED, *EX PARTE* MEMORANDUM OF LAW REGARDING PROPOSED REDACTIONS

Pursuant to this Court's August 18 and August 22, 2022 orders, the United States respectfully submits this sealed, *ex parte* memorandum of law setting forth the justifications for its proposed redactions to the affidavit submitted to the Court on August 5, 2022, in support of the government's application for a search warrant at a property of former President Donald J. Trump. *See* Docket Entries ("D.E.") 1, 74, 80. For the reasons explained below, the materials the government marked for redaction in the attached document must remain sealed to protect the safety and privacy of a significant number of civilian witnesses, in addition to law enforcement personnel, as well as to protect the integrity of the ongoing investigation and to avoid disclosure of grand jury material in violation of the Federal Rules of Criminal Procedure.

### Procedural Background

On August 8, 2022, the Department of Justice executed a search warrant, issued by this Court upon the requisite finding of probable cause, at the premises located at 1100 S. Ocean Blvd., Palm Beach, Florida 33480, a property of former President Trump. Given the circumstances presented in this matter and the public interest in transparency, and in the wake

The Court found that disclosure of the Affidavit would likely result in witnesses being "quickly and broadly identified over social media and other communication channels, which could lead to them being harassed and intimidated." *Id.* at 9. The Court gave "great weight" to "the significant likelihood that unsealing the Affidavit would harm legitimate privacy interests," with disclosures potentially serving to "impede the ongoing investigation through obstruction of justice and witness intimidation or retaliation." *Id.* at 9-10. And the Court found that the Affidavit contains "critically important and detailed investigative facts: highly sensitive information about witnesses . . . ; specific investigative techniques; and information required to be kept under seal pursuant to Federal Rule of Criminal Procedure 6(e)," the disclosure of which "would detrimentally affect this investigation and future investigations." *Id.* at 10. However, noting that the warrant involves "matters of significant public concern," *id.*, the Court concluded that "the present record" does not "justif[y] keeping the *entire* Affidavit under seal," *id.* at 13 (emphasis added).

## Argument

### The Redacted Materials Must Remain Under Seal

As the Court has found, "[p]rotecting the integrity and secrecy of an ongoing criminal investigation is a well-recognized compelling governmental interest." D.E. 80 at 6 (citing, *inter alia*, *United States v. Valenti*, 986 F.2d 708, 714 (11th Cir. 1993)). Indeed, "[a]t the pre-indictment stage, the Government's need to conceal the scope and direction of its investigation, as well as its investigative sources and methods, is at its zenith." D.E. 80 at 7-8 (citing *Blalock v. United States*, 844 F.2d 1546, 1550 n.5 (11th Cir. 1988)). Counsel for the Intervenors have also acknowledged that certain portions of the affidavit must likely remain

3

of the former President's public confirmation of the search and his representatives' public characterizations of the materials sought, the government moved to unseal the search warrant, its attachments, and the Property Receipt summarizing materials seized, and this Court granted the government's motion. D.E. 18, 41.

A number of news media organizations and other entities (the "Intervenors") have filed motions to unseal these and other materials associated with the search warrant, including the affidavit. The government submitted its omnibus response to those motions on August 15, 2022. D.E. 59. The Court conducted a hearing on August 18, 2022, at the conclusion of which the Court directed the government to file under seal its proposed redactions to the affidavit and a legal memorandum setting forth the justifications for the proposed redactions.[1] D.E. 74.

In a subsequent order, the Court noted that the government "has met its burden of showing good cause/a compelling interest that overrides any public interest in unsealing the full contents of the Affidavit." D.E. 80 at 12. In that order, the Court observed that the obstruction and threat concerns raised by the government were "not hypothetical in this case." *Id.* at 8. In particular, the Court cited its prior finding of probable cause that a statute prohibiting obstruction of justice has been violated, and further relied upon the post-search increase in specific threats of violence to identified FBI agents, overall violent threats to FBI personnel, and the armed attack on the FBI office in Cincinnati. *Id.* at 8-9.

---

[1] Based on the government's and the Intervenors' agreement that certain additional documents (namely, the government's motion to seal, the Court's sealing order, and two cover sheets) could be publicly released with minor redactions to protect government personnel, the Court also ordered those documents released. D.E. 74.

under seal to protect information such as witness identities and investigative sources and methods.  Hrg. Tr. at 35.

The government has carefully reviewed the affidavit and has identified five categories of information that must remain under seal in order to protect the safety of multiple civilian witnesses whose information was included throughout the affidavit and contributed to the finding of probable cause, as well as the integrity of the ongoing investigation.   In the attached chart, the government has identified each category that applies to information the government proposes to redact.   Some information falls within more than one category.   The categories, described further below, are (1) information from a broad range of civilian witnesses who may be subject to "witness intimidation or retaliation," D.E. 80 at 9; (2) information regarding investigative avenues and techniques that could provide a roadmap for potential ways to obstruct the investigation, *id.* at 9-10; (3) information whose disclosure is prohibited under Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)"), such as grand jury subpoenas, testimony, and related material, *id.* at 10; (4) information whose disclosure could risk the safety of law enforcement personnel, *id.* at 9; and (5) information whose disclosure could harm "legitimate privacy interests" of third parties, *id.*

### 1.  Witness Information

First and foremost, the government must protect the identity of witnesses at this stage of the investigation to ensure their safety.   As this Court noted, if information relating to witnesses were disclosed, "it is likely that even witnesses who are not expressly named in the Affidavit would be quickly and broadly identified over social media and other communication channels, which could lead to them being harassed and intimidated."   D.E. 80 at 9.   *See also,*

4

*e.g.*, *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979) (describing the risk that "prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony"); *United States v. Steinger*, 626 F. Supp. 2d 1231, 1235 (S.D. Fla. 2009) (similar).

████████████████████████████████ ██ ███████████
██████████████████████████████████ Information in the affidavit could be used to identify many, if not all, of these witnesses.   For example, ███
██████████████████████████████████████
████████████████████████████████████ ██
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
████████████████████████████
  ██████████████████████████████
█████████████████████████████████
██████████████████ ███████████████████
█████████████████████████████████████
████████████████████████████████████
███████████████████████████████████
██████████████████████████████
██████████████████████████████ ██████████



If witnesses' identities are exposed, they could be subjected to harms including retaliation, intimidation, or harassment, and even threats to their physical safety. As the Court has already noted, "these concerns are not hypothetical in this case." D.E. 80 at 8.

