```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
                      FORT PIERCE DIVISION
                 CASE NO. 22-81294-CIV-CANNON

DONALD J. TRUMP,

              Plaintiffs,          FORT PIERCE, FLORIDA
        vs.
                                   SEPTEMBER 1, 2022
UNITED STATES OF AMERICA,
                                     PAGES 1 - 70
              Defendants.
_____/



     TRANSCRIPT OF MOTION TO APPOINT SPECIAL MASTER HEARING
          BEFORE THE HONORABLE AILEEN M. CANNON
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:      CHRISTOPHER KISE, ESQ.
                        Chris Kise & Associates
                        JAMES TRUSTY, ESQ.
                        IFRAH, PLLC
                        EVAN CORCORAN, ESQ.
                        Silverman, Thompson, Slutkin
                          & White, LLC
                        LINDSEY HALLIGAN, ESQ.




FOR THE DEFENDANT:      JAY BRATT, ESQ.
                        TONY GONZALEZ, ESQ.
                        JULIE EDELSTEIN, ESQ.
                        SOPHIA BRILL, ESQ.
                        TONY LA COSTA, ESQ.
                        BENJAMIN HAWK, ESQ.
                        U.S. Department of Justice




REPORTED BY:            DIANE M. MILLER, RMR, CRR, CRC
                        Official Court Reporter
                        diane_miller@flsd.uscourts.gov
```

1                    P‑R‑O‑C‑E‑E‑D‑I‑N‑G‑S

2          THE COURTROOM DEPUTY:  Calling case number

3    22-CV-81294, Donald J. Trump versus United States of America.

4          Counsel, please state your appearances beginning with

5    the plaintiff.

6          MR. KISE:  Good morning, Your Honor -- good

7    afternoon, Your Honor; Christopher Kise on behalf of

8    President Trump.

9          MR. TRUSTY:  Good afternoon; Jim Trusty on behalf of

10   President Trump.

11         MR. CORCORAN:  Good morning; Evan Corcoran on behalf

12   of President Trump.

13         MS. HALLIGAN:  Good afternoon; Lindsey Halligan on

14   behalf of President Trump.

15         THE COURT:  Good afternoon.

16         MR. BRATT:  Good afternoon; Jay Bratt on behalf of

17   the United States.

18         MR. GONZALEZ:  Good afternoon, Your Honor; Tony

19   Gonzalez on behalf of the United States.

20         MS. EDELSTEIN:  Good afternoon, Your Honor; Julie

21   Edelstein on behalf of the United States.

22         MS. BRILL:  Good afternoon, Your Honor; Sophia Brill

23   on behalf of United States.

24         THE COURT:  Good afternoon, everybody.  You may be

25   seated.  Masks are optional.

Thursday, September 1, 2022.

 1               Before we proceed, I want to go over an important

 2     ground rule, and that is, of course, the prohibition on

 3     recording this proceeding both in audio and video.  That

 4     requirement stems from local Rule 77.1.

 5               I also hereby order that no one, including members of

 6     the media, should be using any form of social media to transmit

 7     any information live during this proceeding, and that includes

 8     directing anybody outside of this courtroom to do that for you.

 9     So pursuant to the Court's administrative order, appropriate

10     action will be taken in the event that anyone is not in

11     compliance; and the Court, of course, is monitoring that so I

12     trust everybody will comply.

13               We are here, of course, to hear argument on the

14     plaintiff's motion for judicial oversight and additional

15     relief.  I have reviewed that motion along with the full

16     record, including the government's response, the plaintiff's

17     reply, and the additional submissions that have been brought

18     before the Court.  As a matter of housekeeping and pursuant to

19     the government's representation that it does not oppose the

20     release of the more detailed inventory to Plaintiff, that

21     document has been made available to Plaintiff prior to this

22     hearing.

23               Who will be leading the argument for the government?

24               MR. BRATT:  Your Honor, I will be going first, though

25     I am splitting the argument with Ms. Edelstein.

```
 1              THE COURT:  Okay.  Well, then, let me just inquire of

 2   you, sir.  Do you have any objection to unsealing that more

 3   detailed inventory?

 4              MR. BRATT:  No, Your Honor.

 5              THE COURT:  Okay.

 6              Any objection from Plaintiff's counsel to unsealing

 7   the inventory alone?

 8              MR. KISE:  No, Your Honor.

 9              THE COURT:  Okay.  Then by separate order following

10   this hearing that document will be unsealed.

11              There also was filed a status report, one for the

12   case review team and one for the filter team.

13              Mr. Bratt, do you have any objection to turning over

14   to Plaintiff the status report for the investigation team?  My

15   review of it is that it does not contain any substantive

16   information that is different from what has already been

17   publicly filed.

18              MR. BRATT:  Yes, that is correct, Your Honor.  We

19   have no objection.

20              THE COURT:  All right.  I'm going to ask my clerk to

21   please make that document available to Mr. Kise and his team.

22   It is docket entry 39.

23              Mr. Kise, any objection to unsealing that document?

24              MR. KISE:  Just one moment, please, Your Honor.

25              THE COURT:  Yes.
```

```
 1              MR. KISE:  No objection, Your Honor.  Thank you.

 2              THE COURT:  All right.  Well, then, that document,

 3     which is the investigation team status report, docket entry 39,

 4     will be unsealed by separate order following this hearing.

 5              So the final issue then is the status report filed by

 6     the filter review team, and I'm referring only to the status

 7     report not to the exhibits that were accompanying that status

 8     report.

 9              Mr. Bratt or anybody from the government, I would

10     like to know your position on making that available to

11     Plaintiff's counsel.

12              MR. BRATT:  So, Your Honor, we have the two filter

13     attorneys present here.  We have not seen it; and, certainly,

14     our main concern would be that there was nothing in there that

15     would then get out and taint members of the investigative side.

16     So I would defer to them as to whether the whole document can

17     be unsealed and provided to Defense or whether only a portion.

18     I'm sort of speaking blindly about it.

19              THE COURT:  All right.  I'll ask that whoever is

20     representing the filter team come to counsel table.

21              MR. LACOSTA:  Good afternoon, Your Honor; Tony

22     Lacosta on behalf of the United States.

23              THE COURT:  Good afternoon.

24              MR. LACOSTA:  Request permission, may I sit here?

25              THE COURT:  Yes, please.
```

```
 1              MR. BENJAMIN:  Benjamin Hawk on behalf of the United

 2    States.

 3              THE COURT:  Good afternoon.

 4              My question, Mr. Lacosta, is directed only at the

 5    status report not exhibits A or B.  What is your position with

 6    respect to making that available to Plaintiff's counsel?

 7              MR. LACOSTA:  Your Honor, we have no objection with

 8    the pleading itself being made to Plaintiff's counsel, both the

 9    pleading, exhibit A and exhibit B, but we would ask that it

10    remain under seal.

11              THE COURT:  Okay.  So for now, please, I'll ask my

12    team to make those documents available to Plaintiff's counsel.

13    And because those are lengthier, I'm going to take a 15-minute

14    break for Plaintiff's counsel to review them.

15              The Court is in a brief recess.

16              THE COURTROOM DEPUTY:  All rise.

17      (Recess was had at 1:11 p.m.; and the proceedings

18      Resumed at 1:26 p.m.)

19              THE COURT:  You may be seated.

20              All right.  Has Plaintiff's counsel had enough time

21    to review that status report?

22              MR. KISE:  We have, Your Honor.

23              THE COURT:  Okay.  What is your position on the

24    unsealing of the report itself, minus the exhibits?

25              MR. KISE:  Your Honor, respectfully, we think that
```

```
 1   both the report itself and the exhibits should remain under

 2   seal at this time.  The report itself does make some

 3   substantive references to privileged material; and, in an

 4   abundance of caution, we want to make sure that we don't get

 5   into a situation where there is a waiver claim of some kind.

 6   So, respectfully, we would ask the Court to keep it under seal.

 7   There may come a time, after we understand a little bit more,

 8   where that position could change; but certainly for now, Your

 9   Honor, we don't want to have a waiver situation.

10           THE COURT:  Okay.  Well, seeing as it is a joint

11   request at this point to continue the seal as to the filter

12   review team status report and associated exhibits, that

13   document will remain under seal, and the parties should be

14   careful to adhere to that in their presentation today.

15           With that, let's commence the substantive portion of

16   this hearing.  What I had in mind was to give each side

17   approximately ten minutes to present any overview argument; and

18   then, of course, the Court will have questions as we go along.

19   But if either said has a different proposal, I am happy to hear

20   any suggestions.

21           MR. KISE:  No, Your Honor, that's fine.

22           THE COURT:  Mr. Bratt?

23           MR. BRATT:  That is fine, Your Honor.

24           THE COURT:  Okay.  Well, then, let's commence with

25   Plaintiff's counsel, since it is your motion.
```

```
 1          MR. KISE:  Thank you, Judge; I'll be brief.  Again,

 2   Christopher Kise on behalf of President Trump.  As I mentioned,

 3   with me is Mr. Jim Trusty who will handle the balance of the

 4   argument; in the main, Evan Corcoran and Lindsey Halligan.

 5          Your Honor, just briefly, you are in a challenging

 6   but yet, respectfully, a unique position to restore order, to

 7   help restore public confidence in the impartial administration

 8   of justice.  You know, the temperature is very high on both

 9   sides here, very high.  There is a significant lack of trust

10   between the parties.  And I'm not speaking out of turn and I'm

11   not being accusatory, I just think there is.  I think it is

12   evident from what you see out in the public eye.

13          There is a real or perceived lack of transparency.

14   Again, not being critical or commenting on that, but just there

15   is.  There is this perception that this isn't going the right

16   way.  The media is here beating the door down.  And from the

17   media reports, there is a real or perceived lack of -- a public

18   lack of faith in the integrity of the administration of

19   justice.  This is an unprecedented situation.  We need,

20   respectfully, to lower the temperature on both sides.  We need

21   to -- we need to take a deep breath and place this into

22   perspective.

23          What we are talking about here, in the main, are

24   Presidential records in the hands of the 45th President of the

25   United States at a location that was used frequently, during
```

1   his term as President, to conduct official business.

2          This is not a case about some Department of Defense

3   staffer stuffing military secrets into a paper bag and sneaking

4   out into the middle of the night.  This is, as I say,

5   Presidential records in the hands of 45th President of the

6   United States.

7          The inventory, in fact, that was just provided and

8   unsealed demonstrates that, the first inventory.  It is what

9   you would expect, when you look at it.  It is what you would

10  expect if you looked through a bunch of boxes that were moved

11  in a hurry from a residence or an office.  It contains all

12  sorts of things.  And in there are, again, Presidential records

13  in the hands of 45th President of the United States.

14         The appointment of a special master here is going to

15  help identify the real issues.  It is going to help place those

16  issues in the proper context.  It is going to give the parties

17  and the Court an orderly path towards resolution of those

18  issues.  And perhaps most importantly, Your Honor, I believe,

19  respectfully, it is going to give the American people a greater

20  confidence in the integrity of this process.

21         Mr. Trusty is going to handle the balance of the

22  argument.  Thank you.

23         THE COURT:  Thank you.

24         MR. TRUSTY:  Your Honor, good afternoon; pleasure to

25  meet you.  Thank you for your expeditious treatment of this

 1    matter and setting a schedule that allowed us to move quickly

 2    in the interest of justice.  And again, it is an honor to

 3    appear in front of you.

 4             Your Honor, I want to just make a few comments based

 5    on really the developments of the last few days and

 6    particularly talking about the pleading from the government.

 7    And really what we can read into that, I think fairly, as a

 8    matter of inference, the government's strategy at this point,

 9    when it comes to the very limited notion of appointing a

10    special master is simply to ask the Court, "Move on, we are in

11    control, we know what we are doing, leave us alone."

12             It is an extraordinary moment.  It is one thing to

13    have that attitude towards counsel for the President and say,

14    "Sorry, guys, we are not going to talk" -- and I'll come back

15    to that in a moment, but the idea of pushing off this really

16    modest idea of appointing a special master is extraordinary.

17    And some of the things we see in their pleading really

18    underscores the incredibly, extraordinary, historic -- and I

19    don't mean that in a good way -- nature of the Government's

20    conduct.

21             The first is that in the pleading from two days ago,

22    we now have this allegation that if Your Honor has the temerity

23    to appoint a special master, from their perspective, that it

24    will interfere with this newly facilitated office -- ODNI

25    investigation into the classification of materials, literally

1    telling the Court that "you can't possibly allow for a special

2    master to get involved because it is going to interfere with

3    what we are doing; again, leave us alone."

4         We had this phenomenal argument about standing which

5    would absolutely turn the Fourth Amendment on it's head in

6    terms of established case law for many years and certainly the

7    idea of fruits of a poisonous tree.  The Government is now

8    trying to suggest to the Court that as long as they find

9    something they deem illegal, that there is no recourse for an

10   unconstitutional intrusion; that the finding of some sort of

11   contraband, from their perspective, allows them to go scot-free

12   from any assessment of Fourth Amendment law.  That's an amazing

13   concept for them to put in writing in this brief.  I think it

14   speaks volumes as to this ends justify the means mentality that

15   is being employed.  And so the standing argument which was a

16   shocker remains a shocker.

17        And what they have done in their briefing is they

18   have essentially had a narrow inquiry from the Court saying,

19   "Please give me your position on the idea of appointing a

20   special master."

21        And they said, "Well, we want to go ahead and run the

22   table and tell the Court, leave us alone, we know what we are

23   doing, and this is for all time; there is no such thing as Rule

24   41, no such thing as standing, no such thing as castle

25   doctrine; you know, when your home is invaded by armed agents,

1    you have nothing to say about it."

2           And what is extraordinary is not just that this is

3    involving a President of the United States and his residence, I

4    mean, it really makes you step back and think, what if it is

5    just some guy that is faced with an attorney general or maybe a

6    local equivalent, a state's attorney, a U.S. attorney,

7    announcing publicly, I don't want to unseal the stuff I like

8    about this search warrant, I want to unseal the warrant to show

9    that it's really serious charges from our perspective, and I

10   want to unseal the inventory or at least this partial inventory

11   that they originally had and say, you know, look at the dirt we

12   found, it justifies everything we did.

13          To have -- I mean, I have been around prosecution and

14   criminal justice for 30-something years, longer than I want to

15   admit maybe, but to have any Executive Branch official publicly

16   announce, I'm ready to unseal these documents at the expense of

17   any defendant, much less like a marginalized defendant, any

18   defendant is an amazing moment.  It is an extraordinary moment.

19   It calls out for some questioning of what the motivation is

20   here and whether or not we, as a criminal justice system,

21   should allow completely unfettered conduct to go unchecked,

22   unobserved, unmonitored.

23          Now, as it turns out, our client was perfectly happy

24   with the notion of transparency.  He doesn't just say it in his

25   speeches, he actually means it and says, "If they want to let

 1    that stuff loose, let it go loose; how about the affidavit

 2    too," and that will be the subject of another conversation, at

 3    some point, about the affidavit.  But you have this selective

 4    leaking and disclosing on behalf of the Government.

 5         You even have what happened two days ago, the

 6    insertion in a motion about the special master of a perfectly

 7    staged photograph of classified covers on documents.  I mean,

 8    how that was supposed to help the Court decide the issue of

 9    special master is beyond me.  It was obviously a press release

10    within their motions response.  And this is the type of unusual

11    conduct we are seeing left and right in this case that cries

12    out for some modest measure of government -- I'm sorry, of

13    judicial intervention.

14         I want to spend a minute on the filter team.  It is

15    great to actually see them.

16         Now, in a normal situation with a filter team, yes,

17    there is going to be communications back and forth with the

18    Court.  We are not saying there is anything wrong with the

19    notion of a filter team filing reports with the Court.  But

20    what normally happens in the practice of filter examinations is

21    the other side of the aisle gets a phone call, and it is

22    somebody that says, Hey, I'm Fred Smith, I'm from the U.S.

