**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-CV-81294-CANNON

DONALD J. TRUMP,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

UNDER SEAL

FILED BY_____PCS_____D.C.

Nov 8, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## THE UNITED STATES' PRINCIPAL BRIEF TO THE SPECIAL MASTER ON GLOBAL ISSUES

The parties agreed to brief five global issues to the Special Master in an effort to minimize the burden of the document review. The five global issues appear in the table that the parties jointly submitted in Docket Entry ("D.E.") 161-1, at 1:

| Concept | Global Issue |
|---|---|
| Document categorization as Presidential record or personal record | • Whether Plaintiff may designate or convert Presidential records to personal ones during or after his term in office<br>• Whether certain groups of documents (*e.g.*, pardon packages) are Presidential records |
| Executive privilege | • Whether categorization of a document as a personal record means that it cannot be claimed by a former officeholder as subject to a claim of executive privilege<br>• Whether Plaintiff may assert executive privilege to withhold seized materials from the government notwithstanding the four reasons and footnote in the government's letter with respect to the 15 Filter A documents filed on October 20, 2022 |
| Verification of the Detailed Property Inventory | • Whether Plaintiff should be required to file a declaration or affidavit regarding the government's inventory as set forth in ECF 118, at 1-2 |

The government's principal brief discusses each of the five global issues below.[1] *First*,

_____

[1] Consistent with the Protective Order issued by the Special Master, Docket Entry ("D.E.")

Plaintiff may not designate records qualifying as "Presidential records" under the Presidential Records Act (PRA), 44 U.S.C. § 2201 *et seq.*, as his "personal" records simply by saying so. Plaintiff categorizes several hundred seized records as "personal" based on Plaintiff's reading of *Judicial Watch v. National Archives and Records Administration*, 845 F. Supp. 2d 288 (D.D.C. 2012), combined with an assertion that "these are items generated during the presidency that can be possessed post-presidency and effectively deemed 'personal.'" But neither *Judicial Watch* nor the text of the PRA gives Plaintiff the ability to ignore the statute by removing Presidential records from the White House, retaining them (without authorization) in a personal storage space, and then "deem[ing]" them to be "personal."

*Second*, Plaintiff's designation of certain categories of records as "personal" records is inconsistent with the text of the PRA, as set forth below.

*Third*, if Plaintiff categorizes a document as a personal record, then he cannot assert executive privilege over that document. Records are personal only if they are "of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(3). By contrast, executive privilege protects Presidential communications related to the performance of official duties. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 705 (1974) (describing the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their

---

113 ¶ 3, the government is filing this brief under seal because it contains references to specific seized records and to specific categories of seized records. The government has included proposed redactions to those portions of this brief and will request that the balance of the brief be unsealed if the Special Master agrees with those proposed redactions.

manifold duties"). Seeming to recognize that a document cannot both be a "personal" record and be shielded by executive privilege, Plaintiff has indicated in dozens of instances that he asserts executive privilege only *if* the Special Master rejects his assertion that a document is a "personal" record and determines that it is a Presidential record. The Special Master should not indulge this type of gamesmanship.

*Fourth* and in any event, Plaintiff may not assert executive privilege to withhold seized materials from the government. Executive privilege exists "for the benefit of the Republic," not any President as an individual, and Plaintiff cannot successfully invoke the privilege to prevent a review of Executive Branch documents by "the very Executive Branch in whose name the privilege is invoked." *Nixon v. Administrator of General Services*, 433 U.S. 425, 447-49 (1977) (*Nixon v. GSA*). And even if Plaintiff could assert such a claim, it would be overcome here by the government's "demonstrated, specific need" for evidence in a criminal investigation. *United States v. Nixon*, 418 U.S. 683, 713 (1974).

*Fifth*, Plaintiff should be required to file a declaration or affidavit regarding the government's inventory as set forth in D.E. 118, at 1-2.

Lastly, because Plaintiff has asserted attorney-client privilege only as to one document out of the 2,916 documents at issue here and has asserted executive privilege only as to 121 documents, there is no basis to continue restricting the government's review and use for criminal investigative purposes of the remaining 2,794 documents. The Special Master should therefore recommend that the Court's injunction as to those remaining documents, D.E. 64 at 23-24, be lifted.

## DISCUSSION

### I.     Plaintiff Cannot "Deem[]" Presidential Records to be Personal Records

In several hundred instances, Plaintiff has asserted that records are "personal" with

the following explanation:

> Basis: Cover/folders/envelopes/personal messages/misc. personal: consistent with
> the PRA and Judicial Watch v NARA, these are items generated during the presidency
> that can be possessed post-presidency and effectively deemed "personal."

