

**Via ECF and Courtesy Copy**                                      November 10, 2022

Judge Raymond J. Dearie
United States District Court for the
   Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y.  11202

        RE:  *Donald J. Trump v. United States of America*, Case No. 22-cv-81294-CANNON

Dear Judge Dearie:

        On November 7, 2022, Your Honor issued a Scheduling Order announcing your intent to contact the National Archives and Records Administration ("NARA") regarding its practices and guidance documents concerning the categorization of materials under the Presidential Records Act. ECF 164. One way to read the Order is that it contemplates an ex parte or in camera contact with a NARA representative. Plaintiff, President Donald J. Trump, through the undersigned counsel, files this letter respectfully objecting to a private contact between the Special Master and NARA. However, Plaintiff does not object to a process that allows full transparency and participation by the parties.

        Canon 3(A)(4) of the Code of Conduct for United States Judges states that a federal judge "should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers."[1] This Canon is an extension of the widely accepted principle that the judicial system relies upon vigorous advocacy amongst the parties, rather than inquisitorial research by the presiding judicial officer.[2]

        Generally, judicial officers are expected to refrain from relying on information that was obtained through their own independent factual research and conducted outside the

---

[1] *See also* Model Code of Jud. Conduct r. 2.9(A) (Am. Bar Ass'n 2020); Fed. R. Evid. 201(e) ("[A] party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed.").

[2] *See, e.g.*, Am. Bar Ass'n Formal Op. 478 (Dec. 8, 2017) ("Except for evidence properly subject to judicial notice, a defining feature of the judge's role in an adversarial system is that the judge will 'consider only the evidence presented by the parties.'" (quoting Charles G. Geyh & W. William Hodes, REPORTERS' NOTES TO THE MODEL CODE OF JUDICIAL CONDUCT 40 (2009))).



presence of parties to the litigation. *Johnson v. United States*, 780 F.2d 901, 910 (11th Cir. 1986) (noting that a trial judge may not "undertake an independent mission of finding facts" outside the record). Although judicial officers are not expected to remain completely insulated from factual information that is available outside the four walls of a courtroom, they must "observe proper limitations on judicial research." *Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015). Allowing a judicial officer to conduct unrestricted independent research, and to subsequently rely upon that research in rendering decisions, would implicate issues of fundamental fairness. *See Campbell v. Sec. of Health and Human Servs.*, 69 Fed. Cl. 775, 776-77, 781-82 (2006) (finding that a special master's introduction of medical articles obtained from the internet into the record, without the opportunity for a hearing, created an "extraordinary risk that [could not] be squared with the Special Master's responsibility for conducting a proceeding consistent with the principles of fundamental fairness").

Indeed, the Seventh Circuit has recognized that there is a difference between mere "web searches for facts or other information that judges can properly take judicial notice of," and "web searches for facts normally determined by the factfinder after an adversary procedure that produces a district court or administrative record." *Rowe*, 798 F.3d at 628. Thus, while the Court may undertake independent research of issues that are judicially noticeable, it should refrain from independently investigating matters of dispute amongst the parties. Further, the Court should refrain from conducting such research off the record. A similar principle is recognized in the context of arbitration, where courts have found that an arbitrator's ex parte research may serve as grounds to vacate an arbitration award. *Airgas West, Inc. v. Hawaii Teamsters and Allied Workers, Local 996*, No. 12-cv-00454, 2013 WL 1856076, at *7 (D. Haw. April 20, 2013) (quoting *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1025 (9th Cir. 1991) ("Ex parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is ground for vacation of an arbitration award.")).

Under the same logic, judicial officers should avoid ex parte communications with individuals providing specialized, expert information within the litigation. *See United States v. Craven*, 239 F.3d 91, 102 (1st Cir. 2001) (noting that a judicial officer's "ex parte contacts can create situations pregnant with problematic possibilities"). In *Craven*, the First Circuit reviewed a district court judge's reliance on information obtained through an ex parte conversation with a court-appointed expert with respect to sentencing. *Id.* at 95. The Government appealed the sentence, arguing that (1) the parties were not privy to the court's discussion with the expert and (2) the substance of the ex parte conversation was not placed



on the record. *Id.* at 101. In reviewing the sentencing court's behavior, the First Circuit relied on the general principle that "the law frowns upon ex parte communications between judges and court-appointed experts." *Id.* at 102. According to the First Circuit, "[t]he reason is obvious: most ex parte contacts between a trial judge and another participant in the proceedings risk harm, and ex parte communications with key witnesses (such as court-appointed experts) are no exception." *Id.* Based on these findings, the Court concluded that the district court's ex parte conversation impermissibly "taint[ed] the factual basis" relied upon in its sentencing decision. *Id.*

With these principles in mind, Plaintiff respectfully contends that the Special Master should avoid engaging in an ex parte contact or otherwise conducting private interviews in this matter. Further, as noted during the initial Status Conference, the Plaintiff has deep concerns regarding the political bias of NARA leadership. Accordingly, we must object to any contact with NARA that does not allow for the full participation of the parties.

Plaintiff suggests that a suitable alternative to an in-camera conversation with an interested party would be to call a NARA representative to appear at the December 1 status conference and provide sworn testimony to the Special Master and the parties. This would ensure that the record includes all information developed in such testimony, and it would also allow the parties to ask questions of the representative, akin to a deposition. Plaintiff's proposed procedure would appropriately balance the Special Master's need for information with the parties' interest in testing the reliability and accuracy of that information.

Thank you for your time and consideration of this matter.

Sincerely,

*/s/ James M. Trusty*

James M. Trusty
Ifrah Law PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4176



Email: jtrusty@ifrahlaw.com

Christopher M. Kise
Chris Kise & Associates, P.A.
201 East Park Avenue, 5th Floor
Tallahassee, FL 32301
Telephone: (850) 270-0566
Email: chris@ckise.net

Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
Email: lindseyhalligan@outlook.com

M. Evan Corcoran
Silverman Thompson Slutkin White, LLC
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Email: ecorcoran@silvermanthompson.com

*Counsel for Plaintiff Donald J. Trump*

CC:   Juan Antonio Gonzalez, Jr., juan.antonio.gonzalez@usdoj.gov
      Anthony W. LaCosta, anthony.lacosta@usdoj.gov
      Julie A. Edelstein, julie.edelstein@usdoj.gov