UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-CV-81294-CANNON

**DONALD J. TRUMP**,

    Plaintiff,

v.

**UNITED STATES OF AMERICA**,

    Defendant.

_____/

**THE UNITED STATES' RESPONSE BRIEF TO
THE SPECIAL MASTER ON GLOBAL ISSUES**

Plaintiff filed this action for appointment of a Special Master with the professed aim of "preserv[ing] the sanctity of executive communications and other privileged materials." Docket Entry ("D.E.") 1 at 14. But having received and reviewed copies of all of the documents obtained by the government in its August 8, 2022 search of his premises (other than those with classification markings), Plaintiff is now attempting to shift the focus of this litigation away from questions of privilege. Instead, Plaintiff has offered a sweeping and baseless theory of the Presidential Records Act ("PRA") that cannot give rise to the relief he seeks.

Plaintiff's shifting arguments belie the immovable realities of the record. In his designations to the Special Master, Plaintiff now concedes there is, at most, a portion of a one-page document that is subject to a disputed claim of attorney-client privilege.[1] Moreover,

---

[1] During the course of its review and consistent with the filter protocol, the government's investigative team referred this document to the filter team, and the government has ensured that it is no longer accessible to the investigative team pending resolution of its status. The

Plaintiff asserts executive privilege as his principal basis for withholding just 16 out of 2,916 documents—less than one percent of the total universe of seized materials.

In lieu of making viable privilege claims, Plaintiff now asserts that the overwhelming majority of documents—more than 97% of the total seized—qualify as his "personal" records under the PRA. Even if correct (which it is not), that characterization amounts to a red herring in this proceeding. Documents commingled or collectively stored with the classified materials located at Plaintiff's premises were lawfully seized by the FBI in accordance with the terms of the court-authorized search warrant because of their relevance to the government's ongoing investigation. That relevance exists irrespective of whether they were personal papers or government records. In the absence of a valid and substantiated claim of privilege, all such documents must now be made available to the investigative team.

Plaintiff's efforts to sidetrack these proceedings with irrelevant questions can readily be dispatched. Plaintiff himself has distinguished between records that he claims to have a genuine basis for designating as "personal" within the meaning of the Presidential Records Act (PRA), 44 U.S.C. § 2201 *et seq.*, and those that he claims are "personal" based on nothing other than attorney say-so and tautological reasoning. As discussed below, neither the PRA nor the single district court decision on which Plaintiff's argument rests gives him the sweeping authority he claims to convert governmental records into "personal" property simply by the act of removing them from the White House.

More fundamentally, Plaintiff repeatedly mischaracterizes the legal basis on which

---

filter team will be filing a separate letter to the Special Master regarding its views about this document.

these materials were seized. The FBI's court-authorized search of Plaintiff's premises was not undertaken on behalf of the National Archives to ensure compliance with the PRA. It was undertaken in connection with an ongoing national security and criminal investigation into potential violations of federal criminal statutes prohibiting, *inter alia*, the unlawful retention of national defense information, obstruction of justice, and the willful removal of government records. Nothing in the PRA preempts the application of those criminal laws.

As for the limited universe of materials over which Plaintiff makes executive privilege claims, his latest filing falls far short of demonstrating that the *current Executive Branch* should be barred from reviewing and using documents recovered in a court-authorized search in the course of an ongoing criminal and national security investigation. The government's compelling need for these materials is plain, and the Special Master should reject Plaintiff's attempts to use vague and unsupported assertions to further delay the investigation.

## DISCUSSION

### I. Plaintiff's PRA-Related Claims Are Meritless

Plaintiff's brief doubles down on a wholesale rewriting of the PRA that has no basis in its text or purpose. Plaintiff appears to offer this argument based on an assumption that a document's designation as "personal" somehow precludes the government from reviewing it. He is wrong on both points.

