UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-CV-81294-CANNON

**DONALD J. TRUMP**,

    Plaintiff,

v.

**UNITED STATES OF AMERICA**,

    Defendant.

_____/

**PLAINTIFF DONALD J. TRUMP'S RESPONSE TO THE
GOVERNMENT'S BRIEF ON GLOBAL ISSUES**

Plaintiff, President Donald J. Trump, through the undersigned counsel, files this response in opposition to the principal brief filed by the Government on November 8, 2022, ECF 172.

**INTRODUCTION**

By Order dated September 15, 2022, ECF 91, the Court directed the Special Master to make a report and recommendations resolving any disagreements between the parties regarding the classification of documents under the Presidential Records Act ("PRA"), 44 U.S.C. § 2201 *et seq*. The purpose of the Special Master's review is to assist the Court in determining factual issues in dispute regarding the seized materials. However, the parties' principal briefs demonstrate that there is no basis for the Government to continue its review of materials seized from Mar-a-Lago. The PRA dictates that President Trump had the sole authority to designate documents that crossed his desk, and precedent that directly addresses a President's authority under the PRA confirms that President Trump had the right to designate materials as personal records. To the extent the

Government seeks access to these materials, the PRA provides a mechanism for doing so.

Plaintiff offers an alternative argument, in the event that the Special Master and Court reach a different, incorrect, conclusion regarding a President's authority under the PRA. If the Special Master concludes that the Department of Justice can supplant the President's judgment under the PRA with its own, Plaintiff is permitted to assert executive privilege in these circumstances, which he has done as to a subset of documents. In addition, the Government has not shown any grounds for requiring Plaintiff to submit a declaration regarding the seized materials, and it has similarly failed to support its request for a recommendation that the Court lift the present injunction.

## DISCUSSION

**I.      Plaintiff Properly Designated Materials as Personal Records Under the Presidential Records Act**

The PRA governs the treatment of all "documentary materials . . . created or received by the President." 44 U.S.C. § 2201(2)-(3). In this respect, the PRA's application to documents crossing the President's desk or otherwise coming into the President's possession is comprehensive: It regulates every single item properly falling into this broad category of material. In setting the requirements for the treatment of "Presidential records," the law carves out several specific classes of documents from that grouping. The PRA specifies that "official records of an agency," "stocks of publications and stationery," and "extra copies of documents produced only for convenience or reference" do not constitute Presidential records. *Id.* § 2201(2)(B)(i), (iii), (iv). And it further dictates that "personal records" do not constitute Presidential records. *Id.* § 2201(2)(B)(ii). Accordingly, if a document is "created or received by the President" and is not an official agency record, a stock stationery item or publication, or an "extra cop[y]," it must be either a Presidential record or a personal record.

The critical questions before the Special Master for recommendation and report to the District Court Judge are (1) who decides whether a document is Presidential or personal, (2) how designation decisions are communicated, and (3) what review procedures can apply.

### A.  The President has exclusive authority to designate documents as personal records.

The answer to the first question is exceedingly clear: Under the PRA, the responsibility for designating documents as Presential or personal "is left solely to the President." *Judicial Watch, Inc. v. Nat'l Archives and Records Admin.*, 845 F. Supp. 2d 288, 301 (D.D.C. 2012) (citing 44 U.S.C. § 2203(a)-(b)). The Government agrees with this interpretation, acknowledging that under *Judicial Watch*, the President is responsible for document designations during his term of office. ECF 170 ("Gov't Br.") at 5-6.[1]

This makes sense. The PRA does not establish any designation role for the Department of Justice, notwithstanding the Government's current efforts to replace a President's judgment with its own. Further, the *Judicial Watch* court specifically noted that although the National Archives and Records Administration ("NARA") plays an important role in carrying out the purpose of the statute, "the PRA does not confer any mandatory or even discretionary authority on the Archivist to classify records." *Judicial Watch, Inc.*, 845 F. Supp. at 301.

