UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-81294-AMC

**DONALD J. TRUMP,**

    **Plaintiff,**

    v.

**UNITED STATES OF AMERICA,**

    **Defendant.**

_____/

**MOTION TO UNSEAL AFFIDAVIT**

Plaintiff President Donald J. Trump, through undersigned counsel, respectfully moves this Court for an order requiring the Government to provide him and his counsel with an unredacted version of the August 5, 2022, search warrant affidavit. In support of this motion, Plaintiff states as follows:

**BACKGROUND**

In late 2021 and early 2022, Plaintiff's counsel communicated with representatives of the National Archives and Records Administration ("NARA") regarding the return of certain materials located at Mar-a-Lago in Palm Beach, Florida. (ECF 1 at 4–5).[1] In January 2022, Plaintiff voluntarily provided 15 boxes of materials to NARA. Subsequently, a grand jury subpoena was issued for additional documents in the custody or control of the Office of President Donald J. Trump. In response, Plaintiff provided additional documents. Despite the open communication between counsel for Plaintiff and counsel for the Government, on August 5, 2022, the Government

---

[1] ECF references are to the docket in this matter, Case No. 22-CV-81294-AMC, except where otherwise noted.

1

took the unprecedented step of seeking a search warrant for Mar-a-Lago. (ECF 1 at 6). The search warrant was unusually and impermissibly broad. It enabled the Government to search Plaintiff's office, and "all storage rooms, and all other rooms or areas within the premises used or *available to be used* by [President Trump] and his staff and in which boxes *could* be stored, including all structures or buildings on the estate." *See United States v. Sealed Search Warrant*, No. 9:22-mj-08332 (S.D. Fla.) (hereinafter "*In re Sealed Search Warrant*"), ECF 17 at 3 (emphasis added). The search warrant was also incredibly expansive as to the materials that could be seized. It inappropriately permitted the seizure of not only allegedly responsive documents, but also additional documents in the same box as a potentially responsive document, and even "*any other containers/boxes* that are collectively stored or *found together with the aforementioned documents* and containers/boxes." *Id*. at 4 (emphasis added). Essentially, the search warrant wrongfully permitted the seizure of any document found at Mar-a-Lago.

Government agents acted with abandon in seizing Plaintiff's property.[2] They seized attorney-client privileged documents, passports, items of clothing, personal photographs, books, and private correspondence between Plaintiff and his friends and family. At the start of the search, counsel for President Trump requested a copy of the search warrant and supporting affidavit. The Government declined this request. Following their nine-hour search, the Government did provide a copy of the search warrant and return, but again refused to provide the affidavit.

On August 11, 2022, the Government moved to unseal the search warrant, a few related documents, and a redacted copy of the Receipt for Property. *See In re Sealed Search Warrant*,

---

[2] In a bizarre move, at the start of the search, the Government asked counsel for Plaintiff to turn off the security cameras at Mar-a-Lago, implausibly citing "agent safety" despite the presence of numerous U.S. Secret Service agents, and the presence of only a handful of other individuals on the property, which had been vacated for the summer. This request was denied. Plaintiff's counsel also asked to observe the search. The Government denied that request.

ECF 18.³ The same day, U.S. Attorney General Merrick Garland held a press conference to publicize the Government's motion in an effort to redirect the public outcry that followed the raid. In the press conference, the Attorney General stated – in violation of long-standing DOJ policy – that the identified documents would be made public, unless Plaintiff filed an objection.⁴

On August 22, 2022, a magistrate judge ordered the unsealing of a heavily redacted search warrant affidavit. *Id.*, ECF 80, ECF 94. In the public version, released on August 25, 2022, 50 of the affidavit's 84 total paragraphs are blacked out; of the 55 paragraphs following the header "Probable Cause," only four are fully unredacted. *Id.*, ECF 102-1 at 7–29. The redactions even extend to section headers. *Id.* at 9, 18, 23. There is no legitimate basis to withhold the redacted information from Plaintiff.

