December 3, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ 08736



Hon. Aileen M. Cannon
Alto Lee Adams, Sr. United States Courthouse
101 South U.S. Highway 1
Chambers 4044
Fort Pierce, FL 34950

Index No. 9:22-cv-81294, *Trump v. United States of America*

Dear Hon. Judge Cannon:

This is a friend of the Court letter that that I am sure you will find very
helpful in the above-captioned case before you.  Please make sure that this
friend of the Court letter is put on the docket sheet.

My friend of the Court letter proves that, at the exact same time United
States Attorney Mr. Merrick B. Garland and FBI Director Christopher Wray
are  trying to prosecute Donald Trump for purportedly holding onto  some
classified documents, Mr. Garland and Mr. Wray are themselves engaging in
much more serious crimes and collusion to help other politically-connected
billionaires and the stepson of a different  politically connected billionaire
get away with blatantly obvious criminal activities against me and my
family.

The simplest and shortest way to explain the criminal conduct that Mr.
Garland and Mr. Wray are in collusion with others, is to simply reproduce
below the October 25, 2022 letter that was written to Mr. Garland (Exhibit
1), and also sent to Mr. Wray (Exhibit 2) in addition to other public officials.
.

October 25, 2022

Merrick B. Garland, Attorney General
950 Pennsylvania Avenue,
NW Washington, D.C. 20530-0001

Dear. Mr. Garland:

You have never replied to a single one of the multiple letters that I
have sent you since July 2022 where I am shown to be repeatedly
pleading for justice for two proven crimes committed against me by
politically connected billionaires or the step child of a politically
connected multi billionaire.

The first crime that you have continued to ignore completely is the
proven and admitted fact that Judge Judy Sheindlin's stepson Gregory
Sheindlin stole over $1.7 million dollars from me and forced the sale
of my family business Studio 450 and livelihood by fraudulently
representing through "implication only" that there was a jury finding
on a June 26, 2015 Jury interrogatory sheet the personal guarantees
I signed with IGS Realty were enforceable when he knew, and
admitted at his May 4, 2021 deposition, that the claim was a total lie.

As you know by listening to his May 4, 2021 Deposition (found on
YouTube), Mr. Sheindlin admitted this fact at his May 4, 2021
deposition and also that my defenses and counterclaims were not even
on the three question jury interrogatory sheet, although in the financial
judgment, Sheindlin wrote he also said those items were rejected by
the jury on the court filings he wrote to steal over $1.7 million dollars
from me and my wife on September 5, 2018.

As you know, Sheindlin's deposition testimony also shows Sheindlin
being caught in a fraud scheme where at the same exact time he was
fraudulently representing in 2018 that there was a Jury finding that the
personal guarantees were enforceable the landlords other attorney
Robert Fass, who ran the 2015 trial admitted through court filings in
2018 that the three questions on the June 26, 2015 jury sheet, said
nothing about personal guarantees.  All these facts were already
proven too you when you heard these facts admitted from Sheindlin's
own mouth at his May 4, 2021 deposition.

2

You have already listened to these depositions and yet you remain silent. Why is that? I know why it is. It's because you are in collusion to help the step son of multi billionaire Judge Judy Sheindlin get away with his crime. Also, it is because you have no problem rationalizing being totally corrupt, cruel and prejudice against a white Christian who you know is telling the truth about the criminal destruction caused by Judge Judy's stepson Gregory Sheindlin.

The second crime that you are still completely ignoring is the fact that you know that politically connected billionaire developers and their politically connected lawyers used their control over the New York State courts to steal the $70-90 million in development rights that everyone knows were contractually appurtenant to my former 12th Floor and Roof Unit Apartment in a commercial co-op named 450 West 31st Street Owners Corp pursuant to my offering plan contract and certain words used in a higher Appellate Division First Department February 11, 2010 decision.

You have already seen that it is a proven fact that a lower court unlawfully rewrote a contract and higher court decision in an attempt to void what these documents said on their face. The fact that this unlawful act took place is shown again below:

The Seventh Paragraph Footnote to the Schedule of Units in the Amended 1980 Offering Plan from 450 West 31st Street Owners Corp reads as follows:

> *"Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."*

The Appellate Division, First Department, February 11, 2010 Decision ended with the following words:

> *"Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs."*

3

Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the above to read:

> *"It has already been adjudged that while the owners of the unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at \*2 &amp; \*4-\*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] Brady v 450 W. 31st St. Owner's Corp., 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building&#39;s development rights."]"*

You also know that the same Judge that unlawfully rewrote a contract and higher court decision forced me to pay over $500,000.00 in legal fees to the lawyers that used their influence over the courts to have Judge Kornreich conduct this criminal act.

Now at this point you need to stop monkeying around and admit the truth that my contract and higher Appellate Division, First Department decision does govern over the lower court decision and that it is unlawful and unconstitutional to ignore these documents to help politically connected billionaires and their law firms get away with the crime.

Again, please stop your prejudice and corruption and address these two crimes that are not going away, no matter how much you would like to collude in helping politically connected billionaires get away with their crimes.

Please call me at 201-923-5511 or email me at bradyny@gmail.com to dress these matters.


Sincerely,
James H. Brady

4

Neither Mr. Garland nor Mr. Wray responded to this letter or any of the other letters I sent them because that was what they were to do as their part in the conspiracy to help the perpetrators get away with the two crimes shown in the letter.

New York City Mayor Eric Adams, New York State Attorney General Letitia James, United States Attorney for the Southern District of New York Damian Williams, and Manhattan District Attorney Alvin Bragg also received the exact same letter and gave the exact same response, which was to completely ignore my pleads for help from the crimes proven in the letter.

All four people listed in the above paragraph are African Americans in power and shamelessly they treat me no more justly than hoe certain whites treated African Americans during the years of discrimination that followed their freedom from slavery.  Shamefully these four individuals are following their predecessors' scheme of completely ignoring every single one of my pleas for help letters.

The schemes include continuing the practice of not answering a single letter I wrote over the course of 15 years, and not agreeing to ever talk to me, even for one minute.  And most importantly to the scheme of helping politically-connected people get away with their crimes, these four individuals, like Mr. Garland and Mr. Wray, have refused to permit Brady to file a criminal complaint.  This is in direct violation of the First Amendment which guarantees the rights of individuals to seek redress from the government for grievances.

Mr. Garland's, Mr. Wray's and the others, refusal to even respond to the multiple letters written to them prove they're in unison collusion to cover up for the crimes and proves none of them are fit to be acting as prosecutors of Donald Trump or anyone else.

To  justify raiding the home of Donald Trump, Mr. Garland said it was "because no one is above the law" and that "all people must be treated evenly under the law."  My evidence in this friend of the court letter proves that Mr. Garland is a total fraud making these claims as he helps other politically-connected people of his same ethnic group get away with stealing

5

over $2.3 million dollars from a catholic family on September 5, 2018 in addition to helping a man of his faith named Jeffrey Katz from Sherwood Equities get away with stealing the $70-90 million in development rights that were affirmed contractually appurtenant to my former 12th Floor and Roof unit apartment in the Hudson Yards District of Manhattan.

My website www.bullyjudgesny.com proves this crime took place after I refused to waive my rights for free in 2012 since it was $2.5 million less than what I was offered by Extell Development in 2008. On the website is shows my wife and I never signed the waiver form that was needed for Mr. Katz to have the legal right to purchase the air rights contractually appurtenant to our former 12th Floor and Roof Unit Apartment.

The attached October 4, 2022 letter (Exhibit 3) proves I provided filmed evidence to Mr. Garland, Mr. Wray and all the other prosecutors mentioned in this letter showing Jeffery Katz on tape in an interview with Crain's New York bragging about the $120 million dollar profit he made by flipping the property in 2012.  The interview proves Mr. Katz did not mention that the property he flipped for $120 million dollars more then he paid for the lot included the 170,000 in air rights that he purchased from 450 West 31st Street Owners Corp. The transaction remained a secret  since Mr. Katz knew the transaction was unlawful because he never obtained the signed waiver that he needed in order for the transaction to have clear title.  Again, the unsigned waiver can be found on the website www.bullyjudgesny.com.

The interview that Mr. Katz gave to Crain's New York can be found on YouTube
Finally, in this friend of the Court letter I want to prove Mr. Trump is not wrong when he states that State and Federal Judges can be very political, biased, corrupt and work in collusion with prosecutors against litigants they do not like. My evidence proves concussively that both prosecutors and Judges refused to admit the fact that my contract and final Appellate Division First Department February 11, 2010 Decision govern over the final lower court July 15,2014 Supreme Court Decision written by Judge Sherly Kornreich, who was the wife of one of the defendants law firm.

In the third to last paragraph of my October 2, 2022 letter to Mr. Garland, Mr. Wray, and the other prosecutors I write the following:

"Now at this point you need to stop monkeying around and admit the truth that my contract and higher Appellate Division first department decision does govern over the lower court decision and that it is unlawful and unconstitutional to ignore these documents to help politically connected billionaires and their law firms get away with the crime."

Mr. Garland, Mr. Wray and the other prosecutors refused to say which decision governs because they know that my decision governs. This conduct is straight up RICO

This exact shameful refusal to admit the truth that my contract and final higher court decision governs happened in the New York State and New York Federal Courts.

Exhibit 4 is a May 4, 2018 letter New York State Chief Judge Janet DiFiore and Associate Court of Appeals Judge Michael Garcia.  The letter shows both were pressed to admit that the contract and higher court decision governed.  But refused to answer the question because it could only be answered in my favor.

> Re: *Brady v. Jeffrey Katz*, *et al, Index No. 654226/2013* (Supreme Court, NY County).
>
> *Brady v. 450 West 31st Owners Corp, Index No. 157779/2014* (Supreme Court,  NY County).

Dear Chief Justice DiFiore and Justice Garcia:

This letter is not a motion.  It is a demand that you two address a criminal scheme that is going on in your Court.  I am addressing you both as former prosecutors.  There is a big fraud scheme to replace a February 11, 2010 Appellate Division, First Department decision (Exhibit A) with a March 14, 2015 decision from the lower court of Justice Kornreich (Exhibit B).

The February 11, 2010 Appellate Decision gives me the right to build structures that can be built with and without the usage of the premise's development rights. Specifically, the decision correctly states that the Co-Op owns the development rights, which was never in dispute, but that pursuant to the Seventh Paragraph Footnote to the Schedule of Units, the premises air rights are appurtenant to my Unit to the extent that may from time to time be permitted under applicable law.

The lower court decision voids the rights the contract and higher court decision said I have, and issues $400,000 worth of sanctions against me. I will not tolerate this injustice and the fraud scheme in which many judges have attempted to replace the higher court decision with the lower court decision.

A filing injunction was placed on me as a clear obstruction of justice requiring me to seek permission before seeking any type of judicial relief in the state courts. In this case, all I was seeking was a declaration as to which of these two decisions governs, as they cannot coexist. Attached is a copy of the denial of that request (Exhibit C).

I need you to reply to this letter no later than Monday, May 14, 2018, stating that the February 11, 2010 decision gives my 12th Floor and Roof Unit the right to build structures on above the roof with and without the usage of the premise's development rights. You also need to state by that date, the February 11, 2010 decision governs, and that my rights were violated by the unlawful sale of the premise's development rights.

Filthy dirty Janet DiFiore and filthy dirty Michael Garcia refused to answer witch decision governs because they wanted to help Jeffery Katz get away with stealing the 70-90 million in development rights that were affirmed appurtenant to my former 12th Floor and Roof Unit Apartment.