Case 9:22-mj-08392-BER Document 102 *SEALED* Entered on FLSD Docket 09/08/2022 Page 59 of 113
Case 9:22-mj-08332-BER Document 89 *SEALED* Entered on FLSD Docket 08/25/2022 Page
7 of 13

Meanwhile, FBI agents who have been publicly identified in connection with this investigation have received repeated threats of violence from members of the public. Exposure of witnesses' identities would likely erode their trust in the government's investigation, and it would almost certainly chill other potential witnesses from coming forward in this investigation and others.

## 2. Investigation "Road Map"

As Judge Jordan explained in *Steinger*, if details about an ongoing investigation are prematurely disclosed, such disclosures "would compromise the investigation and might also lead to the destruction of evidence." 626 F. Supp. 2d at 1235 (citing *Douglas Oil Co.*, 441 U.S. at 218-19); *see also, e.g., Patel v. United States*, No. 9:19-MC-81181, 2019 WL 4251269, at *5 (S.D. Fla. Sept. 9, 2019) (agreeing with the government that disclosure of information "would severely prejudice" its investigation, including by "prematurely disclosing its scope and direction, subjects, and potential witnesses, and could result in the destruction of evidence"); D.E. 80 at 9-10 (disclosure of investigative "sources and methods" "would detrimentally affect this investigation and future investigations").

Although the public is now aware that the government executed a search warrant at the premises owned by the former President and seized documents marked as classified, the affidavit is replete with further details that would provide a roadmap for anyone intent on obstructing the investigation. "Maximizing the Government's access to untainted facts increases its ability to make a fully-informed prosecutive decision." D.E. 80 at 8.

For example,

7



Revealing this information could thus adversely impact the government's pursuit of relevant

evidence.[2]

    In addition, revealing this information could severely disadvantage the government as

it seeks further information from witnesses.   For example,

---

[2] Additionally, the Court has noted that disclosure of certain information pertaining to physical aspects of the premises could negatively affect the Secret Service's ability to carry out its protective functions.  D.E. 80 at 10.  Although the Department of Justice is not in a position at this time to assess those potential harms, the information in the affidavit describing physical aspects of the premises fits within the category of information whose disclosure would provide a "road map" of investigative techniques and avenues,

████████████████████████████████████████████████████

████████████

These concerns are particularly compelling in this case.   As explained in the affidavit,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ ██ █ ██ ██████████

██████████████████ ████

████████████████████████████████████████████████████

███████████████ ████ ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ █████ ██

█████ ████████████████████████████████

████████████████████████████████████████████████████

██████████████████ █████████████

████████████████████████████████████████████████████

███████████████████████████████████   In

short, the government has well-founded concerns that steps may be taken to frustrate or otherwise interfere with this investigation if facts in the affidavit were prematurely disclosed.

9

### 3. Rule 6(e)

The affidavit contains certain information that must be kept under seal pursuant to Federal Rule of Criminal Procedure 6(e) because it may disclose "a matter occurring before the grand jury." Although "Rule 6(e) does not draw a veil of secrecy over all matters occurring in the world that happen to be investigated by a grand jury," it bars disclosure of information that "would reveal something about the grand jury's identity, investigation, or deliberation." *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016) (internal quotations omitted).[3] ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮

### 4. Safety of Law Enforcement Personnel

Minor but important redactions are necessary to protect the safety of law enforcement



personal. *See* D.E. 80 at 3 (redactions in other materials "are appropriate to protect the identity and personal safety of" an investigative agent). Specifically, information in the affidavit that would identify the affiant, such as by name or through biographical information, *see* Aff. ¶ 4, should remain under seal. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████  ██ ████████

### 5. Privacy Interests

As the Supreme Court has long recognized, premature disclosure of investigative information creates a risk that "persons who are accused but exonerated" may be "held up to public ridicule." *Douglas Oil Co.*, 441 U.S. at 219; *see also, e.g.*, *Steinger*, 626 F. Supp. 2d at 1235 (disclosure of names of subjects and of matters being investigated "could have devastating consequences for those persons who have been cleared of any misconduct, as well as for those still under investigation"). [4] The government recognizes that the former President has spoken publicly about this investigation and has said in a public statement that he wishes for the affidavit to be disclosed in its entirety, although the Court has noted that "[n]either Former President Trump nor anyone else purporting to be the owner of the Premises has filed a pleading taking a position on the Intervenors' Motion to Unseal." [5] D.E.

---

[4] Protecting the identities of uncharged individuals is also consistent with government counsel's professional responsibilities. *See* Justice Manual § 9-27.760 ("Limitation on Identifying Uncharged Third-Parties Publicly").

[5] *See* Perry Stein & Josh Dawsey, "Trump Wants Mar-a-Lago Affidavit Released, As Some Aides Ponder Risk," *Washington Post* (Aug. 17, 2022), *available at* https://www.washingtonpost.com/national-security/2022/08/16/trump-mar-a-lago-affidavit/. ████████████████████

80 at 1-2. Nevertheless, the affidavit contains additional information about others that could harm these individuals' privacy and reputational interests if disclosed.

For example, 

## Conclusion

For the reasons stated herein, the Court should maintain under seal the text the government has marked for redaction. The government defers to the Court to determine whether the redactions are "so extensive that" release of the remainder of the affidavit would "result in a meaningless disclosure." D.E. 80 at 12. Should the Court order disclosure of a redacted version of the affidavit, and if the Court agrees with the government's proposed redactions, the government will submit a final version of the redacted affidavit for public release.

In the interest of transparency, as well as the principle that limitations on public access



12

to judicial proceedings should be "narrowly tailored," *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982), the government respectfully submits that certain portions of this filing may be unsealed, including the introductory segment up through the first two paragraphs in the Argument section on page 4, as well as certain text in the sections that follow describing relevant provisions of law. The government will submit a version of this filing that identifies the portions that can be publicly filed, along with its proposed redactions, forthwith. And with the Court's permission, the government will confer with counsel for the former President as to whether counsel or the former President has any objection to unsealing the letter from counsel included as Exhibit 1 to the affidavit. Absent any such objection, the government supports unsealing the letter.