23    Attorney's Office or I'm from a different section of main

24    justice and I'm on the filter team; we are doing this search to

25    look for whatever -- in this case, they limited it to

```
 1   attorney-client and work product -- and then there is
 2   communication and you get a sense of when are they going to be
 3   done, are there documents that they want our opinion on.
 4   Frankly, the beginning is not just the investigative team
 5   saying, here is a list.  They go to the attorneys and say, who
 6   shall be we looking for that might implicate privilege.  We
 7   never had that courtesy.
 8           So we have filter team that announces to the Court
 9   through these pleadings of two days ago and now today that,
10   "Trust us, we have done everything; we are done, and we never
11   involved the other side for any bit of communication."  And
12   again, I can tell the Court, that's just not how filter teams
13   normally work.  There is some notice to the other side that,
14   hey, we have some documents we should talk about; we have some
15   documents to return; we have documents we want you to tell us
16   if you think they are privileged.  We didn't have any of that.
17   And it is not a function of counsel sitting here and being
18   concerned on a courtesy level or personal feelings or ego, this
19   is just another sign of the extraordinary conduct that the
20   Government wants to engage in for this particular
21   investigation.
22           At the end of the day, what they are left with is
23   telling the Court, along with these new fangled theories about
24   standing, that it would be somehow wrong to have any level of
25   involvement now or in the future.  And the reality is, if we
```

```
 1    step back and think about it, what is the harm that they are
 2    worried about?  What possibly could justify this kind of
 3    vehement objection and recreation of Fourth Amendment law
 4    because they don't want any bit of involvement?  They don't
 5    want a neutral respected, maybe mutually selected even third
 6    party to take a look at the same documents and make sure they
 7    got it right, or to look at the same documents and make
 8    determinations, as we should be doing under the Presidential
 9    Records Act and figure out whether these are personal or
10    Presidential records.  They are creating a different rule for
11    this case than anything that we have ever seen.
12            So I know I'm running short on time, and I'll try to
13    cut it short and hopefully return when the Court has questions;
14    but, I would suggest to the Court that all we are talking about
15    today is a very modest step that the Court forecast as a
16    possibility with your recent order, which is the appointment a
17    special master.  There will be work to do nonetheless.
18            THE COURT:  To do what exactly?
19            MR. TRUSTY:  Well, first thing which was solved today
20    which was to get an actual inventory.  So we appreciate that
21    that was taken care of by the Court in unsealing that
22    inventory.  The next logical step would be to allow us to
23    actually examine the documents and other items that were seized
24    in this search.  And frankly, the way the communication has
25    been, we think we need involvement on some level, the judge or
```

1    your designee, to make that happen in an expeditious fashion.

2         We also think the special master could be in a

3    position to address and should address not just attorney-client

4    and work product issues and resolve those or at least recommend

5    resolutions of those, but to deal with the overarching paradigm

6    here that actually matters that they are trying to criminalize

7    which is the judicially unenforceable Presidential Records Act.

8    In other words, the classifications for that are entirely about

9    Presidential or personal with no specific regard for

10   classification.  And that's another division that could be

11   helpful in terms of guiding the litigation and hopefully arming

12   the Court with information over time, as we try to litigate

13   these matters.

14        THE COURT:  Are you asserting any other privileges

15   beyond the attorney-client privilege?

16        MR. TRUSTY:  Well, we are not conceding the fact of

17   classification, I should make that one hundred percent clear,

18   in terms of whether any of these items remain classified.  We

19   would assert attorney-client and work product.  Of course, we

20   are not privy to any individual document yet, so I can't give

21   you any sort of play by play.  Beyond that, I suppose I don't

22   expect other privileges to kick in, but I don't --

23        THE COURT:  So I just want to be clear, there were

24   some references in the papers to executive privilege, you know,

25   some resistence from the Government as to the assertion of

1    that, so I do want to clarify exactly what privileges are being

2    asserted by the Plaintiff in this case, for the purposes of the

3    appointment potentially of a special master.

4         MR. TRUSTY:  Absolutely.  Thank you, Your Honor.

5    Certainly, our pleadings have covered that better than I just

6    did.

7         Yes, executive privilege is in play, as well.  The

8    problem that we have in terms of any specific assertion is that

9    we haven't had access to the actual materials.  But I can tell

10   you without again, I think, burning anything from what we have

11   recently seen, some of the recent materials that we have just

12   received continue to alarm us about several different levels of

13   privilege.  So yes, executive privilege is in play; yes, we

14   think that all of these classifications of the Presidential

15   Records Act and the notion of executive privilege are things

16   where a special master logically could wade in and help resolve

17   for this Court in an expeditious fashion, so we would welcome

18   that kind of assessment.

19        THE COURT:  All right.  I'll have more questions

20   later.

21        MR. TRUSTY:  Thank you, Judge.

22        MR. KISE:  Your Honor, may I?  I just have one minor

23   thing.  I didn't want to jump up, when Mr. Trusty was speaking.

24   But to answer your question about privileges that we are

25   asserting, I think that there is also an issue potentially

1   under 44 U.S.C. 2204, which there are restrictions on access to

2   Presidential records.  I'm not sure how that fully applies here

3   because we don't have, you know, a full understanding of the

4   documents; but, that may become an issue and I just want to

5   make sure that we note that in response to your question.

6   Thank you.

7   THE COURT:  All right, thank you.

8   Mr. Bratt.

9   MR. BRATT:  Yes, thank you, Your Honor.

10   One thing that would, I think, undermine most of the

11   confidence in the administration of justice is that the Court

12   doesn't follow the standards and laws for where we are

13   procedurally in this case.  And where we are procedurally is we

14   have a pre-indictment challenge to a search warrant and a

15   search; and, at this procedural stage, the rights of the person

16   who may be aggrieved are very limited.  And under -- and there

17   really are two bases for the Court's jurisdiction and

18   particularly with respect to asserting jurisdiction over the

19   classified records and other Presidential records.

20   Now, Ms. Edelstein will talk about executive

21   privilege, and she will also talk about the propriety of

22   special masters, and she will handle the issue of

23   attorney-client privilege because that is a bit different from

24   the classified and other Presidential records.

25   But with respect to the classified and other

1    Presidential records, there are only two bases that this Court

2    has jurisdiction at this pre-indictment stage.  One is Rule

3    41(g), and we believe this is a truly 41(g) motion; or second,

4    the Court can exercise a second or anomalous jurisdiction.  To

5    do that, that then triggers certain inquires the Court must

6    make, and it also triggers certain burdens on them to establish

7    that they satisfy those standards.

8            The civil cover sheet to this matter references

9    Rule 41(g).  There are frequent references throughout

10   Plaintiff's briefs to Rule 41(g), and we believe that what they

11   have really done is brought a Rule 41(g) motion.  And if the

12   Court interprets and reads and applies Rule 41(g) strictly,

13   they cannot get a special master or the relief that they seek,

14   and that's because the key factor that must exist for a party

15   to bring a Rule 41(g) motion is that the party has a possessory

16   interest in the property at issue.

17           And let me describe what the former President has as

18   Presidential records that the 45th President took.  He is no

19   longer the President; and because he is no longer the

20   President, he did not have the right to take those documents.

21   He was unlawfully in possession of them; and because he has no

22   possessory interest in those records, that ends the analysis

23   under Rule 41(g).  If, however, the Court looks to assert

24   jurisdiction --

25           THE COURT:  Doesn't that put the cart before the

```
 1   horse though?  I mean, you are essentially asking, for purposes
 2   of the Fourth Amendment, to say there is no reasonable
 3   expectation of privacy in the context of the search involving
 4   premises that are unquestioningly controlled by the former
 5   President.  So as a matter of the Fourth Amendment, if that's
 6   the sort of standing argument you are trying to bring, I'm
 7   unclear why now we would have to determine the proper ownership
 8   of those records.
 9           MR. BRATT:  Because, Your Honor -- well, two
10   responses.  One, the reasonable expectation of privacy has been
11   overcome by the issuance of a warrant supported by probable
12   cause; but, second, the sort of standing that Your Honor is
13   talking about and that Mr. Trusty was referencing, that's the
14   standing that you have after there have been charges and you
15   are seeking to suppress the fruits of search.  The sort of
16   standing or jurisdiction that you have to have right now
17   pre-indictment as set forth in Rule 41(g), as set forth in the
18   Howell case, and as I'm about to talk with respect to the
19   equity jurisdiction Bennett case that Judge Rosenbaum decided
20   when she was a judge here, that is very limited.  And whether
21   you call it "standing" or "jurisdiction," they do not have it
22   here.  And in order to get the jurisdiction or standing under
23   Rule 41(g), that is a key requirement.  In fact, it is the key
24   requirement, that you have a possessory interest in a property.
25   If, at a later point, the Fourth Amendment -- potential Fourth
```

```
 1    Amendment violations need to be vindicated, that is done

 2    through a motion on suppression.  It is not done through a

 3    Rule 41(g) motion pre-indictment.

 4         THE COURT:  You don't dispute one can bring a civil

 5    action in equity for the return of property pre-indictment

 6    assuming the equitable factors and consideration to counsel in

 7    favor of such an action.

 8         MR. BRATT:  I do agree with that; but under the

 9    Richey factors and to go through them -- and actually, I was

10    going to start with the first, callus disregard for Plaintiff's

11    constitutional rights, I will get back to that.  But the second

12    Richey factor is that Plaintiff must have an interest in and

13    need for the property, and this plaintiff does not have an

14    interest in the classified and other Presidential records.  So

15    under Richey, that, in and of itself, defeats or should point

16    the Court to decline to exercise its equitable jurisdiction.

17         On the topic of callus disregard for Plaintiff's

18    constitutional rights, there was a warrant here.  Judge

19    Reinhart both at the hearing two weeks ago and in his order

20    reiterated that he found there was probable cause, valid

21    probable cause for the warrant.  There was a search that was

22    done, and we believe that what was seized was limited to what

23    was within the scope of the warrant.  They have put forth no

24    evidence that there was any disregard of the -- of the former

25    President's rights.
```

1          The third factor under *Richey* is irreparable injury;

2    and again, we don't know what the injury is with respect to the

3    classified and other Presidential records.  They aren't his,

4    especially the classified weren't being properly stored.  Do

5    they -- are they potentially incriminating?  Yes, they are

6    potentially are, but that isn't the type of irreparable injury

7    that the courts look at in equity.

8          And then in addition, the last factor is, well, there

9    is no adequate remedy at law, and that's what we have been

10   discussing.  There is an adequate remedy of law later through a

11   suppression motion.

12         There are also, you know, three I think very

13   important, overarching factors that the courts emphasize when a

14   judge in your position is being asked to exercise equity

15   jurisdiction for return of property.  One is that the exercise

16   of that jurisdiction must be with caution and restraint, and it

17   must be exercised only to prevent a manifest injustice; and the

18   third, any time a party comes to equity, the party must have

19   clean hands.  And here, the former President being in unlawful

20   possession of classified and other Presidential records, that

21   is a text book example of unclean hands.

22         I will rest on what we say in our pleadings with

23   respect to the injunction and to personal items, but I will now

24   turn it over to Ms. Edelstein to address the other issues.

25              THE COURT:  All right.

```
 1              MS. EDELSTEIN:  Good afternoon, again, Your Honor.

 2              I'm going to address the issues specific to the

 3    appointment of a special master.  As a starting point, under

 4    the Federal Rules of Civil Procedure, special masters are not

 5    generally favored.  On the other hand, the rules assume that in

 6    most circumstances, the court, whether it be the district court

 7    or the magistrate judge, is equipped to handle such issues.

 8              Having been apprized of the status of both the

 9    investigative review and the filter team review in this case, I

10    think it is especially clear why the appointment of a special

11    master would not be appropriate and only serve to cause delay

12    to both parties.

13              I want to turn to both the issues surrounding

14    executive privilege and also the attorney-client privilege.

15    Plaintiff in this suit has said that the request for a special

16    master would be modest.  On the executive privilege issues, it

17    would not be modest, it would be unprecedented.

18              THE COURT:  Why is that?

19              MS. EDELSTEIN:  There is no role for a special master

20    to play in executive privilege, and that is why it has not been

21    done in the past.

22              THE COURT:  Isn't that also because there has never

23    been a seizure of this magnitude of a former president?

24              MS. EDELSTEIN:  On the executive privilege issues, I

25    think it is very telling that in the three briefs that
```

1    Plaintiff has filed and in addressing the Court, they have

2    never grappled with the case of *Nixon versus GSA*.  Even if they

3    could assert that claim of executive privilege, which we don't

4    concede, their argument that it could be successfully asserted

5    is foreclosed by that case.

6          THE COURT:  I don't know if that's right.  It seems

7    to me like you are potentially overreading *Nixon*; and to say

8    now that there is absolutely no room for a former executive to

9    raise a claim of executive privilege, at least for some period

10   of time, is not entirely decided in the law, so I'm not sure it

11   is as cut as dry as you suggest.

12         MS. EDELSTEIN:  So even if they could raise it which

13   we don't concede, under these circumstances, there is no way

14   that such a claim could succeed.

15         And let me back up a little bit because during the

16   Plaintiff's argument, they characterized this case as "just a

17   former president in possession of his records."  The first

18   issue with that is they are no longer his records.  We need to

19   look at the applicable law here, the PRA; and despite a lot of

20   allegations made by the Plaintiff, we really need to focus in

21   on the legal provisions at issue.  The PRA makes it very clear,

22   in 2202, that these records belong to the United States.

23   Presidential records belong to the United States.  Importantly,

24   in 2203(g)(1), upon conclusion of the term of the President, it

25   is the archivist that assumes custody and control of the

1    Presidential records.  The records at issue were not his, at

2    the time that the search warrant was authorized and the search

3    occurred, and he does not have a property interest in those

4    records anymore.  And in terms of just it being a former

5    president in possession of his records, some of those records

6    included the most highly classified information of the United

7    States.  There are very specific provisions in the Code of

8    Federal Regulations that govern the storage of that property,

9    and it is undisputed that at least after the end of the former

10   President's term, there was no place at that property that was

11   authorized for the storage of those records.

12          We also have the issue here that the former President

13   blatantly disregarded the provisions of the PRA and is now

14   trying to rely on it to accomplish what he seeks here.  But not

15   having turned over the records to NARA, he can't do that.  And

16   the procedure set out in the PRA do not apply because the

17   records are not in NARA's possession as they should have been.

18          Notably, there is also a venue provision in the PRA

19   and should he be seeking relief under that statute, that suit

20   would have to be brought in the District of Columbia and not

21   here.

22          So getting back to the *Nixon* cases, first, he has not

23   made any assertion of executive privilege in this case and, in

24   fact, has taken a number of actions without making that

25   assertion.  He ended up providing some boxes to NARA.  There

```
 1   are materials produced pursuant up to a grand jury subpoena.

 2   There have been multiple instances, and there has never been a

 3   specific invocation of executive privilege.

 4           THE COURT:  As far as the chronology is concerned, at

 5   least in one of the attachments supplied by the Government,

 6   there was, I think, a request for more time to determine

 7   whether to assert executive privilege, so I don't know exactly

 8   if there was an assertion.  But the papers, at least that I

 9   have been presented with, seem to suggest they are taking that

10   position, that a special master is warranted not only for the

11   attorney-client privilege issues but also for the executive

12   privilege and potentially in addition to resolve categorization

13   disputes that arise between the parties, and I presume that

14   refers to the PRA.

15           MS. EDELSTEIN:  So you are referring to what is

16   attachment B to the pleading that the Government filed the

17   other evening, and that is a May 10th letter from the

18   archivist; and in that letter, the archivist clearly explains

19   that the -- it's not a close call here because what the

20   Government was seeking to do was review Executive Branch

21   materials within the Executive Branch, and that's really the

22   key to Nixon versus GSA.

23           Also notably, that letter was provided on May 10th.

24   Purposefully, we waited a few days before beginning the FBI's

25   review of that material to give the Plaintiff the remedy he
```

```
 1    could have sought at that time, which was to bring a suit in
 2    the District of Colombia to assert executive privilege over
 3    those materials.  He did not.
 4           Why Nixon versus GSA is so important is that it makes
 5    clear that the -- that under these circumstances, it would be
 6    impossible for him to successfully assert the executive
 7    privilege to keep the executive privilege from other parts of
 8    the Executive Branch reviewing these materials.  It describes
 9    the intrusion as very limited, when the materials are staying
10    within the Executive Branch, and we have to look at the very
11    purpose of the presidential privilege.
12           THE COURT:  Ultimately, what is the harm in the
13    appointment of a special master to sort through these issues
14    without creating undo delay, to do an orderly fashion receive
15    these materials, receive claims of privilege and go through it
16    giving both sides a full opportunity?  I guess what I'm
17    wondering from the Government, you know, is what is your
18    articulation of harm other than just the general concern that
19    it would delay a criminal investigation?
20           MS. EDELSTEIN:  First of all, those are very
21    legitimate concerns; and, at the outset, even if there was an
22    appropriate assertion of executive privilege, it is undisputed
23    that the executive privilege is a qualified privilege.
24           THE COURT:  Certainly.
25           MS. EDELSTEIN:  And there is a balancing test that
```

```
 1   applies.

 2           In terms of the Government's interest, there are

 3   multiple very significant legitimate interests.  One is the

 4   criminal investigation, and under Nixon versus United States,

 5   that is clearly recognized as a very significant interest, even

 6   if the materials had to be provided outside of the Executive

 7   Branch which here they don't which shows how limit the

 8   intrusion is.  It would be unprecedented for the executive to

 9   be able to successfully assert privilege against the Executive

10   Branch.

11           And in addition to the criminal investigation which

12   is obviously a legitimate interest, as the Supreme Court has

13   recognized, there is also the ongoing damage assessment by the

14   intelligence community.  This is not an effort that we just

15   undertook.  In fact, in that same May 10th letter that I

16   referenced, there is an April communication to Plaintiff's

17   counsel that emphasizes that the materials had to be reviewed

18   by the FBI in part so that it could coordinate an assessment of

19   the damage that could have resulted from the improper storage

20   of these materials.  And if a special master was appointed at

21   this point, that would -- and the Government was not able to

22   continue --

23           THE COURT:  So would your position change, for

24   example, if the special master were permitted to proceed

25   without affecting the ODNI's ongoing review for intelligence
```

1    purposes but pausing temporarily any use of the documents in

2    criminal investigation?  So what I'm saying is no effect on the

3    DNI review, which is ongoing and has been asserted as necessary

4    for national security but then providing a temporary period of

5    time, like I said, for orderly review of the documents seized?