That assertion makes no sense, and the Special Master should reject it.

On the above basis—taking as a sample just the first 100 pages of documents—Plaintiff

has designated as "personal" records items such as: ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

Those items plainly constitute "Presidential records" under the PRA. That is, they are

materials "created or received by the President, the President's immediate staff, or a unit or

individual of the Executive Office of the President whose function is to advise or assist the

President, in the course of conducting activities which relate to or have an effect upon the

carrying out of the constitutional, statutory, or other official or ceremonial duties of the

President." 44 U.S.C. § 2201(2). Just as plainly, they are not "personal records," which the

PRA defines as essentially the opposite. *See id.* § 2201(3) ("personal records" are records "of

a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President").

Plaintiff does not appear to pretend otherwise. Indeed, where a plausible argument can be made that a record is *actually* a "personal record" under the PRA, Plaintiff has indicated as much by providing a different basis in the privilege log—typically, "Basis: Newspapers, media summaries/gifts/clothing: inherently personal items, not related to presidential duties." As to the hundreds of records that Plaintiff has designated as "personal" by relying on *Judicial Watch*, Plaintiff appears to be claiming that he can unilaterally "deem[]" otherwise Presidential records to be "personal" records by fiat. *Cf., e.g.*, D.E. 84 at 14 (citing *Judicial Watch* for the assertion that "the former President has sole discretion to classify a record as personal or Presidential").

*Judicial Watch* held no such thing. In that case, the district court held that a third party cannot bring a claim to *compel* the National Archives and Records Administration (NARA) to revisit or overrule a categorization of records that the President made during his term in office. [2] Rather, the court held that NARA's enforcement tools under the PRA "are committed to the agency's sole discretion." *Id.* at 302. Notably, NARA itself had also concluded that the records at issue were personal records. *Id.* at 293. Additionally, although

---

[2] Specifically, Judicial Watch sought audiotapes created by former President Clinton with his biographer during his administration, which he had treated as personal rather than Presidential records and thus had not provided to NARA. *See* 845 F. Supp. 2d at 289-90, 292-93. NARA concurred in the designation of the tapes as personal records, based on "the nature of the audio tapes, if they were created with the intent of their use as government materials, and whether or not they were circulated within the Administration or relied on as policy documents." *Id.* at 293.

the court opined that the responsibility to classify records as "personal" or "Presidential" "is left solely to the President" during his term in office, *id.* at 301, the court nowhere suggested that it would be lawful for a President to flatly defy the PRA by designating what are obviously government records as his "personal" records. Such a reading of the PRA would nullify the statute's entire purpose by allowing a President to designate all of his official records as "personal" records and then to remove them upon departure from the White House. And it would reduce the PRA's detailed definitions of "Presidential records" and "personal records," 44 U.S.C. § 2201(2)-(3), to mere suggestions.

Additionally, even if Plaintiff's reading of the PRA were correct, the relevant time for him to have designated records as "personal" or "Presidential" was during his term in office. As *Judicial Watch* itself explained, 44 U.S.C. § 2203(b), which speaks to the duties of the President and his staff to categorize and file records as personal or Presidential, calls for decisions as to the proper categorization of records "to be made during, and not after, the presidency." 845 F. Supp. 2d at 300-01; *see also id.* at 291 ("The categorization of records during the Presidency controls what happens next: at the conclusion of the President's term, the Archivist is directed to 'assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President.'" (quoting 44 U.S.C. § 2203(f)(1))). Therefore, even under Plaintiff's incorrect reading of the PRA and *Judicial Watch*, Plaintiff would need to supply specific evidence that he categorized the records in question as his "personal" records while he was still President. He has not done so.

## II.   Plaintiff's Designation of Certain Categories of Records as "Personal" Records Is Overbroad

For several categories of records, Plaintiff has applied overbroad criteria in asserting

6

that records are personal records. The government describes those categories below, followed

by a description of the government's more tailored criteria that more closely track the PRA's

terms. Additionally, to the extent the Special Master would benefit from further guidance or

expertise as to the proper categorization of a particular document or record, the government

encourages the Special Master to consult with NARA.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

   ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

   ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

**The government's categorizations:** The government sets forth below the categories

───────────────────────

██████████████████████████████████████████████

and standards it applied for certain records that could be personal or Presidential depending on further details:



7. 

8.

9.

10.