### A. Plaintiff's Reading of the PRA is Meritless

Plaintiff asserts that a law enacted by Congress in the wake of Watergate to preserve the public's access to Presidential records actually allows a President to (1) pack up and remove boxes full of Presidential records at the end of his term in office; and (2) convert those

Presidential records into "personal" records through that simple act of removal. To state Plaintiff's position is to refute it.

First, Plaintiff's reading is wholly inconsistent with the PRA's text. The PRA provides detailed definitions for "personal" and "Presidential" records and requires sitting Presidents and their staffs to preserve and file records accordingly. 44 U.S.C. §§ 2201(2)-(3), 2203(a)-(b). It provides that the National Archives and Records Administration (NARA) "shall assume responsibility for the custody, control, and preservation of, and access to" a President's records "[u]pon the conclusion of a President's term of office." *Id.* § 2203(g)(1). And it provides the Archivist the authority to "initiat[e] action through the Attorney General for the recovery of records wrongfully removed." *Id.* §§ 2905(a), 3106; *see id.* § 2112(c). The PRA thus presumes that a President cannot transmute Presidential records into "personal" records simply by removing them. If he could, any enforcement action to recover "records wrongfully removed" by a President when departing from office would be pointless: under Plaintiff's reading, a court adjudicating such a lawsuit would have to treat all such records as "personal" records *because* they were removed.

Second, Plaintiff's reading would undermine in the extreme the PRA's core purpose. In enacting the PRA, "Congress sought to establish the public ownership of presidential records and ensure the preservation of presidential records for public access after the termination of a President's term in office." *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991) (citing H.R. Rep. No. 95-1487, 95th Cong., 2d Sess. (1978)). That purpose would, of course, be nullified if a President could unreviewably convert his official records into

4

"personal" records simply by taking them with him when he leaves office.

Third, for the reasons already explained by the government, the single district court decision relied upon by Plaintiff, *Judicial Watch v. National Archives and Records Administration*, 845 F. Supp. 2d 288 (D.D.C. 2012), provides no support for Plaintiff's upside-down reading of the PRA. D.E. 173 at 5-6. To reiterate, the court in that case held that a *private litigant* could not *compel* NARA to exercise its enforcement authority to obtain audio recordings that both former President Clinton *and NARA* assessed were personal records. The court nowhere suggested that a President can willfully designate Presidential records as "personal" records, that such actions can never be challenged by anyone, or that the act of removing Presidential records from the White House automatically turns them into "personal" records. Nor did counsel for the government suggest that the PRA's civil remedy provision displaces criminal laws. The dispute in *Judicial Watch* concerned whether a third party has a civil mechanism to enforce alleged violations of the PRA or whether—as the government maintained—that responsibility rests solely with NARA and the Attorney General. Nothing in the *Judicial Watch* civil litigation presented the question of whether the PRA somehow exempts former Presidents from the obligation to comply with criminal laws, including laws prohibiting the unlawful retention of national defense information and obstruction of justice. It is thus wholly unsurprising that when asked what the "remedy" is if a President, while in office, excessively designates his records as "personal" records, counsel responded that it lies with NARA and the Attorney General to pursue an enforcement suit. Tr. at 13:10-24 (D.E. 14), *Judicial Watch*, No. 1:10-cv-1834 (D.D.C.).

Fourth, Plaintiff's arguments fail even under his own incorrect reading of the PRA.

5

Rather than assert—and substantiate—that he made any actual, specific designations of any records as "personal" records while still in office, Plaintiff claims that he made a "designation decision" simply because the records at issue "were packed, transported, and delivered to his residence in Palm Beach, Florida" while he was still President. D.E. 171 at 5. Given that Plaintiff's arguments rely entirely on his purported singular authority while President to make "designation decision[s]," he at least must claim—through competent evidence—to have personally made such a decision. Furthermore, Plaintiff fails to explain how, if the act of packing and removing Presidential records transforms those records into "personal" records, *some* of the seized records (69 out of 2,916, according to Plaintiff) are still Presidential records even under his own categorization scheme.