The Government's Brief does not suggest that the *Judicial Watch* decision was wrongly decided; indeed, in that case, the Government advocated for such discretion on the part of the President. There, the Government argued, "[T]he PRA accords the President virtually complete

---

[1] Guidance from Archivist David S. Ferriero aligns with this interpretation. *See* Nat'l Archives and Records Admin., *Guidance on Presidential Records* (2020), https://www.archives.gov/files/guidance-on-presidential-records-from-the-national-archives-and-records-administration-2020.pdf. It states, "The Presidential Records Act . . . [p]laces responsibility for the custody and management of incumbent Presidential records with the President." *Id.* at 1.

3

control over his records during his term of office." *Judicial Watch, Inc. v. Nat'l Archives and Records Admin.*, No. 1:10-cv-01834 (D.D.C.), ECF 6-1 at 6 (quoting *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1993) ("*Armstrong I*")). In short, the Government has never argued—and cannot argue—that any party other than the President can designate documents as Presidential or personal under the PRA.

### B. The President's course of conduct can constitute a designation decision.

The next issue for the Special Master to resolve is how a President can designate a document as either Presidential or personal. Although the PRA addresses the topic of a President's decision as to what constitutes Presidential records versus personal records, *see* 44 U.S.C. § 2201(2)-(3), the statute does not prescribe a specific manner of designating materials. Instead, it simply requires that materials "*be categorized* as Presidential records or personal records." *Id.* § 2203(b) (emphasis added).

Presumably, the President may satisfy this obligation through proclamation or written designation, though those measures are far from required.[2] The *Judicial Watch* court plainly acknowledged that a President can communicate a designation decision through action—including by simply keeping records at the conclusion of a term. *Judicial Watch, Inc.*, 845 F. Supp. 2d at 301. The Government advocated for that possibility, telling the court that President Clinton had "presumably classified the tapes [at issue there] as personal records by not transferring them to the archives at the conclusion of his administration." *Judicial Watch, Inc. v. Nat'l Archives and Records Admin.*, No. 1:10-cv-01834 (D.D.C.), ECF 14 ("*Judicial Watch* Tr.") at 6.

In other words, in that case, the Government argued that President Clinton designated

---

[2] Even as to this possibility, the Government is strangely skeptical, asserting that the President cannot designate Presidential and personal records "by fiat," Gov't Br. at 5, although that would seem to wholly satisfy the PRA.

materials as personal records simply by keeping them. Here, the Government engages in a complete reversal, asserting that President Trump could not possibly act as did President Clinton. If President Trump was somehow barred from making a designation decision by retaining the records, the Government has provided no explanation as to why such a rule only applies to him. The only coherent and viable interpretation of the PRA is that it permits Presidents to indicate record designation decisions by action, including by retaining records. When still-President Trump left the White House for Mar-a-Lago on January 20, 2021, his decision at that point to bring boxes containing some of the documents and items accumulated during his term in office was a choice of equivalent significance to that made by President Clinton under applicable and accepted precedent.

### C. Challenges to the procedures employed by a President to designate records must be brought in a civil action by NARA.

The Government argues that the *Judicial Watch* court "nowhere suggested that it would be lawful for a President to flatly defy the PRA by designating what are obviously government records as his 'personal' records." Gov't Br. at 6. According to the Government, "[s]uch a reading of the PRA would nullify the statute's entire purpose by allowing the President to designate all of his official records as 'personal' records and then to remove them upon departure from the White House." *Id.*[3] Despite the fact that Presidents routinely, and lawfully, take documents with them when departing from the White House, the Government suggests this is somehow revolutionary and wrong, and it ignores its previous concession that there is a remedy for such a scenario—civil

---

[3] The Government's "exasperation" with the PRA is misdirected at President Trump. *See Citizens for Responsibility and Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 224 (D.D.C. 2009). Despite this, "[t]he Court is nevertheless bound to apply the PRA as Congress enacted it. In doing so, the Court is left with the undeniable conclusion that Congress vested almost no authority in the Archivist and NARA over []Presidential records during a [President's] term in office." *Id.* at 224-225.

5

litigation initiated in Washington, D.C.