The Government alleged that redactions were needed to protect: (1) witnesses from intimidation or retaliation; (2) investigative avenues and techniques; (3) grand jury secrecy; (4) the safety of law enforcement personnel; and (5) the privacy interests of third parties. *Id.*, ECF 80 at 9–10. In an attachment explaining its redactions, *id.*, ECF 102-3, the Government refused to publicly and specifically explain the basis for redactions. None of the purported justifications apply in the context of disclosure of the unredacted search warrant affidavit to Plaintiff under the protective order.

On August 30, 2022, the Government filed with the Court what purported to be a "detailed" property inventory. (ECF 39-1). However, the supposedly "detailed" inventory provided little in the way of actual information or detail. Instead, the "detailed" inventory incorrectly labeled nearly

---

³ That motion was granted on August 12, 2022. *In re Sealed Search Warrant*, ECF 41.

⁴ *See* U.S. Dep't of Just., Justice Manual § 1-7.400 ("DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations.").

every document seized as a "US Government Document." On September 26, 2022, the Government provided a certification of inventory accuracy to the Special Master. (ECF 116-1). It also provided the Special Master and Plaintiff with its third version of the inventory in this matter, which had substantial changes from the previous inventory.[5]

**ARGUMENT**

Plaintiff should be provided with the basic information that would assist this Court in deciding a motion pursuant to Federal Rule of Criminal Procedure 41(g). To begin this process, Plaintiff sought a more detailed property inventory, and an opportunity to review the materials seized from his home. At this juncture, it is also important to review the search warrant affidavit. Under all applicable law and precedent, the affiant was required to not make any material omissions and/or material misstatements in seeking the magistrate's authorization—including, but not limited to, factual or legal errors relating to the history of cooperation by Plaintiff and his counsel. In addition, the affiant should have fully disclosed and discussed the total authority of a President to declassify materials and determine that materials are personal records under the Presidential Records Act, as well as the fact that presidents are accorded great deference when they have designated materials as either a Presidential record or a personal record. *See Judicial Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 845 F. Supp. 2d 288 (D.D.C. 2012) (involving taped recordings in the possession of President William J. Clinton). Plaintiff should be provided with an unredacted copy of the search warrant affidavit so that these matters can be determined by the Court. This is especially true given the extraordinary circumstances here, which involve a marked departure from the way other presidents have been treated.

---

[5] It listed 53 new documents, clippings, or photographs that had not previously been on the inventory list. In addition, a previous entry for "2 empty folders with 'CLASSIFIED' Banners" disappeared entirely from the third inventory.

### I. Plaintiff Should Obtain An Unredacted Affidavit Pursuant To The Fourth Amendment.

The affidavit is a judicial record, and as such there are several grounds for its disclosure. "The common law, the First Amendment, and, as recognized by some courts, the Fourth Amendment may all afford the public a right of access to court proceedings and judicial records." *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *2 (S.D. Fla. July 23, 2013).[6] As the Government noted in the litigation involving a media request for the search warrant, affidavit, and related documents, the general public has a "qualified right of access" to judicial records. *In re Sealed Search Warrant*, ECF 59 at 3 (citing *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007)). Courts in this and other judicial districts have recognized that an individual who has been subjected to a search has an even greater right to judicial records than the general public.

Specifically, "the Fourth Amendment may grant a right of access to pre-indictment warrant affidavits." *Patel v. United States*, No. 9:19-mc-81181, 2019 WL 4251269, at *4 (S.D. Fla. Sept. 9, 2019); *see also Bennett*, 2013 WL 3821625, at *5 ("Although the Eleventh Circuit has not considered whether such a right exists, decisions from federal courts in other circuits recognize that, rooted in the Fourth Amendment, targets of a search warrant have a pre-indictment right of access to search-warrant materials."); *In re Search of Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996) ("[A] person whose property has been seized pursuant to a search warrant

---

[6] Plaintiff asserts his right to access under the common law, as the Supreme Court and the Eleventh Circuit have held that there is a "presumptive common law right to inspect and copy judicial records." *See United States v. Rosenthal,* 763 F.2d 1291, 1293 (11th Cir. 1985) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Similarly, Plaintiff asserts a First Amendment basis for right of access as well, as there is a "qualified First Amendment right of access to criminal trial proceedings." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1028 (11th Cir. 2005) (citing *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603 (1982); *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001)).

has a right under the warrant clause of the Fourth Amendment to inspect a copy the affidavit upon which the warrant was issued."); *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591 (D. Md. 2004) (recognizing a "Fourth Amendment right to inspect the probable cause affidavit"); *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) ("[T]he Fourth Amendment right to be free of unreasonable searches and seizures *includes the right to examine the affidavit* that supports a warrant after the search has been conducted and a return has been filed with the Clerk of the Court pursuant to Fed. R. Crim. P. 41." (emphasis added)).