My website bullyjudgesny.com proved Michael Garcia ran out of his 2016 confirmation hearing when confronted to explain what the one sentence long affirmed contract provision meant to him

Exhibit 5 is a letter dated December 21, 2017 showing that Federal Judges, inclusion Federal Court of Appeals judges for the Second Circuit were also pressed to admit that my contract and final February 11, 2010 decision governed over the the final lower court July 15, 2014 Supreme Court decision. These federal judges also refused to answer the question because they know it could only by answered in my favor.

> There are two final decisions in the air rights cases that say two different things, and no one is willing to answer which decision governs because it can only be answered in my favor. And now I am asking this Court again flat-out: which decision governs, the Appellate Division's February11, 2010 decision (Exhibit A) which includes words that can only be construed as giving my Unit the right to utilize all permissible development rights that may from to time be permitted under applicable law, or the lower court's July 15, 2014 decision by Justice Kromtech (Exhibit B) which has none of these rights and orders me to pay almost $500,000 to the attorneys and the parties who stole my rights through a corrupt court decision. The two decisions cannot co-exist and this Court must answer which one governs?

> If you refuse to address any of these issues, then I want this letter construed as a motion for recusal because it would prove you are unfit to adjudicate these cases and should allow someone else to make these determinations rather than further disgracing the integrity of the federal courts.

Because I was being stonewalled by and could find no relief or justice from the NYS Court of Appeals or the Second Circuit Court of Appeals I decided to do something different:

In early 2018, I wrote to New York State Administrative Judge Deborah Kaplan asking permission to file a motion for declaratory relief seeking a declaration of which decision governs. I needed to ask for permission because I was subjected to a filing injunction that on its face was actually implemented to help prevent me from obtaining redress from Jeffery Katz and the others that stole the 70-90 million in air rights that were affirmed contractually appurtenant to my former 12th floor and Roof Unit apartment

On March 8, 2018, New York State Administrative Judge Deborah Kaplan issued a decision denying my declaratory relief and instead is shown bashing me with false claims and excuses for why I would not be permitted to have a judge declare which final decision governed  (Exhibit 6).

These acts prove RICO between the judges and the prosecutors that support Trumps claims that our institutions are hopelessly broken.  The fact that the media is not reporting on the proven atrocities that they know I was subjected to proves Donald Trump's claim that the media is really "fake news".  In truth the media are traitors since their role in society is to hold those in power accountable, not hide the crimes of those who share their anti-American conduct. Simply put , all citizens of the United States would expect the press to expose that Judges are unlawfully and unconstitutionally rewriting the contract descriptions of Apartments to void what the contracts say on their face.

Finally, in this friend of the Court letter I want to say something about Mr. Jack Smith. Mr. Garland just the other day appointed Mr. Jack Smith to be Special Counsel to investigate Donald Trump. Mr. Garland speaks of the fact that Mr. Smith worked as a lifelong prosecutor as a good thing when my evidence proves it is not a good thing.  Specifically, Mr. Smith's resume states that he worked for the  New York District Attorney and for the Public

Integrity Unit of the Eastern District of New York.  Those facts would terrorize me if I were Mr. Trump.

In the 14 years that I have been pleading for help from these agencies, not once did they even reply.  Soon it will be be 15 years  since Justice Marcy Friedman first unlawfully rewrote my offering plan contract in her July 2, 2008 Decision.  Over the years I have written over a dozen times to the "Public Integrity Unit" of the Southern District of New York and the Manhattan District Attorney's office and not one single time did they reply. This abusive and shameful conduct proves no one  in the "Public Integrity Units" of these agencies have a speck of integrity. I am sure Jack Smith is no exception, so I caution the Court about him in this friend of the court letter

I can be reached by email at Bradyny@gmail.com or 201-923-5511.


Thank You,

James H. Brady

11

# EXHIBIT

# 1

October 25, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ 08736

U.S. Department of Justice
Merrick B. Garland, Attorney General
950 Pennsylvania Avenue,
NW Washington, D.C. 20530-0001

Dear Mr. Garland,

You have never replied to a single one of the multiple letters that I have sent
you since July 2022 where I am shown to be repeatedly pleading for justice
for two proven crimes committed against me by politically connected
billionaires or the step child of a politically connected multi billionaire.

The first crime that you have continued to ignore completely is the proven
and admitted fact that Judge Judy Sheindlin's stepson Gregory Sheindlin
stole over $1.7 million dollars from me and forced the sale of my family
business Studio 450 and livelihood by fraudulently representing through
"implication only" that there was a jury finding on a June 26, 2015 Jury
interrogatory sheet the personal guarantees I signed with IGS Realty were
enforceable when he knew, and admitted at his May 4, 2021 deposition, that
the claim was a total lie.

As you know by listening to his May 4, 2021 Deposition (found on
YouTube), Mr. Sheindlin admitted this fact at his May 4, 2021 deposition
and also that my defenses and counterclaims were not even on the three
question jury interrogatory sheet, although in the financial judgment,
Sheindlin wrote he also said those items were rejected by the jury on the
court filings he wrote to steal over $1.7 million dollars from me and my wife
on September 5, 2018.

As you know, Sheindlin's deposition testimony also shows Sheindlin being
caught in a fraud scheme where at the same exact time he was fraudulently
representing in 2018 that there was a Jury finding that the personal
guarantees were enforceable the landlords other attorney Robert Fass, who
ran the 2015 trial admitted through court filings in 2018 that the three
questions on the June 26, 2015 jury sheet, said nothing about personal

guarantees. All these facts were already proven too you when you heard these facts admitted from Sheindlin's own mouth at his May 4, 2021 deposition.

You have already listened to these depositions and yet you remain silent. Why is that? I know why it is. Its because you are in collusion to help the step son of multi billionaire Judge Judy Sheindlin get away with his crime. Also, it is because you have no problem rationalizing being totally corrupt, cruel and prejudice against a white Christian who you know is telling the truth about the criminal destruction caused by Judge Judy's stepson Gregory Sheindlin.

The second crime that you are still completely ignoring is the fact that you know that politically connected billionaire developers and their politically connected lawyers used their control over the New York State courts to steal the $70-90 million in development rights that everyone knows were contractually appurtenant to my former 12th Floor and Roof Unit Apartment in a commercial co-op named 450 West 31st Street Owners Corp pursuant to my offering plan contract and certain words used in a higher Appellate Division First Department February 11, 2010 decision.

You have already seen that it is a proven fact that a lower court unlawfully rewrote a contract and higher court decision in an attempt to void what these documents said on their face. The fact that this unlawful act took place is shown again below:

The Seventh Paragraph Footnote to the Schedule of Units in the Amended 1980 Offering Plan from 450 West 31st Street Owners Corp reads as follows:

> *"Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."*

The Appellate Division, First Department, February 11, 2010 Decision ended with the following words:

> *"Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs."*

Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the above to read:

*"It has already been adjudged that while the owners of the unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at \*2 &amp; \*4-\*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] Brady v 450 W. 31st St. Owner's Corp., 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building&#39;s development rights."]"*

You also know that the same Judge that unlawfully rewrote a contract and higher court decision forced me to pay over $500,000.00 in legal fees to the lawyers that represented used there influence over the courts to have Judge Kornreich conduct this criminal act.

Now at this point you need to stop monkeying around and admit the truth that my contract and higher Appellate Division first department decision does govern over the lower court decision and that it is unlawful and unconstitutional to ignore these documents to help politically connected billionaires and their law firms get away with the crime.

Again, please stop your prejudice and corruption and address these two crimes that are not going away, no matter how much you would like to collude in helping politically connected billionaires get away with their crimes.

Please call me at 201-923-5511 or email me at bradyny@gmail.com to dress these matters.

Sincerely,

James H. Brady

# EXHIBIT

# 2

October 25, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ  08736

FBI Headquarters
Christopher A. Wray, Director
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

Dear Mr. Wray:

You have never replied to a single one of the multiple letters that I have sent you since July 2022 where I am shown to be repeatedly pleading for justice for two proven crimes committed against me by politically connected billionaires or the step child of a politically connected multi billionaire.

The first crime that you have continued to ignore completely is the proven and admitted fact that Judge Judy Sheindlin's stepson Gregory Sheindlin stole over $1.7 million dollars from me and forced the sale of my family business Studio 450 and livelihood by fraudulently representing through  "implication only" that there was a jury finding on a June 26, 2015 Jury interrogatory sheet the personal guarantees I signed with IGS Realty were enforceable when he knew, and admitted at his May 4, 2021 deposition, that the claim was a total lie.

As you know by listening to his May 4, 2021 Deposition (found on YouTube), Mr. Sheindlin admitted this fact at his May 4, 2021 deposition and also that my defenses and counterclaims were not even on the three question jury interrogatory sheet, although in the financial judgment, Sheindlin wrote he also said those items were rejected by the jury on the court filings he wrote to steal over $1.7 million dollars from me and my wife on September 5, 2018.

As you know, Sheindlin's deposition testimony also shows Sheindlin being caught in a fraud scheme where at the same exact time he was fraudulently representing in 2018 that there was a Jury finding that

the personal guarantees were enforceable the landlords other attorney Robert Fass, who ran the 2015 trial admitted through court filings in 2018 that the three questions on the June 26, 2015 jury sheet, said nothing about personal guarantees. All these facts were already proven too you when you heard these facts admitted from Sheindlin's own mouth at his May 4, 2021 deposition.

You have already listened to these depositions and yet you remain silent. Why is that? I know why it is. Its because you are in collusion to help the step son of multi billionaire Judge Judy Sheindlin get away with his crime.  Also, it is because you have no problem rationalizing being totally corrupt, cruel and prejudice against a white Christian who you know is telling the truth about the criminal destruction caused by Judge Judy's stepson Gregory Sheindlin.

The second crime that you are still completely ignoring is the fact that you know that politically connected billionaire developers and their politically connected lawyers used their control over the New York State courts to steal the $70-90 million in development rights that everyone knows were contractually appurtenant to my former 12th Floor and Roof Unit Apartment in a commercial co-op named 450 West 31st Street Owners Corp pursuant to my offering plan contract and certain words used in a higher Appellate Division First Department February 11, 2010 decision.

You have already seen that it is a proven fact that a lower court unlawfully rewrote a contract and higher court decision in an attempt to void what these documents said on their face. The fact that this unlawful act took place is shown again below:

The Seventh Paragraph Footnote to the Schedule of Units in the Amended 1980 Offering Plan from 450 West 31st Street Owners Corp reads as follows:

> "Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

The Appellate Division, First Department, February 11, 2010 Decision ended with the following words:

> *"Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs."*

Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the above to read:

> *"It has already been adjudged that while the owners of the unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at \*2 &amp; \*4-\*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] Brady v 450 W. 31st St. Owner's Corp., 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building&#39;s development rights."]"*

You also know that the same Judge that unlawfully rewrote a contract and higher court decision forced me to pay over $500,000.00 in legal fees to the lawyers that represented used there influence over the courts to have Judge Kornreich conduct this criminal act.

Now at this point you need to stop monkeying around and admit the truth that my contract and higher Appellate Division first department decision does govern over the lower court decision and that it is unlawful and unconstitutional to ignore these documents to help politically connected billionaires and their law firms get away with the crime.

Again, please stop your prejudice and corruption and address these two crimes that are not going away, no matter how much you would like to collude in helping politically connected billionaires get away with their crimes.

Please call me at 201-923-5511 or email me at bradyny@gmail.com to dress these matters.

Sincerely,

# EXHIBIT
# 3

October 4, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ 08736

U.S. Department of Justice
Merrick B. Garland, Attorney General
950 Pennsylvania Avenue,
NW Washington, D.C. 20530-0001

Dear Mr. Garland,

I have still not received a single reply to any of the multiple letters that I
have sent since July 2022 so I am seeking an explanation as to why my
complaints are still being completely ignored? Replying to my grievances
where I am seeking a remedy from the government is a constitutional right
that you must continue ignoring.