Respectfully submitted,

*/s Juan Antonio Gonzalez*
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, FL 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov

*/s Jay I. Bratt*
JAY I. BRATT
CHIEF
Counterintelligence and Export Control
Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Illinois Bar No. 6187361
Tel: 202-233-0986
Email: jay.bratt2@usdoj.gov

Exhibit B

## ATTACHMENT



| Aff. Paragraph | Reason(s) for withholding |
|---|---|
| Prefatory language | Agent safety |
| ¶ 3 | |
| ¶ 4 | Agent safety |
| Heading above ¶ 26 | |
| ¶ 26 | |
| ¶ 27 | |
| ¶ 28 | |
| ¶ 29 | |
| ¶ 30 | |
| ¶ 31 | |
| ¶ 32 | |
| ¶ 33 | |
| ¶ 34 | |
| ¶ 35 | |
| ¶ 36 | |
| ¶ 37 | |
| ¶ 38 | |
| ¶ 39 | |
| ¶ 40 | |
| ¶ 41 | |
| ¶ 42 | |
| ¶ 43 | |
| ¶ 44 | |
| ¶ 45 | |
| ¶ 46 | |
| ¶ 48 | |
| Heading above ¶ 49 | |
| ¶ 49 | |
| ¶ 50 | |
| Heading above ¶ 51 | |
| ¶ 51 | |



| ¶ 52 | |
| ¶ 53 | |
| ¶ 54 | |
| ¶ 55 | |
| ¶ 56 | |
| ¶ 57 | |
| ¶ 58 | |
| ¶ 59 | |
| ¶ 60 | |
| ¶ 61 | |
| Heading above ¶ 62 | |
| ¶ 63 | |
| ¶ 64 | |
| ¶ 65 | |
| ¶ 66 | |
| ¶ 67 | |
| ¶ 68 | |
| ¶ 69 | |
| ¶ 70 | |
| ¶ 71 | |
| ¶ 72 | |
| ¶ 73 | |
| ¶ 74 | |
| ¶ 75 | |
| ¶ 76 | |
| ¶ 78 | |
| Agent signature | Agent safety |

**Attachment 3**

**Redacted Public Underlying Application Materials
(MJ Dkt 125)**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY _JM_ D.C.

SEP 09 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

IN THE MATTER OF THE SEARCH OF:        )
                                       )   Case No.
LOCATIONS WITHIN THE PREMISES          )
TO BE SEARCHED IN ATTACHMENT A         )   **Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, ▓▓▓▓▓▓▓▓, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      The government is conducting a criminal investigation concerning the improper removal and storage of classified information in unauthorized spaces, as well as the unlawful concealment or removal of government records.  The investigation began as a result of a referral the United States National Archives and Records Administration (NARA) sent to the United States Department of Justice (DOJ) on February 9, 2022, hereinafter, "NARA Referral."  The NARA Referral stated that on January 18, 2022, in accordance with the Presidential Records Act (PRA), NARA received from the office of former President DONALD J. TRUMP, hereinafter "FPOTUS," via representatives, fifteen (15) boxes of records, hereinafter, the "FIFTEEN BOXES."  The FIFTEEN BOXES, which had been transported from the FPOTUS property at 1100 S Ocean Blvd, Palm Beach, FL 33480, hereinafter, the "PREMISES," a residence and club known as "Mar-a-Lago," further described in Attachment A, were reported by NARA to contain, among other things, highly classified documents intermingled with other records.

2.      After an initial review of the NARA Referral, the Federal Bureau of Investigation (FBI) opened a criminal investigation to, among other things, determine how the documents with

1

classification markings and records were removed from the White House (or any other authorized

location(s) for the storage of classified materials) and came to be stored at the PREMISES;

determine whether the storage location(s) at the PREMISES were authorized locations for the

storage of classified information; determine whether any additional classified documents or

records may have been stored in an unauthorized location at the PREMISES or another unknown

location, and whether they remain at any such location; and identify any person(s) who may have

removed or retained classified information without authorization and/or in an unauthorized space.

3.      The FBI's investigation has established that documents bearing classification

markings, which appear to contain National Defense Information (NDI), were among the

materials contained in the FIFTEEN BOXES and were stored at the PREMISES in an

unauthorized location.  Since the FIFTEEN BOXES were provided to NARA, additional

documents bearing classification markings, which appear to contain NDI and were stored at the

PREMISES in an unauthorized location, have been produced to the government in response to a

grand jury subpoena directed to FPOTUS's post-presidential office and seeking documents

containing classification markings stored at the PREMISES and otherwise under FPOTUS's

control.  Further, there is probable cause to believe that additional documents that contain

classified NDI or that are Presidential records subject to record retention requirements currently

remain at the PREMISES.  There is also probable cause to believe that evidence of obstruction

will be found at the PREMISES.

4.      I am a Special Agent with the FBI assigned to the Washington Field Office

████████████████████████████████████████.  During this time, I have received training

at the FBI Academy located at Quantico, Virginia, specific to counterintelligence and espionage

investigations. ████████████████████████████████████████████.

Based on my experience and training, I am familiar with efforts used to unlawfully collect, retain, and disseminate sensitive government information, including classified NDI.

5.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 1100 S Ocean Blvd, Palm Beach, FL 33480, the "PREMISES," as further described in Attachment A, for the things described in Attachment B.

6.     Based upon the following facts, there is probable cause to believe that the locations to be searched at the PREMISES contain evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793(e), 1519, or 2071.

## SOURCE OF EVIDENCE

7.     The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, and information obtained from other FBI and U.S. Government personnel.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## STATUTORY AUTHORITY AND DEFINITIONS

8.     Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee

of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

9.      Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

10.     Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded.  Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "Secret" and must be properly safeguarded.  Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

11.     Sensitive Compartmented Information (SCI) means classified information concerning or derived from intelligence sources, methods, or analytical processes, which is required to be handled within formal access control systems.

12.     Special Intelligence, or "SI," is an SCI control system designed to protect technical and intelligence information derived from the monitoring of foreign communications signals by other than the intended recipients.  The SI control system protects SI-derived information and information relating to SI activities, capabilities, techniques, processes, and procedures.

13.     HUMINT Control System, or "HCS," is an SCI control system designed to protect intelligence information derived from clandestine human sources, commonly referred to as

"human intelligence." The HCS control system protects human intelligence-derived information and information relating to human intelligence activities, capabilities, techniques, processes, and procedures.

14. Foreign Intelligence Surveillance Act, or "FISA," is a dissemination control designed to protect intelligence information derived from the collection of information authorized under the Foreign Intelligence Surveillance Act by the Foreign Intelligence Surveillance Court, or "FISC."