6              MS. EDELSTEIN:  It would not change.  There is no

7    role for a special master to play in terms of executive

8    privilege, given the posture that we are at --

9              THE COURT:  So are you conceding that one would be

10   appropriate for attorney-client?

11             MS. EDELSTEIN:  I'm not, I just haven't reached that

12   argument yet, I'm happy to turn to that.  And in terms of the

13   attorney-client issues, I am not aware of the contents,

14   obviously, of the status update that was prepared and submitted

15   by the filter team.  But my understanding is that the filter

16   team is already in a position to dispose of the materials in

17   accordance with the protocols that we laid out in the search

18   warrant, and it would cause delay to both parties if that

19   weren't allowed to proceed.

20             And again, looking at the cases and the law, it is

21   very telling that the cases that are cited by Plaintiff in

22   their brief, in cases where a special master has been appointed

23   for attorney-client issues, they invariably involve the search

24   of law firm or other law offices, and there is special

25   considerations especially when there could be other clients

```
 1   involved, matters where a U.S. attorney's office may be seizing
 2   records in unrelated investigations, and that's simply not the
 3   case here.  There is one client, and he is not an attorney.
 4        So in terms of the special master for attorney-client
 5   privilege, that is just not necessary at this point.  And as I
 6   started with, these are the type of cases where we assume that
 7   a district court or magistrate judge on a specially care given
 8   the -- what I understand is a modest volume of materials that
 9   don't present the thorny issues that are presented in law firm
10   search, we assume that is something that the district court,
11   the magistrate judge would be equipped to handle.
12        THE COURT:  All right, thank you very much.
13        I'll give the Government an additional opportunity;
14   but now, I would like to hear form Plaintiff's counsel with
15   focused argument on the Richey factors to the greatest extent
16   possible in terms of the equitable considerations.
17        MR. TRUSTY:  Your Honor, I think the difficultly in
18   completely jumping through that hoop for the Court in terms of
19   the Richey factors is that we are still purposefully blinded
20   from large swaths of information.  What we see from our side of
21   the aisle is a warrant that looks like a general warrant and
22   could be subject to challenge under Rule 41.
23        What we also have concerns about is this affidavit
24   that was released in kind of more black than white form that
25   doesn't really tell us whether there were omissions or
```

 1   misstatements that were made to Judge Reinhart in support of

 2   this warrant.  So there is a --

 3          THE COURT:  Let me just ask you:  What is the

 4   irreparable harm that you are asserting?  At this point, the

 5   Court would be required to, if it did determine that the

 6   exercise of equitable jurisdiction is appropriate going through

 7   those considerations -- and admittedly, they are considerations

 8   only.  But nevertheless, what is the Plaintiff's assertion of

 9   irreparable harm if the Court does not exercise equitable

10   jurisdiction?

11          MR. TRUSTY:  Well, Your Honor, the irreparable harm,

12   frankly, is ongoing, and it's on two different levels I would

13   suggest.  The first is that you have a criminalized

14   investigation of a dispute with NARA that historically is

15   unenforceable in terms of judicial enforcement.  It is a

16   noncriminal scenario where they anticipate that a president, at

17   any time as a president or after, would have the highest level

18   of access to documents that are in his or her possession.  So

19   we are in a situation where, literally, they have taken a -- we

20   have characterized it at times as "an overdue library book

21   scenario" where there is a dispute -- not even a dispute,

22   ongoing negotiations with NARA about archives that has suddenly

23   been transformed into a criminal investigation.  So anything

24   that furthers that criminal investigation in terms of their

25   continued access to these documents, to their allegations that

```
 1    there was a need for an ODNI assessment, to the fact that they
 2    have confirmed today an ongoing criminal investigation, they
 3    should not have the benefit of this information to try to build
 4    a criminal case when they were never entitled to walk through
 5    the doors and seize any of these items.
 6            So this whole idea of whether or not -- I'm heartened
 7    to hear that they are starting to acknowledge, perhaps
 8    reluctantly, that the Presidential Records Act applies, but
 9    they need to realize the whole act applies.  I mean, that act
10    anticipates that presidents, even when out of office, are going
11    to have highest level of access to their materials.  It also
12    anticipates -- there is language in the act somewhere about
13    12-year classifications on behalf of the President which, by
14    definition, means you are talking about rights of an
15    ex-president, a former president to control the flow of
16    information back and forth with NARA.  It is an exercitation --
17    it is a statute that demands cooperation but not judicial
18    enforcement.  So there is this direct level of a criminal
19    investigation accessing documents that they are not entitled to
20    have ever seized in the first place.
21            There is also, I would submit, and this is may be a
22    little harder to characterize, but one that I think in the
23    world of equity makes sense, there is a broader concern here
24    for the institution of the presidency, that no matter who is
25    under the gun of a politicized Department of Justice, that
```

 1   equity cries out for looking at the combined actions of this

 2   Department in trying to eliminate the Presidential Records Act

 3   in favor of criminalizing it.  This is something that, your

 4   know, fair-minded citizens and I hope jurists, as well, would

 5   recognize is a serious institutional threat.  Now, can I

 6   characterize the harm in some sort of precise way?  No, but I

 7   don't want to forget the institutional harm of taking this

 8   radical approach that the Department is taking.  So I think it

 9   is literally kind of on a case building level that there is

10   prejudice, but there is, I think, broader historic concerns,

11   and again, belied by all of the little moments of conduct, the

12   challenges about standing, the inability to reach out during a

13   filter team, there is something here that should be looked at.

14   And frankly, I continue to be astounded by the fact that the

15   Department of Justice can't just accept that.  They can't

16   accept even a little bit of judicial involvement in a historic

17   and outrageous and inequitable scenario.

18        THE COURT:  Why couldn't you just presumably wait to

19   challenge these matters in a future proceeding, if one ever

20   materializes?

21        MR. TRUSTY:  Right.  Well, is it true that we could

22   have *Franks* hearing and a motion to suppress for a general

23   warrant some day?  Sure.  Obviously, the damage is done for any

24   citizen, at that point; that means they have been indicted.

25        The model that's being proposed to you on behalf of

```
 1   the Government is one that completely guts Rule 41.  We have a
 2   mechanism, not even just equitable principles in general or
 3   court inherent supervisory authority, but we have a statutory
 4   mechanism for pretrial challenges to warrants.  It specifically
 5   refers to the language of the Fourth Amendment, "unreasonable
 6   searches and seizures."  That's what we are talking about here.
 7   The Government wants to ignore that.  They want to say look
 8   away, it doesn't apply; but, it applies to President Trump just
 9   like it would anybody.
10        So Rule 41 is the ultimate mechanism we are talking
11   about to try to return property and essentially -- not directly
12   by way of a suppression, but essentially invalidate the conduct
13   of this Government.  That could be based on the way they short
14   circuited the Presidential Records Act in their search warrant.
15   Of course, we would have to see the affidavit to be able to
16   fully brief that.  It could be based on the general nature of
17   the warrant.
18        The Court will probably recognize -- I'm not asking
19   for an opinion -- that the warrant itself not only allows for
20   gathering papers around their classified materials seizure,
21   which again we even dispute whether it is classified or whether
22   they are entitled to seize it or whether it is in the right
23   paradigm, but boxes in the vicinity, documents in the vicinity.
24   I mean, this was a colonial time search where the agents had
25   discretion to take anything they want.  And maybe they did, we
```

```
 1   are still trying to get through a legitimate inventory to
 2   figure that out.  But there are significant substantial
 3   preliminary showings that this is a warrant that is suspect.
 4   And I can just tell the Court that our intention is to explore
 5   that, get the classifications through a special master and Your
 6   Honor that we can get, in terms of what the universe of items
 7   are, and pursue ideas like seeing the affidavit, maybe not for
 8   the general public, but at least for counsel to properly
 9   prepare for a Rule 41 and then litigating a Rule 41.  This is
10   what the rule is all about.  It doesn't matter whether it is a
11   president or guy on street corner in Baltimore, they have that
12   right to challenge this preliminarily.
13           THE COURT:  And then why would you wait 14 days to
14   file the motion seeking -- I did read there were perhaps
15   informal discussions for the Government's consent to one, but I
16   would like to hear more about that issue in particular, so
17   please proceed.
18           MR. TRUSTY:  Right.  Your Honor, again, not to
19   alienate the Court on this issue, part of that I don't think I
20   can disclose.  As with any kind of decision about the timing of
21   filing, the nature of filing, some of that is going to,
22   unfortunately from where I stand right now, fall into a
23   category that I'm not comfortable sharing in open court.  But I
24   would also say more fundamentally, we were trying to have
25   communications with the U.S. Attorney's Office.  We had
```

 1   multiple communications early.  We asked them what their
 2   position would be on a special master.  We were hopeful that
 3   there would be some transparency that carried through to really
 4   let us assess what was seized, how it was seized, what the
 5   basis of the affidavit was, and then we wouldn't have to get to
 6   this point of involving the Court.  So there was some period of
 7   time.  I don't want to say, you know, 12 days, two days, 14
 8   days, but some of this was effectively exploring whether we
 9   were going to have a level of cooperation that allows us to not
10   defer to, you know, to run to the Court for assistance.
11          There are other factors as well, but I think that's
12   kind of the cleanest way I can address it for Your Honor.
13          THE COURT:  Finally, in your estimation, in
14   consideration of the potential need to appoint a special
15   master, is there a need for the Court to conduct a formal
16   Rule 65 analysis for injunctive relief insofar as there may be
17   a need, in conjunction with the appointment of a special
18   master, in part and parcel with that, to temporarily enjoin the
19   use of the documents for criminal investigative purposes
20   without affecting the DNI's review?
21          So my question is:  Does the Court -- or should the
22   Court be conducting a formal Rule 65 inquiry baked into the
23   special master assessment?
24          MR. TRUSTY:  I don't see any harm from that, from our
25   perspective, because in the context of "baking it in," you are

```
 1   trying to balance competing interests of parties.

 2            And as to ODNI component, I would just suggest, yeah,

 3   you know, we have this old school notion presented to the Court

 4   that, you know, if somebody is in the room looking at the

 5   documents, that's going to tie it up and nobody else has

 6   access.  I mean, I think they could actually copy some of these

 7   documents to allow for ODNI review.  This notion that suddenly

 8   a special master physically obstructs them from being able to

 9   do their review seems antiquated to me.  But, you know, we are

10   happy to brief that issue supplementally, since I don't think

11   we really touched it directly.  But again, we welcome multiple

12   bases for involvement, and the idea for stopping this runaway

13   train on its tracks while the Court and the special master get

14   their opportunity to assess things I think makes sense.

15            THE COURT:  And so, finally, when you say "assess

16   things," in the most precise way possible, what do you envision

17   and contemplate the special master actually doing with respect

18   to review of documents broadly?

19            MR. TRUSTY:  I believe the special master would --

20   again, first thing has been taken care of, we think.  We

21   haven't had a long time to look at it, but we think the idea of

22   a more detailed particular compliant inventory is kind of off

23   the list.  That's great.

24            Practically, the idea of stopping the initial review

25   has been mooted by the way that they have been so expeditious,
```

```
 1   and they've even turned over materials to the trial team.  But

 2   I think that the special master would be in a position to fully

 3   assess the current privileged classifications that have been

 4   made, to again involve our -- get our involvement in this, as

 5   well, which is overdue, in identifying which documents might

 6   fall within the privilege.  We think the special master will be

 7   in a position to assess personal versus Presidential documents

 8   under the framework of the PRA and executive privilege.  We

 9   think all of that is the type of thing it would be, I suspect,

10   economical and make sense to be conducted along with the

11   physical review of the documents to throw that to the special

12   master, allow us to use that time.  Ultimately, there may well

13   be reasons to come back to this Court, but I think that's an

14   efficient model for getting to a bottom line of where we

15   disagree and where we agree, if anywhere, when it comes to the

16   classification of all of these seized materials.

17            I know that wasn't nearly as pithy as Your Honor

18   wanted, but I just wanted to make sure I covered that.

19            THE COURT:  Any response from the Government?

20            MR. BRATT:  Yes, Your Honor.

21            On the Rule 65 question that the Court asked, if --

22   and that would actually have been a clarification, if the Court

23   were to say that only ODNI can have access to the records to do

24   its damage assessment and that the Government and the FBI has

25   to stop doing that, then I'm assuming the Court is enjoining
```

```
 1    us, and the Court would have to make the findings that are

 2    necessary under Rule 65.

 3              THE COURT:  And what authority do you have for that?

 4              I have seen the special master orders that include a

 5    component of injunctive relief without officially going through

 6    a Rule 65 inquiry.  Logically, the idea being that the special

 7    master would go first, effectively review the documents, go

 8    through them orderly, receive, and recommend; and then

 9    following that review, turn over the materials back to the

10    Government.  So I think in that sort of logical sequence, why

11    would a Rule 65 inquiry be essential?

12              MR. BRATT:  Because as Ms. Edelstein pointed out,

13    those cases are different.  They involve attorney-client

14    information.  They involve possible taint.  They involve Sixth

15    Amendment --

16              THE COURT:  But there is no dispute that there are at

17    least 100 or so if not more documents that have been marked at

18    least as "potentially privileged."

19              MR. BRATT:  I don't know, so I --

20              THE COURT:  Okay.  But I think the public

21    representations are that there are materials that have been

22    designated as "potentially privileged," there is no dispute

23    about that.

24              MR. BRATT:  There is no dispute about that.

25              So I will separate the attorney-client, because I do
```

 1  think that raises different issues from the special master

 2  filtering and still not quite understanding how it would filter

 3  for executive privilege, particularly if it is a privilege that

 4  cannot be asserted against the current executive.

 5          But the difference with the attorney-client matters

 6  are, you know, for all of the reasons that courts have ordered

 7  a special master, you know, searches in law firms or attorneys,

 8  those -- those don't exist with respect to the Presidential

 9  records.  And I will tell the Court, you know, how it does slow

10  down because in addition to the damage assessment that ODNI is

11  doing, in any retention case, as we call these types of cases,

12  in any illegal retention case under the Espionage Act, we also

13  start looking at, all right, are these documents still

14  classified?  So there is a classification review.

15  Classification is different from national defense information

16  under the case law, okay.  So even if it is classified, does it

17  contain national defense information even if it is not

18  classified?  Does it not contain national defense information?

19  As the Court is aware, we are dealing with over 300 records

20  here.  That process has begun.  That process needs to continue.

21          If the Court says only ODNI can look at this for

22  purposes of damage assessment, that is going to interfere with

23  the investigation, and that's something the Court, I think, has

24  to enjoin us from doing.  And if it is going to enjoin us from

25  doing it, it is has to go through the Rule 65 factors.

```
 1              I don't think the Government in any of the cases

 2     where a special master has been appointed for attorney-client

 3     purposes has ever said, okay, we still want to look at the

 4     stuff.  I think the Government has always agreed that it would

 5     step aside during that review by the special master.  We don't

 6     find ourselves in that position with respect to the classified

 7     and other Presidential records.

 8              So I think the Court, if it is going to tell us, you

 9     cannot use these for any other purpose, would have to enjoin

10     us.

11              To return briefly to the Court's question about

12     irreparable injury, first -- and I should have said this at the

13     outset, I think for purposes of this proceeding, the Court has

14     to accept that it was a valid warrant, that this was a lawful

15     search.  So, again, the interests that a party could seek to

16     vindicate through a suppression motion are not at play here.

17              This was a lawful search.  This was not, as the

18     magistrate judge found in finding probable cause for violations

19     of three criminal statutes, this was not an end run around the

20     Presidential Records Act.  This is a valid search warrant for

21     evidence of three significant federal crimes.

22              The fact that the investigation is going to continue,

23     that is not the type of irreparable injury that courts have

24     recognized as supporting either an injunction or the exercise

25     of equitable jurisdiction for purposes of Rule 41
```

1   pre-indictment.  And if that's what they are saying is their

2   irreparable harm, there is no case that supports it.  They cite

3   none.  I'm not aware of one, and I don't think the Court can

4   find it.

5          Last, I'm sort of reluctant to get into a

6   back-and-forth, but since they do reference their conversations

7   with me in their briefs, I would say that on the morning after

8   the search, so 13 days before the filing of the motion, we

9   declined their request for a special master.  There has been no

10  subsequent re-upping of that request to us.

11         Also, on day one of the search, they knew the

12  identity of at least one of the filter attorneys and would have

13  been able to be in contact with that filter attorney.  Also, on

14  day two, they were told that the filter review had begun and it

15  would take about two weeks, give or take, to get it done.

16  Again, my understanding is the filter team was prepared to

17  reach out to counsel, but for this intervening hearing and

18  motion and have instead gave its position to the Court in the

19  notice which they now have.

20         THE COURT:  But just so I understand, upon

21  discovering that there were potentially privileged materials in

22  the seized property, there was no communication to Plaintiff's

23  counsel of the presence of such potentially privileged

24  materials; is that correct?