### III.    Plaintiff's Designation of a Document as a "Personal" Record Precludes the Assertion of Executive Privilege as to that Document

Plaintiff cannot claim that a document is both his own personal record and is also subject to executive privilege. The PRA defines "personal" records to be those "of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(3). The exact opposite must be true in order for executive privilege to apply. As the Supreme Court explained in *United States v. Nixon*, the privilege protects communications made in the performance of the President's and his advisors' "manifold duties." 418 U.S. at 705 (1974). In other words, the privilege applies to "internal

10

communication[s]" related to "Presidential decisionmaking." *Trump v. Thompson*, 142 S. Ct. 680, 681 (2022) (Kavanaugh, J., respecting the denial of application for a stay and injunction pending review). Clearly, a document cannot relate to the performance of official duties or Presidential decisionmaking if it is "*purely* private or non-public." 44 U.S.C. § 2201(3) (emphasis added).

The distinction between personal records and those subject to executive privilege was illustrated recently in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020). In that case, several Congressional committees issued subpoenas seeking information about the finances of then-President Trump, his children, and affiliated businesses. *See id.* at 2027. Plaintiff did not claim executive privilege as to those personal records, presumably because he could not, and the Court rejected his argument that the standard articulated in *United States v. Nixon*—which shields Presidential communications from disclosure unless there is a "demonstrated, specific need" for them, 418 U.S. at 713—should shield his personal records. *See Mazars*, 140 S. Ct. at 2032-33 (explaining the distinction between executive privilege, which "safeguards the public interest in candid, confidential deliberations within the Executive Branch," and "nonprivileged, private information").

Seeming to recognize that a document cannot both be a "personal" record and be shielded by executive privilege, Plaintiff has indicated that he asserts executive privilege only *if* the Special Master rejects his assertion that a document is a "personal" record and determines that it is a Presidential record. That is a shell game, and the Special Master should not indulge it. An assertion of executive privilege should be based on a considered judgment about "the present and future needs of the Executive Branch." *Nixon v. GSA*, 433 U.S. at 449.

11

Plaintiff cannot contend that a document is "purely private or non-public" under the PRA while simultaneously claiming, as a backup, that it reflects confidential executive communications. At the very least, this type of gamesmanship should detract substantially from the weight of Plaintiff's executive privilege claims.

## IV.    Plaintiff Cannot Withhold Seized Materials from the Government Based on Executive Privilege

Furthermore, Plaintiff's assertions of executive privilege fail on the merits. As the government has explained at length in briefs before this Court and the Eleventh Circuit, Plaintiff has no plausible claim of executive privilege that could justify restricting the Executive Branch's review and use of the seized records in the performance of core executive functions. The government's arguments, particularly as they pertain to unclassified records, are set forth most fully in its brief before the Eleventh Circuit. *See* Brief of the United States at 28-36, *Trump v. United States*, No. 22-13005 (11th Cir.) (Oct. 14, 2022); *see also* D.E. 48 at 23-28. The government incorporates those arguments by reference here and provides below a summary and additional context based on the privilege assertions Plaintiff has now made.

First, no authority supports Plaintiff's claim that he can use executive privilege to block the Executive Branch itself from reviewing records. To the contrary, in what appears to be the only case in which such an assertion was made, the Supreme Court rejected former President Nixon's claim that he could assert executive privilege "against the very Executive Branch in whose name the privilege is invoked." *Nixon v. GSA*, 433 U.S. at 447-48. The same result readily follows here. In this case, as in *Nixon v. GSA*, the officials in the Executive Branch reviewing the seized records are "personnel in the Executive Branch sensitive to executive concerns." *Id.* at 451. Indeed, restricting the Executive Branch's access to information and

12

records needed to carry out core executive functions—including the enforcement of criminal laws and the protection of classified information—would undermine, not protect, the interests of the Executive Branch and "the benefit of the Republic." *Id.* at 449.

Second, Plaintiff's assertions of executive privilege fail under *United States v. Nixon*, because the government has a "demonstrated, specific need" for the seized records in its ongoing criminal investigation, 418 U.S. at 713.[4] As the Supreme Court explained more recently, "the public interest in fair and accurate judicial proceedings is at its height in the criminal setting, where our common commitment to justice demands that 'guilt shall not escape' nor 'innocence suffer.'" *Trump v. Vance*, 140 S. Ct. 2412, 2424 (2020) (quoting *United States v. Nixon*, 418 U.S. at 709). Accordingly, the *Nixon* Court concluded that President Nixon's "generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial." *United States v. Nixon*, 418 U.S. at 713.

That standard is easily met here. First, for the reasons explained above, any record for which Plaintiff can plausibly assert executive privilege is necessarily a Presidential record. Such records would therefore likely constitute evidence of violations of 18 U.S.C. § 2071, which prohibits "conceal[ing]" or "remov[ing]" government records. That alone is reason enough to defeat Plaintiff's executive privilege claims.