### B. A Document's Status as "Personal" Under the PRA Has No Bearing on the Government's Entitlement to Use it for Investigative Purposes

Plaintiff appears to assume that if a seized record is a "personal" record for purposes of the PRA, the government is somehow prohibited from reviewing or using it as evidence in its criminal investigation. *See, e.g.*, D.E. 171 at 10 (the Special Master "need not reach" executive privilege issues because of Plaintiff's assertion that the seized records are his "personal" records); *id.* at 12 ("Plaintiff raises executive privilege as an *alternative* basis for non-disclosure," and even if the Special Master disagrees as to the records' status under the PRA, "the documents *still* may not be utilized by the Government because they are privileged") (emphases added). Plaintiff's assumption has no basis in law.

To state the obvious: Law enforcement officials conduct judicially authorized searches to seize evidence of crimes. Fed. R. Crim. P. 41(c)(1). That evidence may frequently consist of personal effects, including personal papers. That is why the government usually must

6

obtain a warrant before conducting a search and seizure, as occurred here. Nothing in the law prohibits the government from using documents recovered in a search if they are "personal," and Plaintiff offers no authority suggesting otherwise.

Putting Plaintiff's string of unstated assumptions in the strongest light possible, Plaintiff appears to contend that (1) if a search results in the recovery of records that may be subject to the PRA, then the PRA provides the exclusive legal framework controlling the disposition of those records; and (2) the government is therefore barred from reviewing or using records that—under Plaintiff's incorrect interpretation of the PRA—have been deemed to be "personal" records. Indeed, Plaintiff claims repeatedly that the initiation of a civil suit under the PRA is the only "remedy" or "avenue of relief" available to the government in these circumstances. D.E. 171 at 7, 10. Those contentions are baseless.

At a fundamental level, Plaintiff misunderstands the government's actions at issue in these proceedings. This matter is not, as Plaintiff's counsel has asserted, an "overdue library book scenario," 9/1/2022 Hearing Tr. 31:20-21, and the government did not execute a search of Plaintiff's premises for purposes of enforcing the PRA or advancing the archival interests of NARA. As should have been clear to Plaintiff upon his receipt of the search warrant, the government executed its search as part of its investigation into potential violations of criminal statutes prohibiting, *inter alia*, the unlawful retention of national defense information and obstruction of justice. *See* 18 U.S.C. §§ 793, 1519. The search was conducted, moreover, to recover highly sensitive documents that were kept in a location not approved for the storage of classified information and whose disclosure could damage national security. Plaintiff's suggestion that the government's only recourse in such a circumstance is to bring a civil suit

simply reads these criminal laws and the government's "compelling interest in protecting . . . the secrecy of information important to our national security," *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980), out of existence.

Of course, had Plaintiff complied with the PRA upon leaving office and deposited records bearing classification markings with NARA—or had he returned all such records after being asked to by NARA, or after being served with a grand jury subpoena—a search would presumably have been unnecessary. But the PRA does not repeal or displace criminal laws related to the retention of national defense information and obstruction of justice, and it does not limit or affect the government's ability to use evidence obtained in a judicially authorized search to investigate potential violations of those laws. Nor does the PRA repeal or displace 18 U.S.C. § 2071, which penalizes anyone who "willfully and unlawfully conceals [or] removes" records "in any public office." *See, e.g.*, *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) ("We have repeatedly stated that absent a clearly expressed congressional intention an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute.") (internal quotations and alterations omitted)).[2]

Simply put, the government can review and use materials obtained in its judicially authorized search regardless of whether they are "Presidential" or "personal" records under

---

[2] Indeed, the PRA itself states that presidential records shall not be made available to anyone who "has been convicted of a *crime* relating to the . . . removal . . . of records of the Archives." 44 U.S.C. § 2204(f) (emphasis added). And the PRA references both civil litigation *and* other mechanisms for legal redress. *See* 44 U.S.C. § 2905(a) ("The Archivist shall . . . assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed *and for other redress provided by law*.") (emphasis added).

the PRA. At most, a record's categorization under the PRA affects the ultimate disposition of that record—whether it would be provided to NARA or returned to Plaintiff—after the government's investigation has concluded. And regardless of a record's status as "Presidential" or "personal," the government has no objection to Plaintiff retaining copies of all of the seized records except those bearing classification markings.