When questioned about the statutory review process in *Judicial Watch*, the Government told the Court that the PRA permits NARA to file a civil suit seeking review of the President's classification guidelines. *See* Plaintiff's Br. at 8 (citing *Judicial Watch* Tr. at 13). Neither the law nor the *Judicial Watch* decision authorizes the Government to pursue criminal enforcement mechanisms, such as grand jury subpoenas or search warrants, in place of the statutorily required civil process.

In summary, Plaintiff had the sole authority to designate documents as Presidential records or personal records under the PRA, and he exercised that discretion in a manner consistent with the law, precedent, and past practice to designate them as personal records. That renders the seized materials personal records in this instance. If the Government seeks review of such designations, it can seek it via civil litigation, not in the present forum.

**II.     Plaintiff Is Authorized to Assert Executive Privilege as to Certain Documents**

As an initial matter, a President may assert executive privilege when asked to produce documents or other materials that reflect presidential decision making and deliberations. The District Court must treat the requested materials as presumptively privileged. *United States v. Nixon*, 418 U.S. 683, 713 (1974). Next, in order to overcome the presumption, the Government must demonstrate that the Presidential material is essential to the justice of a pending criminal case. *Id.* Even if the Government succeeds in overcoming the presumption of privilege, the Court must be mindful of the President's "singularly unique role under [Article] II." *Id.* at 715. To this point, the Supreme Court has acknowledged that when navigating the sensitive considerations involved in a claim of executive privilege in a pending criminal trial, the District Court should

remember the words of Chief Justice Marshall: "[I]n no case . . . would a court be required to proceed against the president as against an ordinary individual." *Id.* (quoting *United States v. Burr*, 25 F. Cas., at 192 (No. 14,692d) (CC Va. 1807)). The "District Judge [must] at all times accord to Presidential records that high degree of deference suggested in United States v. Burr[.]" *Id.* Against this analytical backdrop, Plaintiff asserts the following.

### A. Plaintiff may properly assert alternative arguments.

Plaintiff is not making the argument that records deemed personal can also qualify for executive privilege. To the contrary, Plaintiff puts forth two separate arguments: First, Plaintiff, while sitting President, possessed and exercised the authority to classify and treat the seized materials as personal records. Second, if the Court were to conclude that Plaintiff did not retain the authority to classify the seized materials as personal records, the documents should still be shielded under a theory of executive privilege.

Contrary to the Government's view, Gov't Br. at 11, Plaintiff's reliance on alternative arguments is a common and accepted practice in civil litigation. *See Sharma v. Wash. Metro. Area Transit Auth.*, 57 F. Supp. 3d 36, 45-46 (D.D.C. 2014) (quoting *McNamara v. Picken*, 950 F. Supp. 2d 125, 128-29 (D.D.C. 2013)); *Fine v. Guardian Life Ins. Co. of Am. & Park Avenue Secs.*, 450 F. Supp. 3d 20, 36 (D. Mass. 2020) (alteration in original) (a plaintiff's assertion of alternative arguments does not "debar [him] from an independent review of each set of claims."). Courts have even recognized that a party's assertion of alternative arguments is not limited to the pleading stage. Rather, a litigant also retains the right to "argue to a jury in the alternative." *Sharma,* 57 F.Supp.3d at 45-46. Given these common litigation practices, the Government's accusation of "gamesmanship" is without merit. Gov't Br. at 11.

In attacking Plaintiff's argument, the Government contends that an assertion of executive privilege should be based on a "considered judgment" about the "present and future needs of the Executive Branch." *Id.* (citing *Nixon v. Adm'r Gen. Servs.*, 433 U.S. 425, 449 (1977)). As to this point, the parties agree. However, such a determination is for the President, not the Department of Justice, to make. Indeed, Plaintiff, as a President of the United States, is in the best position to "assess the present and future needs of the Executive Branch, and to support invocation of the privilege accordingly." *Adm'r Gen. Servs.*, 433 U.S. at 449.

The Government further argues that Plaintiff's privilege claim should fail because "Plaintiff has failed to proffer any specific justification as to why any particular document should be shielded from review." Gov't Br. at 14. Such an argument misrepresents the burden of proof in this case. Plaintiff is not required to convince the Government that his assertion of executive privilege is worthy of acceptance. To the contrary—the privilege is presumptive. It is the Government that bears the burden of overcoming the privilege. *Nixon*, 418 U.S. at 708.