Plaintiff cannot vindicate his Constitutional rights unless he is permitted to review the search warrant affidavit. As the U.S. District Court for the District of Minnesota has held, the "Fourth Amendment requirement of probable cause is meaningless" without some way for an individual subjected to a search to challenge the lawfulness of that search. *In re Search of Up North Plastics, Inc.*, 940 F. Supp. at 232–33. The same is true of Rule 41(g). This procedural rule would be meaningless if an aggrieved individual is not allowed to review the affidavit:

> If such a motion is made the Rule provides that the court shall receive evidence on any issue of fact necessary to decide the motion. In such cases, the court's decision will almost always depend on whether the affidavit submitted in support of the warrant application established probable cause[.]

*In re Search of Up North Plastics, Inc.*, 940 F. Supp. at 233.

The exceptional circumstances here—including a virtually limitless search of a President's home, the seizure of huge amounts of personal materials including attorney-client privileged documents, and an Attorney General's publication of the Government's position in an unprecedented press conference—require the disclosure of the affidavit. The idea that the Government must keep the details of the affidavit from Plaintiff is further undermined by the repeated leaks by DOJ of selected and misleading information. In assessing the risk of irreparable

6

injury to Plaintiff's reputation, this Court noted that "Government's counsel . . . candidly acknowledged the unfortunate existence of leaks to the press." (ECF 4 at 10). The Government's conduct alone justifies the release of the affidavit to Plaintiff.

Moreover, Plaintiff's counsel has reviewed most of the seized materials over the last several weeks. The fact the Government took a huge volume of personal and family photographs, newspapers, thank-you notes, campaign materials, books, and golf shirts demonstrates that this search and seizure was nothing more than a general ransacking.[7] This raises serious questions about how the affiant characterized his or her assertion of probable cause and the justification for seizing thousands of personal and private items. Plaintiff must have an opportunity to review the affidavit and determine whether the Fourth Amendment was respected, intentionally subverted, or recklessly violated by a DOJ bent on getting its nose under the Mar-a-Lago tent.

## II. No Compelling Interest Justifies Withholding The Affidavit From Plaintiff.

The Government has the burden of establishing that a judicial record should be kept sealed. *See, e.g.*, *Romero*, 480 F.3d at 1246; *Patel*, 2019 WL 4251269, at *4. Here, the Government cannot show any compelling interest in keeping portions of the affidavit redacted. Plaintiff recognizes a general interest in limiting the public disclosure of facts that might interfere with an investigation. *See, e.g.*, *United States v. Valenti*, 987 F.2d 708, 714 (11th Cir. 1993); *Bennett*, 2013 WL 3821625, at *4; *Patel*, 2019 WL 4251269, at *4. However, general concerns regarding secrecy are

---

[7] A general rummaging through the belongings of President Trump is a particularly ominous moment in law enforcement history. With DOJ and some state officials engaging in various efforts to investigate President Trump, the search smacks of pretextual conduct with hopes of feeding personal documents to prosecutors or agents who might find use for them in unrelated pursuits. Authorization to seize "any other containers/boxes that are collectively stored or found together with the aforementioned documents and containers/boxes" is an invitation to "rummage," which every court has recognized as barred under the Fourth Amendment. *See Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

insufficient for the Government to meet its burden given the circumstances here – where the Attorney General held a press conference about the investigation and where the Government has engaged in a continuous pattern of leaks. This Court should reject any conclusory assertions of a need for secrecy given the facts here. Rather, this case requires a "case-by-case balancing of the individual's interest in disclosure against the Government's need for continued secrecy." *In re Sealed Search Warrant*, No. 21-MJ-8207, 2021 WL 9527724, at *3 (S.D. Fla. July 14, 2021) (discussing the right of access under *Bennett* and *Patel*); *see also In re Search of 14416 Coral Gables Way, North Potomac, Md.*, 946 F. Supp. 2d 414, 421 (D. Md. 2011) (requiring the Government to assert more than a "general concern" regarding an ongoing investigation); *In re The Baltimore Sun Co.*, 886 F.2d 60, 66 (4th Cir. 1989) (determining that "conclusory assertions are insufficient" and "specificity is required").