My evidence proves that at the exact some time law enforcement officials at
the local, state and federal level are actively seeking to hold a New York
City developer accountable for false claims on bank applications these same
officials are trying to help other New York developers get away with much
more horrific acts on bank documents.

Specifically, while Donald Trump, his family and development company are
being investigated and/or prosecuted for lying on bank loan applications,
Jeffery Katz from Sherwood Equities is being protected by these same law
enforcement officials and agencies for far worse fraudulent acts
on bank loan applications.

The taped interview of Jeffery Katz lying can be found on YouTube
(https://youtu.be/HDR2wTzvbro) that he made on October 4, 2013, shows
him never disclosing the fraudulent transaction that he had with 450 West
31st Street Owners Court because he knew that it was a criminal act when he
lied on the bank closing documents when he said all needed waivers were
signed when that was a fraudulent claim. The unsigned waiver form is
shown on bullyjudgesny.com.

In the complaint against Trump there was no one claiming to be harmed by
the inflated values he gave for his properties. In my case my wife and I

were completely destroyed since not only did Jerry Katz steal the $70-90 million that were affirmed appurtenant to our former 12th Floor and Roof Unit apartment, but he also used his power and influence over the State Courts to obtain a court order that I be forced to pay over $500,000 in legal fees that was spent by him and others to steal the development rights that were appurtenant to our former 12th floor and Roof unit apartment. These were calculated and despicable acts by developer Jeffery Katz. His taped interview is smoking gun proof that the charges in made in this letter and in my previous letters are true and its time that he finally be held accountable for his crimes since no one is above the law.

Please call me at 201-923-5511 or email me at Bradyny@gmail.com without additional delay.

Thank You.


Sincerely,

James H. Brady

# EXHIBIT

# 4

May 4 2018

James Brady
450 West 31ˢᵗ Street
12ᵗʰ Floor
New York, NY 10001

State of New York Court of Appeals
Office of the Clerk
20 Eagle Street
Albany, NY 12207

Re: *Brady v. Jeffrey Katz, et al, Index No. 654226/2013* (Supreme Court, NY County).
   *Brady v. 450 West 31ˢᵗ Owners Corp, Index No. 157779/2014* (Supreme Court, NY County).

Dear Chief Justice DiFiore and Justice Garcia:

This letter is not a motion. It is a demand that you two address a criminal scheme that is going on in your Court. I am addressing you both as former prosecutors. There is a big fraud scheme to replace a February 11, 2010 Appellate Division, First Department decision (Exhibit A) with a March 14, 2015 decision from the lower court of Justice Kornreich (Exhibit B).

The February 11, 2010 Appellate Decision gives me the right to build structures that can be built with and without the usage of the premise's development rights. Specifically, the decision correctly states that the Co-Op owns the development rights, which was never in dispute, but that pursuant to the Seventh Paragraph Footnote to the Schedule of Units, the premises air rights are appurtenant to my Unit to the extent that may from time to time be permitted under applicable law.

The lower court decision voids the rights the contract and higher court decision said I have, and issues $400,000 worth of sanctions against me. I will not tolerate this injustice and the fraud scheme in which many judges have attempted to replace the higher court decision with the lower court decision.

A filing injunction was placed on me as a clear obstruction of justice requiring me to seek permission before seeking any type of judicial relief in the state courts. In this case, all I was seeking was a declaration as to which of these two decisions governs, as they cannot coexist. Attached is a copy of the denial of that request (Exhibit C).

By way of history, this Court under Jonathan Lippman caused me 8 years of pain and suffering by not having answering if the Seventh Paragraph should be construed as giving air rights to my Unit. 8 years later I am no longer pleading for help or protection but demanding that this Court do its duty and protect the February 11, 2010 Appellate Division decision from the lower courts that rewrote it and have replaced it with the fraudulent July 15, 2014 decision by Justice Kornreich.

My December 2, 2010 letter was very polite in asking this Court to do the right thing:

> "I ask this Court to settle the agreement within the meaning of the constitution by answering the one single question listed below:
> Does the Seventh Paragraph Footnote convey development rights to the 12th Floor and Roof Unit?
>
> I thank this honorable Court for the time you have given me. I also want this honorable Court to know that despite my repeated feelings of disappointment in the fairness of New York State Judicial System, I have never given up hope that the New York Judicial System will protect me and my rights from being seized by the Co-op Corporation."

The problem that I complained to this Court about was that this limited action in 2010, which was a Stipulation requring the Co-op to drop its counter-claims, was not enough because this Court needed to expressly asnwer the question: does the Seventh paragraph Footnote convey air rights to the 12th Floor and Roof Unit?

In 2013, I returned to the Appellate Division for Clarification of their decision. The words used in the could only be construed as giving my apartment the right to have the premise's development rights, in addition to the right to build structures without the use of the development rights. The Co-op opposed clarification because they knew the decision could only be squared against them.

The Appellate Division refused to explain the anomaly created by their decision. The Appellate Division needed to come out and say the February 11, 2010 decision does not convey ownership of the premise's air rights but it conveys the right to the utilization of the premise's air rights. The judges of the Appellate Division refused to answer whether the Co-op's subsequent sale of the air rights to Sherwood Equities violated the rights given me pursuant to the affirmed February 11, 2010 decision. They would not answer this question because the answer is Yes, of course.

Again in a January 2014 letter, I wrote asking this Court to explain the February 11, 2010 decision. In reply, I received a letter on January 27, 2014 from Andrew Klein, Clerk of the Court of Appeals, dismissively stating in full:

> Dear Mr. Brady:
>
> I respond to your letter dated January 16, 2014.
>
> On October 14, 2010, the Court denied your motion seeking leave to appeal and on January 11, 2011, the Court denied your motion seeking reargument in the above-entitled matter.
>
> The Court's decisions must speak for themselves, without explanation from Court staff. Moreover, neither Court staff nor the Judges of this Court may comment on ongoing litigation.

I regret I cannot be of further assistance to you.

The decision clearly did not speak for themselves, as Justice Kornreich herself said at the March 18, 2014 Oral Arguments. Consider the following exchanges between Justice Kornreich and various defense counsels at the March 18, 2014 oral arguments showing the decision are contradictory:

> THE COURT: How would you deal with the decision of the Court and say he has no development rights, he has no air rights, yet he has the right to build? What does that mean? (Transcript p. 9:17-20).

> THE COURT: The courts said that he has no air rights, but he has the right. But I think, perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same things, development rights, so – (Transcript p.12:9-13).

> THE COURT: I don't know what you said. Nor do I know what the Court said. (Transcript p. 14:12-13)

> THE COURT: But I'm asking you because I have to in this action decide what the contract means, and I'd like your – you to weigh in on that." (Transcript p. 15:25-p. 16:2).

> THE COURT: The decisions don't – don't address this, because, at least in this Court's mind, I don't see how you can build and build up without going into air rights or – you know, so I don't understand the decisions. I'm asking you for guidance. (Transcript p. 17:18-22).

> THE COURT: **I don't understand how you can build a structure on a roof if you have no air rights.** (Transcript p. 28:4-5).

Justice Kornreich refers to to the February 11, 2010 decision as an "enigma" and plainly states there is a contradiction in it:

> THE COURT: It doesn't say that there is a certain height, it says he can build up and out.

> MR. ANESH: I agree. I agree. It doesn't say, it doesn't specify.

> THE COURT: And the Appellate Division and lower court didn't say, "You can only build to a certain height," they said, "**Yeah, he has the right to build up and out but he can't use air rights,**" which is really an enigma. (Transcript p. 28:21-25).

Justice Deborah Kaplan, in her March 8, 2018 decision denying my right to seek clarification from the Manhattan Supreme Court, followed the same pattern of willfully misstating the case

and my claims.  For example, regarding the Justice Friedman's March 13, 2009 decision, which was not affirmed by the Appellate Division, Judge Kaplan writes:

> "The plaintiff claims that the Appellate Division, First Department's decision did not affirm the lower court's order issued by Justice Marcy Friedman.  That claim is incorrect. On the contrary, Judgment and order was entered in New York County, March 26, 2009, and was unanimously affirmed on appeal."  (Exhibit C).

This is entirely untrue.  The Appellate Division did not affirm Justice Friedman's decision but rather removed an entire provision which Justice Friedman had unlawfully placed at the end of her decision, to wit:  "Provided that: Nothing herein shall be construed as holding that plaintiffs have the right to use all or any of the TDRs in connection with such construction or extension." (*Brady v. 450 West 31st Owners Corp.*, No. 603741/2007, March 13, 2009).

Justice Kaplan further misstates what Justice Kornreich did in her July 15, 2014 decision:

> "This court reject's the plaintiff's assertion that the decision of the Appellate Division, First Department was "unlawfully rewritten" by Justice Kornreich.  Rather, Justice Kornreich relied on previous decisions and orders in dismissing the actions before her."

This is also untrue.  Justice Kornreich took out 40 words that were in the contract and replaced them with 70 of her words that void the rights under the contract.  Justice Kornreich falsified the prior decisions and the Offering Plan contract in her decision.

These corrupt court decisions responsible for the seizure of my property have also slandered me in official court documents.  I am not going to end this 11 year battle by being slandered by judges in court decisions.  You must address this issue immediately.

I need you to reply to this letter no later than Monday, May 14, 2018, stating that the February 11, 2010 decision gives my 12th Floor and Roof Unit the right to build structures on above above the roof with and without the usage of the premise's development rights.  You also need to state by that date that the February 11, 2010 decision governs, and that my rights were violated by the unlawful sale of the premise's development rights.

Sincerely,

James H. Brady

# EXHIBIT
# 5

James H. Brady                                             December 21, 2017
510 Sicomac Ave.
Wyckoff, NJ 07481
bradyny@gmail.com

United States Court of Appeals
For the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *James H. Brady v. Eric Schneiderman*, Docket No. 16-cv-3122
   *James H. Brady v. John Goldman, Esq, et al*, Docket No. 17-cv-274
   *James H. Brady v. Associated Press, et al.*, Docket No. 17-cv-268

Dear Honorable Justices:

1)   Why has this Court still not referred anyone in the FBI or Department of Justice to protect me?

2)   Why did this Court cancel Oral Arguments?  Is this Court asserting that my claims are meritless,
     and that is why you are canceling them?  I hope this Court is not trying to pull that one, with all
     law enforcement and media watching.  Let me warn you not to because that would be criminal
     collusion in this scheme.

3)   Why do I have to be in the Second Circuit Court of Appeals litigating against NYAG Eric
     Schneiderman to give me equal protection under the law?  I'm litigating to meet with him and
     he is litigating to *not* meet with me.  Something is twisted here that the NYAG and this Court
     would prohibit me from meeting with the NYAG and filing a criminal complaint.

4)   There are two final decisions in the air rights cases that say two different things, and no one is
     willing to answer which decision governs because it can only be answered in my favor.  And
     now I am asking this Court again flat-out:  which decision governs, the Appellate Division's
     February 11, 2010 decision (Exhibit A) which includes words that can only be construed as
     giving my Unit the right to utilize all permissible development rights that may from to time be
     permitted under applicable law, or the lower court's July 15, 2014 decision by Justice Kornreich
     (Exhibit B) which has none of these rights and orders me to pay almost $500,000 to the
     attorneys and the parties who stole my rights through a corrupt court decision.  The two
     decisions cannot co-exist and this Court must answer which one governs?

If you refuse to address any of these issues, then I want this letter construed as a motion for recusal
because it would prove you are unfit to adjudicate these cases and should allow someone else to make
these determinations rather than further disgracing the integrity of the federal courts.