15. Classified information may be marked as "Not Releasable to Foreign Nationals/Governments/US Citizens," abbreviated "NOFORN," to indicate information that may not be released in any form to foreign governments, foreign nationals, foreign organizations, or non-U.S. citizens without permission of the originator.

16. Classified information may be marked as "Originator Controlled," abbreviated "ORCON." This marking indicates that dissemination beyond pre-approved U.S. entities requires originator approval.

17. Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person. In order for a foreign government to receive

access to classified information, the originating United States agency must determine that such release is appropriate.

18.     Pursuant to Executive Order 13526, classified information contained on automated information systems, including networks and telecommunications systems, that collect, create, communicate, compute, disseminate, process, or store classified information must be maintained in a manner that: (1) prevents access by unauthorized persons; and (2) ensures the integrity of the information.

19.     32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information. Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information. This section prescribes that Secret and Top Secret information "shall be stored in a [General Services Administration]-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53." It also requires periodic inspection of the container and the use of an Intrusion Detection System, among other things.

20.     Under 18 U.S.C. § 1519:

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

21.     Under 18 U.S.C. § 2071:

(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.

6

(b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States.

22.     Under the PRA, 44 U.S.C. § 2201:

(2) The term "Presidential records" means documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President. Such term—

> (A) includes any documentary materials relating to the political activities of the President or members of the President's staff, but only if such activities relate to or have a direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President; but

> (B) does not include any documentary materials that are (i) official records of an agency (as defined in section 552(e) of title 5, United States Code; (ii) personal records; (iii) stocks of publications and stationery; or (iv) extra copies of documents produced only for convenience of reference, when such copies are clearly so identified.

23.     Under 44 U.S.C. § 3301(a), government "records" are defined as:

all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.

## **PROBABLE CAUSE**

### *NARA Referral*

24.     On February 9, 2022, the Special Agent in Charge of NARA's Office of the

Inspector General sent the NARA Referral via email to DOJ.  The NARA Referral stated that according to NARA's White House Liaison Division Director, a preliminary review of the FIFTEEN BOXES indicated that they contained "newspapers, magazines, printed news articles, photos, miscellaneous print-outs, notes, presidential correspondence, personal and post-presidential records, and 'a lot of classified records.'  Of most significant concern was that highly classified records were unfoldered, intermixed with other records, and otherwise unproperly [*sic*] identified."

25.     On February 18, 2022, the Archivist of the United States, chief administrator for NARA, stated in a letter to Congress's Committee on Oversight and Reform Chairwoman The Honorable Carolyn B. Maloney, "NARA had ongoing communications with the representatives of former President Trump throughout 2021, which resulted in the transfer of 15 boxes to NARA in January 2022 . . . .  NARA has identified items marked as classified national security information within the boxes."  The letter also stated that, "[b]ecause NARA identified classified information in the boxes, NARA staff has been in communication with the Department of Justice."  The letter was made publicly available at the following uniform resource locator (URL): https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf.  On February 18, 2022, the same day, the Save America Political Action Committee (PAC) posted the following statement on behalf of FPOTUS: "The National Archives did not 'find' anything, they were given, upon request, Presidential Records in an ordinary and routine process to ensure the preservation of my legacy and in accordance with the Presidential Records Act . . . ."  An image of this statement is below.



Statement by Donald J. Trump, 45th President of the
United States of America

The National Archives did not "find" anything, they were given, upon request, Presidential Records in an ordinary and routine process to ensure the preservation of my legacy and in accordance with the Presidential Records Act. If this was anyone but "Trump," there would be no story here. Instead the Democrats are in search of their next Scam. The Russia, Russia, Russia Hoax turned out to be a Democrat inspired fake story to help "crooked" Hillary Clinton. Impeachment Hoax #1, Impeachment Hoax #2, and so much more, has all been a Hoax. The Fake News is making it seem like me, as the President of the United States, was working in a filing room. No. I was busy destroying ISIS, building the greatest economy America had ever seen, brokering Peace deals, making sure Russia didn't attack Ukraine, making sure China didn't take over Taiwan, making sure there was no inflation, creating an energy independent country, rebuilding our military and law enforcement, saving our Second Amendment, protecting our Border, and cutting taxes. Now, Russia is invading Ukraine, our economy is being destroyed, our Border is once again overrun and the mandate continues. Instead of focusing on America, the media just wants to talk about their plan to "get" Trump. The people won't stand for it any longer!







***Boxes Containing Documents Were Transported from the White House to Mar-a-Lago***

30. According to a CBS Miami article titled "Moving Trucks Spotted At Mar-a-Lago," published Monday, January 18, 2021, at least two moving trucks were observed at the PREMISES on January 18, 2021.

31.

32.



33.

34.



35.

36.

37.

*Provision of the Fifteen Boxes to NARA*

38.



39.     On or about May 6, 2021, NARA made a request for the missing PRA records and

continued to make requests until approximately late December 2021 when NARA was informed

twelve boxes were found and ready for retrieval at the PREMISES.



40.

41.

42.

43.

44.



45.

46.

### *The FIFTEEN BOXES Provided to NARA Contain Classified Information*

47.     From May 16-18, 2022. FBI agents conducted a preliminary review of the
FIFTEEN BOXES provided to NARA and identified documents with classification markings in
fourteen of the FIFTEEN BOXES.  A preliminary triage of the documents with classification
markings revealed the following approximate numbers:  184 unique documents bearing
classification markings, including 67 documents marked as CONFIDENTIAL, 92 documents
marked as SECRET, and 25 documents marked as TOP SECRET.  Further, the FBI agents
observed markings reflecting the following compartments/dissemination controls: HCS, FISA,
ORCON, NOFORN, and SI.  Based on my training and experience. I know that documents
classified at these levels typically contain NDI.  Several of the documents also contained what
appears to be FPOTUS's handwritten notes.





50.