25         MR. BRATT:  Correct.  They were told -- and again,

```
 1    since I'm not part of it, I also didn't know what the status
 2    was.  But they were told that the review for potentially
 3    documents that had been segregated as potentially privileged,
 4    the review by the filter team, by the filter attorneys had
 5    begun.  They were aware of that.
 6            THE COURT:  Let me ask also, there has been some
 7    discussion in the filings related to leaks or disseminations of
 8    information to the media.  Are you aware, Mr. Bratt, of any
 9    such dissemination to the media, relative to the contents of
10    the seized records?
11            MR. BRATT:  Not on the part of anybody that I'm
12    working with.  Obviously, you know, things -- I see the same
13    things in the press that other people do.  It's bad.  People
14    are talking.  If people on the Government's side are talking
15    about it, I'm not aware of anybody that we work with that has
16    had contact with the press and certainly don't condone it in
17    any way.
18            THE COURT:  All right.
19            I guess one final question I have.  I know there has
20    been some discussion about the typical special master scenario
21    involving an attorney's office.  Is there any authority that
22    would cabin the appointment of a special master only in the
23    more formal or traditional attorney context?  In other words, I
24    haven't seen such a sort of carve-out in the special master
25    law, even if ordinarily that's how they arise.
```

```
 1              MR. BRATT:  So in the context of searches, I'm only
 2   aware -- and Ms. Edelstein, I know, has dived into -- deeper
 3   into the case law than I have.  I'm only aware of a special
 4   master being appointed in however many cases there are to
 5   filter for attorney-client.  I'm not aware of any other sort of
 6   privilege issues ever being referred to a special master.
 7              THE COURT:  I believe in one case, the Government
 8   initiated the request and, in that request, did refer to the
 9   appointment of a special master for purposes of executive
10   privilege.
11              MR. BRATT:  So that's the Giuliani matter, and we
12   inquired of our colleagues in the Southern District of New
13   York, and they told us and they confirmed it with the special
14   master that there was no review for executive privilege in that
15   case.  The only review that occurred was for attorney-client.
16              THE COURT:  But there was no objection to
17   conceptually the special master engaging in that work as well.
18              MR. BRATT:  So again, I wasn't part of, you know,
19   what was -- I know there was a letter from that office to the
20   court.  I don't know how that came up or why somebody
21   envisioned that.  It certainly -- and again, that was a private
22   attorney for the former President.  Certainly the volume, to
23   the extent -- and somebody outside of government, so to the
24   extent that there even would have been potentially executive
25   privilege documents in those materials is a little hard to
```

```
 1   conceive, but maybe somebody, you know, had a concern about
 2   that.
 3           This is entirely different.  This is -- these are,
 4   you know, scores of executive branch or documents that are
 5   potentially subject to executive privilege.
 6           THE COURT:  All right, thank you.
 7           I did have some questions for the filter review team
 8   attorneys, so Mr. Lacosta or Mr. Hawk.
 9           MR. HAWK:  Yes, Your Honor; Benjamin Hawk on behalf
10   of the United States.
11           THE COURT:  Good afternoon.
12           MR. HAWK:  Good afternoon.
13           THE COURT:  I was curious if you could offer any
14   observations about the safeguards that have been taken in the
15   course of conducting the privilege review team.
16           My review of the records indicates that there might
17   have been at least some inadvertent transmission of materials
18   without, of course, revealing any sensitive information.  So
19   with that in mind and given Plaintiff's suggestion that there
20   may have been also some missteps initially in the execution of
21   the warrant in terms of not doing a full privilege review of
22   the entire premises, I wonder what the Government's position
23   was on that score.
24           MR. HAWK:  Yes, Your Honor.  I'm happy to address
25   those questions.
```

```
1              One point, in terms of clarification, we set forth

2     the process that we followed in some of the matters that Your

3     Honor is referencing in our notice which remains under seal

4     with permission of counsel concurrence.  I would propose I have

5     permission to be able to speak about the content of that

6     notice.  It doesn't touch on any items that could potentially

7     be privileged.

8              I would further suggest, Your Honor, at a point in

9     time Your Honor would deem appropriate, we would unseal that

10    notice, perhaps with redactions to the extent the parties can't

11    come to any agreement with any materials that might be

12    potentially privileged.

13             THE COURT:  And I appreciate the concern.

14             Mr. Kise or Mr. Trusty, any objection to general

15    discussion of the procedures without preference to any

16    privileged items.

17             MR. KISE:  No, Your Honor.  As stated, our concerns

18    really relate to waiver of the substantive privileges.

19    Anything that doesn't touch on that, we are satisfied with.

20             THE COURT:  You may proceed.

21             MR. HAWK:  Thank you, Your Honor.

22             So as explained in our notice, the Government took

23    the attorney-client privilege -- the possibility of

24    attorney-client privilege issues very seriously, beginning with

25    setting forth protocol that the filter team and case team would
```

1   follow in the search warrant affidavit which is now unsealed

2   and available to the public.  In addition, the filter team and

3   case team had conversations with the filter agents to give them

4   direction.

5          I want to make clear that the filter team agents

6   applied a very broad and expansive criteria and standard to

7   attorney-client privilege being any document that they saw that

8   appeared to be legal in nature were contained in the attorney

9   name -- or readily identifiable attorney name, they immediately

10  segregated and identified as potentially privileged.

11         To take a step back in terms of the actual execution

12  of the search, Your Honor, the search warrant protocol, the

13  filter protocol set forth in the affidavit does address what we

14  call the "45 Office that I understand to be the office of the

15  former President.  However, the case team did elect at the time

16  of the search to apply the same filter protocols to the actual

17  storage room, the other location where evidence and items were

18  seized, and so the same filter process was applied to both

19  locations, which I think is important.  So the filter team

20  agents did an initial review and search of those areas before

21  the case team agents did.

22         And upon finding items that appear, again applying an

23  extremely expansive view of the attorney-client privilege to be

24  over inclusive and err on the side of caution given the

25  circumstances of the search, when they identified something

1    that was legal in nature or contained a name of readily

2    identifiable attorney, they then -- that, for example, was in a

3    box commingled with evidence responsive to attachment B, they

4    sealed that box, they marked it as potentially privileged, and

5    the filter agents maintained custody and control and segregated

6    that from the case team from the moment that evidence was

7    identified to the point where it was transferred to the

8    Washington field office.  Those items, Your Honor, pursuant to

9    the protocol, again were identified as being potentially

10   privileged applying that broad standard, that was the first

11   step of the filter process.

12         The second step of the filter process, which is also

13   set forth in the affidavit, was for the filter attorneys to

14   then take a look and apply a legal analysis to the items and

15   the documents that the filter agents had identified as

16   potentially had privileged.  Mr. Lacosta and I did that.  There

17   is not a high volume of materials, as Your Honor is aware and

18   made reference to.  It is approximately 520 pages, and 64 what

19   we call "sets of materials" that could be one document or two

20   copies of the same document or several documents that perhaps

21   are related in nature.

22         Mr. Lacosta and I took the time methodically to go

23   through those items to assess what we had and what the

24   potential issues could be.  And I want to pause here for a

25   moment, Your Honor, and address some comments that Mr. Trusty

```
 1   had made about the filter team and our communication.

 2           So as Mr. Bratt pointed out, I was identified as the

 3   primary point of contact for the filter team at the outset of

 4   the search warrant and the execution of it.  I would have

 5   assumed that counsel, had they had any questions or issues or

 6   concern, knew how to contact me and would have done so.  I did

 7   not reach out nor did Mr. Lacosta because we wanted to be in a

 8   position to understand what we had.

 9           We are only a few weeks out of the search warrant,

10   Your Honor, and we wanted to be able to assess, determine what

11   were the potential issues, and actually be in a position to

12   have meaningful conversations with counsel so we could address

13   questions to the extent we could answer them.  That all

14   coincided with the motion that Plaintiff filed in this case.

15   Respectfully, Your Honor, we were prepared to communicate and

16   reach out to counsel and to actually provide them with a copy

17   of all of those items that I referenced for them to review and

18   assert privilege so we could move through the steps set forth

19   in the protocol and the warrant.  Given Your Honor's

20   preliminary opinion to appoint a special master to this matter,

21   we wanted to be respectful of the Court and we wanted to allow

22   the Court time to consider the issues before the Court and also

23   rule on them, so we put a pause on that process.  Generally

24   speaking, as the Court is aware and counsel now knows, in our

25   notes we filed, we set forth a proposal in terms how to proceed
```

 1  and continue.

 2          So going back to the filter process, Your Honor, when

 3  Mr. -- there were two instances that Your Honor noted.  I can't

 4  get into specifics.  I think my view I can offer at this point

 5  is, I think to the extent we call them "inadvertent exposure,"

 6  I would use that terminology and view it in terms of exercising

 7  an abundance of caution until we have actually made a

 8  determination and consultation with counsel as to whether those

 9  items are actually privileged in nature because, again, the

10  Government applied an expansive criteria to attorney-client

11  privilege.

12          Those two instances I would also reference, Your

13  Honor, are examples of the filter process actually working

14  where the case team -- and this is actually set forth again in

15  the protocol in the warrant, where the case team identified

16  something that they determined warranted further review.  And

17  again, without getting into specifics, I can offer in this

18  setting one example is seeing the top of the letterhead with a

19  firm name.  Case team ceased reviewing that item in that box;

20  and as they should appropriately, turned it over to the filter

21  review team and Mr. Lacosta and I to conduct a further review

22  analysis.

23          In the second instance, Your Honor, again, I think

24  this is being personally over inclusive in an abundance of

25  caution recognizing the circumstances that we find ourselves

```
 1    in, the second instance was again an item generally speaking --
 2    Your Honor, if you can give me a moment just to think on how to
 3    frame this.
 4           The second instance was an item where a case team
 5    attorney saw that there might be -- saw that there might be --
 6    saw that there were -- bottom line is, Your Honor, I do not
 7    believe this information is privileged, but I still want to be
 8    respectful, and I want respect the process and Counsel's
 9    opportunity to assert, but it was an instance where, I believe
10    in my view, the case team attorney was exercising extreme
11    caution in identifying a document that could potentially
12    include privileged information and so, exercising that caution,
13    gave it to the case team -- or gave it to privilege review team
14    to review, and that Your Honor, as counsel --
15           THE COURT:  And that currently remains in the
16    potentially privileged pile, so to speak?
17           MR. HAWK:  Yes, Your Honor.
18           Everything, Your Honor, in terms of any -- again, we
19    are using the term "potentially privileged," but that is what
20    is in that category of information, it is our view the vast
21    majority of it is not privileged.  But again, we are respecting
22    the process and the protocol set forth.
23           THE COURT:  So of the 540 documents that have
24    tentatively been deemed potentially privileged and in the
25    Government's expansive view of that term, did any of those
```

1    documents originate from somewhere other than the storage room

2    or the 45 Office?

3              MR. HAWK:  Your Honor, one minor clarification;

4    respectfully, it is 520 pages.

5              THE COURT:  Oh, I'm sorry, 520 pages.  Thank you.

6              MR. HAWK:  We categorize it as 64 sets of materials.

7              Not to my knowledge, no, Your Honor.  The evidence

8    that was provided to us to review, my understanding came from

9    the storage room and the 45 Office and nowhere else.

10             If I may also briefly, Your Honor, just for the

11   record and sake of clarity, when I say "maintain custody and

12   control," I mean maintain custody and control.  When something

13   is given to the privilege review team, the FBI has a separate

14   room that is locked that only the privilege review team has

15   access to via their badge that nobody else has access to.  And

16   we take it very seriously, even though we don't think the

17   majority of it is privileged; but to be respectful of the

18   process which, again, we would have engaged counsel but for the

19   current issue before the Court.

20             THE COURT:  Thank you very much, Mr. Hawk.

21             MR. HAWK:  Your Honor, if I may.

22             THE COURT:  Yes.

23             MR. HAWK:  We would like to seek permission to

24   provide copies -- the proposal that we offered, Your Honor,

25   provide copies to counsel of the 64 sets of the materials that

```
 1    are Bates stamped so they have the opportunity to start

 2    reviewing.

 3              THE COURT:  I'm sorry, say that again, please.

 4              MR. HAWK:  The privilege review team would have

 5    provided Bates stamped copies of the 64 sets of documents to

 6    Plaintiff's counsel.  We would like to seek permission from

 7    Your Honor to be able to provide those now, not at this exact

 8    moment but to move forward to providing those so counsel has

 9    the opportunity to review them and understand and have the time

10    to review and do their own analysis of those documents to come

11    to their own conclusions.  And if the filter process without a

12    special master were allowed to proceed, we would engage with

13    counsel and have conversations, determine if we can reach

14    agreements; to the extent we couldn't reach agreements, we

15    would bring those before the Court, whether Your Honor or Judge

16    Reinhart.  But simply now, I'm seeking permission just to

17    provide those documents to Plaintiff's counsel.

18              THE COURT:  All right.  I'm going to reserve ruling

19    on that request.  I prefer to consider it holistically in the

20    assessment of whether a special master is indeed appropriate

21    for those privileged reviews.  I think Mr. Bratt is hoping to

22    get a few more minutes in.

23              So, Mr. Bratt, I'll hear from you and then give

24    Plaintiff's counsel an opportunity up to present any additional

25    argument.
```

```
 1          MR. BRATT:  Thank you, Your Honor.  I apologize, if I
 2    was looking overly anxious to speak.
 3          My colleagues reminded me of something in response to
 4    your question about the Giuliani proposal and how this case is
 5    so much different from even any conceivable case that would
 6    also have involved Presidential records, and that is because we
 7    have over 300 classified documents here.  The proposal would be
 8    not only to have somebody outside of the Executive Branch
 9    review for executive privilege, but also to turn over to that
10    person classified documents to get that person the necessary
11    clearances of which there are many and then --
12          THE COURT:  I just want to be clear.  The inventory,
13    I saw the references, it is marked as "classified."
14          MR. BRATT:  Fine.  Not to presuppose the review, yes,
15    documents bearing -- maybe a better way to put it, documents
16    bearing classification markings.  There are over 300 of those.
17    We treat them presumptively as classified.  We would not turn
18    them over to somebody that does not have the appropriate
19    clearances.
20          Also under the protocols that are proposed by the
21    Plaintiff, they would regain access to those including
22    potentially the former President.  We have no idea where they
23    would be stored; and again, this would be giving access to
24    people things that they do not have the right to have access,
25    at this point in time, all for, you know, what we think is a
```

```
 1    fanciful view that somehow they would be successfully able to

 2    interpose an executive privilege objection that would prohibit

 3    the Executive Branch from reviewing the Executive Branch

 4    materials for a core Executive Branch function.

 5              Thank you.

 6              THE COURT:  Thank you.  All right.

 7              Final thoughts from Plaintiff's counsel, then we will

 8    recess.

 9              MR. TRUSTY:  Your Honor, I'll be very brief.

10              Just in terms of the things we just heard from

11    Government counsel, again, without getting specific, we are now

12    hearing with the unveiling or the kind of not literal but

13    beginning of unveiling of a self-assessment by the filter team

14    of how they conducted themselves, that the wall broke and you

15    are being told, "Trust us, it is no big deal, we were really

16    being conservative."  Maybe that's exactly how it plays out,

17    but this is the wrong case to keep getting these late

18    assurances from the filter team that, you know, there is

19    nothing to worry about.

20              The record should probably reflect, if it doesn't

21    already, that I believe Mr. Hawk is a deputy within Mr. Bratt's

22    section at DOJ.  And it is interesting to me -- again, not to

23    put too fine a point on it, but when there is a filter

24    situation, whether it is a capital case, whether it is a

25    privilege review, whatever it may be that calls out for
```

```
1    sequestration of the litigation, it's very easy, particularly

2    in this case called "Washington D.C.," to tap someone who is

3    truly disconnected not only from the criminal investigation but

4    from the supervisory chain.  And what the National Security

5    Division did was they picked the deputy within the section that

6    is doing the criminal investigation.  They could have turned to

7    any section of DOJ or to a U.S. Attorney's Office; they didn't

8    do that.

9         Again, I'm not trying to overstate concerns here, but

10   I'm also not willing to ignore concerns.  This is a situation

11   where -- of the Government's own doing where this -- again, the

12   modest amount of supervision that we are suggesting makes

13   sense.

14        As to the latest bogeyman, the latest obstacle kind

15   of thrown before the Court in terms of this potential process,

16   that clearance is really complicated and takes a lot.  Well,

17   first of all, I have TS clearance right now which I think would

18   carry through; but if there is a special master that doesn't

19   have clearance, it can be expedited by JMD at the Department of

20   Justice.  This is not something that is going to take -- it

21   doesn't have to take weeks or months.  It can be done very

22   quickly, particularly with a gentle prod from this Court.  So,

23   you know, these are -- it's almost like chasing somebody who

24   keeps throwing trash cans behind them to try to stop you from

25   catching up, and that's what we are seeing this afternoon.
```

Thursday, September 1, 2022.

1          The last thing I would just say is the deprivation of

2    access to these records that is continuing, to this point, is

3    actually a violation of 2205.  It is a violation of the

4    Presidential Records Act because President Trump has unfettered

5    access to Presidential and personal records.