---

[4] Because the government satisfies *United States v. Nixon*'s "demonstrated, specific need" test, which applies to a sitting President, the Court need not consider Plaintiff's status as a former President for purposes of this analysis. *Cf. Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (per curiam) (discussion by lower court of Plaintiff's status as a former President was "nonbinding dicta" because "the Court of Appeals concluded that President Trump's claims would have failed even if he were the incumbent") (citing *Trump v. Thompson*, 20 F. 4th 10, 33 (D.C. Cir. 2021)).

Second, the unclassified seized records may constitute evidence of potential violations of 18 U.S.C. §§ 793 (unlawful retention of national defense information) and/or 1519 (obstruction of justice). Based on a finding of probable cause of violations of these statutes— as well as 18 U.S.C. § 2071—the magistrate judge specifically authorized the government to seize, *inter alia*, "[a]ny physical documents with classification markings, along with any containers/boxes (including any other contents) in which such documents are located, as well as any other containers/boxes that are collectively stored or found together with the aforementioned documents and containers/boxes." D.E. 125 at 38, *In re Sealed Search Warrant*, No. 9:22-MJ-8332-BER (S.D. Fla.). In other words, the unclassified materials at issue here were either stored in boxes or containers containing classified information or they were stored collectively (or found together) with classified records and the containers or boxes containing them. They may therefore provide important evidence as to elements of 18 U.S.C. §§ 793 and 1519, such as by establishing ownership or possession of classified records or by helping to establish timelines during which classified records may have been accessed. They may also be used to corroborate witness testimony or assess witnesses' credibility.

Furthermore, Plaintiff has failed to proffer any specific justification as to why any particular document should be shielded from review. To the contrary, most of his claims of executive privilege are made only as cursory backup arguments in the event the Special Master disagrees that the documents are "personal" records. For the remainder, Plaintiff simply asserts: "document reflects deliberative process and/or is a presidential communication."[5]

---

[5] The "deliberative process" privilege is a type of executive privilege that is broader but more qualified than the Presidential communications privilege. *See generally In re Sealed Case*, 121 F.3d 729, 736-40, 742-46 (D.C. Cir. 1997) (providing detailed legal background). "Both are

That is precisely the type of "generalized assertion of privilege" that "must yield to the demonstrated, specific need" of the government here. *United States v. Nixon*, 418 U.S. at 713.

## V.   Plaintiff Should Be Required to File a Declaration or Affidavit Regarding the Government's Inventory

The Court's order appointing the Special Master requires the Special Master to "[v]erify[] that the property identified in the 'Detailed Property Inventory' [D.E. 39-1] represents the full and accurate extent of the property seized from the premises on August 8, 2022, including, if deemed appropriate, by obtaining sworn affidavits from Department of Justice personnel." D.E. 64 at 2 ¶ 2(a) (bracket in original). The Special Master has received an affidavit of accuracy from the government. Since the Court appointed the Special Master to ensure fairness, integrity, and even-handedness in the review process, *see, e.g.*, D.E. 64 at 1, 19, 22, Plaintiff should be required to verify or correct the property inventory just as the government has done.

The Special Master's initial and Amended Case Management Plans (D.E. 106 at 1-2; D.E. 112 at 1-2), required Plaintiff to submit a matching affidavit verifying or correcting the property inventory:

> No later than September 30, 2022, Plaintiff shall submit a declaration or affidavit that includes each of the following factual matters:

> a.   A list of any specific items set forth in the Detailed Property Inventory that Plaintiff asserts were not seized from the Premises on August 8, 2022.

---

executive privileges designed to protect executive branch decisionmaking, but [deliberative process privilege] applies to decisionmaking of executive officials generally," while the Presidential communications privilege applies "specifically to decisionmaking of the President." *Id.* at 745. Because Plaintiff's claims of executive privilege fail even under the heightened protection afforded for Presidential communications, the Special Master need not address this distinction as to any particular document.

       b.     A list of any specific items set forth in the Detailed Property Inventory that Plaintiff asserts were seized from the Premises on August 8, 2022, but as to which Plaintiff asserts that the Detailed Property Inventory's description of contents or location within the Premises where the item was found is incorrect.

       c.     A detailed list and description of any item that Plaintiff asserts was seized from the Premises on August 8, 2022, but is not listed in the Detailed Property Inventory.

       This submission shall be Plaintiff's final opportunity to raise any factual dispute as to the completeness and accuracy of the Detailed Property Inventory.