## II. Plaintiff's Executive Privilege Claims Are Meritless

Plaintiff's assertions as to executive privilege further lack merit. In a significant majority of instances, Plaintiff has asserted the privilege only as a fallback if the Special Master disagrees that these materials are "personal" records.[3] That is, Plaintiff's primary contention is that these are "personal" records, and he asserts executive privilege only in the event the Special Master disagrees. One of two things must be true: (1) Plaintiff truly means to contend that these are materials "of a purely private or nonpublic character which do not relate to" his performance of official duties, 44 U.S.C. § 2203(3), in which case he cannot also assert that they are subject to executive privilege. Or (2) Plaintiff claims that these materials *do* pertain to his official duties as President, in which case he admits to having willfully disregarded the PRA by removing them and attempting to designate them as "personal" records. *But see* U.S. Const. art. II, § 3 (President "shall take Care that the Laws be faithfully executed"). Either way, Plaintiff's assertions of executive privilege should be given little weight in light of the

---

[3] In his privilege log, Plaintiff designated 69 records as Presidential records; asserted executive privilege as to 16 of them; claimed the remaining 2,847 records are his "personal" records; and asserted executive privilege as a fallback for 105 of those purportedly "personal" records. In his brief, however, Plaintiff suggests that he may have intended to designate *all* records as "personal" records. *See* D.E. 171 at 10 ("Generally, the Special Master need not reach" executive privilege issues because Plaintiff "designated the materials as personal under the PRA.").

9

manner in which they have been presented.

Plaintiff is further mistaken in his assertion that the Supreme Court's holding in *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) (*Nixon v. GSA*), is somehow inapplicable. Plaintiff correctly acknowledges that the Supreme Court rejected former President Nixon's separation-of-powers challenge to a law requiring the Executive Branch to take possession of his papers and tape recordings. D.E. 171 at 16. But the Court's reasons for doing so are directly relevant here: At the outset, the Court framed the issues presented by noting that "unlike in *United States v. Nixon*[, 418 U.S. 683 (1974)], in which appellant asserted a claim of absolute Presidential privilege against inquiry by the coordinate Judicial Branch, this case initially involves appellant's assertion of a privilege against the very Executive Branch in whose name the privilege is invoked." 433 U.S. at 447-48. Although the Court concluded that a former President may assert "the Presidential privilege"—though "only as to those materials whose contents fall within the scope of the privilege recognized in *United States v. Nixon*," *id.* at 449[4]—it further emphasized that the circumstances did not involve making former President Nixon's papers or recordings available to the general public, *id.* at 50. "[T]hus left with the bare claim that the mere screening of the materials by the archivists will impermissibly interfere with candid communications of views by Presidential advisers," the Court concluded that "the question is readily resolved." *Id.* at 451.

Of course, the government's purpose in reviewing the seized materials differs here

---

[4] For that reason, it is highly doubtful that a former President can assert the deliberative process privilege, contrary to Plaintiff's suggestion, *see* D.E. 171 at 14. But because Plaintiff's privilege assertions fail even under the heightened protections applicable to Presidential communications, the Special Master need not parse the documents at issue to determine which of the two privileges (if either) might apply.

10

from that in *Nixon v. GSA*. It wishes to review and use these materials for purposes of enforcing criminal statutes and protecting national security information. These are core Executive Branch responsibilities, *see* U.S. Const. art. II, § 3; *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988), and they serve at least as compelling an interest as that at stake in *Nixon v. GSA*.