**B.    The Government has failed to overcome the presumption of privilege.**

In *Nixon,* the Supreme Court held that the President's need for candor and confidentiality justified a "presumptive privilege for Presidential communications." *Id.* The Court explained that to overcome an assertion of executive privilege, the Government must come forth with a "demonstrated specific need," for the materials sought—i.e., the Government was required to show the materials were "*essential* to the justice of the (pending criminal) case." *Id*. at 713 (quoting *Burr*, 25 F. Cas., at 192) (emphasis added). The Government relies on this language from *Nixon* to argue that it can overcome Plaintiff's assertion of executive privilege. Specifically, the Government cites to *Nixon's* holding that a claim of executive privilege must yield to a

demonstrated specific need for materials that are "evidence in a pending criminal trial." Gov't Br. at 13 (quoting *Nixon*, 418 U.S. at 713).

In an attempt to particularize its need for the seized materials, the Government contends that the documents would "likely" constitute evidence of violations of various broad federal statutes. *Id.* at 13-14. Similarly, in its brief to the 11th Circuit, the Government suggested that it "*may* need to use the contents of these records to conduct witness interviews." *See* Brief of the United States at 34, *Trump v. United States*, No. 22-13005 (11th Cir.) (emphasis added). Yet, the Government does not identify any specific witness or any specific document required for its investigation. Given the generality of the Government's allegations, its reliance on *Nixon* is unavailing. These vague characterizations reflect a *desire* to pierce the qualified privilege, not an essential need.

In *Nixon*, the Special Prosecutor sought the President's tape recordings pursuant to an active criminal prosecution in which an indictment had been filed, charging seven named individuals with various offenses. 418 U.S. at 687; *see also In re Sealed Case*, 121 F.3d 729, 739 (D.D.C. 1997) ("The *Nixon* Court explicitly limited its ruling to demands for presidential materials relevant to a criminal trial[.]"). The Court was able to make specific findings as to whether the tapes were relevant and admissible for the trial, and thus evaluate the ultimate issue surrounding an effort to pierce the protective shield of Executive Privilege—are the materials "essential to justice?" The situation at hand is completely incomparable—to even consider negating the privilege, the Court would have to engage in complete speculation. The failure to meet the "essential to justice" standard is a fundamental flaw in the Government's effort.

### C. Plaintiff can assert a claim of privilege against the Government.

The Government also contends that Plaintiff cannot assert a claim of executive privilege "to block the Executive Branch itself from reviewing records." Gov't Br. at 12. The Government relies on the case of *Nixon v. Administrator of General Services* ("*AGS*") for the proposition that a President may not assert executive privilege "against the very Executive Branch in whose name the privilege is invoked." Gov't Br. at 12 (quoting *Adm'r Gen. Servs.*, 433 U.S. at 447-48). Given the factual differences between this case and *AGS*, the Government's reliance is misplaced.

In *AGS*, the Court addressed the constitutionality of the Presidential Recordings and Materials Preservation Act (the "Act"), which directed an official of the executive branch to obtain and screen former president Nixon's presidential papers and tape recordings in order to (1) promulgate regulations that provided for the orderly processing and screening of the materials and (2) determine the terms and conditions upon which the public can eventually access those materials. 433 U.S. at 429. President Nixon challenged the Act as unconstitutional, arguing that is violated the doctrine of Separation of Powers and infringed on the presidential privilege. *Id.* at 440. The Court held that the Act authorized only a limited intrusion into the confidentiality of presidential communications given that the screening would be conducted by experienced governmental archivists who were "sensitive to executive concerns." *Id.* at 451-52.

Here, the Government intends to do much more than merely screen the seized materials for the purposes of historical preservation. By its own admission, the Government seeks these documents for use in the judicial branch—specifically the investigation and potential adjudication of alleged misconduct. Gov't Br. at 12. Given the Government's intent, review of the documents will not be limited to those within the executive branch who are "sensitive to executive concerns."