None of the compelling factors that would warrant keeping the affidavit from Plaintiff are present here. The entire matter has played out in the media, overwhelmingly because of the Government's leaks. There is no concern regarding disclosure of the scope and direction of the investigation; nor is there any prospect of witness intimidation. *See Bennett*, 2013 WL 3821625, at *4. There is no concern that providing Plaintiff with the affidavit would reveal the investigation to subjects who are currently unaware of the investigation. Nor is there any credible evidence whatsoever to suggest that, if the affidavit was made available to Plaintiff, materials or information would no longer be available to the Government. In fact, the search warrant came seven months after the Plaintiff voluntarily sent 15 boxes of materials to NARA.

Courts have also cited various potential interests related to witnesses whose testimony appears directly or indirectly in the search warrant affidavit. But a limited disclosure of the affidavit to the Plaintiff would trigger no such concerns. And it would be farcical to cite in this

instance any interest in protecting the physical safety of witnesses, as prior courts have sometimes done; making the search warrant affidavit available to President Trump himself would not raise any such concerns.

The same is true with respect to the Government's asserted interest in preserving the secrecy of certain "investigative techniques," which the Government characterizes as critical to future investigations. Even accepting that the Government can keep judicial records from the public merely because they describe an "investigative technique," that interest cannot be so compelling that it outstrips the Constitutional rights of any individual. Here, granting Plaintiff access to the search warrant affidavit would have little impact on the Government's future investigations; as the Plaintiff is already aware of DOJ's investigative techniques, his knowledge of additional mechanisms would not be relevant to the numerous future cases not involving him. The fact that the Government uses informants, reviews videotapes, issues grand jury subpoenas, or works closely with NARA officials is hardly a surprise to even the most casual observer of DOJ's investigative techniques in this matter. Again, under all the circumstances of this investigation, the Government should not receive undue deference in asserting its many claims to justify opaqueness.

### III. The Protective Order Serves The Purpose Of Protecting Any Government Interest.

Even if the Government could meet its burden of demonstrating a sufficiently compelling interest to justify not disclosing the unredacted affidavit to Plaintiff as a general matter, the existence of a protective order in this matter already provides a less onerous alternative to sealing. *See Romero*, 480 F.3d at 1246 (requiring courts to consider "the availability of a less onerous alternative to sealing" in relation to the common-law right of access); *Patel*, 2019 WL 4251269, at *4 (requiring assessment of whether a "compelling government interest . . . cannot be

accommodated by some means less restrictive than sealing"); *In re Sealed Search Warrant*, ECF 80 at 5 (noting that the rights of access under the common law and the First Amendment both require the courts to assess "whether there is a less onerous (or, said differently, a more narrowly tailored) alternative to sealing"). In this case, other alternatives would preserve any interest the Government demonstrates with respect to its investigation.

The protective order in effect in this matter would greatly restrict access of the affidavit. As discussed in Sec. II, *supra*, to the extent the Court continues to view disclosure of the affidavit as raising concerns related to an ongoing investigation, the protective order would substantially mitigate those concerns, as the public would not gain access to witness information, security-related details, or specifications of any Government investigative techniques.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests, in the interests of justice, that the Court order the Government to provide Plaintiff with an unredacted version of the August 5, 2022, search warrant affidavit.

Dated: November 22, 2022  Respectfully submitted,

*/s/ Lindsey Halligan*
Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
Email: lindseyhalligan@outlook.com

James M. Trusty
Ifrah Law PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4176
Email: jtrusty@ifrahlaw.com

M. Evan Corcoran
SILVERMAN | THOMPSON |
SLUTKIN | WHITE, LLC
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Email: ecorcoran@silvermanthompson.com

*Counsel for Plaintiff Donald J. Trump*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Lindsey Halligan*
Lindsey Halligan