Sincerely,

James H. Brady

# EXHIBIT
# A



| Brady v 450 W. 31st Owners Corp. |
|---|
| 2010 NY Slip Op 01060 [70 AD3d 469] |
| February 11, 2010 |
| Appellate Division, First Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, March 31, 2010 |



James Brady et al., Appellants,
v
450 West 31st Owners Corp., Respondent, et al., Defendants.

––[*1] Louis A. Badolato, Roslyn Harbor, for appellants. Kaufman Friedman Plotnicki&Grun, LLP, New York (Stanley M. Kaufman of counsel), for respondent.

Order and judgment (one paper), Supreme Court, New York County (Marcy S. Friedman, J.), entered March 26, 2009, to the extent appealed from as limited by the briefs, declaring that defendant 450 West 31st Owners Corp. is the owner of the transferable development rights granted or permitted to the parcel of land on which the cooperatively owned building is located, and that paragraph 7 of the second amendment to the offering plan does not convey or reserve those rights to plaintiffs, and that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs. Appeal from order, same court and Justice,

entered July 7, 2008, which, inter alia, granted defendants' motions for summary judgment dismissing the complaint, unanimously dismissed as academic, without costs.

Paragraph 7 of the second amendment to the offering plan contains no express language giving plaintiffs ownership of or veto power over the building's development rights or air rights (*compare Jumax Assoc. v 350 Cabrini Owners Corp.*, 46 AD3d 407, 408 [2007] ["roof rights reserved for (plaintiff) in the 1986 offering plan"]). It reserves for plaintiffs the right, as [*2]permitted by the relevant laws, to construct or extend structures on the roof that may be built without the use of the building's development rights. Concur—Mazzarelli, J.P., Acosta, Renwick and Freedman, JJ. **[Prior Case History: 2009 NY Slip Op 30599(U).]**

# EXHIBIT
# B

FILED: NEW YORK COUNTY CLERK 07/16/2014                    INDEX NO. 157779/2013
NYSCEF DOC. NO. 174        Case 16-3122, Document 222, 12/21/2017, 2200144, Page84 of 85    RECEIVED NYSCEF: 07/16/2014

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **SHIRLEY WERNER KORNREICH**                    PART __54__
_____
*Justice*

Index Number : 157779/2013
BRADY, JAMES H                                    INDEX NO. _____
vs
450 W. 31ST STREET OWNERS CORP                    MOTION DATE _3/20/14_
Sequence Number : 001
DISMISS ACTION                                    MOTION SEQ. NO. _____

_____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _17-32_

Answering Affidavits — Exhibits _____ | No(s). _60-65_

Replying Affidavits _____ | No(s). _96, 98_

Upon the foregoing papers, it is ordered that this motion is

MOTION IS DECIDED IN ACCORDANCE WITH
ACCOMPANYING MEMORANDUM DECISION

FOR THE FOLLOWING REASON(S):

Dated: _7/15/14_

SHIRLEY WERNER KORNREICH    J.S.C.
J.S.C.

1. CHECK ONE: ............................................ ☒ CASE DISPOSED        ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................... MOTION IS: ☒ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ............................ ☐ SETTLE ORDER        ☐ SUBMIT ORDER
                                                   ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☒ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------------X
JAMES BRADY,

                  Plaintiff,                 Index No.:  157779/2013

                                             **DECISION AND ORDER**

             -against-

450 WEST 31ST STREET OWNERS CORP.,
DESIREE GREENE, individually and as President of
the Board for 450 West 31st Street Owners Corp.,
JIM FRANCO, individually and as a member of the
Board for 450 West 31st Street Owners Corp., KAREN
ATTA, individually and as a member of the Board for
450 West 31st Street Owners Corp., PRISCILLA
MCGEEHON, individually and as a member of the Board
for 450 West 31st Street Owners Corp., BILL SMITH,
individually and as a member of the Board for 450 West
31st Street Owners Corp., OWAIN HUGHES, LINDA
KRAMER, individually and as a member of the Board for
450 West 31st Street Owner's Corp., CHODOSH
REALTY SERVICES INC., JON CHODOSH, STANLEY
KAUFMAN, KAUFMAN FRIEDMAN PLOTNICKI &
GRUN, LLP, DEIRDRE A. CARSON, GREENBERG
TRAURIG, LLP, VINCENT HANLEY and HANLEY &
GOBLE,

                        Defendants.
------------------------------------------------------------------X
JAMES BRADY,

                  Plaintiff,                 Index No.:  654226/2013

             -against-

JEFFREY KATZ, individually and as CEO and principal
owner of Sherwood Equities, Inc., LONG WHARF REAL
ESTATE PARTNERS, LLC, CHICAGO TITLE
INSURANCE CO., DENNIS W. RUSSO, HERRICK
FEINSTEIN LLP, and FRANK MCCOURT, individually
and as Chairman and CEO of McCourt Global LP,

                        Defendants.
------------------------------------------------------------------X

1

KORNREICH, SHIRLEY WERNER, J.:

Motion sequence numbers 001, 002, 003, 005 and 006 in the action entitled *Brady v 450 West 31st Street Owners Corp., et al.*, index No. 157779/2013 (the Co-op Action) and motion sequence numbers 001, 002, 003, 004 and 006 in the action entitled *Brady v Katz, et al.*, index No. 654226/2013 (the Katz Action) are hereby consolidated for disposition. All the respective defendants in each action move to dismiss (CPLR 3211), and several move for sanctions and for an injunction to enjoin Brady from filing further suits. Plaintiff opposes. Separately, Brady, in the Co-op Action, moves for leave to file a sur-reply, and in the Katz Action, moves to amend the caption and for recusal of this court. For the reasons that follow, Brady's motion to file a sur-reply is granted, his motions to amend the caption and for recusal are denied, both actions are dismissed with prejudice, the requests for sanctions are granted and the requests to enjoin further actions are denied.

I.    *Background*

A.    *The Extell Transaction*

In 2006, plaintiff James Brady purchased the twelfth floor and penthouse unit (the Unit) of the commercial co-op located at 450 West 31st Street in Manhattan (the Building) from Owain Hughes, for use as an event space (Co-op Action Complaint, ¶¶ 33, 49). The deal was brokered by Jon Chodosh of Chodosh Realty Services Inc. (*id.* at ¶ 36). During the same period, also with the involvement of Chodosh and his company, the fee owner of the Building, 450 West 31st Street Owners Corp. (the Co-op), was negotiating the sale of the building's air rights to non-party Extell Development (Extell), which owned an adjoining, vacant lot (*id.* at ¶¶ 36—37). In August 2007, the Co-op and Extell entered into a contract to sell the air rights for approximately

2

$11.25 million (*id.* at ¶ 61—62). The Co-op was represented by Vincent Hanley of Hanley & Goble LLP and Deirdre Carson of Greenberg Traurig, LLP (*id.* at ¶¶ 41, 51, 57). Desiree Greene was the president of the Co-op board at the time (*id.* at ¶ 62).

### B. Prior Action

On November 13, 2007, Brady and his wife commenced an action against the Co-op and Extell, alleging that the Building's development rights belonged to their Unit (complaint, ¶¶ 13—18, *Brady v 450 W. 31st St. Owners Corp.*, Sup Ct, NY County, index No. 603741/07 [the Prior Action]). The Bradys based their claim on language in the second amendment to the 1980 co-op conversion offering plan, stating that "[t]he 12th floor and roof unit shall have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law."

The Bradys claimed that the Co-op and Extell had entered into an agreement "whereby Transferable Development Rights ('TDRs') appurtenant to [their] Unit [would] be combined with lands owned by Defendant Extell so as to constitute one single zoning lot . . . Such a combination is colloquially described as a 'sale of air rights'" (*id.* at ¶¶ 21—22). They sought to enjoin the sale to Extell and asked for declarations that the contract of sale between the Co-op and Extell was void and that the Bradys had "the sole right to the TDRs" (*id.* at ¶¶ 28—37).[1]

---

[1] After defendants answered (and the Bradys' motion for a preliminary injunction against the sale was denied), the Bradys served an amended complaint, which, *inter alia,* sought a declaration that "the rights purportedly conveyed by the Contract of Sale belong solely to the 12th Floor . . . and that the [Co-op] cannot without the consent of the owner of the 12th Floor sell or transfer any portion of these rights" (Prior Action, amended complaint, ¶ 79). Of course, the owner of the lot, and, hence, the air rights, was the Co-op, and the Bradys merely owned shares in the Co-op, since they occupied the twelfth floor pursuant to a proprietary lease (*see MacMillan, Inc. v CF Lex Assocs.*, 56 NY2d 386 [1982] [consent of tenant not necessary for zoning lot merger]).

On motions for summary judgment, the court, by decision and order filed July 7, 2008, dismissed the amended complaint. Upon reargument, the court adhered to its prior decision, explicitly rejecting the idea that the Bradys' consent was required to allow the contemplated sale to go forward (Prior Action, decision and order, Mar 13, 2009, at * 2, Friedman, J.). It held that while the offering plan gave the Bradys the right to "build structures on or above the roof" (*id.*), their contention that they were entitled to utilize all of the building's air rights in doing so was "untenable" (*id.* at 3—4). The court held that: 1) the Co-op "is the owner of, and has the right to transfer, the [TDRs] that are granted or permitted pursuant to the Zoning Resolution, to the parcel of land on which the building . . . is located"; 2) the offering plan "does not convey or reserve the TDRs to" the Bradys; and 3) the Bradys have "the right to construct or extend structures upon the roof or above to the same to the extent that may from time to time be permitted under applicable law" (*id.* at 4—5). As the Bradys did not advance any interpretation of the offering plan other than one which would entitle them to use all of the Building's air rights or provide any details as to what, if anything, they actually wanted to construct on the Building's roof, the court held that there was no actual controversy which required a judicial determination of the scope of the Bradys' right to build; it declined to reach the issue, noting that its decision should not be construed as implying that the Bradys had the right to utilize *any* air rights in connection with roof construction (*id.* at 3—5). Judgment was entered on March 26, 2009, and was unanimously affirmed on appeal (*Brady v 450 W. 31st St. Owners Corp.*, 70 AD3d 469 [1st Dept 2010]). [2] Leave to appeal to the Court of Appeals was denied, with costs (15 NY3d 710

---

[2] Plaintiff's complaint characterizes Justice's Friedman's decision as "internally inconsistent" and the Appellate Division decision as contradictory.

4

[2010]), as was the Bradys' motion to reargue the denial (16 NY3d 731 [2011]). The Co-op was represented in the Prior Action by Stanley Kaufman of Kaufman Friedman Plotnicki & Grun LLP.

### C.   Sale of the Air Rights

The transaction between Extell and the Co-op failed to close. In April 2011, the Extell lot was sold to Sherwood 30 Land Group LLC (Sherwood) (Co-op Complaint, ¶ 218). The Co-op began negotiating the sale of the Building's air rights, this time to Sherwood. Initially, the Co-op and Sherwood sought to obtain a waiver from the Bradys regarding the air rights (*id.* at ¶¶ 219, 224; Katz Complaint, ¶¶ 33, 35). However, when Brady refused to sign the waiver as presented (Katz Complaint, ¶¶ 54—56), the Co-op and Sherwood proceeded without his consent. On June 27, 2012, they entered into a Zoning Lot Development and Easement Agreement (ZLDEA) conveying the building's air rights to Sherwood along with most of the Co-op's right to purchase certain additional air rights from the City of New York (Office of the City Register, CRFN 201200027377[4] [the ZLDEA]).[3] The agreement also granted Sherwood a perpetual easement for light, air and view on the airspace more than 40 feet above the penthouse roof (ZLDEA §§ 1.40, 2.21). Sherwood paid approximately $11.5 million for the rights (Co-op Complaint, ¶ 258; Katz Complaint ¶ 107). The ZLDEA was executed by Greene on behalf of the Co-op and by Jeffrey Katz on behalf of Sherwood. It was recorded with the City Register, along with the required title company certificate. Dennis Russo of Herrick Feinstein LLP served as Sherwood's counsel. Chicago Title Insurance Company prepared and filed the certificate.