**Grand Jury Subpoena, Related Correspondence, and Production of Additional Classified Documents**

51.     DOJ has advised me that, on May 11, 2022, an attorney representing FPOTUS,

"FPOTUS COUNSEL 1," agreed to accept service of a grand jury subpoena from a grand jury

sitting in the District of Columbia sent to him via email by one of the prosecutors handling this

matter for DOJ, "DOJ COUNSEL." The subpoena was directed to the custodian of records for

the Office of Donald J. Trump, and it requested the following materials:

> Any and all documents or writings in the custody or control of Donald J. Trump
> and/or the Office of Donald J. Trump bearing classification markings, including
> but not limited to the following: Top Secret, Secret, Confidential, Top Secret/SI-
> G/NOFORN/ORCON, Top Secret/SI-G/NOFORN, Top Secret/HCS-
> O/NOFORN/ORCON, Top Secret/HCS-O/NOFORN, Top Secret/HCS-
> P/NOFORN/ORCON, Top Secret/HCS-P/NOFORN, Top
> Secret/TK/NOFORN/ORCON, Top Secret/TK/NOFORN, Secret/NOFORN,
> Confidential/NOFORN, TS, TS/SAP, TS/SI-G/NF/OC, TS/SI-G/NF, TS/HCS-
> O/NF/OC, TS/HCS-O/NF, TS/HCS-P/NF/OC, TS/HCS-P/NF, TS/HCS-P/SI-G,
> TS/HCS-P/SI/TK, TS/TK/NF/OC, TS/TK/NF, S/NF, S/FRD, S/NATO, S/SI, C,
> and C/NF.

18

The return date of the subpoena was May 24, 2022. DOJ COUNSEL also sent FPOTUS

COUNSEL 1 a letter that permitted alternative compliance with the subpoena by "providing any

responsive documents to the FBI at the place of their location" and by providing from the

custodian a "sworn certification that the documents represent all responsive records." The letter

further stated that if no responsive documents existed, the custodian should provide a sworn

certification to that effect.

52.    On May 25, 2022, while negotiating for an extension of the subpoena, FPOTUS

COUNSEL 1 sent two letters to DOJ COUNSEL. In the second such letter, which is attached as

Exhibit 1, FPOTUS COUNSEL 1 asked DOJ to consider a few "principles," which include

FPOTUS COUNSEL 1's claim that a President has absolute authority to declassify documents. In

this letter, FPOTUS COUNSEL 1 requested, among other things, that "DOJ provide this letter to

any judicial officer who is asked to rule on any motion pertaining to this investigation, or on any

application made in connection with any investigative request concerning this investigation."

53.    I am aware of an article published in *Breitbart* on May 5, 2022, available at

https://www.breitbart.com/politics/2022/05/05/documents-mar-a-lago-marked-classified-were-

already-declassified-kash-patel-says/, which states that Kash Patel, who is described as a former

top FPOTUS administration official, characterized as "misleading" reports in other news

organizations that NARA had found classified materials among records that FPOTUS provided to

NARA from Mar-a-Lago. Patel alleged that such reports were misleading because FPOTUS had

declassified the materials at issue. ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████

54.    ███████████████████████████████████████████████████



55.     After an extension was granted for compliance with the subpoena, on the evening

of June 2, 2022, FPOTUS COUNSEL 1 contacted DOJ COUNSEL and requested that FBI agents

meet him the following day to pick up responsive documents.  On June 3, 2022, three FBI agents

and DOJ COUNSEL arrived at the PREMISES to accept receipt of the materials.  In addition to

FPOTUS COUNSEL 1, another individual, hereinafter "INDIVIDUAL 2," was also present as the

custodian of records for FPOTUS's post-presidential office.  The production included a single

Redweld envelope, wrapped in tape, containing documents.  FPOTUS COUNSEL 1 relayed that

the documents in the Redweld envelope were found during a review of the boxes located in the

STORAGE ROOM.  INDIVIDUAL 2 provided a Certification Letter, signed by INDIVIDUAL 2,

which stated the following:

> Based upon the information that has been provided to me, I am authorized to certify, on
> behalf of the Office of Donald J. Trump, the following: a. A diligent search was
> conducted of the boxes that were moved from the White House to Florida; b. This search
> was conducted after receipt of the subpoena, in order to locate any and all documents that
> are responsive to the subpoena; c. Any and all responsive documents accompany this
> certification; and d. No copy, written notation, or reproduction of any kind was retained as
> to any responsive document.

56.     During receipt of the production, FPOTUS COUNSEL 1 stated he was advised all

the records that came from the White House were stored in one location within Mar-a-Lago, the STORAGE ROOM, and the boxes of records in the STORAGE ROOM were "the remaining repository" of records from the White House. FPOTUS COUNSEL 1 further stated he was not advised there were any records in any private office space or other location in Mar-a-Lago. The agents and DOJ COUNSEL were permitted to see the STORAGE ROOM and observed that approximately fifty to fifty-five boxes remained in the STORAGE ROOM. ███████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████ Other items were also present in the STORAGE ROOM, including a coat rack with suit jackets, as well as interior décor items such as wall art and frames.

57.     ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

58.     A preliminary review of the documents contained in the Redweld envelope produced pursuant to the grand jury subpoena revealed the following approximate numbers: 38 unique documents bearing classification markings, including 5 documents marked as CONFIDENTIAL, 16 documents marked as SECRET, and 17 documents marked as TOP SECRET. Further, the FBI agents observed markings reflecting the following caveats/compartments, among others: HCS, SI, and FISA. ██████████████████████ ████████████████████████████ Multiple documents also

contained what appears to be FPOTUS's handwritten notes.

59.     Notably, although the FIFTEEN BOXES provided to NARA contained approximately 184 unique documents with classification markings, only approximately 38 unique documents with classification markings were produced from the remaining FPOTUS BOXES.

60.     When producing the documents, neither FPOTUS COUNSEL 1 nor INDIVIDUAL 2 asserted that FPOTUS had declassified the documents.[2] The documents being in a Redweld envelope wrapped in tape appears to be consistent with an effort to handle the documents as if they were still classified.

61.     On June 8, 2022, DOJ COUNSEL sent FPOTUS COUNSEL 1 a letter, which reiterated that the PREMISES are not authorized to store classified information and requested the preservation of the STORAGE ROOM and boxes that had been moved from the White House to the PREMISES.  Specifically, the letter stated in relevant part:

> As I previously indicated to you, Mar-a-Lago does not include a secure location authorized for the storage of classified information.  As such, it appears that since the time classified documents (the ones recently provided and any and all others) were removed from the secure facilities at the White House and moved to Mar-a-Lago on or around January 20, 2021, they have not been handled in an appropriate manner or stored in an appropriate location.  Accordingly, we ask that the room at Mar-a-Lago where the documents had been stored be secured and that all of the boxes that were moved from the White House to Mar-a-Lago (along with any other items in that room) be preserved in that room in their current condition until further notice.