6          Look, all we are saying is get another set of eyes on

7    it so we can have some assurance that the process is fair in

8    this extraordinary case.

9          And we appreciate Your Honor's obviously very active

10   interest in this matter in terms of your questions today and

11   the expeditious nature of the hearing.  And if there is no

12   other questions, I'll sit down.

13          THE COURT:  All right, thank you.

14          I have nothing further.

15          But if the Government's wishes couple minutes to

16   respond, I'm happy to hear any final observations, and then I

17   will be recessing this hearing.

18          The Court will not be entering any order orally, but

19   will be entering a written order in due course.

20          Mr. Bratt.

21          MR. BRATT:  Just briefly, Your Honor.

22          With respect to Mr. Hawk, while in the ordinary

23   course, he is my deputy for expert control and sanctions.  We

24   felt collectively it was important to have a person on the

25   filter side with a strong national security background; but for

```
 1    purposes of this matter, he does not report to me.  He reports

 2    elsewhere.

 3              THE COURT:  Thank you.

 4              All right.  I appreciate the parties' assistance.  I

 5    appreciate the members of the gallery maintaining decorum.

 6              The Court is in recess.

 7              THE COURTROOM DEPUTY:  All rise.

 8        (PROCEEDINGS ADJOURNED AT 2:40 p.m.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Thursday, September 1, 2022.

1                    **C-E-R-T-I-F-I-C-A-T-E**

2              I hereby certify that the foregoing is

3          an accurate transcription and proceedings in the

4          above-entitled matter.

5

   *9/2/2022*                        */s/DIANE MILLER*
6    DATE                          DIANE MILLER, RMR, CRR, CRC
                                   Official Court Reporter
7                                  United States District Court
                                   101 South U.S. Highway 1
8                                  Fort Pierce, FL  34950
                                   772-467-2337
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Thursday, September 1, 2022.

DONALD J. TRUMP vs. UNITED STATES OF AMERICA

Case 9:22-cv-81294-AMC   Document 127   Entered on FLSD Docket 09/29/2022   Page 60 of 70

Page 60

**MR. BENJAMIN:** **[1]** 6/1
**MR. BRATT: [21]**
2/16 3/24 4/4 4/18
5/12 7/23 18/9
20/9 21/8 38/20
39/12 39/19 39/24
42/25 43/11 44/1
44/11 44/18 54/1
54/14 57/21
**MR.**
**CORCORAN: [1]**
2/11
**MR. GONZALEZ:**
**[1]** 2/18
**MR. HAWK: [10]**
45/9 45/12 45/24
46/21 51/17 52/3
52/6 52/21 52/23
53/4
**MR. KISE: [10]**
2/6 4/8 4/24 5/1
6/22 6/25 7/21 8/1
17/22 46/17
**MR. LACOSTA:**
**[1]** 6/7
**MR. TRUSTY:**
**[13]** 2/9 9/24
15/19 16/16 17/4
17/21 30/17 31/11
33/21 35/18 36/24
37/19 55/9
**MS. EDELSTEIN:**
**[10]** 2/20 23/1
23/19 23/24 24/12
26/15 27/20 27/25
29/6 29/11
**MS. HALLIGAN:**
**[1]** 2/13
**THE COURT: [63]**

**THE**
**COURTROOM**
**DEPUTY: [3]** 2/2
6/16 58/7

**/**
**/s/DIANE [1]** 59/5

**1**
**100 [1]** 39/17
**101 [1]** 59/7

**10th [3]** 26/17
26/23 28/15
**12 [1]** 36/7
**12-year [1]** 32/13
**13 [1]** 42/8
**14 [2]** 35/13 36/7
**15-minute [1]**
6/13
**1:11 [1]** 6/17
**1:26 [1]** 6/18

**2**
**2022 [2]** 1/5 59/5
**22-81294-CIV-CA**
**NNON [1]** 1/2
**22-CV-81294 [1]**
2/3
**2202 [1]** 24/22
**2203 [1]** 24/24
**2204 [1]** 18/1
**2205 [1]** 57/3
**2337 [1]** 59/8
**2:40 [1]** 58/8

**3**
**30-something [1]**
12/14
**300 [3]** 40/19 54/7
54/16
**34950 [1]** 59/8
**39 [2]** 4/22 5/3

**4**
**41 [18]** 11/24 19/3
19/3 19/9 19/10
19/11 19/12 19/15
19/23 20/17 20/23
21/3 30/22 34/1
34/10 35/9 35/9
41/25
**44 [1]** 18/1
**45 [3]** 47/14 52/2
52/9
**45th [4]** 8/24 9/5
9/13 19/18

**5**
**520 [3]** 48/18 52/4
52/5
**540 [1]** 51/23

**6**
**64 [4]** 48/18 52/6
52/25 53/5

**65 [7]** 36/16 36/22
38/21 39/2 39/6
39/11 40/25

**7**
**70 [1]** 1/6
**77.1 [1]** 3/4
**772-467-2337 [1]**
59/8

**8**
**81294 [1]** 2/3

**9**
**9/2/2022 [1]** 59/5

**A**
**above [1]** 59/4
**above-entitled [1]**
59/4
**absolutely [3]**
11/5 17/4 24/8
**abundance [3]**
7/4 50/7 50/24
**accept [3]** 33/15
33/16 41/14
**access [14]** 17/9
18/1 31/18 31/25
32/11 37/6 38/23
52/15 52/15 54/21
54/23 54/24 57/2
57/5
**accessing [1]**
32/19
**accompanying [1]**
5/7
**accomplish [1]**
25/14
**accordance [1]**
29/17
**accusatory [1]**
8/11
**acknowledge [1]**
32/7
**act [12]** 15/9 16/7
17/15 32/8 32/9
32/9 32/12 33/2
34/14 40/12 41/20
57/4
**action [3]** 3/10
21/5 21/7
**actions [2]** 25/24
33/1
**addition [5]** 22/8

26/12 28/11 40/10
47/2
**address [9]** 16/3
16/3 22/24 23/2
36/12 45/24 47/13
48/25 49/12
**adequate [2]** 22/9
22/10
**adhere [1]** 7/14
**ADJOURNED [1]**
58/8
**administration [3]**
8/7 8/18 18/11
**administrative [1]**
3/9
**admit [1]** 12/15
**admittedly [1]**
31/7
**affidavit [9]** 13/1
13/3 30/23 34/15
35/7 36/5 47/1
47/13 48/13
**afternoon [17]**
2/7 2/9 2/13 2/15
2/16 2/18 2/20
2/22 2/24 5/21
5/23 6/3 9/24 23/1
45/11 45/12 56/25
**agents [8]** 11/25
34/24 47/3 47/5
47/20 47/21 48/5
48/15
**aggrieved [1]**
18/16
**agreement [1]**
46/11
**agreements [2]**
53/14 53/14
**AILEEN [1]** 1/10
**aisle [2]** 13/21
30/21
**alarm [1]** 17/12
**alienate [1]** 35/19
**allegation [1]**
10/22
**allegations [2]**
24/20 31/25
**allow [6]** 11/1
12/21 15/22 37/7
38/12 49/21
**allowed [3]** 10/1
29/19 53/12
**allows [3]** 11/11

34/19 36/9
**almost [1]** 56/23
**alone [4]** 4/7
10/11 11/3 11/22
**amazing [2]**
11/12 12/18
**Amendment [9]**
11/5 11/12 15/3
20/2 20/5 20/25
21/1 34/5 39/15
**AMERICA [2]** 1/6
2/3
**American [1]** 9/19
**amount [1]** 56/12
**analysis [5]** 19/22
36/16 48/14 50/22
53/10
**announce [1]**
12/16
**announces [1]**
14/8
**announcing [1]**
12/7
**anomalous [1]**
19/4
**answer [2]** 17/24
49/13
**anticipate [1]**
31/16
**anticipates [2]**
32/10 32/12
**antiquated [1]**
37/9
**anxious [1]** 54/2
**anymore [1]** 25/4
**apologize [1]**
54/1
**appearances [2]**
1/12 2/4
**applicable [1]**
24/19
**applied [3]** 47/6
47/18 50/10
**applies [6]** 18/2
19/12 28/1 32/8
32/9 34/8
**apply [4]** 25/16
34/8 47/16 48/14
**applying [2]**
47/22 48/10
**appoint [4]** 1/9
10/23 36/14 49/20
**appointed [4]**

# A

appointed... [4]
28/20 29/22 41/2
44/4
appointing [3]
10/9 10/16 11/19
appointment [9]
9/14 15/16 17/3
23/3 23/10 27/13
36/17 43/22 44/9
appreciate [5]
15/20 46/13 57/9
58/4 58/5
apprized [1]  23/8
approach [1]  33/8
appropriately [1]
50/20
archives [1]
31/22
archivist [3]
24/25 26/18 26/18
areas [1]  47/20
aren't [1]  22/3
argument [14]
3/13 3/23 3/25
7/17 8/4 9/22 11/4
11/15 20/6 24/4
24/16 29/12 30/15
53/25
arise [2]  26/13
43/25
armed [1]  11/25
arming [1]  16/11
articulation [1]
27/18
assert [9]  16/19
19/23 24/3 26/7
27/2 27/6 28/9
49/18 51/9
asserted [4]  17/2
24/4 29/3 40/4
asserting [4]
16/14 17/25 18/18
31/4
assertion [7]
16/25 17/8 25/23
25/25 26/8 27/22
31/8
assess [7]  36/4
37/14 37/15 38/3
38/7 48/23 49/10
assessment [11]

11/12 17/18 28/13
28/18 32/1 36/23
38/24 40/10 40/22
53/20 55/13
assistance [2]
36/10 58/4
associated [1]
7/12
Associates [1]
1/13
assume [3]  23/5
30/6 30/10
assumed [1]  49/5
assumes [1]
24/25
assuming [2]
21/6 38/25
assurance [1]
57/7
assurances [1]
55/18
astounded [1]
33/14
attachment [2]
26/16 48/3
attachments [1]
26/5
attitude [1]  10/13
attorney [34]  12/5
12/6 12/6 14/1
16/3 16/15 16/19
18/23 23/14 26/11
29/10 29/13 29/23
30/3 30/4 39/13
39/25 40/5 41/2
42/13 43/23 44/5
44/15 44/22 46/23
46/24 47/7 47/8
47/9 47/23 48/2
50/10 51/5 51/10
attorney's [5]
13/23 30/1 35/25
43/21 56/7
attorney-client
[22]  14/1 16/3
16/15 16/19 18/23
23/14 26/11 29/10
29/13 29/23 30/4
39/13 39/25 40/5
41/2 44/5 44/15
46/23 46/24 47/7
47/23 50/10
attorneys [7]  5/13

14/5 40/7 42/12
43/4 45/8 48/13
audio [1]  3/3
authority [3]  34/3
39/3 43/21
authorized [2]
25/2 25/11

# B

background [1]
57/25
badge [1]  52/15
bag [1]  9/3
baked [1]  36/22
baking [1]  36/25
balance [3]  8/3
9/21 37/1
balancing [1]
27/25
Baltimore [1]
35/11
bases [3]  18/17
19/1 37/12
basis [1]  36/5
Bates [2]  53/1
53/5
bearing [2]  54/15
54/16
beating [1]  8/16
behind [1]  56/24
belied [1]  33/11
belong [2]  44/22
24/23
benefit [1]  32/3
BENJAMIN [3]
1/21 6/1 45/9
Bennett [1]  20/19
beyond [3]  13/9
16/15 16/21
black [1]  30/24
blatantly [1]
25/13
blinded [1]  30/19
blindly [1]  5/18
bogeyman [1]
56/14
book [2]  22/21
31/20
bottom [2]  38/14
51/6
box [3]  48/3 48/4
50/19
boxes [3]  9/10

25/25 34/23
branch [12]  12/15
26/20 26/21 27/8
27/10 28/7 28/10
45/4 54/8 55/3
55/3 55/4
BRATT [11]  1/18
2/16 4/13 5/9 7/22
18/8 43/8 49/2
53/21 53/23 57/20
Bratt's [1]  55/21
breath [1]  8/21
brief [7]  6/15 8/1
11/13 29/22 34/16
37/10 55/9
briefing [1]  11/17
briefs [3]  19/10
23/25 42/7
BRILL [3]  1/20
2/22 2/22
broad [2]  47/6
48/10
broader [2]  32/23
33/10
broadly [1]  37/18
build [1]  32/3
building [1]  33/9
bunch [1]  9/10
burdens [1]  19/6
burning [1]  17/10
business [1]  9/1

# C

C-E-R-T-I-F-I-C-A-
T-E [1]  58/9
cabin [1]  43/22
callus [2]  21/10
21/17
CANNON [2]  1/2
1/10
capital [1]  55/24
careful [1]  7/14
carried [1]  36/3
carry [1]  56/18
cart [1]  19/25
carve [1]  43/24
carve-out [1]
43/24
castle [1]  11/24
catching [1]
56/25
categorization [1]
26/12

categorize [1]
52/6
category [2]
35/23 51/20
caution [7]  7/4
22/16 47/24 50/7
50/25 51/11 51/12
ceased [1]  50/19
certify [1]  59/2
chain [1]  56/4
challenge [4]
18/14 30/22 33/19
35/12
challenges [2]
33/12 34/4
challenging [1]
8/5
characterize [2]
32/22 33/6
characterized [2]
24/16 31/20
charges [2]  12/9
20/14
chasing [1]  56/23
Chris [1]  1/13
CHRISTOPHER
[3]  1/13 2/7 8/2
chronology [1]
26/4
circuited [1]
34/14
circumstances [5]
23/6 24/13 27/5
47/25 50/25
cite [1]  42/2
cited [1]  29/21
citizen [1]  33/24
citizens [1]  33/4
CIV [1]  1/2
civil [3]  19/8 21/4
23/4
claim [4]  7/5 24/3
24/9 24/14
claims [1]  27/15
clarification [3]
38/22 46/1 52/3
clarify [1]  17/1
clarity [1]  52/11
classification [7]
10/25 16/10 16/17
38/16 40/14 40/15
54/16
classifications [5]
16/8 17/14 32/13

**C**

classifications... [2]  35/5 38/3
classified [20]
13/7 16/18 18/19
18/24 18/25 21/14
22/3 22/4 22/20
25/6 34/20 34/21
40/14 40/16 40/18
41/6 54/7 54/10
54/13 54/17
clean [1]  22/19
cleanest [1]
36/12
clear [7]  16/17
16/23 23/10 24/21
27/5 47/5 54/12
clearance [3]
56/16 56/17 56/19
clearances [2]
54/11 54/19
clerk [1]  4/20
client [24]  12/23
14/1 16/3 16/15
16/19 18/23 23/14
26/11 29/10 29/13
29/23 30/3 30/4
39/13 39/25 40/5
41/2 44/5 44/15
46/23 46/24 47/7
47/23 50/10
clients [1]  29/25
close [1]  26/19
Code [1]  25/7
coincided [1]
49/14
colleagues [2]
44/12 54/3
collectively [1]
57/24
Colombia [1]
27/2
colonial [1]  34/24
Columbia [1]
25/20
combined [1]
33/1
comfortable [1]
35/23
commence [2]
7/15 7/24
commenting [1]

8/14
comments [2]
10/4 48/25
commingled [1]
48/3
communicate [1]
49/15
communication
[6]  14/2 14/11
15/24 28/16 42/22
49/1
communications
[3]  13/17 35/25
36/1
community [1]
28/14
competing [1]
37/1
compliance [1]
3/11
compliant [1]
37/22
complicated [1]
56/16
comply [1]  3/12
component [2]
37/2 39/5
concede [2]  24/4
24/13
conceding [2]
16/16 29/9
conceivable [1]
54/5
conceive [1]  45/1
concept [1]  11/13
conceptually [1]
44/17
concern [6]  5/14
27/18 32/23 45/1
46/13 49/6
concerns [6]
27/21 30/23 33/10
46/17 56/9 56/10
conclusion [1]
24/24
conclusions [1]
53/11
concurrence [1]
46/4
condone [1]
43/16