The Special Master included the requirement that Plaintiff submit a matching affidavit with an extended deadline in his Interim Report and Recommendation No. 1. *See* D.E. 118, at 1-2. The Case Management Plans and Interim Report and Recommendation also contemplated a final affidavit from the government.

The Court's September 29, 2022 order did not disagree in principle with the requirement that Plaintiff verify or correct the property inventory. Rather, the Court relieved Plaintiff from the requirement to verify or correct the inventory before he had an opportunity to review the seized materials. *See* D.E. 125 at 2 (noting that "Plaintiff objects to the *pre-review* Inventory objection requirement," and "the *current inability to access the Seized Materials*") (emphases added). The Court thus ruled that "[t]here shall be no separate requirement on Plaintiff at this stage, prior to the review of any of the Seized Materials, to lodge ex ante final objections to the accuracy of Defendant's Inventory, its descriptions, or its contents." *Id.* at 3. But it left open to the Special Master to reimpose the requirement that Plaintiff verify or correct the property inventory after Plaintiff had an opportunity to review the seized materials. *See id.* ("Should any additional matters surface during the Special Master's review process

16

that require reconsideration of the Inventory or the need to object to its contents, the parties shall make those matters known to the Special Master for appropriate resolution and recommendation to this Court.").

Now that Plaintiff has reviewed the seized materials and claimed the overwhelming majority of them to be his personal records, considerations of fairness, integrity, and evenhandedness require Plaintiff to do what the government has done—namely, verify the property inventory or correct it if he believes it to be in error. A fair process requires both parties to ensure that the Special Master is adjudicating disputes over property actually seized from Mar-a-Lago.

* * *

Finally, as the government has noted previously, the categorization of the records at issue as Presidential or personal does not ultimately affect the government's ability to use and review them for criminal investigative purposes. *See* D.E. 150 at 4 n.*. Plaintiff has asserted attorney-client privilege only as to one document out of the 2,916 documents at issue here, and Plaintiff has asserted executive privilege as to only 121 documents. As to the remaining 2,794 documents, Plaintiff does not assert any privilege that would bar the government's further review and use of these materials for purposes of its ongoing criminal investigation. Although Plaintiff and the government disagree as to the proper categorization of numerous records as "personal" or "Presidential" for purposes of the PRA, neither categorization would supply a basis to restrict the government's review and use of those records. Indeed, personal records that are not Presidential records or government property are seized every day for use in criminal investigations. Thus, absent any specific justification from Plaintiff for continuing

17

to restrict the government's review and use of the 2,794 records for which Plaintiff has not asserted any privilege, there is no reason to maintain the Court's injunction as to those records.[6]

**CONCLUSION**

For the foregoing reasons, Plaintiff should not be permitted to deem records that are on their face Presidential as "personal"; the Special Master should adopt the government's positions as to the proper categorization of these records; Plaintiff's assertions of executive privilege fail; Plaintiff should be required to provide a declaration regarding the inventory of seized materials in a lawsuit of his own making in which he bears the burden of proof; and the Special Master should recommend that the Court lift its injunction as to the records for which Plaintiff has asserted neither attorney-client nor executive privilege.

Respectfully submitted,

*/s Juan Antonio Gonzalez*
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388

---

[6] Plaintiff's purported intent to pursue a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g) also has no bearing on the government's ability to use and review the seized records. Courts consistently hold that when the government provides or offers to provide copies of seized records to the requesting plaintiff, Rule 41(g) does *not* require the return of the original documents and all copies. *See, e.g., In re Search of Office of Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) (given the government's return of copies of seized documents, there is "no compelling reason to think that this solution is not an adequate remedy for the appellants"); *id.* (noting that "[t]he procedures involved in Rule 41(e) [the predecessor of Criminal Rule 41(g)] are not intended to deny the government the use of evidence it needs during its investigations and prosecutions"); *In the Matter of the Search of 949 Erie Street, Racine, Wisconsin*, 824 F.2d 538, 541 (7th Cir. 1987) ("Suffice it to say that where the government has offered to provide copies and the movants have not even attempted to show that copies are inadequate to solve the difficulties alleged in the affidavit, we cannot find that the motion is directed primarily toward the return of the seized property.").

99 NE 4th Street, 8th Floor
Miami, FL 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov


MATTHEW G. OLSEN
Assistant Attorney General
National Security Division

 /s *Jay I. Bratt*
JAY I. BRATT
CHIEF
Julie A. Edelstein
Stephen Marzen
Counterintelligence and Export Control
Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Illinois Bar No. 6187361
Tel: 202-233-0986
Email: jay.bratt2@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*s/ Juan Antonio Gonzalez*</u>
Juan Antonio Gonzalez
United States Attorney