Nor are the facts of *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), more closely analogous. D.E. 171 at 16. That case involved an investigation by an Independent Counsel appointed by a special judicial panel and largely independent from the Department of Justice. *See* 40 U.S.C. § 591 *et seq.*; *Morrison v. Olson*, 487 U.S. 654, 660-64 (1988) (explaining Independent Counsel's unique authorities). And the case involved a grand jury subpoena for White House records held by an incumbent administration, as to which that administration invoked executive privilege. *In re Sealed Case*, 121 F.3d at 735. Given the Independent Counsel's unique status and the dueling positions of government officials as to executive privilege, it is unsurprising that the court treated the privilege questions in that case as governed by *United States v. Nixon* rather than *Nixon v. GSA*.

In any event, as the government has explained, Plaintiff's executive privilege claims fail under the qualified test articulated in *United States v. Nixon*. Government records recovered in the search—which any document potentially subject to executive privilege would have to be—may constitute evidence of violations of 18 U.S.C. § 2071. Moreover, these records were comingled with or stored next to documents bearing classification markings when they were seized. They may therefore provide important evidence as to who possessed or accessed classified records and when, and they may corroborate the testimony of witnesses to the

potential offenses at issue. *See* D.E. 173 at 14.

Rather than set forth any arguments related to *United States v. Nixon*, Plaintiff incorrectly describes the standard needed to overcome a claim of executive privilege and then disclaims the ability to offer anything further. Plaintiff's submission to the Special Master describes the criteria—"(1) relevancy; (2) admissibility; and (3) specificity"—needed to obtain a trial subpoena pursuant to Federal Rule of Criminal Procedure 17(c). D.E. 171 at 17; *see United States v. Nixon*, 418 U.S. at 697 (noting that the subpoena "is challenged on the ground that the Special Prosecutor failed to satisfy the requirements of [Rule] 17(c)" and that "[i]f we sustained this challenge, there would be no occasion to reach the claim of privilege"); *id.* at 700 (describing the three criteria quoted by Plaintiff and stating that "we are unwilling to conclude that the District Court erred in the evaluation of the Special Prosecutor's showing under Rule 17(c)"). Plaintiff offers no reason why the government should have to meet the requirements of Rule 17(c) to review materials it already has in its possession from a lawful search and seizure. Nevertheless, the documents are plainly relevant to the government's investigation for the reasons just described; Plaintiff has offered no ground to challenge their admissibility; and the pool of 121 documents in dispute is specific.

Further, Plaintiff effectively concedes that he has no specific bases to support his claims of executive privilege. His assertions of privilege are cursory and do not even differentiate between Presidential communications and documents potentially subject to deliberative process privilege. And Plaintiff's complaint that he is "unaware of the specific arguments relied upon by the Magistrate in issuing the warrant" because the affidavit supporting it remains under seal, D.E. 171 at 18, is inapposite. The government does not rely on any sealed

12

material from its affidavit to substantiate its arguments for overcoming executive privilege. Indeed, the Special Master has not had access to those portions of the affidavit.

### III. Plaintiff Should File a Declaration or Affidavit Regarding the Government's Inventory or Must Waive any Challenge Regarding the Government's Inventory

Plaintiff maintains that "there is no basis for requiring Plaintiff to submit" a declaration or affidavit regarding the government's inventory. D.E. 171 at 18. Having now had the ability to review all of the seized records except those bearing classification markings, Plaintiff is in a position to state whether the government's inventory contains any omissions or errors. Nonetheless, if Plaintiff insists that he should not be required to file a declaration or affidavit, then he must be deemed to waive any challenges regarding the accuracy of the government's inventory.

## CONCLUSION

For the foregoing reasons, the Special Master should adopt the government's positions as to the proper categorization of records under the PRA; should reject Plaintiff's assertions of executive privilege; and should make clear that Plaintiff has no other basis to bar the government's review and use of the seized records.

Respectfully submitted,

/s Juan Antonio Gonzalez
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, FL 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division

 /s *Jay I. Bratt*
JAY I. BRATT
CHIEF
Julie A. Edelstein
Stephen Marzen
Counterintelligence and Export Control Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Illinois Bar No. 6187361
Tel: 202-233-0986
Email: jay.bratt2@usdoj.gov