To the contrary, it is conceivable that judges, attorneys, law clerks, and even jurors would be given access to the documents' contents. Such widespread access to the materials implicates confidentiality concerns not contemplated by the statutory framework at issue in *AGS*.

### III. Plaintiff Should Not Need to Submit a Declaration Regarding the Seized Materials

In weighing the Government's request, the Special Master should consider the true need for any declaration from Plaintiff on this matter. Beyond citing a case management plan that the Court did not approve, the Government cites in conclusory fashion "fairness, integrity, and evenhandedness" as requiring a declaration by Plaintiff at this stage. Gov't Br. at 16-17. To reiterate, Plaintiff does not have access to the full set of materials seized from Mar-a-Lago; no party other than the Government is in a position to attest to the seizure of those documents. Plaintiff Br. at 18-19. And given that it was the Government—not Plaintiff—that seized the materials, it makes sense for the Court to have required a declaration from the Government alone, particularly in light of their statutory obligation to provide a comprehensive and accurate inventory under Federal Rule of Criminal Procedure 41(f), a statutory requirement reinforced by Judge Cannon's rejection of the Government's initially submitted inventory, ECF 29.

At the heart of the matter, the Government wants the Plaintiff to swear off Federal Bureau of Investigation misconduct in executing a search and announcing their recovery of documents marked classified. The same Government, however, refuses to allow access to the very documents it deems "criminal" to possess. The Plaintiff is unable to declare governmental accuracy while blinded to the most important documents. For this reason, Judge Cannon's previous rejection of a Plaintiff certification requirement remains completely appropriate.

**IV.      The Special Master Should Deny the Request to Lift the Injunction**

The Government further requests that the Special Master's report include a recommendation to lift the Court's injunction restricting the Government's review of materials lacking a classification marking, ECF 64. Gov't Br. at 17. The Special Master should decline this request.

In short, the Government is requesting permission to proceed with investigative efforts taking place wholly outside of both the law and normal practice. As an initial note, the Government is not presently barred from using documents bearing classification markings for investigative purposes. *See* ECF 104. As to both these and the remaining documents, the Government has no coherent theory of how the PRA bars Plaintiff's course of conduct here, and prior precedent lends substantial support to President Trump's actions. Conversely, the Government has not explained why the PRA would *not* apply to the present matter.

Again, the Government does have an avenue for seeking access to the seized materials: NARA can file a civil suit challenging President Trump's designation approach. *See, e.g.*, *Judicial Watch, Inc.*, 845 F. Supp. 2d at 302; *Cheney*, 593 F. Supp. 2d at 216; *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1279 (D.C. Cir. 1993) ("*Armstrong II*"); *Armstrong I*, 924 F.2d at 295.

While the Court's initial injunction was meant to maintain the status quo in this matter, it should remain in place because the Government has not demonstrated a right to the materials. The Special Master should accordingly decline the Government's request.

## CONCLUSION

The Government is seeking to continue with an unprecedented, extrajudicial investigation

based on a President's retention of personal documents. There are no grounds for the Government to access these materials under the PRA, as President Trump properly designated them as personal records. Even if the Special Master determines that the Department of Justice has the authority to designate the materials as Presidential records, select materials are subject to executive privilege. Furthermore, the Government has not identified any grounds for compelling Plaintiff to file a declaration as to the seized materials at this stage. And in light of the Government's investigation outside the confines of the statute that governs the President's management of records, the Special Master should not recommend lifting the injunction presently in place.

Dated: November 12, 2022                Respectfully submitted,

/s/ Lindsey Halligan
Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
Email: lindseyhalligan@outlook.com

James M. Trusty
Ifrah Law PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C.  20006
Telephone: (202) 524-4176
Email: jtrusty@ifrahlaw.com

Christopher M. Kise
Chris Kise & Associates, P.A.
201 East Park Avenue, 5th Floor
Tallahassee, FL 32301
Telephone: (850) 270-0566
Email: chris@ckise.net

M. Evan Corcoran
Silverman Thompson Slutkin White, LLC
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225

Email: ecorcoran@silvermanthompson.com

*Counsel for Plaintiff Donald J. Trump*