---

[3] The Co-op reserved its ability to purchase the right to build an additional 25,000 square feet for commercial purposes (ZLDEA §§ 1.38, 2.1).

A little more than a year later, on August 13, 2013, Sherwood sold its lot, along with its appurtenant air rights and easements, to McCourt Partners for $167 million (Katz complaint, ¶ 98). Frank McCourt is the chairman and CEO of McCourt Global; McCourt Partners is alleged to be a subsidiary of McCourt Global (Katz complaint, ¶¶ 10, 97).

> D.   Actions by the Co-op

At a shareholders meeting held in June 2009, some months after judgment had been entered in the Prior Action, the Board proposed imposing a $500 to $750 fee for any event held at the Building, as well as requiring security guards to patrol the lobby during events (Co-op Complaint ¶¶ 166—75). The proposed new rules were to give preference to the Building's tenants and their guests over event attendees in the use of the Building's single, rather slow passenger elevator (id. at ¶ 170—72). Brady, whose Unit at that time was the only one with a certificate of occupancy allowing it to be used as an event space, successfully opposed the 2009 proposals, and they were not adopted (id. at ¶ 175). At a shareholders meeting held in June 2011, it was announced that directors would no longer be elected by cumulative voting (id. at ¶ 211).

## II.   Procedural History

Brady commenced the Co-op Action on August 23, 2013, by filing a summons with notice. A verified complaint was filed on November 23, 2013, in which Brady alleges the following causes of action, numbered here as in the complaint: 1) a declaration that the transfer of rights by the Co-op is unlawful and void ab initio as against all of the defendants; 2) a declaration that plaintiff has been partially constructively evicted and is entitled to a full abatement of his maintenance; 3) breach of contract and breach of the covenant of good faith and

fair dealing as against the Co-op and Hughes; 4) tortious interference with contract (the offering plan) against all of the defendants; 5) fraud against the Co-op, the members of its board, Stanley Kaufman and his law firm, who were the Co-op's counsel in the Prior Action, Vincent Hanley and his law firm and Deirdre A. Carson and her law firm, attorneys who represented the Co-op in the Extell deal, and the broker and brokerage firm that brokered both the sale of the Unit to plaintiff and were involved in the Extell deal; 6) negligent misrepresentation against the Co-op; 7) prima facie tort against all of the defendants; 8) gross negligence against all of the defendants due to the Co-op's breach of fiduciary duty to plaintiff by selling the air rights; 9) gross negligence against the Co-op, its board members and its lawyers for reckless disregard of plaintiff's rights; 10) another claim for negligent misrepresentation against the Co-op; 11) slander of title against the Co-op; 12) unjust enrichment against all of the defendants; 13) violation of Section 487 of the Judiciary Law as against the Co-op's attorneys; and again, 14) breach of fiduciary duty and gross negligence against the Co-op and its board members. The causes of action arise from the sale of the air rights, the imposition of the easements and the decision to change the Building's regulations and the corporation's voting method.

Approximately two weeks later, on December 6, 2013, Brady commenced the Katz Action against: Jeffrey Katz, the CEO and a principal of Sherwood; Long Wharf Real Estate Partners, LLC (Long Wharf), Sherwood's partner in the transactions at issue; Chicago Title Insurance Co.; Frank McCourt, individually and as Chairman and CEO of McCourt Global LP, the parent company of the entity which purchased the adjoining lot from Sherwood; and Sherwood's counsel in the Sherwood/McCourt transaction. In the Katz action, Brady alleges the following causes of action, numbered here as in the complaint: 1) tortious interference with

contract against Sherwood, Long Wharf, their attorneys and Chicago Title; 2) unjust enrichment

against all of the defendants; 3) aiding and abetting breach of fiduciary duty against Sherwood,

Long Wharf, their attorneys and Chicago Title; 4) conspiracy to defraud against all of the

defendants; [4] 5) "Frank McCourt was not a bona fide purchaser for value" against Frank

McCourt and McCourt Partners; 6) slander of title against all of the defendants; and 7) a

declaration that the rights conveyed by the ZLDEA "were the rights held to be appurtenant to

[the] 12th Floor and Roof unit."

All defendants now move for dismissal, and Brady moves to file a sur-reply in response

to the reply affidavits submitted by the Board in further support of its motion to dismiss the Co-

op Complaint. Additionally, Brady moves to amend the Katz Action by adding a number of

Sherwood and McCourt-related entities as defendants. Brady is represented by counsel in the

Co-op Action, but is *pro se* in the Katz Action. Following oral argument on the motions to

dismiss, Brady moved for recusal of this court.

III.    *Discussion*

    *A. Recusal*

A judge may not preside over a matter "to which he is a party, or in which he has been

attorney . . . , or in which he is interested, or if he is related by consanguinity or affinity to any

party within the sixth degree" (Judiciary Law § 14). "Absent a legal disqualification under

Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal" (*People v Moreno*, 70 NY2d 403,

---

[4] While the fourth cause of action in the Katz Complaint is styled "conspiracy to defraud," New
York does not recognize conspiracy as a separate cause of action (*Blanco v Polanco*, 116 AD3d
892, 895—96 [2d Dept 2014]). Accordingly, the court deems the fourth cause of action as one
for fraud, asserted against all defendants.

8

405 [1987]).  While disqualification is appropriate where a judge harbors or appears to harbor a

personal bias or prejudice against a party (Rules of Chief Admin of Cts [22 NYCRR] § 100.2 [E]

[1] [a]), "for any alleged bias and prejudice to be disqualifying 'it must stem from an

extrajudicial source and result in an opinion on the merits on some basis other than what the

judge learned from his participation in the case'" (*People v Glynn*, 21 NY3d 614, 618 [2013]

quoting *Moreno*, 70 NY2d at 407).  Brady cites to no ground for recusal other than his belief,

after oral argument, that his actions are in danger of dismissal.  This is insufficient and smacks of

judge shopping.  In the exercise of her discretion, the court declines to recuse herself.

    *B.  Sur-Reply*

        In reply to Brady's opposition to its motion to dismiss the Co-op action, the Co-op

submitted, for the first time, an affidavit of Desiree Greene addressing the proposed house rule

changes, the change in voting method and the distribution of the proceeds from the Sherwood

transaction (Co-op Action, affidavit of Desiree Greene, sworn to on March 26, 2014).  Also

submitted was an affidavit by a land use attorney opining on the interpretation of certain aspects

of the City's Zoning Resolution, as well as a reply brief which was based largely on the record of

oral argument, which had been held after Brady's opposition was submitted but prior to the

return date on the motion.  Moreover, the brief raised arguments concerning the justiciability of

the instant actions which should have been raised in the moving papers.  Brady's request to

submit a sur-reply in response to these new arguments is appropriate and is granted.

    *C.  Dismissal Standard*

        On a motion to dismiss, the court must accept as true the facts alleged in the complaint as

well as all reasonable inferences that may be gleaned from those facts (*Amaro v Gani Realty*

Corp., 60 NY3d 491 [2009]; *Skillgames, L.L.C. v Brody*, 1 AD3d 247, 250 [1st Dept 2003]

[citing *McGill v Parker*, 179 AD2d 98, 105 (1992)]; *Mazzai v Kyriacou*, 98 AD3d 1088, 1090

[2d Dept 2012]; *see also Cron v Harago Fabrics*, 91 NY2d 362, 366 [1998]).  The court may not

assess the merits of the complaint or any of its factual allegations, but may only determine if,

assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable

cause of action (*Skillgames, id.* [citing *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 (1977)]).

Deficiencies in the complaint may be remedied by affidavits submitted by the plaintiff (*Amaro*,

60 NY3d at 491).  "However, factual allegations that do not state a viable cause of action, that

consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by

documentary evidence are not entitled to such consideration." (*Skillgames*, 1 AD3d at 250

[citing *Caniglia v Chicago Tribune-New York News Syndicate*, 204 AD2d 233 (1st Dept 1994)]).

    *1.  Claims Arising out of the ZLDEA and the Prior Action*

    "Collateral estoppel precludes a party from relitigating in a subsequent action or

proceeding on an issue raised in a prior action or proceeding and decided against that party or

those in privity" (*Buechel v Bain*, 97 NY2d 295, 303 [2001]).  For collateral estoppel to be

invoked, "[t]here must be an identity of issue which has necessarily been decided in the prior

action and is decisive of the present action, and there must have been a full and fair opportunity

to contest the decision now said to be controlling" (*id.* at 303—04).  In the Prior Action, the

court determined that the air rights belonged to the Co-op, not to the Bradys, who occupied their

unit under a proprietary lease.  The prior court relied on *Macmillan, Inc. v CF Lex Assocs.*,

*supra*, 56 NY2d 386, in which the Court of Appeals held that the consent of a tenant occupying

95% of a building's usable area was not needed for the fee owner to sell the parcel's air rights

10

(Prior Action, decision and order, Mar 13, 2009 at *1, Friedman, J.).  It further held that the

offering plan did not "convey or reserve" the air rights to the Bradys, that the Co-op was the

owner of such rights and had the right to transfer them, and that the Bradys' consent was not

necessary to allow for such transfer (*id.*).  Thus, to the extent that Brady claims that he was

wronged by the transfer of the Co-op's air rights, such claims must be dismissed as a matter of

collateral estoppel or *res judicata* (*see O'Brien v City of Syracuse*, 54 NY2d 353 [1981] [where

prior lawsuit dismissed, plaintiff "may not bring another action . . . in an attempt to recover

damages for the same acts as those on which the first lawsuit was grounded"]).

     Brady, however, seeks to distinguish the instant cases from the Prior Action on the

ground that the judgment there only declared that the Co-op "is the owner of, and has the right to

transfer, the *transferable development rights* ("TDRs")" and that the offering plan "does not

convey or reserve *TDRs* to [the Bradys]" (emphasis supplied).  According to plaintiff, the term

"TDRs" refers exclusively to a transfer of air rights between ***non-contiguous lots***, and, therefore,

has no bearing on the transaction at issue here, which shifted the air rights to an adjoining lot.

     In so arguing, Brady relies on the Planning Department's online "Zoning Glossary",

which states that "[a] transfer of development rights (TDR) allows for the transfer of unused

development rights from one zoning lot to another . . . where the transfer could not be

accomplished through a zoning lot merger" (Co-op Complaint ¶¶ 143—44, citing New York

City Dept. of Planning, Zoning Glossary, http://www.nyc.gov/html/dcp/html/zone/glossary.shtml

[accessed Oct 24, 2013]).  Even accepting, for the sake of argument, that the statements on the

Planning Department's website have the force of law,[5] this entry merely indicates that there are different *methods* by which air rights can be transferred. One such method is by transfer of air rights between non-contiguous parcels. Another, more common method, is by merging zoning lots (*see, e.g., Hand v Hosp. for Special Surgery*, 34 Misc3d 1212 [A] [Sup Ct. NY County 2012] *aff'd* 107 AD3d 642 [1st Dept 2013]; *Fisher v Bd. of Stds. & Appeals*, 21 Misc3d 1134 [A] [Sup Ct NY County 2008] *aff'd* 71 AD3d 487 [1st Dept 2010]). These variations, however, have nothing to do with the nature of the asset -- to wit, a license under the zoning code to build a certain amount of square footage -- and the question of who owns and controls that asset.