---

[2] 18 U.S.C. § 793(e) does not use the term "classified information," but rather criminalizes the unlawful retention of "information relating to the national defense." The statute does not define "information related to the national defense," but courts have construed it broadly.  *See Gorin v. United States*, 312 U.S. 19, 28 (1941) (holding that the phrase "information relating to the national defense" as used in the Espionage Act is a "generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness").  In addition, the information must be "closely held" by the U.S. government.  *See United States v. Squillacote*, 221 F.3d 542, 579 (4th Cir. 2000) ("[I]nformation made public by the government as well as information never protected by the government is not national defense information."); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988).  Certain courts have also held that the disclosure of the documents must be potentially damaging to the United States.  *See Morison*, 844 F.2d at 1071-72.

On June 9, 2022, FPOTUS COUNSEL 1 sent an email to DOJ COUNSEL, stating, "I write to acknowledge receipt of this letter."

62.     DOJ COUNSEL has advised me that on or about June 22, 2022, counsel for the Trump Organization, a group of business entities associated with FPOTUS, confirmed that the Trump Organization maintains security cameras in the vicinity of the STORAGE ROOM and that on June 24, 2022, counsel for the Trump Organization agreed to accept service of a grand jury subpoena for footage from those cameras.

63.     The subpoena was served on counsel on June 24, 2022, directed to the Custodian of Records for the Trump Organization, and sought:

> Any and all surveillance records, videos, images, photographs, and/or CCTV from internal cameras located on ground floor (basement) ███████ ███ on the Mar-a-Lago property located at 1100 S Ocean Blvd., Palm Beach, FL 33480 from the time period of January 10, 2022 to present.

64.     On July 6, 2022, in response to this subpoena, representatives of the Trump Organization provided a hard drive to FBI agents.

65. 

66.



67.

68.

69.



### *There is Probable Cause to Believe That Documents Containing Classified NDI and Presidential Records Remain at the Premises*

70.     As explained above, the FPOTUS BOXES contained numerous documents with

classification markings, both in the FIFTEEN BOXES and in the remaining FPOTUS BOXES.

As also explained above, the classified documents provided to the government in a Redweld

envelope pursuant to the subpoena were represented to have been stored in boxes located in the

STORAGE ROOM,

71.



72.

73.



74.

75.

76.

[REDACTED]

77.     Based upon this investigation, I believe that the STORAGE ROOM, FPOTUS's residential suite, Pine Hall, the "45 Office," and other spaces within the PREMISES are not currently authorized locations for the storage of classified information or NDI. Similarly, based upon this investigation, I do not believe that any spaces within the PREMISES have been authorized for the storage of classified information at least since the end of FPOTUS's Presidential Administration on January 20, 2021.

78.     As described above, evidence of the SUBJECT OFFENSES has been stored in multiple locations at the PREMISES. [REDACTED]

[REDACTED]

Accordingly, this affidavit seeks authorization to search the "45 Office" and all storage rooms and

any other rooms or locations where boxes or records may be stored within the PREMISES, as further described in Attachment A. The PREMISES is currently closed to club members for the summer; however, as specified in Attachment A, if at the time of the search, there are areas of the PREMISES being occupied, rented, or used by third parties, and not otherwise used or available to be used by FPOTUS and his staff, the search would not include such areas.

## CONCLUSION

79.     Based on the foregoing facts and circumstances, I submit that probable cause exists to believe that evidence, contraband, fruits of crime, or other items illegally possessed in violation 18 U.S.C. §§ 793(e), 2071, or 1519 will be found at the PREMISES. Further, I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.

## REQUEST FOR SEALING

80.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and the FBI has not yet identified all potential criminal confederates nor located all evidence related to its investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness by allowing criminal parties an opportunity to flee, destroy evidence (stored electronically and otherwise), change patterns of behavior, and notify criminal confederates.

## SEARCH PROCEDURES FOR HANDLING POTENTIAL ATTORNEY-CLIENT PRIVILEGED INFORMATION

The following procedures will be followed at the time of the search in order to protect against disclosures of attorney-client privileged material:

81.    These procedures will be executed by: (a) law enforcement personnel conducting this investigation (the "Case Team"); and (b) law enforcement personnel not participating in the investigation of the matter, who will search the "45 Office" and be available to assist in the event that a procedure involving potentially attorney-client privileged information is required (the "Privilege Review Team").

82.    The Case Team will be responsible for searching the **TARGET PREMISES**. However, the Privilege Review Team will search the "45 Office" and conduct a review of the seized materials from the "45 Office" to identify and segregate documents or data containing potentially attorney-client privileged information.

83.    If the Privilege Review Team determines the documents or data are not potentially attorney-client privileged, they will be provided to the law-enforcement personnel assigned to the investigation.  If at any point the law-enforcement personnel assigned to the investigation subsequently identify any data or documents that they consider may be potentially attorney-client privileged, they will cease the review of such identified data or documents and refer the materials to the Privilege Review Team for further review by the Privilege Review Team.

84.    If the Privilege Review Team determines that documents are potentially attorney-client privileged or merit further consideration in that regard, a Privilege Review Team attorney may do any of the following: (a) apply *ex parte* to the court for a determination whether or not the documents contain attorney-client privileged material; (b) defer seeking court intervention and

continue to keep the documents inaccessible to law-enforcement personnel assigned to the investigation; or (c) disclose the documents to the potential privilege holder, request the privilege holder to state whether the potential privilege holder asserts attorney-client privilege as to any documents, including requesting a particularized privilege log, and seek a ruling from the court regarding any attorney-client privilege claims as to which the Privilege Review Team and the privilege-holder cannot reach agreement.

Respectfully submitted,



Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me by
telephone (WhatsApp) or other reliable electronic
means this ___5___ day of August, 2022:

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

EXHIBIT 1



**SILVERMAN THOMPSON**

Silverman Thompson Slutkin White

*A Limited Liability Company*
400 East Pratt Street – Suite 900
Baltimore, Maryland 21202
Telephone 410.385.2225
Facsimile 410.547.2432
silvermanthompson.com
*Baltimore | Towson | New York | Washington, DC*

Writer's Direct Contact:
Evan Corcoran
410-385-2225
ecorcoran@silvermanthompson.com

**ATTORNEYS AT LAW**

May 25, 2022

***Via Electronic Mail***

Jay I. Bratt, Esquire
Chief
Counterintelligence & Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania, Avenue, N.W.
Washington, D.C. 20530

Re: Presidential Records Investigation

Dear Jay:

I write on behalf of President Donald J. Trump regarding the above-referenced matter.