conduct [9]  9/1
10/20 12/21 13/11

14/19 33/11 34/12
36/15 50/21
conducted [2]
38/10 55/14
conducting [2]
36/22 45/15
confidence [3]
8/7 9/20 18/11
confirmed [2]
32/2 44/13
conjunction [1]
36/17
consent [1]  35/15
conservative [1]
55/16
consideration [2]
21/6 36/14
considerations
[4]  29/25 30/16
31/7 31/7
constitutional [2]
21/11 21/18
consultation [1]
50/8
contain [3]  4/15
40/17 40/18
contained [2]
47/8 48/1
contains [1]  9/11
contemplate [1]
37/17
content [1]  46/5
contents [2]
29/13 43/9
context [5]  9/16
20/3 36/25 43/23
44/1
continued [1]
31/25
continuing [1]
57/2
contraband [1]
11/11
control [7]  10/11
24/25 32/15 48/5
52/12 52/12 57/23
controlled [1]
20/4
cooperation [2]
32/17 36/9
coordinate [1]
28/18
CORCORAN [3]

1/15 2/11 8/4
core [1]  55/4
corner [1]  35/11
COSTA [1]  1/20
Counsel's [1]
51/8
court [82]
Court's [3]  3/9
18/17 41/11
courtesy [2]  14/7
14/18
courtroom [1]  3/8
courts [4]  22/7
22/13 40/6 41/23
cover [1]  19/8
covered [2]  17/5
38/18
covers [1]  13/7
CRC [2]  1/24 59/6
creating [2]  15/10
27/14
cries [2]  13/11
33/1
crimes [1]  41/21
criminal [15]
12/14 12/20 27/19
28/4 28/11 29/2
31/23 31/24 32/2
32/4 32/18 36/19
41/19 56/3 56/6
criminalize [1]
16/6
criminalized [1]
31/13
criminalizing [1]
33/3
criteria [2]  47/6
50/10
critical [1]  8/14
CRR [2]  1/24 59/6
curious [1]  45/13
custody [4]  24/25
48/5 52/11 52/12
cut [2]  15/13
24/11
CV [1]  2/3

**D**

D.C [1]  56/2
damage [6]  28/13
28/19 33/23 38/24
40/10 40/22
decide [1]  13/8

decided [2]  20/19
24/10
decision [1]
35/20
decline [1]  21/16
declined [1]  42/9
decorum [1]  58/5
deem [1]  11/9
46/9
deemed [1]  51/24
deep [1]  8/21
deeper [1]  44/2
defeats [1]  21/15
defendant [4]
1/18 12/17 12/17
12/18
Defendants [1]
1/7
defense [5]  5/17
9/2 40/15 40/17
40/18
defer [2]  5/16
36/10
definition [1]
32/14
delay [4]  23/11
27/14 27/19 29/18
demands [1]
32/17
demonstrates [1]
9/8
Department [7]
1/21 9/2 32/25
33/2 33/8 33/15
56/19
deprivation [1]
57/1
deputy [3]  55/21
56/5 57/23
designated [1]
39/22
designee [1]  16/1
despite [1]  24/19
detailed [3]  3/20
4/3 37/22
determination [1]
50/8
determinations
[1]  15/8
determined [1]
50/16
developments [1]
10/5

DONALD J. TRUMP vs. UNITED STATES OF AMERICA

Page 63

Case 9:22-cv-81294-AMC   Document 127   Entered on FLSD Docket 09/29/2022   Page 63 of 70

**D**

**diane [4]**  1/24
1/25 59/5 59/6
**difference [1]**
40/5
**difficultly [1]**
30/17
**direct [1]**  32/18
**directed [1]**  6/4
**direction [1]**  47/4
**dirt [1]**  12/11
**disagree [1]**
38/15
**disclose [1]**
35/20
**disclosing [1]**
13/4
**disconnected [1]**
56/3
**discovering [1]**
42/21
**discretion [1]**
34/25
**discussion [3]**
43/7 43/20 46/15
**discussions [1]**
35/15
**dispose [1]**  29/16
**dispute [8]**  21/4
31/14 31/21 31/21
34/21 39/16 39/22
39/24
**disputes [1]**
26/13
**disregard [3]**
21/10 21/17 21/24
**disregarded [1]**
25/13
**dissemination [1]**
43/9
**disseminations
[1]**  43/7
**district [10]**  1/1
1/1 1/10 23/6
25/20 27/2 30/7
30/10 44/12 59/7
**dived [1]**  44/2
**division [3]**  1/2
16/10 56/5
**DNI [1]**  29/3
**DNI's [1]**  36/20
**docket [2]**  4/22

5/3
**doctrine [1]**  11/25
**document [12]**
3/21 4/10 4/21
4/23 5/2 5/16 7/13
16/20 47/7 48/19
48/20 51/11
**documents [42]**
6/12 12/16 13/7
14/3 14/14 14/15
14/15 15/6 15/7
15/23 18/4 19/20
29/1 29/5 31/18
31/25 32/19 34/23
36/19 37/5 37/7
37/18 38/5 38/7
38/11 39/7 39/17
40/13 43/3 44/25
45/4 48/15 48/20
51/23 52/1 53/5
53/10 53/17 54/7
54/10 54/15 54/15
**DOJ [2]**  55/22
56/7
**DONALD [2]**  1/3
2/3
**dry [1]**  24/11

**E**

**early [1]**  36/1
**easy [1]**  56/1
**economical [1]**
38/10
**EDELSTEIN [7]**
1/19 2/21 3/25
18/20 22/24 39/12
44/2
**effect [1]**  29/2
**effectively [2]**
36/8 39/7
**efficient [1]**  38/14
**effort [1]**  28/14
**ego [1]**  14/18
**elect [1]**  47/15
**eliminate [1]**  33/2
**elsewhere [1]**
58/2
**emphasize [1]**
22/13
**emphasizes [1]**
28/17
**enforcement [2]**
31/15 32/18

**engage [2]**  14/20
53/12
**engaged [1]**
52/18
**engaging [1]**
44/17
**enjoin [4]**  36/18
40/24 40/24 41/9
**enjoining [1]**
38/25
**entirely [3]**  16/8
24/10 45/3
**entitled [4]**  32/4
32/19 34/22 59/4
**entry [2]**  4/22 5/3
**envision [1]**
37/16
**envisioned [1]**
44/21
**equipped [2]**  23/7
30/11
**equitable [7]**  21/6
21/16 30/16 31/6
31/9 34/2 41/25
**equity [7]**  20/19
21/5 22/7 22/14
22/18 32/23 33/1
**equivalent [1]**
12/6
**err [1]**  47/24
**especially [3]**
22/4 23/10 29/25
**Espionage [1]**
40/12
**ESQ [10]**  1/13
1/14 1/15 1/16
1/18 1/19 1/19
1/20 1/20 1/21
**essential [1]**
39/11
**essentially [4]**
11/18 20/1 34/11
34/12
**establish [1]**  19/6
**established [1]**
11/6
**estimation [1]**
36/13
**EVAN [3]**  1/15
2/11 8/4
**evening [1]**  26/17
**event [1]**  3/10
**everybody [2]**

2/24 3/12
**evidence [6]**
21/24 41/21 47/17
48/3 48/6 52/7
**evident [1]**  8/12
**ex [1]**  32/15
**ex-president [1]**
32/15
**examinations [1]**
13/20
**examine [1]**
15/23
**examples [1]**
50/13
**execution [3]**
45/20 47/11 49/4
**executive [44]**
12/15 16/24 17/7
17/13 17/15 18/20
23/14 23/16 23/20
23/24 24/3 24/8
24/9 25/23 26/3
26/7 26/11 26/20
26/21 27/2 27/6
27/7 27/8 27/10
27/22 27/23 28/6
28/8 28/9 29/7
38/8 40/3 40/4
44/9 44/14 44/24
45/4 45/5 54/8
54/9 55/2 55/3
55/3 55/4
**exercise [7]**  19/4
21/16 22/14 22/15
31/6 31/9 41/24
**exercised [1]**
22/17
**exercising [3]**
50/6 51/10 51/12
**exercitation [1]**
32/16
**exist [2]**  19/14
40/8
**expansive [4]**
47/6 47/23 50/10
51/25
**expectation [2]**
20/3 20/10
**expedited [1]**
56/19
**expeditious [5]**
9/25 16/1 17/17
37/25 57/11

**expense [1]**
12/16
**expert [1]**  57/23
**explore [1]**  35/4
**exploring [1]**  36/8
**exposure [1]**  50/5
**extent [7]**  30/15
44/23 44/24 46/10
49/13 50/5 53/14
**extraordinary [7]**
10/12 10/16 10/18
12/2 12/18 14/19
57/8
**extreme [1]**  51/10
**extremely [1]**
47/23
**eye [1]**  8/12
**eyes [1]**  57/6

**F**

**faced [1]**  12/5
**facilitated [1]**
10/24
**fact [8]**  9/7 16/16
20/23 25/24 28/15
32/1 33/14 41/22
**factor [4]**  19/14
21/12 22/1 22/8
**factors [7]**  21/6
21/9 22/13 30/15
30/19 36/11 40/25
**fair-minded [1]**
33/4
**faith [1]**  8/18
**fall [2]**  35/22 38/6
**fanciful [1]**  55/1
**fangled [1]**  14/23
**fashion [3]**  16/1
17/17 27/14
**favor [2]**  21/7
33/3
**favored [1]**  23/5
**FBI [3]**  28/18
38/24 52/13
**FBI's [1]**  26/24
**federal [3]**  23/4
25/8 41/21
**feelings [1]**  14/18
**field [1]**  48/8
**figure [2]**  15/9
35/2
**file [1]**  35/14
**filings [1]**  43/7

**F**

**filter [48]** 4/12 5/6
5/12 5/20 7/11
13/14 13/16 13/19
13/20 13/24 14/8
14/12 23/9 29/15
29/15 33/13 40/2
42/12 42/13 42/14
42/16 43/4 43/4
44/5 45/7 46/25
47/2 47/3 47/5
47/13 47/16 47/18
47/19 48/5 48/11
48/12 48/13 48/15
49/1 49/3 50/2
50/13 50/20 53/11
55/13 55/18 55/23
57/25
**filtering [1]** 40/2
**final [4]** 5/5 43/19
55/7 57/16
**finally [2]** 36/13
37/15
**findings [1]** 39/1
**firms [1]** 40/7
**FL [1]** 59/8
**FLORIDA [2]** 1/1
1/4
**flow [1]** 32/15
**flsd.uscourts.gov
[1]** 1/25
**focus [1]** 24/20
**focused [1]** 30/15
**forecast [1]** 15/15
**foreclosed [1]**
24/5
**foregoing [1]**
59/2
**forget [1]** 33/7
**form [3]** 3/6 30/14
30/24
**formal [3]** 36/15
36/22 43/23
**former [14]** 19/17
20/4 21/24 22/19
23/23 24/8 24/17
25/4 25/9 25/12
32/15 44/22 47/15
54/22
**FORT [3]** 1/2 1/4
59/8
**Fourth [8]** 11/5

11/12 15/3 20/2
20/5 20/25 20/25
34/5
**frame [1]** 51/3
**framework [1]**
38/8
**frankly [4]** 14/4
15/24 31/12 33/14
**Franks [1]** 33/22
**Fred [1]** 13/22
**free [1]** 11/11
**frequent [1]** 19/9
**frequently [1]**
8/25
**front [1]** 10/3
**fruits [2]** 11/7
20/15
**function [2]** 14/17
55/4
**fundamentally [1]**
35/24
**furthers [1]** 31/24

**G**

**gallery [1]** 58/5
**gathering [1]**
34/20
**general [8]** 12/5
27/18 30/21 33/22
34/2 34/16 35/8
46/14
**gentle [1]** 56/22
**gets [1]** 13/21
**Giuliani [2]** 44/11
54/4
**GONZALEZ [2]**
1/19 2/19
**govern [1]** 25/8
**government [27]**
3/23 5/9 10/6 11/7
13/4 13/12 14/20
16/25 26/5 26/16
26/20 27/17 28/21
30/13 34/1 34/7
34/13 38/19 38/24
39/10 41/1 41/4
44/7 44/23 46/22
50/10 55/11
**government's
[11]** 3/16 3/19
10/8 10/19 28/2
35/15 43/14 45/22
51/25 56/11 57/15

**grand [1]** 26/1
**grappled [1]** 24/2
**great [2]** 13/15
37/23
**greater [1]** 9/19
**greatest [1]** 30/15
**ground [1]** 3/2
**GSA [3]** 24/2
26/22 27/4
**guiding [1]** 16/11
**gun [1]** 32/25
**guts [1]** 34/1

**H**

**HALLIGAN [3]**
1/16 2/13 8/4
**handle [5]** 8/3
9/21 18/22 23/7
30/11
**happy [6]** 7/19
12/23 29/12 37/10
45/24 57/16
**harder [1]** 32/22
**harm [10]** 15/1
27/12 27/18 31/4
31/9 31/11 33/6
33/7 36/24 42/2
**HAWK [7]** 1/21
6/1 45/8 45/9
52/20 55/21 57/22
**hearing [11]** 1/9
3/22 4/10 5/4 7/16
21/19 33/22 42/17
55/12 57/11 57/17
**heartened [1]**
32/6
**helpful [1]** 16/11
**hereby [2]** 3/5
59/2
**highest [2]** 31/17
32/11
**highly [1]** 25/6
**Highway [1]** 59/7
**historic [3]** 10/18
33/10 33/16
**historically [1]**
31/14
**holistically [1]**
53/19
**home [1]** 11/25
**honor [70]**
**Honor's [2]** 49/19
57/9

**HONORABLE [1]**
1/10
**hoop [1]** 30/18
**hope [1]** 33/4
**hopeful [1]** 36/2
**hopefully [2]**
15/13 16/11
**hoping [1]** 53/21
**horse [1]** 20/1
**housekeeping [1]**
3/18
**Howell [1]** 20/18
**hundred [1]**
16/17
**hurry [1]** 9/11

**I**

**identifiable [2]**
47/9 48/2
**identity [1]** 42/12
**IFRAH [1]** 1/14
**ignore [2]** 34/7
56/10
**illegal [2]** 11/9
40/12
**immediately [1]**
47/9
**impartial [1]** 8/7
**implicate [1]** 14/6
**impossible [1]**
27/6
**improper [1]**
28/19
**inability [1]** 33/12
**inadvertent [2]**
45/17 50/5
**inclusive [2]**
47/24 50/24
**incredibly [1]**
10/18
**incriminating [1]**
22/5
**indeed [1]** 53/20
**indicted [1]** 33/24
**indictment [6]**
18/14 19/2 20/17
21/3 21/5 42/1
**individual [1]**
16/20
**inequitable [1]**
33/17
**inference [1]** 10/8
**informal [1]** 35/15

**information [16]**
3/7 4/16 16/12
25/6 30/20 32/3
32/16 39/14 40/15
40/17 40/18 43/8
45/18 51/7 51/12
51/20
**inherent [1]** 34/3
**initial [2]** 37/24
47/20
**initially [1]** 45/20
**initiated [1]** 44/8
**injunction [2]**
22/23 41/24
**injunctive [2]**
36/16 39/5
**injury [5]** 22/1
22/2 22/6 41/12
41/23
**injustice [1]**
22/17
**inquire [1]** 4/1
**inquired [1]** 44/12
**inquires [1]** 19/5
**inquiry [4]** 11/18
36/22 39/6 39/11
**insertion [1]** 13/6
**insofar [1]** 36/16
**instance [4]**
50/23 51/1 51/4
51/9
**instances [3]**
26/2 50/3 50/12
**instead [1]** 42/18
**institution [1]**
32/24
**institutional [2]**
33/5 33/7
**integrity [2]** 8/18
9/20
**intelligence [2]**
28/14 28/25
**intention [1]** 35/4
**interest [11]** 10/2
19/16 19/22 20/24
21/12 21/14 25/3
28/2 28/5 28/12
57/10
**interests [3]** 28/3
37/1 41/15
**interfere [3]**
10/24 11/2 40/22
**interpose [1]** 55/2

**I**

**intervening [1]**
42/17
**intervention [1]**
13/13
**intrusion [3]**
11/10 27/9 28/8
**invaded [1]**  11/25
**invalidate [1]**
34/12
**invariably [1]**
29/23
**inventory [12]**
3/20 4/3 4/7 9/7
9/8 12/10 12/10
15/20 15/22 35/1
37/22 54/12
**investigation [17]**
4/14 5/3 10/25
14/21 27/19 28/4
28/11 29/2 31/14
31/23 31/24 32/2
32/19 40/23 41/22
56/3 56/6
**investigations [1]**
30/2
**investigative [4]**
5/15 14/4 23/9
36/19
**invocation [1]**
26/3
**involvement [6]**
14/25 15/4 15/25
33/16 37/12 38/4
**irreparable [8]**
22/1 22/6 31/4
31/9 31/11 41/12
41/23 42/2
**issuance [1]**
20/11
**issue [14]**  5/5
13/8 17/25 18/4
18/22 19/16 24/18
24/21 25/1 25/12
35/16 35/19 37/10
52/19
**issues [22]**  9/15
9/16 9/18 16/4