Furthermore, there is no good faith basis for asserting that when the court in the Prior Action issued a ruling concerning who controlled the lot's "transferable development rights", it was actually making a declaration about the propriety of transferring air rights between non-adjoining lots. The proposed air rights sale to Extell, like the consummated sale to Sherwood, involved a zoning lot merger, a fact known both to the court and plaintiff (*see* Prior Action, decision and order, July 2, 2008 at *1, Friedman, J.). In fact, the court in the Prior Action did not refer to a "transfer *of* development rights". Instead, the phrase employed by the court, which Brady finds so confusing, was "transferable development rights." As should be apparent, these two phrases are not the same. Brady's argument is based exclusively on language he found online but which was never actually used by this court.

---

[5] They do not (New York City Charter § 200 [zoning rules to be changed only after notice and comment and vote by City Council]). That the Appellate Division once cited to the Planning Department's Zoning Handbook in defining "air rights" in *Matter of Metro. Tr. Auth.*, 86 AD3d 314, 318 (1st Dept 2011) does not transform the Handbook into law. It also should be noted that the Zoning Glossary, which Brady cites, is a different document than the Zoning Handbook.

A review of the papers in the Prior Action reveals that in referring to air rights as "transferable development rights" or "TDRs", the court adopted the phraseology used by the parties, *including Brady*. For example, in his affidavit submitted in support of his motion for a preliminary injunction, at the commencement of the Prior Action, Brady described the contemplated transaction between Extell and the Co-op as one in which "Transferable Development Rights ("TDRs") appurtenant to Plaintiffs' Unit will be combined with lands owned by Defendant Extell so as to constitute one single zoning lot, as defined in Section 12–10 of the New York City Zoning Resolution" (Prior Action, affidavit of James Brady, sworn to November 13, 2007 ¶ 10). Brady added there that "[s]uch a combination is colloquially described as a 'sale of air rights'" (*id.*). Similarly, the Bradys' motion in the Prior Action for a preliminary injunction sought an order restraining "Defendants . . . from consummating or entering into any agreement pertaining to Transferable Development Rights and/or any zoning lot development agreement or other arrangement with respect to [the Building]" (Prior Action, order, Nov 13, 2007, Friedman, J.). Moreover, in the Bradys' opposition to the defendants' motion for summary judgment in the Prior Action, they describe air rights as "transferable development rights",[6] arguing that while their right to build was distinct from such "transferable development rights", it nevertheless gave them the ability to block the sale, a claim which the court, in the Prior Action, rejected (Prior Action, decision and order, Mar 13, 2009 at *2).

_____

[6] *See* Prior Action, plaintiffs' opposition brief, Apr 7, 2008 at 2: "Defendants would have the Court believe that Plaintiffs are claiming the <u>transferable</u> development rights that the Building gained by virtue of the Hudson Yards rezoning . . . Defendants intentionally mischaracterize Plaintiffs' Amended Complaint in a transparent effort to equate <u>transferable</u> development rights . . . with the right to build upon or above the roof" (emphasis in original).

13

In sum, the issue of who owns or controls the air rights appurtenant to the Building's lot has already been decided in favor of the Co-op. Any claim by Brady arising out of that question is barred. That the Co-op or Sherwood initially sought a waiver from Brady does not constitute an "admission" that the ZLDEA interfered with any of Brady's rights. Indeed, according to Brady, he was specifically told by the Co-op that "the transaction will be consummated with or without your waiver" (Co-op Complaint ¶ 222).[7]  Finally, Brady's argument that Extell's abandonment of the air rights transaction in June 2008 rendered the Prior Action moot is unpersuasive, given that the Appellate Division failed to dismiss the matter as moot when it affirmed the decision (upon the Bradys' appeal) in 2010.

However, as Brady correctly notes, the court in the Prior Action recognized that the offering plan conferred upon him a right to build structures on the Building's roof, but expressly declined to reach the question of whether the Extell transaction would have violated that right. Brady, therefore, contends that he is not barred by the prior judgment from now claiming that the ZLDEA violated his right to build.

Again, the ZLDEA's conveyance of air rights cannot serve as the basis for a claim that Brady's right to build has been violated. It has already been adjudged that while the owners of the Unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"]; *Brady v 450 W. 31st*

_____

[7] In any case, nothing that the Co-op or any other party might have said would have any effect on the scope and finality of the court's prior existing judgment.

14

*St. Owners Corp.*, 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right . . . to construct or extend structures on the roof that may be built without the use of the building's development rights"]). Contrary to Brady's contentions, and as the court in the Prior Action already noted, this is not a contradiction (Prior Action, decision and order, Mar 13, 2009 at *2, citing *Wing Ming Props. (USA) Ltd. v Mott Operating Corp.*, 79 NY2d 1021 [1992]). Nonetheless, the ZLDEA also imposes a light-and-air easement in favor of the adjoining lot on the space more than forty feet above the penthouse roof. Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof otherwise permitted by applicable law has never been determined and so is not barred.

This court, like the prior court, however, declines to reach the issue, since, as before, Brady has not developed a sufficient record to show the existence of an actual controversy (Prior Action, decision and order July 2, 2008 at *5, citing *40-56 Tenth Ave. LLC v 450 W. 14th St. Corp.*, 22 AD3d 416 [1st Dept 2005]). As in the Prior Action, there is no indication that the Co-op or anyone else has told Brady that he cannot build on the Building's roof. Nor is there any contention that Brady had or has any plans to build *anything* on the Building's roof. Consequently, the question of whether the easement interferes with Brady's right to build is not ripe for adjudication, as "the courts may not issue judicial decisions that 'can have no immediate effect and may never resolve anything'" (*Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988] quoting *New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 531 [1985]). This is especially so given that the light-and-air easement begins more than forty feet above the roof of Brady's penthouse. The absence of any indication that Brady intends to build a forty foot

15

structure or that any such structure would comply with all applicable laws, including the zoning

code's limits on the Building's floor area, renders the question of whether the light-and-air

easement violates Brady's right academic (*compare Big Four LLC v Bond Street Lofts

Condominium*, 94 AD3d 401 [1st Dept 2012] [finding actual controversy over plaintiff's right to

lease unit where defendant condominium had objected to actual proposed lease in writing] *with*

*Waterways Dev. Corp. v Lavalle*, 28 AD3d 539, 540—41 [2d Dept 2006] [developer not entitled

to declaration it was entitled to zoning variance where it had not applied for building permit and

town had therefore made no final determination]).

In short, plaintiff cannot maintain any cause of action based on the Co-op's conveyance

of air rights or the imposition of an easement, since a prior judgment of the court, affirmed on

appeal, has held that the Co-op is entitled to do the former and there is no present, actual

controversy involving the latter. As a result, Brady is not entitled to the declarations he seeks in

his first cause of action in the Co-op Action and in the fifth and seventh causes of action in the

Katz Action. Similarly, he is not entitled to a declaration that he has been partially

constructively evicted and owes no maintenance (Co-op Complaint, second cause of action). To

establish a constructive eviction, partial or other, "there must be a wrongful act of the landlord

which deprives the tenant of the beneficial enjoyment or actual possession of the demised

premises" (*see Barash v Penn. Term. Real Estate Corp.*, 26 NY2d 77, 82 [1970]). Also, the

tenant must abandon the premises (*id*. at 83). Neither a wrongful act by the Co-op nor

abandonment of the premises is alleged.

Furthermore, in the absence of any claim to air rights under the offering plan, plaintiff

cannot sustain claims for breach of contract (*see Canzona v Atanasio*, 2014 NY Slip Op 4459 [2d

16

Dept 2014] [element of breach of contract is defendant's breach of its contractual obligation and damages resulting therefrom]), breach of the covenant of good faith and fair dealing (*see ABN AMRO Bank, N.V., v MBIA Inc.*, 17 NY2d 208, 228 [2011] [covenant of good faith and fair dealing embraces pledge not to do anything which destroys or injures rights of party under contract]), and tortious interference with contract (*see NBT Bancorp. v Fleet/Norstar Fin. Grp.*, 87 NY2d 614, 621 [1990] [breach of contract is element of tortious interference with contract]). Thus, the third and fourth causes of action in the Co-op Complaint and the first cause of action in the Katz Complaint are dismissed.

Brady's allegations of fraud (Co-op Complaint, fifth cause of action; Katz Complaint, fourth cause of action) or negligent misrepresentation (Co-op Complaint, sixth and tenth causes of action) based on the transfers or attempted transfers of the air rights also fail. Both fraud and negligent misrepresentation require justifiable reliance (*J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]; *Nigro v Lee*, 63 AD3d 1490, 1492 [3d Dept 2009]), and an actionable injury (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011]; *Heard v City of New York*, 82 NY2d 66, 74 [1993]). These elements are missing here, since the prior court had found no actionable claim based on the same facts, a holding with which Brady was familiar. In a like manner, the air rights transfer cannot serve as a basis for breach of fiduciary duty (Co-op Complaint, fourteenth cause of action). To recover for breach of fiduciary duty there must be misconduct by the defendant and damages caused by the defendant's misconduct (*Varveris v Zacharakos*, 110 AD3d 1059 [2d Dept 2013], elements missing here. The failure to assert a viable claim for breach of fiduciary duty precludes the claim for aiding and abetting breach of fiduciary duty (Katz Complaint, third cause of action).

17

Brady further alleges causes of action for gross negligence (Co-op Complaint, eighth, and ninth causes of action), unjust enrichment (Co-op Complaint, twelfth cause of action; Katz Complaint, second cause of action), and slander of title (Co-op Complaint, eleventh cause of action; Katz Complaint, sixth cause of action). All are dismissed. "'[G]ross negligence is the commission or omission of an act or duty owing by one person to a second party which discloses a failure to exercise slight diligence....the act or omission must be of an aggravated character.'" *Dalton v Hamilton Hotel Operating Co., Inc.*, 242 NY 481487 (1926). The Co-op and Sherwood were entitled to enter into the ZLDEA and did not breach any duty or act negligently in doing so. Likewise, the remaining defendants breached no duty of care in negotiating, authorizing or participating in the further sale of the Co-op's rights. Additionally, the Prior Action, by holding that the air rights were the Co-op's to sell, also prevents Brady from bringing a claim that the benefit enjoyed by the Co-op or other parties from the transfer constitutes unjust enrichment (*Paramount Film Distrib. Corp. v State*, 30 NY2d 415, 421 [1972] [essential inquiry in action for unjust enrichment is whether permitting defendant to retain what plaintiff seeks to recover is against equity and good conscience]). Moreover, Brady's claim that he is entitled to the air rights is grounded in a contract (the offering plan), a contention which forecloses a cause of action for unjust enrichment (*Coldwell Banker Commercial Hunter Realty v Rainbow Holding Co.*, 2014 NY Slip Op 5049 [1st Dept 2014]).

Finally, the prior court's determination that Brady has no claim to the Building's air rights obviates his cause of action for slander of title. "To support a claim for slander of title, it was incumbent on plaintiff to allege facts which demonstrate that defendants made false communications casting doubt on the validity of plaintiff's title with malicious intent, or at a

18

minimum, with 'reckless disregard for their truth or falsity'" (*Vollbrecht v Jacobson*, 40 AD3d

1243, 1247 [1st Dept 2007]).  Further, special damages are an element of the cause of action

(*Rosenbaum v City of New York*, 8 NY3d 1, 12 [2006]).  Here, there were no false

communications, malicious intent, or special damages.