Public trust in the government is low. At such times, adherence to the rules and long-standing policies is essential. President Donald J. Trump is a leader of the Republican Party. The Department of Justice (DOJ), as part of the Executive Branch, is under the control of a President from the opposite party. It is critical, given that dynamic, that every effort is made to ensure that actions by DOJ that may touch upon the former President, or his close associates, do not involve politics.

There have been public reports about an investigation by DOJ into Presidential Records purportedly marked as classified among materials that were once in the White House and unknowingly included among the boxes brought to Mar-a-Lago by the movers. It is important to emphasize that when a request was made for the documents by the National Archives and Records Administration (NARA), President Trump readily and voluntarily agreed to their transfer to NARA. The communications regarding the transfer of boxes to NARA were friendly, open, and straightforward. President Trump voluntarily ordered that the boxes be provided to NARA. No legal objection was asserted about the transfer. No concerns were raised about the contents of the boxes. It was a voluntary and open process.

Unfortunately, the good faith demonstrated by President Trump was not matched once the boxes arrived at NARA. Leaks followed. And, once DOJ got involved, the leaks continued. Leaks about any investigation are concerning. Leaks about an investigation that involve the residence of a former President who is still active on the national political scene are particularly troubling.

Jay I. Bratt
May 25, 2022
Page **2** of 3

It is important to note a few bedrock principles:

### (1) A President Has Absolute Authority To Declassify Documents.

Under the U.S. Constitution, the President is vested with the highest level of authority when it comes to the classification and declassification of documents. *See* U.S. Const., Art. II, § 2 ("The President [is] Commander in Chief of the Army and Navy of the United States[.]"). His constitutionally-based authority regarding the classification and declassification of documents is unfettered. *See Navy v. Egan*, 484 U.S. 518, 527 (1988) ("[The President's] authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.").

### (2) Presidential Actions Involving Classified Documents Are Not Subject To Criminal Sanction.

Any attempt to impose criminal liability on a President or former President that involves his actions with respect to documents marked classified would implicate grave constitutional separation-of-powers issues. Beyond that, the primary criminal statute that governs the unauthorized removal and retention of classified documents or material *does not apply* to the President. That statute provides, in pertinent part, as follows:

> Whoever, being an officer, employee, contractor, or consultant of the United States, and, by virtue of his office, employment, position, or contract, becomes possessed of documents or materials containing classified information of the United States, knowingly removes such documents or materials without authority and with the intent to retain such documents or materials at an unauthorized location shall be fined under this title or imprisoned for not more than five years, or both.

18 U.S.C. § 1924(a). An element of this offense, which the government must prove beyond a reasonable doubt, is that the accused is "an officer, employee, contractor, or consultant of the United States." The President is none of these. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497–98 (2010) (citing U.S. Const., Art. II, § 2, cl. 2) ("The people do not vote for the 'Officers of the United States.'"); *see also Melcher v. Fed. Open Mkt. Comm.*, 644 F. Supp. 510, 518–19 (D.D.C. 1986), *aff'd*, 836 F.2d 561 (D.C. Cir. 1987) ("[a]n officer of the United States can only be appointed by the President, by and with the advice and consent of the Senate, or by a court of law, or the head of a department. A person who does not derive his position from one of these sources is not an officer of the United States in the sense of the Constitution."). Thus, the statute does not apply to acts by a President.

Jay I. Bratt
May 25, 2022
Page **3** of **3**

### (3) DOJ Must Be Insulated From Political Influence.

According to the Inspector General of DOJ, one of the top challenges facing the Department is the public perception that DOJ is influenced by politics. The report found that "[o]ne important strategy that can build public trust in the Department is to ensure adherence to policies and procedures designed to protect DOJ from accusations of political influence or partial application of the law." *See* https://oig.justice.gov/reports/top-management-and-performance-challenges-facing-department-justice-2021 (last visited May 25, 2022). We request that DOJ adhere to long-standing policies and procedures regarding communications between DOJ and the White House regarding pending investigative matters which are designed to prevent political influence in DOJ decision-making.

### (4) DOJ Must Be Candid With Judges And Present Exculpatory Evidence.

Long-standing DOJ policy requires that DOJ attorneys be candid in representations made to judges. Pursuant to those policies, we request that DOJ provide this letter to any judicial officer who is asked to rule on any motion pertaining to this investigation, or on any application made in connection with any investigative request concerning this investigation.

The official policy of DOJ further requires that prosecutors present exculpatory evidence to a grand jury. Pursuant to that policy, we request that DOJ provide this letter to any grand jury considering evidence in connection with this matter, or any grand jury asked to issue a subpoena for testimony or documents in connection with this matter.

Thank you for your attention to this request.

With best regards,

M. Evan Corcoran

cc:     Matthew G. Olsen
        Assistant Attorney General
        National Security Division
        *Via Electronic Mail*

**ATTACHMENT A**

*Property to be searched*

The premises to be searched, 1100 S Ocean Blvd, Palm Beach, FL 33480, is further described as a resort, club, and residence located near the intersection of Southern Blvd and S Ocean Blvd.  It is described as a mansion with approximately 58 bedrooms, 33 bathrooms, on a 17-acre estate.  The locations to be searched include the "45 Office," all storage rooms, and all other rooms or areas within the premises used or available to be used by FPOTUS and his staff and in which boxes or documents could be stored, including all structures or buildings on the estate.  It does not include areas currently (i.e., at the time of the search) being occupied, rented, or used by third parties (such as Mar-a-Largo Members) and not otherwise used or available to be used by FPOTUS and his staff, such as private guest suites.

**ATTACHMENT B**

*Property to be seized*

All physical documents and records constituting evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793, 2071, or 1519, including the following:

      a. Any physical documents with classification markings, along with any containers/boxes (including any other contents) in which such documents are located, as well as any other containers/boxes that are collectively stored or found together with the aforementioned documents and containers/boxes;

      b. Information, including communications in any form, regarding the retrieval, storage, or transmission of national defense information or classified material;

      c. Any government and/or Presidential Records created between January 20, 2017, and January 20, 2021; or

      d. Any evidence of the knowing alteration, destruction, or concealment of any government and/or Presidential Records, or of any documents with classification markings.