22/24 23/2 23/7
23/13 23/16 23/24
26/11 27/13 29/13
29/23 30/9 40/1

44/6 46/24 48/24
49/5 49/11 49/22
**item [3]**  50/19
51/1 51/4
**items [14]**  15/23
16/18 22/23 32/5
35/6 46/6 46/16
47/17 47/22 48/8
48/14 48/23 49/17
50/9

**J**

**JAMES [1]**  1/14
**JAY [2]**  1/18 2/16
**Jim [2]**  2/9 8/3
**JMD [1]**  56/16
**joint [1]**  7/10
**judge [14]**  1/10
8/1 15/25 17/21
20/19 20/20 21/18
22/14 23/7 30/7
30/11 31/1 41/18
53/15
**judicial [5]**  3/14
13/13 31/15 32/17
33/16
**judicially [1]**  16/7
**JULIE [2]**  1/19
2/20
**jump [1]**  17/23
**jumping [1]**  30/18
**jurisdiction [15]**
18/17 18/18 19/2
19/4 19/24 20/16
20/19 20/21 20/22
21/16 22/15 22/16
31/6 31/10 41/25
**jurists [1]**  33/4
**jury [1]**  26/1
**justice [11]**  1/21
8/8 8/19 10/2
12/14 12/20 13/24
18/11 32/25 33/15
56/20
**justifies [1]**  12/12
**justify [2]**  11/14
15/2

**K**

**key [4]**  19/14
20/23 20/23 26/22
**kick [1]**  16/22
**KISE [7]**  1/13

1/13 2/7 4/21 4/23
8/2 46/14
**knows [1]**  49/24

**L**

**LA [1]**  1/20
**lack [4]**  8/9 8/13
8/17 8/18
**LACOSTA [9]**
5/21 5/22 5/24 6/4
45/8 48/16 48/22
49/7 50/21
**laid [1]**  29/17
**language [2]**
32/12 34/5
**large [1]**  30/20
**late [1]**  55/17
**latest [2]**  56/14
56/14
**law [15]**  11/6
11/12 15/3 22/9
22/10 24/10 24/19
29/20 29/24 29/24
30/9 40/7 40/16
43/25 44/3
**lawful [1]**  41/14
41/17
**laws [1]**  18/12
**leading [1]**  3/23
**leaking [1]**  13/4
**leaks [1]**  43/7
**legal [4]**  24/21
47/8 48/1 48/14
**legitimate [4]**
27/21 28/3 28/12
35/1
**lengthier [1]**  6/13
**letter [5]**  26/17
26/18 26/23 28/15
44/19
**letterhead [1]**
50/18
**levels [2]**  17/12
31/12
**library [1]**  31/20
**limit [1]**  28/7
**limited [6]**  10/9
13/25 18/16 20/20
21/22 27/9
**LINDSEY [3]**  1/16
2/13 8/4
**list [2]**  14/5 37/23
**literal [1]**  55/12

**literally [3]**  10/25
31/19 33/9
**litigate [1]**  16/12
**litigating [1]**  35/9
**litigation [2]**
16/11 56/1
**LLC [1]**  1/16
**local [2]**  3/4 12/6
**location [2]**  8/25
47/17
**locations [1]**
47/19
**locked [1]**  52/14
**logical [2]**  15/22
39/10
**logically [2]**
17/16 39/6
**lower [1]**  8/20

**M**

**magistrate [4]**
23/7 30/7 30/11
41/18
**magnitude [1]**
23/23
**main [4]**  5/14 8/4
8/23 13/23
**maintain [2]**
52/11 52/12
**maintained [1]**
48/5
**maintaining [1]**
58/5
**majority [2]**  51/21
52/17
**manifest [1]**
22/17
**marginalized [1]**
12/17
**markings [1]**
54/16
**Masks [1]**  2/25
**master [56]**  1/9
9/14 10/10 10/16
10/23 11/2 11/20
13/6 13/9 15/17
16/2 17/3 17/16
19/13 23/3 23/11
23/16 23/19 26/10
27/13 28/20 28/24
29/7 29/22 30/4
35/5 36/2 36/15
36/18 36/23 37/8

37/13 37/17 37/19
38/2 38/6 38/12
39/4 39/7 40/1
40/7 41/2 41/5
42/9 43/20 43/22
43/24 44/4 44/6
44/9 44/14 44/17
49/20 53/12 53/20
56/18
**masters [2]**  18/22
23/4
**material [2]**  7/3
26/25
**materializes [1]**
33/20
**materials [30]**
10/25 17/9 17/11
26/1 26/21 27/3
27/8 27/9 27/15
28/6 28/17 28/20
29/16 30/8 32/11
34/20 38/1 38/16
39/9 39/21 42/21
42/24 44/25 45/17
46/11 48/17 48/19
52/6 52/25 55/4
**matter [12]**  3/18
10/1 10/8 19/8
20/5 32/24 35/10
44/11 49/20 57/10
58/1 59/4
**matters [6]**  16/6
16/13 30/1 33/19
40/5 46/2
**May 10th [3]**
26/17 26/23 28/15
**may I [1]**  17/22
**meaningful [1]**
49/12
**measure [1]**
13/12
**mechanism [3]**
34/2 34/4 34/10
**media [6]**  3/6 3/6
8/16 8/17 43/8
43/9
**members [3]**  3/5
5/15 58/5
**mentality [1]**
11/14
**methodically [1]**
48/22
**middle [1]**  9/4

DONALD J. TRUMP vs. UNITED STATES OF AMERICA
Page 66

Case 9:22-cv-81294-AMC   Document 127   Entered on FLSD Docket 09/29/2022   Page 66 of 70

**M**

military [1]  9/3
miller [3]  1/24
1/25 59/6
MILLLER [1]  59/5
minded [1]  33/4
minor [2]  17/22
52/3
minus [1]  6/24
misstatements [1]
31/1
missteps [1]
45/20
model [2]  33/25
38/14
modest [7]  10/16
13/12 15/15 23/16
23/17 30/8 56/12
moment [9]  4/24
10/12 10/15 12/18
12/18 48/6 48/25
51/2 53/8
moments [1]
33/11
monitoring [1]
3/11
months [1]  56/21
mooted [1]  37/25
motion [17]  1/9
3/14 3/15 7/25
13/6 19/3 19/11
19/15 21/2 21/3
22/11 33/22 35/14
41/16 42/8 42/18
49/14
motions [1]  13/10
motivation [1]
12/19
MR [8]  5/21 5/24
18/8 45/8 46/14
46/14 50/3 53/21
Mr. [24]  4/13 4/21
4/23 5/9 6/4 7/22
8/3 9/21 17/23
20/13 43/8 45/8
48/16 48/22 48/25
49/2 49/7 50/21
52/20 53/23 55/21
55/21 57/20 57/22
Mr. Bratt [7]  4/13
5/9 7/22 43/8 49/2
53/23 57/20

Mr. Bratt's [1]
55/21
Mr. Hawk [4]  45/8
52/20 55/21 57/22
Mr. Jim [1]  8/3
Mr. Kise [2]  4/21
4/23
Mr. Lacosta [5]
6/4 48/16 48/22
49/7 50/21
Mr. Trusty [4]
9/21 17/23 20/13
48/25
MS [2]  2/22 3/25
Ms. [4]  18/20
22/24 39/12 44/2
Ms. Edelstein [4]
18/20 22/24 39/12
44/2
multiple [4]  26/2
28/3 36/1 37/11
mutually [1]  15/5

**N**

NARA [5]  25/15
25/25 31/14 31/22
32/16
NARA's [1]  25/17
narrow [1]  11/18
national [6]  29/4
40/15 40/17 40/18
56/4 57/25
nature [8]  10/19
34/16 35/21 47/8
48/1 48/21 50/9
57/11
nearly [1]  38/17
necessary [4]
29/3 30/5 39/2
54/10
negotiations [1]
31/22
neutral [1]  15/5
newly [1]  10/24
Nixon [6]  24/2
24/7 25/22 26/22
27/4 28/4
nobody [2]  37/5
52/15
noncriminal [1]
31/16
none [1]  42/3
notably [2]  25/18

26/23
notice [6]  14/13
42/19 46/3 46/6
46/10 46/22
notion [6]  10/9
12/24 13/19 17/15
37/3 37/7
nowhere [1]  52/9
number [2]  2/2
25/24

**O**

objection [11]  4/2
4/6 4/13 4/19 4/23
5/1 6/7 15/3 44/16
46/14 55/2
observations [2]
45/14 57/16
obstacle [1]
56/14
obstructs [1]
37/8
ODNI [7]  10/24
32/1 37/2 37/7
38/23 40/10 40/21
ODNI's [1]  28/25
offer [3]  45/13
50/4 50/17
office [14]  9/11
10/24 13/23 30/1
32/10 35/25 43/21
44/19 47/14 47/14
48/8 52/2 52/9
56/7
offices [1]  29/24
official [4]  1/24
9/1 12/15 59/6
officially [1]  39/5
Oh [1]  52/5
omissions [1]
30/25
ongoing [6]  28/13
28/25 29/3 31/12
31/22 32/2
open [1]  35/23
opinion [3]  14/3
34/19 49/20
opportunity [7]
27/16 30/13 37/14
51/9 53/1 53/9
53/24
oppose [1]  3/19
optional [1]  2/25

orally [1]  57/18
order [10]  3/5 3/9
4/9 5/4 8/6 15/16
20/22 21/19 57/18
57/19
orderly [4]  9/17
27/14 29/5 39/8
orders [1]  39/4
ordinarily [1]
43/25
ordinary [1]  57/22
originally [1]
12/11
originate [1]  52/1
outrageous [1]
33/17
outset [3]  27/21
41/13 49/3
overarching [2]
16/5 22/13
overcome [1]
20/11
overdue [2]  31/20
38/5
overly [1]  54/2
overreading [1]
24/7
oversight [1]  3/14
overstate [1]  56/9
overview [1]  7/17
ownership [1]
20/7

**P**

P-R-O-C-E-E-D-I-
N-G-S [1]  2/1
p.m [3]  6/17 6/18
58/8
pages [4]  1/6
48/18 52/4 52/5
paper [1]  9/3
papers [3]  16/24
26/8 34/20
paradigm [2]  16/5
34/23
parcel [1]  36/18
part [6]  28/18
35/19 36/18 43/1
43/11 44/18
partial [1]  12/10
parties [8]  7/13
8/10 9/16 23/12
26/13 29/18 37/1

46/10
parties' [1]  58/4
party [6]  15/6
19/14 19/15 22/18
22/18 41/15
path [1]  9/17
pause [2]  48/24
49/23
pausing [1]  29/1
people [5]  9/19
43/13 43/13 43/14
54/24
perceived [2]
8/13 8/17
perception [1]
8/15
perfectly [2]
12/23 13/6
perhaps [5]  9/18
32/7 35/14 46/10
48/20
period [3]  24/9
29/4 36/6
permission [6]
5/24 46/4 46/5
52/23 53/6 53/16
permitted [1]
28/24
person [4]  18/15
54/10 54/10 57/24
personal [6]
14/18 15/9 16/9
22/23 38/7 57/5
perspective [5]
8/22 10/23 11/11
12/9 36/25
phenomenal [1]
11/4
phone [1]  13/21
photograph [1]
13/7
picked [1]  56/5
PIERCE [3]  1/2
1/4 59/8
pile [1]  51/16
pithy [1]  38/17
place [4]  8/21
9/15 25/10 32/20
plaintiff [15]  1/13
2/5 3/20 3/21 4/14
17/2 21/12 21/13
23/15 24/1 24/20
26/25 29/21 49/14

**P**

**plaintiff... [1]**
54/21
**plaintiff's [23]**
3/14 3/16 4/6 5/11
6/6 6/8 6/12 6/14
6/20 7/25 19/10
21/10 21/17 24/16
28/16 30/14 31/8
42/22 45/19 53/6
53/17 53/24 55/7
**Plaintiffs [1]** 1/4
**play [7]** 16/21
16/21 17/7 17/13
23/20 29/7 41/16
**plays [1]** 55/16
**pleading [6]** 6/8
6/9 10/6 10/17
10/21 26/16
**pleadings [3]**
14/9 17/5 22/22
**pleasure [1]** 9/24
**PLLC [1]** 1/14
**point [19]** 7/11
10/8 13/3 20/25
21/15 23/3 28/21
30/5 31/4 33/24
36/6 46/1 46/8
48/7 49/3 50/4
54/25 55/23 57/2
**poisonous [1]**
11/7
**politicized [1]**
32/25
**position [19]** 5/10
6/5 6/23 7/8 8/6
11/19 16/3 22/14
26/10 28/23 29/16
36/2 38/2 38/7
41/6 42/18 45/22
49/8 49/11
**possession [6]**
19/21 22/20 24/17
25/5 25/17 31/18
**possessory [3]**
19/15 19/22 20/24
**possibility [2]**
15/16 46/23
**posture [1]** 29/8
**potential [5]**
20/25 36/14 48/24
49/11 56/15

**potentially [25]**
17/3 17/25 22/5
22/6 24/7 26/12
39/18 39/22 42/21
42/23 43/2 43/3
44/24 45/5 46/6
46/12 47/10 48/4
48/9 48/16 51/11
51/16 51/19 51/24
54/22
**PRA [7]** 24/19
24/21 25/13 25/16
25/18 26/14 38/8
**Practically [1]**
37/24
**practice [1]** 13/20
**pre [6]** 18/14 19/2
20/17 21/3 21/5
42/1
**pre-indictment [6]**
18/14 19/2 20/17
21/3 21/5 42/1
**precise [2]** 33/6
37/16
**prefer [1]** 53/19
**preference [1]**
46/15
**prejudice [1]**
33/10
**preliminarily [1]**
35/12
**preliminary [2]**
35/3 49/20
**premises [2]** 20/4
45/22
**prepared [3]**
29/14 42/16 49/15
**presence [1]**
42/23
**present [4]** 5/13
7/17 30/9 53/24
**presentation [1]**
7/14
**presidency [1]**
32/24
**president [33]** 2/8
2/10 2/12 2/14 8/2
8/24 9/1 9/5 9/13
10/13 12/3 19/17
19/18 19/19 19/20
20/5 22/19 23/23
24/17 24/24 25/5
25/12 31/16 31/17

32/13 32/15 32/15
34/8 35/11 44/22
47/15 54/22 57/4
**President's [2]**
21/25 25/10
**presidential [29]**
8/24 9/5 9/12 15/8
15/10 16/7 16/9
17/14 18/2 18/19
18/24 19/1 19/18
21/14 22/3 22/20
24/23 25/1 27/11
32/8 32/2 34/14
38/7 40/8 41/7
41/20 54/6 57/4
57/5
**presidents [1]**
32/10
**press [3]** 13/9
43/13 43/16
**presume [1]**
26/13
**presumptively [1]**
54/17
**presuppose [1]**
54/14
**pretrial [1]** 34/4
**prevent [1]** 22/17
**primary [1]** 49/3
**principles [1]**
34/2
**privacy [2]** 20/3
20/10
**private [1]** 44/21
**privilege [56]**
14/6 16/15 16/24
17/7 17/13 17/13
17/15 18/21 18/23
23/14 23/14 23/16
23/20 23/24 24/3
24/9 25/23 26/3
26/7 26/11 26/12
27/2 27/7 27/7
27/11 27/15 27/22
27/23 27/23 28/9
29/8 30/5 38/6
38/8 40/3 40/3
44/6 44/10 44/14
44/25 45/5 45/15
45/21 46/23 46/24
47/7 47/23 49/18
50/11 51/13 52/13
52/14 53/4 54/9

55/2 55/25
**privileged [24]**
7/3 14/16 38/3
39/18 39/22 42/21
42/23 43/3 46/7
46/12 46/16 47/10
48/4 48/10 48/16
50/9 51/7 51/12
51/16 51/19 51/21
51/24 52/17 53/21
**privileges [5]**
16/14 16/22 17/1
17/24 46/18
**privy [1]** 16/20
**probable [4]**
20/11 21/20 21/21
41/18
**problem [1]** 17/8
**procedural [1]**
18/15
**procedurally [2]**
18/13 18/13
**procedure [2]**
23/4 25/16
**procedures [1]**
46/15
**proceed [7]** 3/1
28/24 29/19 35/17
46/20 49/25 53/12
**proceeding [4]**
3/3 3/7 33/19
41/13
**proceedings [3]**
6/17 58/8 59/3
**process [16]** 9/20
40/20 40/20 46/2
47/18 48/11 48/12
49/23 50/2 50/13
51/8 51/22 52/18
53/11 56/15 57/7
**prod [1]** 56/22
**product [3]** 14/1
16/4 16/19
**prohibit [1]** 55/2
**prohibition [1]**
3/2
**proper [2]** 9/16
20/7
**properly [2]** 22/4
35/8
**property [10]**
19/16 20/24 21/5
21/13 22/15 25/3

25/8 25/10 34/11
42/22
**proposal [5]** 7/19
49/25 52/24 54/4
54/7
**proposed [2]**
33/25 54/20
**propriety [1]**
18/21
**prosecution [1]**
12/13
**protocol [7]**
46/25 47/12 47/13
48/9 49/19 50/15
51/22
**protocols [3]**
29/17 47/16 54/20
**provision [1]**
25/18
**provisions [3]**
24/21 25/7 25/13
**public [6]** 8/7
8/12 8/17 35/8
39/20 47/2
**publicly [3]** 4/17
12/7 12/15
**purposefully [2]**
26/24 30/19
**purposes [10]**
17/2 20/1 29/1
36/19 40/22 41/3
41/13 41/25 44/9
58/1
**pursuant [4]** 3/9
3/18 26/1 48/8
**pursue [1]** 35/7
**pushing [1]** 10/15

**Q**

**qualified [1]**
27/23
**question [8]** 6/4
17/24 18/5 36/21
38/21 41/11 43/19
54/4
**questioning [1]**
12/19