> *2. Other Claims*

Brady also seeks damages under theories of prima facie tort (against all defendants) and

breach of fiduciary duty and gross negligence (against the Co-op, its board members and

Hughes) for changing the Co-op's house rules and voting method (Co-op Complaint, ¶¶ 326—

30, 383—99).  The corporate acts complained of took place, at latest, in 2011.  Thus, the Co-op

Complaint's seventh cause of action for prima facie tort is time-barred (*Bohn v 176 W. 87th St.*

*Owners Corp.*, 106 AD3d 598, 599 [1st Dept 2013] ["(T)he limitations period for a claim of

prima facie tort is one year"] citing *Havell v Islam*, 292 AD2d 210 [1st Dept 2002]).  Even were

this not so, Brady has failed to make out a claim for prima facie tort which requires intentional

infliction of harm, resulting in special damages and without excuse or justification (*Freihofer v*

*Hearst Corp.*, 65 NY2d 135, 142-43 [1985]).  The elements of measureable, special damages are

not specifically alleged and excuse or justification on the part of defendants is clearly present (*id.*

["A critical element of [prima facie tort] is that plaintiff suffered specific and measurable loss,

which requires an allegation of special damages"]).

As to the Co-op Complaint's fourteenth cause of action, Brady concedes that the changes

to the house rules proposed in 2009 and detailed in the Co-op Complaint were never adopted,

and while a different set of changes were adopted in 2011, the complaint does not say what they

are or how they have harmed Brady.  Instead, in the sur-reply to the Co-op's motion to dismiss,

Brady's counsel[8] argues that the 2011 amendments gave the Board "more control" and *allowed*

them to sanction the Bradys, without stating that the Co-op ever actually did so or explaining

what additional "control" was assumed by the Co-op Board.  Even accepting the unverified

statement of Brady's counsel, and ignoring the broad discretion granted to the Co-op to take

action under the business judgment rule (*see 40 W. 67th St. v Pullman*, 100 NY2d 147 [2003]

[applying that standard in reviewing co-op's decision to terminate tenant's proprietary lease

"after finding that his behavior was more than its shareholders could bear"]), the allegations in

the sur-reply are too vague and conclusory to give any party actual notice of why or how the

2011 house rule amendments give rise to a cause of action (CPLR 3013).[9]

Further, in regard to the change in voting method, a provision for cumulative voting "can

be made only by the certificate of incorporation or amendment thereto filed pursuant to law"

(*Matter of Am. Fibre Chair Seat Corp.*, 265 NY 416, 420 [1934]).  Brady does not controvert the

Co-op's contention that the certificate of incorporation does not provide for cumulative voting,

nor does he allege that the shareholders ever agreed to amend the certificate to so provide

(*compare id.* at 421).  He, therefore, cannot maintain a cause of action arising out of the Co-op's

decision to discontinue the apparently unauthorized practice.  In any case, "the exclusive method

---

[8] Brady failed to verify the statements made by his lawyer, instead merely submitting an affidavit
in which he avers that "[t]he exhibits submitted with [the] Sur-reply are true and correct copies
of the originals kept in my files" (affidavit of James Brady, sworn to on April 1, 2014).

[9] Brady's counsel also claims in the sur-reply that Brady and his wife have been "charged
additional charges without explanation" and that they pay higher fees than other Building
tenants.  This statement does not appear to be related to any of the allegations in the actual Co-op
Complaint regarding the house rules, and the court declines to treat the sur-reply as an amended
pleading, particularly where the allegations are not included in an affidavit from a person with
knowledge and are conclusory.

for testing the validity of an election is either through an action . . . brought by the Attorney-General, or through a proceeding instituted under section 619 of the Business Corporation Law" (*Matter of Schmidt*, 97 AD2d 244, 249 [2d Dept 1983] [citations omitted]).  Accordingly, the fourteenth cause of action in the Co-op Complaint are dismissed.  Finally, statements or actions made or taken by the Co-op's attorneys in the course of their work in the Prior Action, in essence, asserted that Brady did not have the power to prevent the sale of the Building's air rights.  This is not, as Brady would have it, deceit.  It is argument, and, in the end, a statement of the law, and cannot serve as a basis for a cause of action under Section 487 of the Judiciary Law (Co-op Complaint, thirteenth cause of action).

   D.  *Amend Caption*

   Brady seeks leave to "amend the caption" in the Katz complaint to name various Sherwood and McCourt-related entities as defendants in addition to Katz and McCourt, the entities' alleged principals.  Leaving aside the viability of such a claim against entities with no connection to the subject transaction, the addition of these corporate defendants will not save the Katz Action from dismissal.  The motion is denied as moot.

   E.  *Sanctions*

   It is clear from the papers and the transaction's history that Brady acted in bad faith in bringing the instant cases.  His misinterpretation of the prior judgment, his feigned ignorance of the origin or meaning of the phrase "transferable development rights", and his argument that a decision which he appealed to no avail is not binding are but a few examples of the frivolous arguments made in the instant actions.  Further, plaintiff, a stranger to the McCourt transaction, had no basis for seeking compensatory and punitive damages from McCourt (*see Katz*

21

Complaint, prayer for relief, ¶¶ 5—6) or, for that matter, Katz. Both individuals were the mere

principals of the entities involved in the subject transactions. Similarly, there are no allegations

supporting any viable cause of action against Owain Hughes, the prior owner of the Unit, who

appears to have been named as a defendant solely to retaliate for his refusal to support Brady's

claim (see Co-op Action, NYSCEF Doc. No. 121, p. 5).[10]

      In short, Brady has dragged more than twenty parties into court to litigate matters that

have already been determined and claims that lack any substance. It appears from Brady's

submissions that even before he purchased the unit he was well aware of the Co-op's efforts to

sell the air rights and that his concern, at first, was only that the price the Co-op was entertaining

was too low (Co-op Complaint ¶ 45; see also Co-op Action, NYSCEF Doc. No. 112; Prior

Action, decision and order, Mar 13, 2009, at *2 n 1). While Brady claims to be scandalized by

the substantial profits enjoyed by Sherwood in flipping the adjoining lot to the McCourt entity,

he does not seem offended by the idea that *his* $5 million purchase of the Building's top unit

should entitle him to control over what he claims are $100 million worth of air rights under a

theory which only he is clever enough to understand and which was only revealed to him by

certain "professionals" more than a year after he bought his shares. The trial and appellate courts

in the Prior Action have denied him such control. Undeterred, he has ignored these court rulings

---

[10]  Brady and Hughes had agreed that if the Building sold its air rights within a year of Hughes's
sale to Brady, then Brady and Hughes would split the proceeds (Co-op Action, NYSCEF Doc.
No. 121, p. 5). Needless to say, this does not constitute a representation that the owner of the
unit owned the Building's air rights. Rather, it was merely an agreement to share in any
dividends paid to the twelfth floor tenant as a shareholder of the Co-op. Indeed, according to the
Co-op, Brady has received, without protest, a total of $205,066.08 of dividends from what he
claims was the Co-op's unlawful and *ultra vires* sale (Co-op Action, affidavit of Desiree Greene,
sworn to on March 26, 2014, ¶ 4).

and brought these meritless actions, abusing the judicial process (Rules of Chief Admin of Cts [22 NYCRR] § 130-1.1). This is a near perfect example of frivolous conduct and warrants defendants' requests for the imposition of sanctions (*see, e.g., Pentalpha Enters., Ltd. v Cooper & Dunham LLP*, 91 AD3d 451 [1st Dept 2012]; *Great Am. Ins Cos. v Bearcat Fin. Servs., Inc.*, 90 AD3d 533 [1st Dept 2011]). The court declines to impose a filing injunction upon Brady at this time, though he is warned not to further test the court's patience by prosecuting claims that have either been determined or that he has been told are not ripe.

Accordingly, in the action entitled *Brady v 450 West 31st Street Owners Corp., et al.*, bearing the index number 157779/2013 it is

ORDERED that (1) the motion of James Brady to file a sur-reply is granted; (2) the motions of the defendants to dismiss the complaint are granted, the complaint is dismissed in its entirety against all the defendants with prejudice and the Clerk is directed to enter judgments dismissing the action with prejudice against all defendants, with costs and disbursements; (3) the motions for sanctions by defendants 450 West 31st Street Owners Corp., Desiree Greene, Jim Franco, Karen Atta, Molly Blienden, Priscilla McGeehon, Bill Smith, Owain Hughes, Linda Kramer, Chodosh Realty Services Inc., Jon Chodosh, Stanley Kaufman, Kaufman Friedman Plotnicki & Grun LLP, Vincent Hanley and Hanley & Goble are granted, and plaintiff James Brady is hereby directed to pay to the aforesaid defendants their reasonable attorney's fees and other expenses incurred as a result of this action, the amount of which is hereby referred to a Special Referee to hear and determine; and (4) the motions by defendants 450 West 31st Street Owners Corp., Desiree Greene, Jim Franco, Karen Atta, Molly Blienden, Priscilla McGeehon,

23

Bill Smith, Owain Hughes, Linda Kramer, Chodosh Realty Services Inc. and Jon Chodosh for an

injunction against further litigation are denied; and it is further

ORDERED that counsel for the defendants on whose behalf the above reference is

directed shall, within 30 days from the date of this order, serve a copy of this order with notice of

entry upon the Special Referee Clerk by an email bearing the subject line "Service of Order" and

sent to spref-nyef@nycourts.gov, which notice shall be accompanied by a completed Information

Sheet (copies are available at http://www.nycourts.gov/courts/1jd/supctmanh/ under the

"References" section of the "Courthouse Procedures" option in the "Court Operations" menu),

and the Special Referee Clerk is hereby directed to place this matter on the calendar of the

Special Referee's Part for the earliest convenient date; and it is further

ORDERED that upon the entry of said Special Referee's Report, the Clerk of the Court is

hereby directed to enter judgment awarding attorney's fees as determined by the Special Referee;

and it is further

ORDERED in the action entitled *Brady v Katz, et al.*, bearing the index number

654226/2013, that (1) the motion of James Brady for recusal is denied; (2) the motions of the

defendants to dismiss the complaint are granted, the complaint is dismissed in its entirety against

all the defendants with prejudice, and the Clerk is directed to enter judgments dismissing the

action with prejudice against all defendants, with costs and disbursements; (3) the motion of

James Brady to amend the complaint or the caption is denied; (4) the motions for sanctions by

Jeffrey Katz, Long Wharf Real Estate Partners, LLC, Dennis W. Russo, and Herrick Feinstein

LLP are granted, and plaintiff James Brady is hereby directed to pay the aforesaid defendants

their reasonable attorney's fees and other expenses incurred as a result of said action, the amount

24

of which is hereby referred to a Special Referee to hear and determine; and (5) the motion by the

aforesaid defendants for an injunction against further litigation is denied; and it is further

ORDERED that counsel for the defendants on whose behalf the above reference is

directed shall, within 30 days from the date of this order, serve a copy of this order with notice of

entry upon the Special Referee Clerk in the manner described above, and the Special Referee

Clerk is hereby directed to place this matter on the calendar of the Special Referee's Part for the

earliest convenient date; and it is further

ORDERED that upon the entry of said Special Referee's Report, the Clerk of the Court is

hereby directed to enter judgment awarding attorney's fees as determined by the Special Referee.

ENTER

Dated:  July 15, 2014

J.S.C.

25

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————————————X

James H. Brady,

                              *Plaintiff,*                    Docket No. 16-3122(cv)

                    v.