# Attachment 4

# United States' Proposed Judicial Protective Order

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 22-CV-81294-CANNON**

**DONALD J. TRUMP**,

     Plaintiff,

v.

**UNITED STATES OF AMERICA**,

     Defendant.

_____/

<u>**[PROPOSED] JUDICIAL PROTECTIVE ORDER**</u>

Following notice and opportunity to be heard, further to paragraph 19 of the Order dated September 15, 2022 [ECF No. 91], and pursuant to the parties' stipulated judicial protective order [ECF No. ___],1 it is hereby

**ORDERED AND ADJUDGED** as follows:

1.    **Introduction and Basis for Judicial Protective Order**. – The Court's Order appointing the special master [ECF No. 91, ¶ 5] requires the government to provide copies of materials seized during the August 8, 2022 execution of a court-authorized search warrant at the premises located at 1100 S. Ocean Boulevard, Palm Beach, Florida 33480 (the "Seized Materials") to the Special Master, Plaintiff's counsel, and certain agents and employees. The Seized Materials are evidence in a criminal investigation case, most of whose details are not a matter of public record. In addition, the Court's order [ECF No. 91,

¶ 5] requires the Parties to prepare logs based on and derived from the Seized Materials that should similarly be protected from public disclosure to facilitate the special-master-review process. To preserve the confidentiality of non-public information and protect the special-master-review process, the Court enters this Judicial Protective Order.4

      2.    **Confidentiality and Non-Disclosure of Seized Materials and Undertakings on Exhibit A**. – The Seized Materials produced by the government are confidential and shall be disclosed to no one other than the Special Master, his law clerks, admitted Plaintiff's counsel of record in this case ("Plaintiff's Counsel"), staff supporting Plaintiff's Counsel (such as paralegal assistants, secretarial, stenographic, and clerical employees) who are working on this case under the direction of Plaintiff's Counsel and to whom it is necessary that the Seized Materials be disclosed for purposes of executing this Court's orders, and vendors approved by the Special Master or this Court for purposes of scanning, hosting, reviewing or otherwise processing electronic copies of Seized Materials.

      Plaintiff's Counsel shall provide the government with the names and job titles of any staff who Plaintiff's Counsel propose to review Seized Materials at least two business days before Seized Materials are shown to such persons and such persons must execute the "Acknowledgment of Protective Order" that is attached to this Judicial Protective Order at

---

4  This Judicial Protective Order does not govern Seized Materials with classification markings. The government contends that Seized Materials with classification markings should not be provided to the Special Master or Plaintiff's counsel and has pending before the United States Court of Appeals for the Eleventh Circuit an application for a stay pending appeal. If the Eleventh Circuit stays this Court's order with respect to documents with classification markings, this Judicial Protective Order will govern Seized Materials without classification markings. If any classified materials will ultimately be provided to Plaintiff's counsel, then the parties will propose a separate judicial protective order for the Court to enter concerning documents with classification markings that is similar to a protective order pursuant to Section 3 of the Classified Information Procedures Act, 18 U.S.C. App. III § 3.

Exhibit A. If the government objects to disclosure during such two-day period, no Seized

Materials may be disclosed until the government's objection is resolved by the Court.5

Vendors who are engaged to scan, host, provide review, or otherwise process the

electronic copies of the Seized Materials must also sign execute the "Acknowledgment of

Protective Order" that is attached to this Judicial Protective Order at Exhibit A.

3.      **Limitations on Use**. – Plaintiff's Counsel, their staff, and any vendors shall

use Seized Materials exclusively in connection with the above-captioned case and not for

any other purpose. Nothing herein shall prevent a party from using Seized Materials as

exhibits to pleadings or otherwise, or from referring to, quoting, or reciting from Seized

Materials contained in such materials in connection with pleadings or motions filed in the

above-captioned case; *provided, however*, that any such Seized Materials be filed under seal or

submitted to the Special Master or Court for *in camera* inspection.

4.      **Maintaining Copies of Seized Materials**. – Plaintiff's Counsel, their staff,

and any vendors to whom the government provides Seized Materials shall maintain any

Seized Materials produced pursuant to this Judicial Protective Order in a manner

reasonably intended to preserve and maintain the confidentiality of the materials.

Specifically, Plaintiff's Counsel, their staff, and any vendors shall maintain Seized Materials

in secure areas or on secure networks along with a copy of this Judicial Protective Order. If

stored electronically on networks not owned by the government, Seized Materials shall be

password-protected and the network folders in which they are stored shall be walled off

from any individuals not directly assisting in the above-captioned case.

---

5 With respect to the Seized Materials, the government is separately bound by the Warrant
and this Court's order, which includes an injunction.

5.      **Unauthorized Disclosure**. – If Plaintiff's Counsel, their staff, or any vendor learns that it has disclosed, inadvertently or otherwise, Seized Materials to a person in a circumstance not authorized under this Judicial Protective Order or any unauthorized access to Seized Materials otherwise occurs, the disclosing party must immediately (a) notify the government in writing of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Seized Materials, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Judicial Protective Order, and (d) request such person or persons sign the "Acknowledgment of Protective Order" that is attached to this Judicial Protective Order at Exhibit A.

6.      **Violations**. – Violations of this Judicial Protective Order shall be punishable by contempt of court or any other legally available sanction that the Court deems appropriate. All parties to whom Seized Materials are disclosed in accordance with this Judicial Protective Order consent and submit to this Court's jurisdiction for purposes of enforcing this order.

7.      **Further Relief**. – Nothing in this Judicial Protective Order shall be construed as restricting any party from seeking such further relief as may be available under applicable law.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this ___ day of September 2022.

_____
AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc:      counsel of record

4-4

## EXHIBIT A

**ACKNOWLEDGMENT OF JUDICIAL PROTECTIVE ORDER**

I hereby acknowledge that I received a copy of the Judicial Protective Order issued in

*Donald J. Trump v. United States of America,* Case No. 22-CV-81294-CANNON (S.D. Fla.), that

I read and understand it, and I agree to be bound by its terms. I further understand that by

signing this Acknowledgment, I subject myself to the jurisdiction of the United States District

Court for the Southern District of Florida for the purpose of enforcing the terms of the Judicial

Protective Order and punishing any violations thereof.

_____
Name (Printed)

_____
Signature

_____
Street Address

_____
City, State, and Zip Code

_____
Telephone Number

_____
E-Mail Address

4-5

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on [date], I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/_____
[Name]
Assistant United States Attorney