**questions [9]**
7/18 15/13 17/19
45/7 45/25 49/5
49/13 57/10 57/12
**quickly [2]** 10/1
56/22

Page 68

DONALD J. TRUMP vs. UNITED STATES OF AMERICA

Case 9:22-cv-81294-AMC   Document 127   Entered on FLSD Docket 09/29/2022   Page 68 of 70

**R**

**radical [1]** 33/8
**raise [2]** 24/9 24/12
**raises [1]** 40/1
**re [1]** 42/10
**re-upping [1]** 42/10
**reach [6]** 33/12 42/17 49/7 49/16 53/13 53/14
**reached [1]** 29/11
**readily [2]** 47/9 48/1
**ready [1]** 12/16
**reality [1]** 14/25
**realize [1]** 32/9
**recent [2]** 15/16 17/11
**recently [1]** 17/11
**recess [4]** 6/15 6/17 55/8 58/6
**recessing [1]** 57/17
**recognize [2]** 33/5 34/18
**recognized [3]** 28/5 28/13 41/24
**recognizing [1]** 50/25
**recommend [2]** 16/4 39/8
**record [3]** 3/16 52/11 55/20
**recording [1]** 3/3
**records [45]** 8/24 9/5 9/12 15/9 15/10 16/7 17/15 18/2 18/19 18/19 18/24 19/1 19/18 19/22 20/8 21/14 22/3 22/20 24/17 24/18 24/22 24/23 25/1 25/1 25/4 25/5 25/5 25/11 25/15 25/17 30/2 32/8 33/2 34/14 38/23 40/9 40/19 41/7 41/20 43/10 45/16 54/6 57/2 57/4 57/5
**recourse [1]** 11/9

**recreation [1]** 15/3
**redactions [1]** 46/10
**reference [3]** 42/6 48/18 50/12
**referenced [2]** 28/16 49/17
**references [5]** 7/3 16/24 19/8 19/9 54/13
**referencing [2]** 20/13 46/3
**reflect [1]** 55/20
**regain [1]** 54/21
**Regulations [1]** 25/8
**Reinhart [3]** 21/19 31/1 53/16
**reiterated [1]** 21/20
**relative [1]** 43/9
**release [2]** 3/20 13/9
**released [1]** 30/24
**relief [5]** 3/15 19/13 25/19 36/16 39/5
**reluctant [1]** 42/5
**reluctantly [1]** 32/8
**rely [1]** 25/14
**remain [4]** 6/10 7/1 7/13 16/18
**remains [3]** 11/16 46/3 51/15
**remedy [3]** 22/9 22/10 26/25
**reply [1]** 3/17
**report [13]** 4/11 4/14 5/3 5/5 5/7 5/8 6/5 6/21 6/24 7/1 7/2 7/12 58/1
**Reporter [2]** 1/24 59/6
**reports [3]** 8/17 13/19 58/1
**representation [1]** 3/19
**representations [1]** 39/21
**request [9]** 5/24

**7/11 23/15 26/6 42/9 42/10 44/8 44/8 53/19**
**required [1]** 31/5
**requirement [3]** 3/4 20/23 20/24
**reserve [1]** 53/18
**residence [2]** 9/11 12/3
**resistence [1]** 16/25
**resolution [1]** 9/17
**resolutions [1]** 16/5
**resolve [3]** 16/4 17/16 26/12
**respected [1]** 15/5
**respectful [3]** 49/21 51/8 52/17
**respectfully [7]** 6/25 7/6 8/6 8/20 9/19 49/15 52/4
**response [5]** 3/16 13/10 18/5 38/19 54/3
**responses [1]** 20/10
**responsive [1]** 48/3
**rest [1]** 22/22
**restore [2]** 8/6 8/7
**restraint [1]** 22/16
**restrictions [1]** 18/1
**Resumed [1]** 6/18
**retention [2]** 40/11 40/12
**return [6]** 14/15 15/13 21/5 22/15 34/11 41/11
**revealing [1]** 45/18
**review [48]** 4/12 4/15 5/6 6/14 6/21 7/12 23/9 23/9 26/20 26/25 28/25 29/3 29/5 36/20 37/7 37/9 37/18 37/24 38/11 39/7 39/9 40/14 41/5

**42/14 43/2 43/4 44/14 44/15 45/7 45/15 45/16 45/21 47/20 49/17 50/16 50/21 50/21 51/13 51/14 52/8 52/13 52/14 53/4 53/9 53/10 54/9 54/14 55/25**
**reviews [1]** 53/21
**Richey [6]** 21/9 21/12 21/15 22/1 30/15 30/19
**rights [5]** 18/15 21/11 21/18 21/25 32/14
**rise [2]** 6/16 58/7
**RMR [2]** 1/24 59/6
**role [2]** 23/19 29/7
**room [6]** 24/8 37/4 47/17 52/1 52/9 52/14
**Rosenbaum [1]** 20/19
**rule [29]** 3/2 3/4 11/23 15/10 19/2 19/9 19/10 19/11 19/12 19/15 19/23 20/17 20/23 21/3 30/22 34/1 34/10 35/9 35/9 35/10 36/16 36/22 38/21 39/2 39/6 39/11 40/25 41/25 49/23
**rules [2]** 23/4 23/5
**ruling [1]** 53/18
**runaway [1]** 37/12

**S**

**safeguards [1]** 45/14
**sake [1]** 52/11
**sanctions [1]** 57/23
**satisfied [1]** 46/19
**satisfy [1]** 19/7
**scenario [4]** 31/16 31/21 33/17 43/20

**schedule [1]** 10/1
**school [1]** 37/3
**scope [1]** 21/23
**score [1]** 45/23
**scores [1]** 45/4
**scot [1]** 11/11
**scot-free [1]** 11/11
**seal [6]** 6/10 7/2 7/6 7/11 7/13 46/3
**sealed [1]** 48/4
**search [28]** 12/8 13/24 15/24 18/14 18/15 20/3 20/15 21/21 25/2 25/2 29/17 29/23 30/10 34/14 34/24 41/15 41/17 41/20 42/8 42/11 47/1 47/12 47/12 47/16 47/20 47/25 49/4 49/9
**searches [3]** 34/6 40/7 44/1
**second [8]** 19/3 19/4 20/12 21/11 48/12 50/23 51/1 51/4
**secrets [1]** 9/3
**section [4]** 13/23 55/22 56/5 56/7
**security [3]** 29/4 56/4 57/25
**seek [4]** 19/13 41/15 52/23 53/6
**seeking [5]** 20/15 25/19 26/20 35/14 53/16
**seeks [1]** 25/14
**segregated [3]** 43/3 47/10 48/5
**seize [2]** 32/5 34/22
**seized [10]** 15/23 21/22 29/5 32/20 36/4 36/4 38/16 42/22 43/10 47/18
**seizing [1]** 30/1
**seizure [2]** 23/23 34/20
**seizures [1]** 34/6
**selected [1]** 15/5
**selective [1]** 13/3
**self [1]** 55/13

**S**

self-assessment [1]  55/13
sense [5]  14/2
32/23 37/14 38/10
56/13
sensitive [1]
45/18
sequence [1]
39/10
sequestration [1]
56/1
serious [2]  12/9
33/5
seriously [2]
46/24 52/16
serve [1]  23/11
setting [3]  10/1
46/25 50/18
shall [1]  14/6
sharing [1]  35/23
shocker [2]  11/16
11/16
short [3]  15/12
15/13 34/13
showings [1]
35/3
side [9]  5/15 7/16
13/21 14/11 14/13
30/20 43/14 47/24
57/25
sides [3]  8/9 8/20
27/16
sign [1]  14/19
Silverman [1]
1/15
situation [7]  7/5
7/9 8/19 13/16
31/19 55/24 56/10
Sixth [1]  39/14
slow [1]  40/9
Slutkin [1]  1/15
Smith [1]  13/22
sneaking [1]  9/3
social [1]  3/6
solved [1]  15/19
SOPHIA [2]  1/20
2/22
sorts [1]  9/12
sought [1]  27/1
South [1]  59/7
SOUTHERN [2]

special [59]  1/9
9/14 10/10 10/16
10/23 11/1 11/20
13/6 13/9 15/17
16/2 17/3 17/16
18/22 19/13 23/3
23/4 23/10 23/15
23/19 26/10 27/13
28/20 28/24 29/7
29/22 29/24 30/4
35/5 36/2 36/14
36/17 36/23 37/8
37/13 37/17 37/19
38/2 38/6 38/11
39/4 39/6 40/1
40/7 41/2 41/5
42/9 43/20 43/22
43/24 44/3 44/6
44/9 44/13 44/17
49/20 53/12 53/20
56/18
specially [1]  30/7
specific [6]  16/9
17/8 23/2 25/7
26/3 55/11
specifics [2]  50/4
50/17
speeches [1]
12/25
spend [1]  13/14
splitting [1]  3/25
staffer [1]  9/3
stage [2]  18/15
19/2
staged [1]  13/7
stamped [2]  53/1
53/5
stand [1]  35/22
standard [2]  47/6
48/10
standards [2]
18/12 19/7
standing [11]
11/4 11/15 11/24
14/24 20/6 20/12
20/14 20/16 20/21
20/22 33/12
starting [2]  23/3
32/7
state [1]  2/4
state's [1]  12/6
stated [1]  46/17

STATES [20]  1/1
1/6 1/10 2/3 2/17
2/19 2/21 2/23
5/22 6/2 8/25 9/6
9/13 12/3 24/22
24/23 25/7 28/4
45/10 59/7
status [12]  4/11
4/14 5/3 5/5 5/6
5/7 6/5 6/21 7/12
23/8 29/14 43/1
statute [2]  25/19
32/17
statutes [1]  41/19
statutory [1]  34/3
staying [1]  27/9
stems [1]  3/4
step [8]  12/4 15/1
15/15 15/22 41/5
47/11 48/11 48/12
steps [1]  49/18
storage [6]  25/8
25/11 28/19 47/17
52/1 52/9
stored [2]  22/4
54/23
strategy [1]  10/8
street [1]  35/11
strictly [1]  19/12
strong [1]  57/25
submissions [1]
3/17
submit [1]  32/21
submitted [1]
29/14
subpoena [1]
26/1
subsequent [1]
42/10
substantial [1]
35/2
substantive [4]
4/15 7/3 7/15
46/18
succeed [1]
24/14
successfully [4]
24/4 27/6 28/9
55/1
suddenly [1]
31/22 37/7
suggest [7]  11/8
15/14 24/11 26/9

31/13 37/2 46/8
suggesting [1]
56/12
suggestion [1]
45/19
suggestions [1]
7/20
suit [3]  23/15
25/19 27/1
supervision [1]
56/12
supervisory [2]
34/3 56/4
suppertentional [1]  37/10
supplied [1]  26/5
support [1]  31/1
supported [1]
20/11
supporting [1]
41/24
supports [1]  42/2
suppress [2]
20/15 33/22
suppression [4]
21/2 22/11 34/12
41/16
Supreme [1]
28/12
surrounding [1]
23/13
suspect [2]  35/3
38/9
swaths [1]  30/20
system [1]  12/20

**T**

table [2]  5/20
11/22
taint [2]  5/15
39/14
tap [1]  56/2
team [48]  4/12
4/12 4/14 4/21 5/3
5/6 5/20 6/12 7/12
13/14 13/16 13/19
13/24 14/4 14/8
23/9 29/15 29/16
33/13 38/1 42/16
43/4 45/7 45/15
46/25 46/25 47/2
47/3 47/5 47/15
47/19 47/21 48/6

49/1 49/3 50/14
50/15 50/19 50/21
51/4 51/10 51/13
51/13 52/13 52/14
53/4 55/13 55/18
teams [1]  14/12
temerity [1]  10/22
temperature [2]
8/8 8/20
temporarily [2]
29/1 36/18
temporary [1]
29/4
tentatively [1]
51/24
term [5]  9/1 24/24
25/10 51/19 51/25
terminology [1]
50/6
terms [23]  11/6
16/11 16/18 17/8
25/4 28/2 29/7
29/12 30/4 30/16
30/18 31/15 31/24
35/6 45/21 46/1
47/11 49/25 50/6
51/18 55/10 56/15
57/10
test [1]  27/25
text [1]  22/21
thank [20]  5/1 8/1
9/22 9/23 9/25
17/4 17/21 18/6
18/7 18/9 30/12
45/6 46/21 52/5
52/20 54/1 55/5
55/6 57/13 58/3
theories [1]  14/23
Thompson [1]
1/15
thorny [1]  30/9
thoughts [1]  55/7
threat [1]  33/5
throw [1]  38/11
throwing [1]
56/24
thrown [1]  56/15
tie [1]  37/5
time [23]  6/20 7/2
7/7 11/23 15/12
16/12 22/18 24/10
25/2 26/6 27/1
29/5 31/17 34/24

Page 70

DONALD J. TRUMP vs. UNITED STATES OF AMERICA
Case 9:22-cv-81294-AMC   Document 127   Entered on FLSD Docket 09/29/2022   Page 70 of 70

## T

time... **[9]**  36/7
37/21 38/12 46/9
47/15 48/22 49/22
53/9 54/25
times **[1]**  31/20
timing **[1]**  35/20
TONY **[4]**  1/19
1/20 2/18 5/21
topic **[1]**  21/17
touch **[2]**  46/6
46/19
touched **[1]**  37/11
towards **[2]**  9/17
10/13
tracks **[1]**  37/13
traditional **[1]**
43/23
TRANSCRIPT **[1]**
1/9
transcription **[1]**
59/3
transferred **[1]**
48/7
transformed **[1]**
31/23
transmission **[1]**
45/17
transmit **[1]**  3/6
transparency **[3]**
8/13 12/24 36/3
trash **[1]**  56/24
treat **[1]**  54/17
treatment **[1]**
9/25
tree **[1]**  11/7
trial **[1]**  38/1
triggers **[2]**  19/5
19/6
TRUMP **[9]**  1/3
2/3 2/8 2/10 2/12
2/14 8/2 34/8 57/4
trust **[4]**  3/12 8/9
14/10 55/15
TRUSTY **[8]**  1/14
2/9 8/3 9/21 17/23
20/13 46/14 48/25
TS **[1]**  56/17
turning **[1]**  4/13
typical **[1]**  43/20

## U

U.S **[7]**  1/21 12/6
13/22 30/1 35/25
56/7 59/7
U.S.C **[1]**  18/1
ultimate **[1]**  34/10
Ultimately **[2]**
27/12 38/12
unchecked **[1]**
12/21
unclean **[1]**  22/21
unclear **[1]**  20/7
unconstitutional
**[1]**  11/10
undermine **[1]**
18/10
underscores **[1]**
10/18
understanding **[5]**
18/3 29/15 40/2
42/16 52/8
undertook **[1]**
28/15
undisputed **[2]**
25/9 27/22
undo **[1]**  27/14
unenforceable **[2]**
16/7 31/15
unfettered **[2]**
12/21 57/4
unfortunately **[1]**
35/22
unique **[1]**  8/6
UNITED **[20]**  1/1
1/6 1/10 2/3 2/17
2/19 2/21 2/23
5/22 6/1 8/25 9/6
9/13 12/3 24/22
24/23 25/6 28/4
45/10 59/7
universe **[1]**  35/6
unlawful **[1]**
22/19
unlawfully **[1]**
19/21
unmonitored **[1]**
12/22
unobserved **[1]**
12/22
unprecedented
**[3]**  8/19 23/17
28/8
unquestioningly
**[1]**  20/4
unreasonable **[1]**
34/5
unrelated **[1]**  30/2
unseal **[5]**  12/7
12/8 12/10 12/16
46/9
unsealed **[5]**  4/10
5/4 5/17 9/8 47/1
unsealing **[5]**  4/2
4/6 4/23 6/24
15/21
unusual **[1]**  13/10
unveiling **[2]**
55/12 55/13
update **[1]**  29/14
upping **[1]**  42/10
us **[21]**  10/1 10/11
11/3 11/22 14/10
14/15 15/22 17/12
30/25 36/4 36/9
38/12 39/1 40/24
40/24 41/8 41/10
42/10 44/13 52/8
55/15

## V

valid **[3]**  21/20
41/14 41/20
vast **[1]**  51/20
vehement **[1]**
15/3
venue **[1]**  25/18
versus **[6]**  2/3
24/2 26/22 27/4
28/4 38/7
via **[1]**  52/15
vicinity **[2]**  34/23
34/23
video **[1]**  3/3
vindicate **[1]**
41/16
vindicated **[1]**
21/1
violation **[2]**  57/3
57/3
violations **[2]**
21/1 41/18
volume **[3]**  30/8
44/22 48/17
volumes **[1]**
11/14
vs **[1]**  1/5

## W

wade **[1]**  17/16
waiver **[3]**  7/5 7/9
46/18
walk **[1]**  32/4
wall **[1]**  55/14
warrant **[26]**  12/8
12/8 18/14 20/11
21/18 21/21 21/23
25/2 29/18 30/21
30/21 31/2 33/23
34/14 34/17 34/19
35/3 41/14 41/20
45/21 47/1 47/12
49/4 49/9 49/19
50/15
warranted **[2]**
26/10 50/16
warrants **[1]**  34/4
Washington **[2]**
48/8 56/2
welcome **[2]**
17/17 37/11
white **[2]**  1/16
30/24
willing **[1]**  56/10
wishes **[1]**  57/15
wonder **[1]**  45/22
wondering **[1]**
27/17
world **[1]**  32/23
worried **[1]**  15/2
worry **[1]**  55/19

## Y

York **[1]**  44/13