Eric Schneiderman, Attorney General
for the State of New York,

                              *Defendant.*

———————————————————————X


## CERTIFICATE OF SERVICE

I, James H. Brady, hereby certify under penalty of perjury that on Thursday,

December 21, 2017, I served a copy of Appellant-Plaintiff's *"Letter to the Court re: Oral*

*Arguments,"* dated December 21, 2017, by email, on the following parties:

David Lawrence III
Office of the Attorney General
Division of Appeals & Opinions
120 Broadway, 25th Floor
New York, NY 10271
David.Lawrence@ag.ny.gov

DATE:  December 21, 2017


                                        _____
                                        James H. Brady

# EXHIBIT
# 6

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM   INDEX NO. 654226/2013
NYSCEF DOC. NO. 249                                    RECEIVED NYSCEF: 03/08/2018

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: Hon. Deborah A Kaplan                 PART _____

Administrative Judge—SUPCT, NY County Justice        157779-2013
James H. Brady                  Civil Term      INDEX NO. 654226-2013

v                                                MOTION DATE _____

450 West 31st Street Owners Corp, et al          MOTION SEQ. NO. _____

James H. Brady
Jeffrey Katz, et al

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s)._____

Answering Affidavits — Exhibits _____ | No(s)._____

Replying Affidavits _____ | No(s)._____

Upon the foregoing papers, it is ordered that this motion is Decided in accordance with the annexed order.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: 3-8-18                              Hon. Deborah A. Kaplan                          , J.S.C.
                                           Administrative Judge
                                           Supreme Court, New York County
                                           Civil Branch

1. CHECK ONE: ......................................  ☐ CASE DISPOSED    ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ..........MOTION IS: ☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: .......................  ☐ SETTLE ORDER        ☐ SUBMIT ORDER
                                                 ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM   INDEX NO. 654226/2013
NYSCEF DOC. NO. 249                                      RECEIVED NYSCEF: 03/08/2018

P R E S E N T: HON DEBORAH KAPLAN
ADMINISTRATIVE JUDGE – SUPREME COURT
NEW YORK COUNTY - CIVIL TERM
------------------------------------------------------------X
JAMES H. BRADY,

                  Plaintiff,                          Index No: 157779/2013

    -against-                                              ORDER

450 WEST 31ST STREET OWNERS CORP., et al,

                  Defendant.
------------------------------------------------------------X
JAMES H. BRADY,

                  Plaintiff,

    -against-                                              Index No:  654226/2013

JEFFREY KATZ, et al,

                  Defendant.
_____X

      In connection with numerous lawsuits involving development rights of a cooperatively

owned building located at 450 West 31st Street in Manhattan, New York, in which plaintiff is a

shareholder of the penthouse floor, plaintiff James H. Brady seeks permission by letter to this

court dated March 6, 2018 to file a "proposed Complaint seeking Declaratory Relief pursuant to

CPLR 3001."

      By way of brief history, the plaintiff commenced numerous actions regarding the

development rights of the subject cooperative in the New York State Courts. In the first action

commenced in 2008 (Brady 1), Justice Marcy Friedman, to whom the case was assigned, found

that the cooperative, not the plaintiff, was the exclusive owner of the building's transferrable

development rights, sometimes referred to as TDRs (*Brady v 450 West 31st Owners Corp*, 2009

WL 803427 [Sup Ct, New York County 2009]). That decision was affirmed by the Appellate

1

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM

NYSCEF DOC. NO. 249

INDEX NO. 654226/2013

RECEIVED NYSCEF: 03/08/2018

Division, First Department (*Brady, et al, v 450 West 31st Owners Corp, et al*, 70 AD3d 469 [1st Dept 2010]).

Thereafter, the plaintiff commenced two more actions (Brady 2 and Brady 3) after the cooperative corporation completed the transfer of the development rights. In Brady 2 and 3, the plaintiff sued the cooperative board and its members, individually; the law firms that represented the cooperative in Brady 1; the law firm that represented the cooperative in its first unsuccessful attempt to sell the development rights in 2007; the prior owner of his unit; the eventual purchasers of the development rights and the law firms that represented them; and the parent company of the entity that purchased an adjoining lot and its CEO, individually.

In 2014, Brady 2 and 3 were dismissed and the defendants' request for the imposition of sanctions was granted by Justice Shirley Kornreich who presided over the matters (*Brady v 450 West 31st Street Owners Corp; Brady v Katz, et al*, 2014 WL 3515939 [Sup Ct, New York County 2014]). Apparently, no appeal was taken from that decision.

In 2015, the plaintiff sued the New York County District Attorney's Office and the City of New York, asserting a federal civil rights claim under 42 USC § 1983 and state law claims for gross negligence, willful misconduct, prima facie tort and negligent infliction of emotional distress against the District Attorney's office for declining to undertake a criminal investigation against the Supreme Court Justices who presided over the litigation involving the development rights of the subject cooperatively owned building in which the plaintiff is a shareholder. Justice Margaret Chan, to whom the case was assigned, dismissed the plaintiff's complaint finding that no valid cause of action existed against the District Attorney's office. Justice Chan further "barred the plaintiff from initiating any further litigation as party plaintiff without prior approval of the Administrative Judge in which he seeks to bring a further motion or commence an action,

2

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM
NYSCEF DOC. NO. 249

INDEX NO. 654226/2013
RECEIVED NYSCEF: 03/08/2018

with the sole exception of appealing the instant Order to the First Department." Justice Chan's decision and order was based on her finding that the plaintiff was "abusing the judicial process by hagriding individuals solely out of ill will or spite." Justice Chan pointed out that the plaintiff had commenced three actions against the cooperative corporation with respect to the building's development rights. Given that she found that the plaintiff had demonstrated a "pattern of vexatious conduct and repetitive litigation," Justice Chan issued the filing injunction. Justice Chan's order was unanimously affirmed by the Appellate Division, First Department on February 8, 2018 (*Brady v New York County District Attorney's Office*, 67 NYS3d 837 [1st Dept 2018]).

The plaintiff has also brought numerous related actions in federal court. He sued the New York Attorney General under 42 USC § 1983 seeking an injunction to require that the Attorney General investigate and prosecute alleged judicial corruption related to the plaintiff's prior unsuccessful state court litigation over the subject cooperative building's development rights. The federal district court dismissed the complaint and the United States Court of Appeals, Second Circuit found that the district court properly determined that the plaintiff lacked standing to compel the Attorney General to investigate or prosecute state judges who ruled against him. The Second Circuit pointed out in its decision that the plaintiff "has been warned by the state court not to continue his 'near perfect example of frivolous conduct' in 'prosecuting claims that have either been determined or that he has been told are not ripe.'" (*Brady v Eric T. Schneiderman, Attorney General for the State of New York*, 2018 WL 1124099 [2d Cir March 1, 2018]).

The plaintiff also sued the Associated Press Telecom, NBC News New York, WCBSTV New York, The New York Times Company, New York Post, New York Daily News, Wall Street

3

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM
NYSCEF DOC. NO. 249

INDEX NO. 654226/2013
RECEIVED NYSCEF: 03/08/2018

Journal and Newsday Media Group, alleging fraud, conspiracy, equal protection violations, willful misconduct and gross negligence, based on the news organizations' purported failure to investigate and report on what the plaintiff characterized as judicial corruption that took place during his state court litigation involving the subject cooperative's development rights. The complaint was dismissed by the district court and the plaintiff appealed. On appeal, the Second Circuit affirmed. Further, the Second Circuit, noting that they may "award just damages and single or double costs to the appellee[s]" if they find that an appeal is frivolous, granted the request of appellees to apply to the court for damages and/or double costs (*Brady v Associated Press Telecom, et al*, 2018 WL 1124118 [2d Cir March 1, 2018]).

Additionally, the plaintiff sued the lawyers and law firms that represented his adversaries in the prior unsuccessful state court litigation, alleging violations of the Judiciary Law, fraud, intentional infliction of emotional distress and violations of the Fifth and Fourteenth Amendment due process and equal protection rights. He also sought to vacate the prior state court judgment. The district court dismissed the action and imposed a filing injunction requiring the plaintiff to seek permission before filing in federal court any additional suits pertaining to his prior state court litigation. The district court's decision was affirmed by the Second Circuit. Specifically, with respect to the filing injunction, the Second Circuit concluded that the court did not abuse its discretion in imposing such an injunction (*Brady v Goldman, et al*, 2018 WL 1124124 [2d Cir March 1, 2018]).

The plaintiff now seeks permission from this court to file a complaint for a declaration of rights based on the claim that there are two conflicting court decisions addressing the issue of the subject cooperative's development rights which are being treated as final orders to wit: the February 11, 2010 Appellate Division, First Department decision ( *Brady, et al, v 450 West 31st*

4

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM        INDEX NO. 654226/2013
NYSCEF DOC. NO. 249                                      RECEIVED NYSCEF: 03/08/2018

*Owners Corp, et al,* 70 AD3d 469 [1st Dept 2010]) and the decision rendered by Hon. Shirley

Kornreich in 2014 (*Brady v 450 West 31st Street Owners Corp; Brady v Katz, et al,* 2014 WL

3515939 [Sup Ct, New York County 2014]).

The plaintiff's application is denied for the reasons set forth below.

The plaintiff claims that the Appellate Division, First Department's decision did not

affirm the lower court's order issued by Justice Marcy Friedman. That claim is incorrect. On the

contrary, Judgment and order was entered in New York County on March 26, 2009 (Marcy S.

Friedman, J.) and was unanimously affirmed on appeal.[1]

In its decision, the Appellate Division, First Department specifically found the following:

"Paragraph 7 of the second amendment to the offering plan contains no express language giving

plaintiffs ownership of or veto power over the building's development rights or air rights . . . .

It reserves for plaintiffs the right, as permitted by the relevant laws, to construct or extend

structures on the roof that may be built without the use of the building's development rights."

[internal citations omitted]. Also contrary to the plaintiff's contentions, there is no dicta in the

decision issued by the Appellate Division, First Department.

Furthermore, this court rejects the plaintiff's assertion that the decision of the Appellate

Division, First Department was "unlawfully rewritten" by Justice Kornreich. Rather, Justice

Kornreich relied on previous decisions and orders in dismissing the actions before her. Notably,

Justice Kornreich declined to impose a filing injunction upon the plaintiff at that time, however,

---

[1] According to Black's Law Dictionary Fifth Edition, "[i]n the practice of appellate courts, to *affirm* a judgment, decree or order, is to declare that it is valid and right and must stand as rendered below. . ." [emphasis in original]  See also, https://www.nycourts.gov/courthelp/AfterCourt/decision.shtml ("The Appellate Court can reverse, remand, affirm or modify the decision of the lower court, or parts of the decision. Affirm: This is when the Appellate Court says the lower court made the right decision. The decision stays the same.")[1]

5

FILED: NEW YORK COUNTY CLERK 03/08/2018 03:44 PM          INDEX NO. 654226/2013

NYSCEF DOC. NO. 249                                       RECEIVED NYSCEF: 03/08/2018

she observed that his "near perfect example of frivolous conduct" warranted the imposition of

sanctions (*James Brady v Jeffrey Katz, et al,* 2014 WL 3515939 [Sup Ct, New York County

2014]).

In reaching its conclusion, this court notes as well that "a declaratory judgment action

cannot be used to circumvent the normal appellate process" (*Rodriguez v City Court of the City

of Yonkers,* 138 AD2d 474 [2d Dept 1988]). Here, the plaintiff apparently did not appeal the

decision and order of Justice Kornreich. In addition, "a declaratory judgment action should not

be entertained when any judgment that might issue will become effective only upon the

occurrence of a future event that may or may not come to pass" (*Matter of Gates v Hernandez,*

26 AD3d 288 [1st Department 2006]). Finally, a declaratory judgment is a discretionary remedy

(*Bower & Gardner v Evans,* 60 NY2d 781 [1983]).

In sum, this court finds that there is no basis upon which to grant defendant permission

to file yet another action related to the development rights of the subject cooperative. The

plaintiff here is seeking to continue to engage in meritless litigation.

Accordingly, the defendant's request to file a complaint for declaratory relief is denied.

This constitutes the order of the court. All other relief requested not specifically granted

is denied.


Dated: March 8, 2018


HON. DEBORAH A. KAPLAN

J.S.C.

Hon. Deborah A. Kaplan
Administrative Judge
Supreme Court, New York County
Civil Branch

6